UNITED STATES OF AMERICA f//b/o DOTEN'S CONSTRUCTION, INC., Plaintiff v. JMG EXCAVATING & CONSTRUCTION CO., INC., et al., Defendants; GREENWICH INSURANCE COMPANY, Third-Party Plaintiff v. JMG EXCAVATING & CONSTRUCTION CO., INC., et al., Third-Party Defendants

Docket No. 03-134-P-S

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE

2005 U.S. Dist. LEXIS 9933

May 24, 2005, Decided

**PRIOR HISTORY:** United States ex rel. Dotens Constr., Inc. v. JMG Excavating & Constr. Co., 2005 U.S. Dist. LEXIS 104 (D. Me., Jan. 5, 2005)

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Defendant subcontractor sought an enlargement of time to file additional dispositive motions and sanctions against other defendants, a general contractor and its surety. The contractor and its surety moved to strike the subcontractor's jury demand with respect to the subcontractor's Miller Act, 40 U.S.C.S. § 3133, cross-claim against the contractor and the surety and the cross-claim of the contractor against the subcontractor for an overpayment.

**OVERVIEW:** The sanctions issue essentially repeated a previously denied motion. Although the subcontractor's counsel asserted he only recently learned that the contractor's bankruptcy stay had been lifted, that issue was discussed months earlier in a court conference call. The subcontractor sought an enlargement of time to renew its previously denied summary judgment motion, or to supplement its opposition to the contractor's and surety's summary judgment motion as to quantum meruit which was granted, arguing newly-discovered evidence. But, two of the documents were in the subcontractor's possession before the dispositive motions deadlines, and the third document could have been requested earlier under the Freedom of Information Act. While plaintiff United States, for the use and benefit of a second-tier subcontractor, had requested a jury trial, defendants had not. The cross-claims under § 3133 and for the overpayment on the subcontract were not similar. And, the surety was not a party to the subcontract waiving a jury trial. The surety had not waived a jury trial. The experienced subcontractor was bound by the jury waiver which did not have to be in bold and conspicuous lettering.

**OUTCOME:** The subcontractor's motions for enlargement of time and for sanctions were denied. The motion to strike filed by the contractor and the surety was granted as to the cross-claims involving the contractor and the subcontractor, and was denied as to the subcontractor's cross-claims against the surety.

**CORE TERMS:** cross-claim, subcontract, jury trial, summary judgment, enlargement of time, jury waiver, motion to strike, general contractor, waiver provision, subcontractor, enforceable, print, bankruptcy stay, enlargement, dispositive, lifted, demanded, waiving, surety, discovery, entitled to recover, jury trial waiver, burden of proof, separately, contractor, knowingly, successor, succeed, waived, assign

**LexisNexis(TM) Headnotes**

***Civil Procedure > Jury Trials > Right to Jury Trial***

[HN1]See Fed. R. Civ. P. 38(d).

***Civil Procedure > Jury Trials > Right to Jury Trial***

[HN2]Fed. R. Civ. P. 39(a) applies by its terms only when trial by jury has been demanded as provided in Fed. R. Civ. P. 38.

***Civil Procedure > Jury Trials > Right to Jury Trial***

[HN3]After one party has demanded a jury, a second party is not required to make a second jury demand if the first demand covered the second party's jury issues.

***Contracts Law > Contract Conditions & Provisions > Waivers***

[HN4]To determine whether a jury trial waiver is knowing and voluntary, the United States Court of Appeals for the First Circuit has looked to the totality of the circumstances, including (1) the waiving party's education and business experience, (2) the respective roles of the parties in determining the terms of the waiver, (3) the clarity of the agreement, (4) the amount of time the waiving party had to consider the waiver, (5) whether the waiving party was represented by counsel, and (6) the consideration offered for the waiver.

***Contracts Law > Contract Conditions & Provisions > Waivers***

[HN5]A jury waiver need not be made in "bold and conspicuous lettering" and isolated in order to be enforceable.

***Contracts Law > Contract Conditions & Provisions > Waivers***

[HN6]Evidence that a party seeking to avoid a waiver provision has previously been a party to a similar agreement with other party is significant.

***Contracts Law > Contract Conditions & Provisions > Waivers***

***Contracts Law > Types of Contracts > Construction Contracts***

[HN7]Most subcontractors could make the statement that if they wanted to work on the project for which the general contractor was the general, they had to enter into subcontracts with the general contractor. Other factors must be present to render the contracting parties' relative positions so unequal that a jury waiver term will not be enforced. When the party seeking to avoid a contractual waiver is not a neophyte in the business at issue, it is not likely to be so inexperienced and unsophisticated that sufficient disparity in negotiating positions to nullify a jury waiver provision will be assumed.

**COUNSEL:** **[*1]** For UNITED STATES OF AMERICA, for the use and benefit of on behalf of DOTENS CONSTRUCTION INCORPORATED, Plaintiff: NEAL F. PRATT, JOHN P. GIFFUNE, VERRILL & DANA, PORTLAND, ME.

For J A JONES MANAGEMENT SERVICES INC, Plaintiff: DEBRA L. BROWN, LAW OFFICES OF DEBRA L., BROWN, P.A., PORTLAND, ME; PAUL E. CHRONIS, MELISSA M. ECKHAUSE, MCDERMOTT, WILL & EMERY, CHICAGO, IL.

For JMG EXCAVATING & CONSTRUCTION CO INC, Defendant: CHARLES D. MANDRACCHIA, MANDRACCHIA & MODESTI, LLC, SKIPPACK, PA; LOUIS B. BUTTERFIELD, BERNSTEIN, SHUR, SAWYER, & NELSON, PORTLAND, ME.

For FIREMANS FUND INSURANCE COMPANY, Defendant: DEBRA L. BROWN, LAW OFFICES OF DEBRA L., BROWN, P.A., PORTLAND, ME; PAUL E. CHRONIS, MELISSA M. ECKHAUSE, MCDERMOTT, WILL & EMERY, CHICAGO, IL.

**JUDGES:** David M. Cohen, United States Magistrate Judge.

**OPINIONBY:** David M. Cohen

**OPINION:** ***MEMORANDUM DECISION ON MOTIONS OF JMG EXCAVATING & CONSTRUCTION CO., INC. FOR ENLARGEMENT OF TIME AND FOR SANCTIONS AND MOTION OF J.A. JONES MANAGEMENT SERVICES, INC. AND FIREMAN'S FUND INSURANCE COMPANY TO STRIKE***

JMG Excavating & Construction Co., Inc. ("JMG"), a defendant in this action, seeks an enlargement of time in which to file additional **[*2]** dispositive motions and sanctions against defendants J.A. Jones Management Services, Inc. ("Jones") and Fireman's Fund Insurance Company ("FFI"). Jones and FFI move to strike the jury demand of JMG with respect to JMG's cross-claim against Jones and FFI and the cross-claim of Jones against JMG. I deny JMG's motions and grant in part the motion to strike trial of the cross-claims from the jury trial list.

**The Motion for Sanctions**

JMG's motion for sanction essentially repeats a motion that has been denied. *Compare* JMG Excavating & Construction Co., Inc.'s Supplemental Motion for Sanctions ("Current Sanctions Motion") (Docket No. 203) *with* First Motion for Sanctions (Docket No. 183). My ruling on the first motion follows, in its entirety:

This denial is made following a thorough review of the motion papers, including all exhibits (a number of which indicate the manner and extent to which J.A Jones Managements Services, Inc. ("Jones") has now complied with its discovery obligations), and in light of the failure of JMG Excavating & Construction Co., Inc. ("JMG") to diligently demand of Jones on and after October 7, 2004 -- the latest date on which JMG learned through **[*3]** its counsel, Mr. Mandracchia, that the bankruptcy stay respecting Jones had been lifted on February 6, 2004 -- appropriate responses to its outstanding discovery initiatives and to timely pursue its available sanctions remedies. The foregoing notwithstanding, Jones is again admonished for its failure to timely notify this court and all parties to this litigation of the lifting of the bankruptcy stay, as it was ordered to do by order dated December 17, 2003 (Docket No. 38) ("Counsel for J.A. Jones, Inc. [sic] shall promptly notify the court and other parties of any action taken by the bankruptcy court affecting the stay.").

Docket No. 188. The current motion is distinguished from the earlier motion for sanctions primarily by (i) the assertion of Attorney Mandracchia, presented in an affidavit, that he in fact first learned on February 22, 2005, not October 7, 2004, that the bankruptcy stay respecting Jones had been lifted and (ii) the contention that Jones's motion to remove JMG's cross-claim from

the jury trial list, discussed below, is untimely. Current Sanctions Motion at 5-6, 11-12; Affidavit of Charles D. Mandracchia, Esquire (Exh. 2 to Current Sanctions Motion) PP 5-8. Counsel **[*4]** for other parties who participated in the conference call with the court on October 7, 2004, to which my order quoted above refers, recall that the fact that the stay respecting Jones had been lifted was discussed at that time. Declaration of Debra L. Brown, etc. (Exh. 1 to Response of J.A. Jones Management Services, Inc. and Fireman's Fund Insurance Company to JMG Excavating & Constructions Co., Inc.'s Supplemental Motion for Sanctions, etc. (Docket No. 206)) PP 6-7; Declaration of Neal F. Pratt (Exh. 4 to Docket No. 204) PP 3-4. That is my recollection as well. Given my ruling on the jury trial issue as discussed below and the factual dispute regarding the date on which Mr. Mandracchia learned that the bankruptcy stay respecting Jones had been lifted, there is no basis on which to award sanctions. The motion is denied.

**The Motion for an Enlargement of Time**

JMG also seeks an enlargement of time for the filing of dispositive motions. JMG Excavating & Construction Co., Inc.'s Motion for Enlargement of Time with Respect to Dispositive Motions, etc. ("Enlargement Motion") (Docket No. 197). It seeks leave to file a new motion for summary judgment regarding its cross-claims against **[*5]** Jones and FFI and to "supplement" its opposition to the motion of Jones and FFI for summary judgment on JMG's cross-claim for *quantum meruit. Id.* at 2. n1 The latter motion was granted on January 5, 2005. Docket No. 145. JMG's motion for summary judgment on its cross-claims against Jones and FFI was denied at the same time. *Id.* The deadline for filing dispositive motions was July 26, 2004. Docket No. 55. This case is now on a trial list starting June 6, 2005. Docket No. 199. JMG bases this motion on a contention that "newly-discovered evidence derived from Jones' recent discovery responses bears directly on crucial issues relating to those summary judgment motions." Enlargement Motion at 11. This evidence, JMG avers, includes "several letters . . . dated in August, 2002 . . . which were included in the 2500 pages of documents served by Jones by overnight mail on 3/28/05." *Id.* at 12-13.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 JMG's assertion that granting this motion will not delay trial because trial is not scheduled until September 2005, Enlargement Motion at 11, 18, is incorrect in light of Judge Singal's order placing this case on the June 6, 2005 trial list. Docket No. 199.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

**[*6]**

Eight days after filing its motion for an enlargement, JMG filed an "amendment" to the motion, acknowledging that one of the three letters identified in its memorandum of law as having been received by JMG on March 28, 2005 had actually been in its possession since at least June 14, 2004. JMG Excavating & Construction Co., Inc.'s Amendment to Its Motion for Enlargement of Time, etc. ("Amendment") (Docket No. 201) at 1. Jones and FFI demonstrate convincingly in their opposition to the enlargement motion that one of the other letters identified by JMG as having been produced on March 28, 2005 was actually in the possession of JMG at least as early as June 10, 2004. Objections of J.A. Jones Management Services, Inc. and Fireman's Fund Insurance Company to JMG Excavation [sic] and Construction Co., Inc.'s Motion for Enlargement, etc. ("Objection") (Docket No. 205) at 4. Since both of these documents were in JMG's possession before the deadline for filing dispositive motions, n2 neither could possibly provide justification for allowing the filing of a new motion for summary judgment or a "supplement" to JMG's opposition to the motion of Jones and FFI for summary judgment. n3 JMG admits **[*7]** that it received the third letter at issue from the Navy on March 22, 2005, pursuant to a Freedom of Information Act request. Amendment at 2. JMG suggests no reason why the letter would not have been available to it through this means much earlier. Accordingly, it may not base its motion on that letter either. *See Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1524 (10th Cir. 1992).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 JMG filed its motion for summary judgment on July 23, 2004. Docket No. 64.n3 That motion was filed on July 26, 2004, Docket No. 81, and JMG's opposition was filed on August 16, 2004, Docket No. 97.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

JMG also bases its motion on testimony given by Jones's corporate designee at a deposition held on April 12, 2005. Enlargement Motion at 12-14. JMG did file the enlargement motion 16 days after the

deposition was held. Docket No. 197. However, for the reasons set forth in the opposition of Jones and FFI, Opposition at 6-7, none of the testimony cited by JMG as newly discovered evidence constitutes **[*8]** "new" evidence, nor would it have changed the outcome of the two summary judgment motions had it been cited at the time those motions were pending.

The motion to enlarge time is denied.

**Motion to Strike Jury Demand**

Jones and FFI move to strike JMG's jury demand in part. J.A. Jones Management Services, Inc. and Fireman's Fund Insurance Company's Motion to Strike the Jury Demand in Part, etc. ("Jury Motion") (Docket No. 200). The use of the term "motion to strike" is somewhat misleading, although understandable under the circumstances. The motion addresses only the remaining cross-claim asserted by JMG against Jones and FFI and the cross-claim asserted by Jones against JMG. *Id.* at 2. The parties agree that JMG did not demand a jury trial on these cross-claims either when they were first filed, Answer and Cross-Claims of Defendant JMG Excavating & Construction Co., Inc. ("First JMG Answer") (Docket No. 11), or when an amended set of cross-claims was filed, Amended Answer and Amended Cross-Claims of Defendant JMG Excavating & Construction Co., Inc. to Plaintiff's First Amended Complaint ("JMGCross-Claim") (Docket No. 24). Jones asserts that it did not demand a jury trial on **[*9]** its cross-claim. Jury Motion at 3. Apparently, JMG did not demand a jury trial in its answer to Jones's cross-claim. The cross-claims have nonetheless been listed for jury trial along with the original plaintiff's remaining claims. Strictly speaking, neither Jones nor JMG demanded a jury trial. They did not comply with Fed. R. Civ. P 38(b). Subsection (d) of that rule provides that [HN1]"the failure of a party to serve and file a demand as required by this rule constitutes a waiver by the party of trial by jury." Fed. R. Civ. P. 38(d).

Jones and FFI do not rely on Rule 38, however. They claim instead that JMG waived its right to a jury trial on the cross-claims by virtue of language in a subcontract containing a jury waiver provision. Jury Motion at 2. They do not refer separately to Jones's cross-claim. The cross-claims at issue assert a claim against Jones and FFI for violation of the Miller Act, 40 U.S.C § 3133, JMG Cross-Claim PP 5-11; and a claim against JMG for return of an alleged overpayment on the subcontract, Answer of J.A. Jones Management Services, Inc. and Fireman's Fund **[*10]** Insurance Company to Amended Cross-Claim of JMG Excavating & Construction Co., Inc. and Cross-Claim of J.A. Jones Management Services, Inc. Against JMG Excavating & Construction Co., Inc. (Docket No. 29), Cross-Claim PP 1-8. The parties also agree that the following language from the subcontract is at issue here:

> Any suit, action or proceeding permitted under this Subcontract and initiated by one of the parties hereto against the other on any matters whatsoever arising out of or in connection with this Subcontract shall be filed and maintained in state or federal court nearest the Project site, or, at the initiating party's option, in state or federal court nearest the responding party's principal offices. . . . It is further agreed that each party shall, and hereby does waive trial by jury in any such suit, action or proceeding.

J. A. Jones Management Services, Inc. Subcontract No. 185-562-00 (Exh. 1 to Response of JMG Excavating & Construction Co., Inc. to J.A. Jones Management Services, Inc. and Fireman's Fund Insurance Company's Motion to Strike the Jury Demand in Part, etc. ("Jury Motion Opposition") (Docket No. 207); Exh A. to First JMG Answer) P 27(g). JMG points **[*11]** out that FFI is not a party to the subcontract and contends that its cross-claim against FFI is therefore not subject to this provision. Jury Motion Opposition at 5. Jones and FFI anticipated this argument and suggest in a footnote that FFI "has the power to enforce the waiver provision against JMG" because, as Jones's surety, it "steps into the shoes of Jones and assumes its defenses." Jury Motion at 8 n.3. While it is true, as Jones and FFI point out, *id.*, that the subcontract also provides the it is binding upon and inures to the benefit of heirs, successors and assigns of the signatories, there is no evidence in the record before the court that FFI, as Jones's surety, was Jones' heir, successor or assign under the subcontract. The only case cited as authority by FFI and Jones, *American Fire & Cas. Co. v. First Nat'l City Bank of New York*, 411 F.2d 755 (1st Cir. 1969), holds that the surety engaged by a subcontractor to guarantee completion of its work to the general contractor through performance and payment bonds succeeds to the rights of the general contractor, not those of the subcontractor, upon the default of the subcontractor. *Id.* at 756-58. **[*12]** Under the logic of *American Fire*, FFI would succeed to the rights of JMG, not those of Jones, for which it issued the bond. I can only conclude that JMG's claim against FFI is not subject to the waiver established by the subcontract to which it is not a party. FFI and Jones make no other argument in support of their motion, so it must be denied as to FFI.

JMG argues that the motion should be denied because it was filed on the eve of trial. Jury Motion Opposition

at 4 n.1. Jones contends that the motion is nonetheless timely. Jury Motion at 4-5. An "eve-of-trial" argument opposing a motion to strike a jury demand was rejected by this court in *South Port Marine LLC v. Gulf Oil Ltd. Pshp.*, 56 F.Supp. 2d 104, 107 (D. Me. 1999), but that case involved construction of [HN2]Fed. R. Civ. P. 39(a), a rule which applies by its terms only "when trial by jury has been demanded as provided in Rule 38," Fed. R. Civ. P. 39(a). No such demand was made by JMG or Jones in this case. JMG asserts that it is nonetheless entitled to a jury trial on its Miller Act claim against Jones and FFI "in reliance on the jury demand made **[*13]** by plaintiff Doten's." Jury Motion Opposition at 7 n.5. The operative complaint did include a claim by plaintiff Doten's Construction under the Miller Act against JMG, Jones, FFI and another defendant. First Amended Complaint, etc. (Docket No. 15) PP 13-15. However, the unreported case cited by JMG makes clear that [HN3]"after one party has demanded a jury, a second party is not required to make a second jury demand if the first demand covered the second party's jury issues." *Monaghan v. SZS 33 Assocs.,L.P.*., 1994 U.S. Dist. LEXIS 18236, 1994 WL 714436 (S.D.N.Y. Dec. 21, 1994), at *2 (citing *Rosen v. Dick*, 639 F.2d 82, 91-92 (2d Cir. 1980). The question whether Doten's Construction is entitled to recover against JMG, Jones and FFI under the Miller Act is not the same as the question whether JMG is entitled to recover against FFI and Jones under the Miller Act; Doten's Construction is not a party to the claims at issue here. *See Sound Video Unlimited, Inc. v. Video Shack, Inc.*, 700 F. Supp. 127, 145 (S.D.N.Y. 1988). JMG may not rely on the jury demand made by Doten's Construction. *Rosen*, 639 F.2d at 91-96; *see In re N-500L Cases*, 691 F.2d 15, 22-25 (1st Cir. 1982). **[*14]** *See also* 9 *C.* Wrigh t & *A. Miller, Federal Practice & Procedure* § 2318 (2d ed. 1995) at 139.

All of the case law cited by Jones and FFI to support their assertion that their motion is timely, Jury Motion at 4-5, relies on Rule 39(a), which does not apply to the factual situation presented by the current action. Neither side provides any assistance to the court on the question of timeliness outside the terms of Rule 39. My own research has located only one case on point, the reasoning of which I find persuasive. The motion to strike is not untimely, having been brought before the trial date. *Luis Acosta, Inc. v. Citibank, N.A.*, 920 F. Supp. 15, 17 (D.P.R. 1996).

JMG next contends that it did not enter into the waiver term at issue knowingly and voluntarily, a test which both sides agree is applicable here. Jury Motion at 5; Jury Motion Opposition at 7. *See Medical Air Tech. Corp. v. Marwan Inv., Inc.*, 303 F.3d 11, 19 (1st Cir. 2002). [HN4]To determine whether a jury trial waiver is knowing and voluntary, the First Circuit has looked to the totality of the circumstances, including

the waiving party's education and business experience, the **[*15]** respective roles of the parties in determining the terms of the waiver, the clarity of the agreement, the amount of time the waiving party had to consider the waiver, whether the waiving party was represented by counsel, and the consideration offered for the waiver.

*Id.* n4. Relying instead on the District of Puerto Rico decision in *Luis A cost a, Inc.*, JMG contends that its waiver was not knowing and intentional because the waiver was not set forth in bold and conspicuous lettering, but was buried deep in the subcontract and because the bargaining power of JMG and Jones was "grossly unequal." Jury Motion Opposition at 7. The evidence does not support either assertion. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 JMG asserts that "the party seeking to enforce a jury waiver bears the burden of proving that the waiver is enforceable." Jury Motion Opposition at 7 n.6. In fact, the circuit courts have split on the issue of which party bears the burden of proof as to whether a jury trial waiver was knowing and voluntary," *O'Brien & Gere Tech. Servs., Inc. v. Fru-Con/Fluor Daniel Joint Venture*, 2000 U.S.Dist. LEXIS 22679 (E.D. Mo. Dec. 5, 2000), at *4. The First Circuit apparently has not spoken on this issue. In any event, I would reach the same conclusion regardless of where the burden of proof lies.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

**[*16]**

[HN5]A jury waiver need not be made in "bold and conspicuous lettering" and isolated in order to be enforceable. *See, e.g., Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 833 (4th Cir. 1986) (waiver in the ninetieth line of print and in middle of a thirty-eight line paragraph enforceable); *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988) (waiver provision in normal print size of contract *upheld); In re Reggie Packing Co.*, 671 F. Supp. 571, 574 (N.D. Ill. 1987) (waiver set forth in same type of print as every other clause in contract enforceable). Here, the waiver provision is in the same size print as is the rest of the subcontract. The conclusion that this factor does not work in JMG's favor in this case is bolstered by the fact that JMG had previously been a party to a similar agreement with Jones. Deposition of

JMG Excavating & Construction Co., Inc. (Attachment 1 to Jury Motion) at 23-24, 55. *See* N. Feldman & Son, Ltd. v. Checker Motors Corp., 572 F. Supp. 310, 313 (S.D.N.Y. 1983) [HN6](evidence that party seeking to avoid waiver provision had previously been party to similar agreement with other **[*17]** party significant). JMG contends that its bargaining position was far less than that of Jones because it had to contract with Jones if it wanted to work on the Brunswick project that was the subject of the subcontract at issue. Jury Motion Opposition at 10-11. [HN7]Most subcontractors could make the same statement about their work for general contractors; if they wanted to work on the project for which the general contractor was the general, they had to enter into subcontracts with the general contractor. Other factors must be present to render the contracting parties' relative positions so unequal that the jury waiver term will not be enforced. When the party seeking to avoid a contractual waiver is not a neophyte in the business at issue, it is not likely to be so inexperienced and unsophisticated that sufficient disparity in negotiating positions to nullify a jury waiver provision will be assumed. *Morgan Guar. Trust Co. v. Crane*, 36 F.Supp.2d 602, 604 (S.D.N.Y. 1999). n5 Jones has presented unrebutted evidence that JMG is a sophisticated and experienced contractor. Jury Motion at 6-7. *See* *O'Brien & Gere*, 2000 U.S.Dist.LEXIS 22679 at *4 (significant that **[*18]** party seeking to avoid waiver clause had been in construction industry for many years and had negotiated many contracts).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 JMG also relies on the assertion that "FFI[] and Jones point to no evidence in the record that shows that there was any negotiation on the terms that are contained in the form contract." Jury Motion Opposition at 11. However, the relevant evidence would address the question whether any of the terms of the subcontract were not negotiable, *Crane*, 36 F.Supp.2d at 604). Clearly, JMG could have offered evidence on that point; it chose not to do so.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

On the showing made, I conclude that JMG knowingly and intentionally waived jury trial on claims arising out of and related to the subcontract. In the absence of any argument concerning Jones' cross-claim against JMG, I conclude that the same reasoning applies and that jury trial on that claim has been waived as well.

**One Trial**

Jones and FFI contend that this case should be tried in a single proceeding rather than trying **[*19]** the jury and jury-waived claims separately. JMG does not respond to this request. While I expect that the trial judge will agree with Jones and FFI's contention, this is a procedural issue that would best be addressed by him. I make no ruling on this request.

**Conclusion**

For the foregoing reasons, (i) JMG's motions for enlargement of time and for sanctions are **DENIED** and (ii) the motion to strike filed by Jones and FFI is **GRANTED** as to cross-claims involving Jones and JMG and **DENIED** as to JMG's cross-claims against FFI.

Dated this 24th day of May, 2005.

David M. Cohen

United States Magistrate Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLUE HILLS OFFICE PARK LLC,<br><br>Plaintiff,<br><br>v.<br><br>CSFB 1999–C1 ROYALL STREET, LLC; and CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.,<br><br>Defendants. | Civil Action No. 05-CV-10506 (WGY) |

**MEMORANDUM OF DEFENDANTS CSFB 1999–C1 ROYALL STREET, LLC AND CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP. IN SUPPORT OF THEIR MOTION TO STRIKE PLAINTIFF'S REQUEST FOR A JURY TRIAL**

Plaintiff Blue Hills Office Park, LLC's ("Blue Hills") request for a jury trial on all issues so triable, set forth in Blue Hills' First Amended Complaint at page 21, should be stricken. Blue Hills knowingly and voluntarily waived its right to a jury trial of any of the claims that are or may be asserted in this matter. As such, Blue Hills is not entitled to a jury trial and its request for a jury trial should be stricken.

Section 53 of the Mortgage, Assignment of Leases and Rents, and Security Agreement (the "Mortgage") (attached to plaintiff's First Amended Complaint as Exhibit "C"), executed by Blue Hills as Mortgagor on September 14, 1999, states as follows:

> **Waiver of Jury Trial. EACH OF MORTGAGOR AND MORTGAGEE HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE NOTE, THIS MORTGAGE, OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY**

**EACH OF MORTGAGOR AND MORTGAGEE, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF MORTGAGOR AND MORTGAGEE IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY MORTGAGOR.**

Mortgage § 53 (emphasis in original). All of the claims set forth in the First Amended Complaint arise in connection with the Loan Documents; as such, Blue Hills' request for a jury trial should be stricken.

## ARGUMENT

### I. BLUE HILLS' EXPRESS WAIVER OF ITS RIGHT TO A JURY TRIAL IN THIS ACTION IS VALID AND ENFORCEABLE AS LONG AS IT WAS KNOWING AND VOLUNTARY.

Blue Hills expressly waived its right to a jury trial of any issue or claim arising from the "Loan Documents," a defined term which includes the Mortgage, the Note (attached to the First Amended Complaint as Exhibit "D"), the Cash Management Agreement (attached to the First Amended Complaint as Exhibit "E"), and "any and all other documents securing, evidencing, or guaranteeing all or any portion" of the loan to Blue Hills. See Mortgage § 53; Note ¶ 1(r). Blue Hills' claims in this action undoubtedly arise from the Loan Documents; Blue Hills alleges that "defendants...breached their contractual obligations under the Mortgage Agreement, Note and the Cash Management Agreement," and that "defendants...breached the covenant of good faith and fair dealing under the Mortgage Agreement, Cash Management Agreement and Note." See First Amended Complaint at ¶¶ 90, 96.[1]

[1] It is irrelevant whether Blue Hills' c. 93A claim arises from the Loan Documents; Blue Hills has no right to a jury trial based on its c. 93A claim. Veranda Beach Club Ltd. Partnership v. Western Sur. Co., 936 F.2d 1364, 1386 (1st Cir. 1991); Nei v. Burley, 388 Mass. 307, 315 (1983).

Under federal law, which governs the validity and enforceability of Blue Hills' contractual jury waiver, see, e.g., Simler v. Conner, 372 U.S. 221, 222 (per curiam) (1963), the waiver should be enforced as long as it was entered into knowingly and voluntarily. See Medical Air Tech. Corp. v. Marwan, 303 F.3d 11, 18-20 (1st Cir. 2002); see also Smyly v. Hyundai Motor America, 762 F. Supp. 428, 429 (D. Mass. 1991) (allowing motion to strike jury demand where contractual jury waiver was knowing and voluntary). In Medical Air Tech., the First Circuit discussed the standard used to determine whether a contractual jury waiver was "knowing and voluntary," stating:

> In analogous situations we have looked to the totality of the circumstances, including factors such as the waiving party's education and business experience, the respective roles of the parties in determining the terms of the waiver, the clarity of the agreement, the amount of time the waiving party had to consider the waiver, whether the waiving party was represented by counsel, and the consideration offered for the waiver, to determine if the waiver was knowing and voluntary.

Id. at n.4 (citations and quotations omitted).

In United States ex rel. Doten's Construction v. JMG Excavating and Construction, the United States District Court for the District of Maine applied the Medical Air Tech. criteria in a decision enforcing a contractual jury waiver entered into by the defendant construction company. See 2005 U.S. Dist. LEXIS 9933, Docket No. 03-134-P-S (mem.) (D. Me. May 24, 2005) ("Doten," copy attached hereto as Tab A). The defendant in Doten argued that its jury waiver was not knowing and intentional because "the waiver was not set forth in bold and conspicuous lettering," and because there was a disparity in bargaining power between the parties to the contract containing the waiver. Id. at *14-15. The court, however, rejected the defendant's

arguments, stating that "[a] jury waiver need not be made in 'bold and conspicuous lettering' and isolated in order to be enforceable."

> [Defendant] contends that its bargaining position was far less than that of Jones because it had to contract with Jones if it wanted to work on the Brunswick project that was the subject of the subcontract at issue . . . . [However], other factors must be present to render the contracting parties' relative positions so unequal that the jury waiver term will not be enforced. When the party seeking to avoid a contractual waiver is not a neophyte in the business at issue, it is not likely to be so inexperienced and unsophisticated that sufficient disparity in negotiating positions to nullify a jury waiver provision will be assumed.

Id. at *16-18 (citations omitted).

## II. BLUE HILLS' CONTRACTUAL JURY WAIVER WAS KNOWING AND VOLUNTARY.

Blue Hills' contractual jury waiver is valid and enforceable under the standard set forth in Medical Air Tech. and applied in Doten. First, there is no dispute that the parties to the Mortgage are sophisticated. This was a $33 million dollar commercial loan transaction. As the borrower, Blue Hills carefully reviewed and negotiated the terms of the Mortgage, through counsel. See, e.g. Letter of August 31, 1999 (attached to First Amended Complaint as Exhibit "B"). This more than satisfies the standard. While the Medical Air Tech. court did not rule on the waiver provision before it, the court drew upon its decision in Melanson v. Browning-Ferris Indus., 281 F.3d 272 (1st Cir. 2002), an employment case involving waiver of Title VII rights, when enumerating the requirements of enforceable jury waiver provisions. The Melanson court found that a single mother with a high school education was sufficiently educated to surrender knowingly her right to sue. Id. at 277.

Second, both parties to the Mortgage had a significant role in determining the language of the Mortgage. Unlike the Melanson contract to which the Medical Air Tech. court analogizes,

the Mortgage was created after negotiation by both parties through their attorneys. This satisfies the analysis of the other case upon which the Medical Air Tech. court draws for its criteria, Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173 (1st Cir. 1995), where the court viewed the parties' negotiation of specific terms as indicative of the employee's significant role in the formation of the terms of her employment and of the employee's sophistication.

Third, the waiver is clear. The waiver states in part:

> **EACH OF MORTGAGOR AND MORTGAGEE HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE NOTE, THIS MORTGAGE, OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.**

Mortgage § 53 (emphasis in original). The waiver is also quite conspicuous: it is the only provision of the Mortgage printed entirely in bold and in all capital letters. See Mortgage. It is also listed separately in the table of contents as "Waiver of Jury Trial." See Mortgage at page ii. The waiver is thus even more conspicuous than the courts have required. See, e.g., Doten, 2005 U.S. Dist. LEXIS 9933 at *15 (jury waiver need not be made in bold and conspicuous lettering and isolated in order to be enforceable).

Fourth, Blue Hills had significant time to consider the waiver. The Mortgage Financing Application of July 20, 1999 (the "Application," attached to the First Amended Complaint as Exhibit "A") shows that approximately two months passed between Blue Hills' "good faith deposit", Application at 1, and the execution of the Mortgage on September 14, 1999. This mirrors the scenario in Melanson. That court found that two months was sufficient time for a single mother with a high school education to consider without counsel the waiver provision of a

severance package. Melanson, 281 F.3d at 278; see also id. at 277 n.5 (noting that employee's testimony that she did not have sufficient time to consider the waiver did not undercut her assertion at deposition that she had read the relevant provision).

Fifth, both parties were represented by attorneys in connection with the negotiation of the Mortgage. Documents attached to Blue Hills' First Amended Complaint demonstrate that Blue Hills, through its counsel, negotiated the content of the Mortgage for at least one month. See Mortgage; Letter of August 31, 1999 (attached to Blue Hills' First Amended Complaint as Exhibit "B"). Blue Hills was certainly better represented than the employee in Melanson, who did not retain a lawyer before signing the relevant agreement, and against whom the court nevertheless enforced a waiver. Melanson, 281 F.3d at 278.

Finally, the consideration offered in exchange for the waiver was fair. Both parties to the Mortgage waived their jury rights, and Blue Hills benefited considerably from this mutual waiver; it obtained a loan for $33,149,000.00.

In sum, Blue Hills knowingly and voluntarily waived its right to demand a jury in connection with this matter; thus, its request for a jury trial should be stricken from the First Amended Complaint.

**CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that the Court strike Blue Hills' request for jury trial from the First Amended Complaint.

Respectfully submitted,

CSFB 1999-C1 ROYALL STREET, LLC
and CREDIT SUISSE FIRST BOSTON
MORTGAGE SECURITIES CORP.,

By their attorneys,

/s/ Traci S. Feit
E. Randolph Tucker, BBO #503845
Bruce S. Barnett, BBO #647666
Traci S. Feit, BBO #660688
DLA PIPER RUDNICK GRAY CARY US LLP
One International Place
Boston, MA 02110
(617) 406-6000

June 6, 2005