UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BLUE HILLS OFFICE PARK LLC,

     Plaintiff, Defendant-in-Counterclaim.

     v.

CREDIT SUISSE FIRST BOSTON MORTGAGE
SECURITIES CORP.,
     Defendant,

     and

CSFB 1999 – C1 ROYALL STREET, LLC;
     Defendant, Plaintiff-in-Counterclaim,

     v.

WILLIAM LANGELIER and GERALD
FINEBERG,

     Defendants-in-Counterclaim.

Civil Action No. 05-CV-10506 (WJY)

## ANSWER AND COUNTERCLAIM OF CSFB 1991-C1 ROYALL STREET, LLC

Defendant CSFB 1991-C1 Royall Street, LLC ("Lender") answers the First Amended

Complaint of Blue Hills Office Park LLC ("Blue Hills") as follows:

Introduction. The introduction to the First Amended Complaint contains no allegations

of fact to which a response is required. To the extent a response is required, Lender denies the

allegations of the introduction.

1.     Lender is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in ¶ 1 of the First Amended Complaint.

2.     Lender admits (a) Credit Suisse First Boston Mortgage Securities Corp. is a

Delaware corporation with a principal place of business in New York, New York; and (b) in or

after November 1999, Credit Suisse First Boston Mortgage Securities Corp. purchased all of

Credit Suisse First Boston Mortgage Capital's rights, title and interest in the Blue Hills mortgage

loan evidenced and secured by the Mortgage Loan Documents. Lender denies the remaining

allegations set forth in ¶ 2 of the First Amended Complaint.

3.      Lender admits that it is a Delaware limited liability company with an address at

1601 Washington Avenue, Suite 700, Miami Beach, Florida, 33139. Lender denies the

remaining allegations set forth in ¶ 3.

4.      Paragraph 4 comprises legal contentions to which no response is required.

5.      Lender is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in ¶ 5 of the First Amended Complaint.

6.      Denied. Further answering, the mortgaged property includes a two-story brick

building of approximately 275,000 square feet, among other things.

7.      Lender is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in ¶ 7 of the First Amended Complaint.

8.      Lender is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in ¶ 8 of the First Amended Complaint.

9.      Lender is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in ¶ 9 of the First Amended Complaint.

10.      Lender admits that the Mortgage Loan Documents establish a lock box

arrangement. Further answering, ¶ 10 contains a partial and selective characterization of certain

provisions of the Mortgage Loan Documents, which are attached to the First Amended

Complaint and must speak for themselves, in their entirety. Lender otherwise denies the

allegations of ¶ 10.

11.    Lender admits that the Mortgage Loan Documents allow Blue Hills to access certain reserve deposits if certain conditions are met.  Further answering, ¶ 11 contains a partial and selective characterization of certain provisions of the Mortgage Loan Documents, which are attached to the First Amended Complaint and must speak for themselves, in their entirety. Lender otherwise denies the allegations of ¶ 11.

12.    Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in ¶ 12 of the First Amended Complaint.

13.    Lender admits that the Mortgage Loan Documents prohibit Blue Hills from incurring certain kinds of debt.  Further answering, ¶ 13 contains a partial and selective characterization of certain provisions of the Mortgage Loan Documents, which are attached to the First Amended Complaint and must speak for themselves, in their entirety.  Lender otherwise denies the allegations of ¶ 13.

14.    Denied.

15.    Admitted.

16.    Denied.

17.    Admitted.

18.    Admitted.

19.    Paragraph 19 contains a partial and selective characterization of certain provisions of the Mortgage Loan Documents, which are attached to the First Amended Complaint and must speak for themselves, in their entirety.

20.    Paragraph 20 contains a partial and selective characterization of certain provisions of the Mortgage Loan Documents, which are attached to the First Amended Complaint and must speak for themselves, in their entirety.

- 3 -

21.    Paragraph 21 contains a partial and selective characterization of certain provisions of the Mortgage Loan Documents, which are attached to the First Amended Complaint and must speak for themselves, in their entirety.

22.    Paragraph 22 contains a partial and selective characterization of certain provisions of the Mortgage Loan Documents, which are attached to the First Amended Complaint and must speak for themselves, in their entirety.

23.    Paragraph 23 contains a partial and selective characterization of certain provisions of the Mortgage Loan Documents, which are attached to the First Amended Complaint and must speak for themselves, in their entirety.  Lender otherwise denies the allegations set forth in ¶ 23 of the First Amended Complaint.

24.    Paragraph 24 contains a partial and selective characterization of certain provisions of the Mortgage Loan Documents, which are attached to the First Amended Complaint and must speak for themselves, in their entirety.  Lender otherwise denies the allegations of ¶ 24.

25.    Lender admits that in or about November 1999, Wells Fargo became the Servicer of the loan evidenced and secured by the Mortgage Loan Documents.

26.    Lender admits that, pursuant to an agreement with other parties (not including plaintiff), Wells Fargo agreed to administer and service certain loans, including the Blue Hills loan, in accordance with applicable law, the terms of the loans' documents, and, to the extent not inconsistent with the foregoing, that other agreement and whichever standard of care is higher between the manner in which Wells Fargo would administer loans owned by other third parties and the manner it administers loans owned by itself.  Lender otherwise denies the allegations of ¶ 26.  Answering further, Lender states that these obligations were not owed to or enforceable by plaintiff.

- 4 -

27.    Lender admits that, as Servicer, Wells Fargo was the agent of the then-lender for the purposes set forth in a servicing agreement.  Lender otherwise denies the allegations of ¶ 27.

28.    Lender admits that, as Servicer, Wells Fargo was the agent of the then-lender for the purposes set forth in a servicing agreement.  Lender otherwise denies the allegations of ¶ 28.

29.    Paragraph 29 contains a partial and selective quotation of certain provisions of the Mortgage Loan Documents, which are attached to the First Amended Complaint and must speak for themselves, in their entirety.  Lender otherwise denies the allegations of ¶ 29 of the First Amended Complaint.

30.    Paragraph 30 contains a partial and selective quotation of certain provisions of the Mortgage Loan Documents, which are attached to the First Amended Complaint and must speak for themselves, in their entirety.  Lender otherwise denies the allegations of ¶ 30 of the First Amended Complaint.

31.    Paragraph 31 contains a partial and selective characterization of certain provisions of the Mortgage Loan Documents, which are attached to the First Amended Complaint and must speak for themselves, in their entirety.  Lender otherwise denies the allegations set forth in ¶ 31 of the First Amended Complaint.

32.    Paragraph 32 contains a partial and selective characterization of certain provisions of the Mortgage Loan Documents, which are attached to the First Amended Complaint and must speak for themselves, in their entirety.  Lender otherwise denies the allegations set forth in ¶ 32 of the First Amended Complaint.

33.    Denied.

34.    Denied.

~BOST1:321991.v12
306477-18

35.     Paragraph 35 contains a partial and selective quotation of certain provisions of the Mortgage Loan Documents, which are attached to the First Amended Complaint and must speak for themselves, in their entirety.  Lender otherwise denies the allegations of ¶ 35.

36.     Paragraph 36 contains a partial and selective quotation of certain provisions of the Mortgage Loan Documents, which are attached to the First Amended Complaint and must speak for themselves, in their entirety.  Lender otherwise denies the allegations of ¶ 36.

37.     Lender admits that as of August 2, 2004, there were approximately $4 million in reserve accounts for the Blue Hills loan.  Lender otherwise denies the allegations of ¶ 37.

38.     Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the first sentence of ¶ 38.  Lender denies the allegations set forth in the second sentence of ¶ 38.

39.     Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in ¶ 39.

40.     Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in ¶ 40.

41.     Denied.

42.     Denied.

43.     Denied.

44.     Denied.

45.     Denied.

46.     Denied.

47.     Denied.

- 6 -

48.    Lender admits that Wells Fargo sent to Blue Hills the tax insufficiency letter attached to the First Amended Complaint at Exhibit F. Lender states that Exhibit F speaks for itself and otherwise denies the allegations of ¶ 48.

49.    Lender states that Exhibit F speaks for itself.

50.    Lender admits that Exhibit F was sent fewer than 30 days prior to the due date for the real estate tax payment due on August 2, 2004. Further answering, Lender states that Blue Hills knew before July 16, 2004, that a tax payment was due in August and that it had no money in its tax escrow fund to pay it.

51.    To the extent the allegations of ¶ 51 purport to characterize Exhibit F, Lender states that Exhibit F speaks for itself. Lender otherwise denies the allegations of ¶ 51.

52.    Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in ¶ 52.

53.    Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in ¶ 53.

54.    Lender admits that Blue Hills sent Wells Fargo the letter attached as Exhibit G and states that Exhibit G speaks for itself. Answering further, Wells Fargo did not receive Exhibit G until after August 2, 2004.

55.    Lender admits that Blue Hills sent Wells Fargo the letter attached as Exhibit H and states that Exhibit H speaks for itself.

56.    Lender admits that Wells Fargo did not make the distributions requested in Exhibit G. Lender otherwise denies the allegations set forth in ¶ 56.

57.    Lender admits that Blue Hills sent Wells Fargo the letter attached as Exhibit I and states that Exhibit I speaks for itself. Answering further, Wells Fargo did not receive Exhibit I until after September 2, 2004.

- 7 -

58.    Lender admits that Wells Fargo did not make the distributions requested in Exhibit I.  Lender denies the remaining allegations set forth in ¶ 58.

59.    Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in ¶ 59.

60.    Denied.

61.    Lender admits that LNR Partners, Inc., formerly known as Lennar Partners Inc. ("LNR Partners"), was the Special Servicer for the Blue Hills loan.

62.    Lender admits that, as Special Servicer, LNR Partners was the agent of the then-lender for the purposes set forth in a servicing agreement.  Lender otherwise denies the allegations set forth in ¶ 62.

63.    Lender admits that, pursuant to an agreement with other parties (not including plaintiff), LNR Partners agreed to administer and service certain loans, including the Blue Hills loan, in accordance with applicable law, the terms of the loans' documents, and, to the extent not inconsistent with the foregoing, that other agreement and whichever standard of care is higher between the manner in which LNR Partners would administer loans owned by other third parties and the manner it administers loans owned by itself.  Lender otherwise denies the allegations of the ¶ 63.  Answering further, Lender states that these obligations were not owed to or enforceable by plaintiff.

64.    Lender admits (a) the servicing of the Blue Hills loan was transferred from Wells Fargo to LNR Partners on or about August 17, 2004; and (b) LNR Partners sent to Blue Hills the letter attached as Exhibit J.  Lender states that Exhibit J speaks for itself.

65.    To the extent the allegations of ¶ 65 purport to characterize Exhibit J, Lender states that Exhibit J speaks for itself.  Lender otherwise denies the allegations set forth in ¶ 65.

- 8 -

66.     Lender admits LNR Partners sent to Blue Hills the letter attached as Exhibit K. Further answering, ¶ 66 contains a partial and selective characterization of Exhibit K, which must speak for itself in its entirety.

67.     Paragraph 67 contains a partial and selective characterization of Exhibit K, which must speak for itself in its entirety.

68.     Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in ¶ 68.

69.     Lender is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in ¶ 69. The First Amended Complaint's characterization of Blue Hills' alleged expectation as "reasonable" is a legal contention to which no response is required. To the extent a response is required, Lender denies that any such alleged expectation was reasonable.

70.     Lender admits (a) LNR Partners and Blue Hills did not have an in-person meeting to discuss the Blue Hills loan; and (b) neither Wells Fargo nor LNR Partners released funds from loan reserves to pay principal and interest due on the Note in August and September, 2004. Lender otherwise denies the allegations of ¶ 70.

71.     Lender admits that (a) LNR Partners commissioned an appraisal report and an environmental inspection of the Property and (b) the contractors conducting the appraisal and the inspection required access to the property to do their respective work. Lender otherwise denies the allegation of ¶ 71.

72.     Lender admits (a) the appraisal and environmental inspection were begun in September 2004; and (b) Blue Hills did not deny access to the property to the contractors who performed the appraisal and the inspection. Lender otherwise denies the allegation of ¶ 72.

- 9 -

73.     Lender admits LNR Partners sent to Blue Hills the letter attached as Exhibit L. Further answering, paragraph 73 contains a partial and selective characterization of Exhibit L, which must speak for itself in its entirety.

74.     Lender admits that the loan was accelerated and the entire debt from Blue Hills to the lender became immediately due and payable in September 2004 and that Blue Hills did not pay it.  Answering further, ¶ 74 contains a partial and selective characterization of Exhibit L, which must speak for itself in its entirety.

75.     Denied.

76.     Paragraph 76 contains a partial and selective characterization of Exhibit L, which must speak for itself in its entirety.

77.     Admitted.

78.     Lender admits that the amount of funds in the loan reserves was greater than the principal and interest payments on the Note due in August and September 2004.  Lender otherwise denies the allegations of ¶ 78 of the First Amended Complaint.

79.     Denied.

80.     Denied.

81.     Lender admits that, under the Mortgage Loan Documents, the next date after August 2, 2004, on which Blue Hills was required to deposit real estate tax escrow money was August 11, 2004.  Answering further, Lender states under the Mortgage Loan Documents, Blue Hill was required (a) to pay to the Town of Canton the real estate taxes due on August 2, 2004 and (b) to make a real estate tax deposit on May 11, 2004, but it did neither.

82.     Lender admits that, as of September 17, 2004, LNR Partners (a) knew that Blue Hills had once suggested a meeting concerning the property and (b) had received Exhibits G & I. To the extent ¶ 82 purports to characterize Exhibit L, Lender states that Exhibit L must speak for

- 10 -

itself.  Lender otherwise denies the allegations of ¶ 82.  Further answering, Lender states that,

after Blue Hills was in default, LNR Partners informed Blue Hills that it was willing to meet with

Blue Hills to discuss a workout plan for the property if Blue Hills would bring the loan current

for all amounts due other than principal and interest.  Blue Hills refused to do so.

83.    Lender admits that it sent to Blue Hills the foreclosure notice attached to the First

Amended Complaint as Exhibit M, which must speak for itself.  Lender otherwise the allegations

of ¶ 83.

84.    Denied.

85.    Denied.

86.    Denied.

87.    Denied.

## BLUE HILLS' CLAIMS

### Count I
(Breach of Contract)

88.    Lenders restates and incorporates herein by reference the responses set forth in

paragraphs 1 through 87.

89.    Lender admits that the Mortgage Agreement, Cash Management Agreement and

Note constitute valid and binding contracts between Blue Hills and the then-holder of the

lender's interest in the loan.  Lender otherwise denies the allegations of ¶ 89.

90.    Denied.

91.    Denied.

92.    Denied.

93.    Denied.

- 11 -

**Count II**
(Breach of Covenant of Good Faith and Fair Dealing)

94.    Lenders restates and incorporates herein by reference the responses set forth in paragraphs 1 through 93.

95.    Lender admits that the Mortgage Agreement, Cash Management Agreement and Note constitute valid and binding contracts between Blue Hills and the then-holder of the lender's interest in the loan. The remaining allegations of ¶ 95 state legal contentions to which no response is required and are otherwise denied.

96.    Denied.

97.    Denied.

98.    Denied.

99.    Denied.

**Count III**
(Violations of M.G.L. c. 93A)

100.    Lenders restates and incorporates herein by reference the responses set forth in paragraphs 1 through 99.

101.    Denied.

102.    Denied.

103.    Denied.

<u>FIRST AFFIRMATIVE DEFENSE</u>

For its First Affirmative Defense, Lender states that the First Amended Complaint fails to state a claim upon which this Court may grant relief.

~BOST1:321991.v12
306477-18

## SECOND AFFIRMATIVE DEFENSE

For its Second Affirmative Defense, Lender states that Blue Hills is estopped from bringing the claims set forth in the First Amended Complaint.

## THIRD AFFIRMATIVE DEFENSE

For its Third Affirmative Defense, Lender states that Blue Hills has waived the claims set forth in the First Amended Complaint.

## FOURTH AFFIRMATIVE DEFENSE

For its Fourth Affirmative Defense, Lender states that the claims set forth in the First Amended Complaint are barred by the applicable period of limitations and by the doctrine of laches.

## FIFTH AFFIRMATIVE DEFENSE

For its Fifth Affirmative Defense, Lender states that Blue Hills has released and discharged the claims set forth in the First Amended Complaint.

## SIXTH AFFIRMATIVE DEFENSE

For its Sixth Affirmative Defense, Lender states that the Mortgage Loan Documents do not permit Blue Hills to use the loan reserves for the purposes and in the manner requested by Blue Hills and set forth in the First Amended Complaint.

## SEVENTH AFFIRMATIVE DEFENSE

For its Seventh Affirmative Defense, Lender states that Blue Hills did not meet the preconditions to a loan reserve disbursement for payment of principal and interest, building improvements, or marketing expenses that are set forth in the Mortgage Loan Documents.

## EIGHTH AFFIRMATIVE DEFENSE

For its Eighth Affirmative Defense, Lender states that Blue Hills has not alleged that it suffered any damages in connection with Counts I and III of the First Amended Complaint.

- 13 -

## NINTH AFFIRMATIVE DEFENSE

For its Ninth Affirmative Defense, Lender states that any damages plaintiff suffered were caused by plaintiff or acts of third parties and not by Lender.

## TENTH AFFIRMATIVE DEFENSE

For its Tenth Affirmative Defense, Lender states that plaintiff has no standing to assert claims under agreements to which it is not a party.

## ELEVENTH AFFIRMATIVE DEFENSE

For its Eleventh Affirmative Defense, Lender states that the events, transactions and occurrences described in the First Amended Complaint and relied upon by plaintiff for its claim under Massachusetts General Laws Chapter 93A did not occur substantially and primarily within the Commonwealth of Massachusetts.

## **COUNTERCLAIM**

CSFB 1999-C1 Royall Street, LLC ("Lender"), on its own behalf and as assignee of the mortgage and other loan documents given by Blue Hills Office Park, LLC ("Blue Hills") to Credit Suisse First Boston Mortgage Capital, LLC ("Credit Suisse First Boston"), brings this counterclaim against Blue Hills, William J. Langelier, and Gerald S. Fineberg, to recover damages flowing from their breaches of contractual and other duties owed to Lender and to recover amounts owed to Lender under a guaranty executed by Mr. Langelier and Mr. Fineberg.

## **PARTIES**

1.      Lender is a Delaware limited liability company. Lender's sole member is a trust, whose trustee is JP Morgan Chase Bank, a New York corporation with its principal place of business in New York, New York.

2.      Blue Hills is a Delaware limited liability company. On information and belief, the sole member of Blue Hills is a nominee trust, Royall Associates Realty Trust (the "Royall

- 14 -

Trust"). On information and belief, the sole beneficiary of the Royall Trust is the Royall Associates General Partnership, whose sole partners are William J. Langelier and Gerald S. Fineberg.

3.      On information and belief, William J. Langelier is an individual domiciled in California.

4.      On information and belief, Gerald S. Fineberg is an individual domiciled in Massachusetts.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity and the amount in controversy exceeds $75,000, exclusive of costs or interest. This Court also has jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1367, as Lender's claims arise out of the same transaction and occurrence as asserted in the First Amended Complaint of plaintiff/defendant-in-counterclaim Blue Hills.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claim occurred in this judicial district and a substantial part of the property that is the subject of this action is situated in this district

**FACTUAL BACKGROUND**

**Credit Suisse First Boston Lends $33 Million to Blue Hills**

7.      In September 1999, Credit Suisse First Boston loaned $33,149,000 (the "Loan") to Blue Hills.

8.      The Loan was secured by a mortgage on Blue Hills' property located at 150 Royall Street, Canton, Massachusetts and known as the Blue Hills Office Park (the "Property"), and by other instruments and documents, including an Assignment of Leases and Rents (the

- 15 -

"ALR"), the Guaranty, the Cash Management Agreement (copy attached to the First Amended
Complaint as Exhibit "E"), and UCC Financing Statements.

9.      The Property is improved by a two-story brick building containing approximately
275,000 square feet of space.

10.     The sole tenant of the Property as of September 14, 1999 was Equiserve Limited
Partnership ("Equiserve").

11.     On or about September 14, 1999, Blue Hills executed the Mortgage Agreement
(copy attached to the First Amended Complaint as Exhibit "C"), the Mortgage Note (the "Note")
(copy attached to the First Amended Complaint as Exhibit "D"), and the ALR.

12.     Section ¶10 of the Mortgage Agreement provides that Blue Hills shall not "sell,
convey, alienate, mortgage, encumber, pledge or otherwise transfer the Mortgaged Property or
any part thereof, or permit the Mortgaged Property or any part thereof to be sold, conveyed,
alienated, mortgaged, encumbered, pledged, or otherwise transferred," without the prior written
consent of the Lender or as otherwise expressly provided in the Mortgage Agreement.

13.     Blue Hills agreed not to sell, convey, alienate, mortgage, encumber, pledge, or
otherwise transfer any part of the Mortgaged Property without the prior written consent of
Lender.

14.     In the Mortgage Agreement and the UCC Financing Statements, the "Mortgaged
Property" is defined to include all "claims...and causes of action that now or hereafter relate to,
are derived from or are used in connection with the Mortgaged Property, or the use, operation,
maintenance, occupancy or enjoyment thereof or the conduct of any business or activities
thereon..."

- 16 -

15.     Under the Mortgage Agreement, it is an Event of Default for Blue Hills to transfer claims or causes of action related to or derived from the Mortgaged Property without the Lender's prior written consent.

16.     On or about September 14, 1999, Blue Hills executed the Cash Management Agreement.

17.     Pursuant to the Cash Management Agreement, Blue Hills agreed to deposit all Rents (as defined in the Mortgage Agreement) with the Clearing Bank (as defined in the Cash Management Agreement) within one Business Day (as defined in the Cash Management Agreement) of receipt.

18.     Under the Cash Management Agreement, prior to depositing the Rents with the Clearing Bank, Blue Hills (or its Manager or other affiliate) agreed to hold the Rents in trust for Lender.

19.     "Rents," as defined in the Cash Management Agreement, include "rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents.... income, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues profits, charges for services rendered, and other consideration of whatever form or nature received by or paid to or for the account of or benefit of Mortgagor or its agents or employees from any and all sources arising from or attributable to the Premises and the Improvements."

20.     Under the Cash Management Agreement, Blue Hills agreed to notify Lender, at the time of receipt, of Blue Hills' receipt of Rents in conjunction with "any extraordinary event pursuant to which Borrower receives payments or income (in whatever form) derived from or generated by the use, ownership or operation of the Premises," other than payments from lessees, certain insurance proceeds, condemnation awards, and real estate tax refunds.

- 17 -

21.    A breach of the Cash Management Agreement is an Event of Default under the Mortgage Agreement.

22.    On or about September 14, 1999, Mr. Fineberg and Mr. Langelier individually executed the Guaranty as "an inducement to Lender to make the Loan."

23.    Pursuant to the Guaranty, Mr. Fineberg and Mr. Langelier each is "liable for the full amount of the Debt in the event that [...] (D) Borrower fails to obtain Lender's prior written consent to any assignment, transfer, or conveyance of the Mortgaged Property or any interest therein if required by Section 10 of the [Mortgage Agreement]."

24.    The "Debt" guaranteed by Mr. Fineberg and Mr. Langelier includes the indebtedness and interest due under the Note and all other sums due under the Mortgage Agreement, the Note, and the other documents securing the Loan.

## Blue Hills Sues to Protect the Value of the Property

25.    On May 22, 2003, a special permit (the "Special Permit") for a parking garage (which would add approximately 263 parking spaces) was granted by the Town of Canton Zoning Board of Appeals (the "ZBA") to Blueview Corporate Center LLC, then-owner of the property and office building located at 250 Royall Street ("Blueview"), which abuts the Property.

26.    On June 9, 2003, Blue Hills filed a Complaint in Norfolk Superior Court (the "Zoning Appeal") appealing the ZBA's decision to grant the Special Permit.

27.    In the Zoning Appeal, Blue Hills stated, *inter alia*, that the proposed parking structure was immediately in the sight line of the Property, would partially block the view from the Property, and would be "detrimental and offensive" to Blue Hills and the inhabitants of the Property. Blue Hills further stated that the proposed parking structure posed a detriment to the Property.

- 18 -

## Blue Hills Agrees to Dismiss its Suit and Waive Rights of Appeal

28.    On information and belief, during the summer of 2003 Blue Hills negotiated a settlement, under which it agreed to accept a substantial cash payment to dismiss the Zoning Appeal and to waive all further rights of appeal of the ZBA's decision granting the Special Permit to Blueview (the "ZBA Decision").

29.    Without notifying the Lender or obtaining the Lender's prior written consent, Blue Hills agreed to the offer, accepted a cash payment in excess of $1 million (the "Payment"), and executed a Settlement Agreement waiving all further rights of appeal of the ZBA Decision.

30.    Blue Hills never notified the Lender of its receipt of the Payment,  the Zoning Appeal, or the settlement of the Zoning Appeal.

31.    The receipt of the Payment and dismissal of the Zoning Appeal constituted an assignment, transfer or conveyance of an interest in the Mortgaged Property, requiring Lender's prior written consent pursuant to section 10 of the Mortgage Agreement.

32.    Blue Hills never deposited the Payment with the Clearing Bank, nor has Blue Hills otherwise conveyed Payment to Lender.

33.    On August 4, 2003, Equiserve's parent company (DST Realty of Massachusetts, Inc.) purchased Blueview from Blueview Corporate Center, LLC.

34.    On August 29, 2003, counsel for Blue Hills filed a Notice of Dismissal of the ZBA Complaint with the Norfolk Superior Court, which the clerk did not accept for filing.

35.    On September 5, 2003, a Stipulation of Dismissal of the Zoning Appeal signed by all counsel of record was filed with the court and all rights of appeal of the ZBA Decision were thereby waived by Blue Hills.  Blue Hills did not give notice of the filing of the Stipulation of Dismissal to Lender.

- 19 -

**Blue Hills' Sole Tenant Moves to Blueview and Lender Forecloses on the Property**

36.     The parking garage at Blueview was constructed at the request of Equiserve. Blue Hills, Langelier and Fineberg believed that fact to be true as of August 2003.

37.     At the time it dismissed the Zoning Appeal, Blue Hills was aware that Equiserve intended to move its offices to Blue View.

38.     On information and belief, on or around July 31, 2004, Equiserve (the Property's sole tenant) allowed its lease of the Property to expire without renewal, vacated the Property and moved to Blueview.

39.     On October 21, 2004, pursuant to Mass. Gen. Laws c. 244, §§ 14 and 17B, Lender notified Mr. Fineberg and Mr. Langelier of its intention to foreclose on the Property and of Mr. Fineberg's and Mr. Langelier's potential liability to Lender under the Guaranty in case of a deficiency in the proceeds of the foreclosure sale.

40.     On November 29, 2004, Lender foreclosed on the Property.  The amount of the Debt was $33,842,809.  The Property was sold for $18,500,000, leaving a deficiency in the proceeds of the foreclosure sale in the amount of $15,342,809, exclusive of prepayment premium.

41.     On April 20, 2005, Lender made written demand upon Mr. Fineberg and Mr. Langelier under the Guaranty.

42.     Neither Mr. Fineberg nor Mr. Langelier has made payment under the Guaranty.

**COUNT I**
(v. Blue Hills)
(Breach of Contract – Mortgage)

43.     Lender incorporates and restates the allegations of Paragraphs 1-42 above.

44.     Blue Hills assigned, transferred and/or conveyed Mortgaged Property without the prior written consent of the Lender in breach of the Mortgage Agreement.

- 20 -

45.     Lender has suffered damages on account of Blue Hills' breach of the Mortgage Agreement.

## COUNT II
### (v. Blue Hills)
### (Breach of Contract – Cash Management Agreement)

46.     Lender incorporates and restates the allegations of Paragraphs 1-45 above.

47.     Blue Hills failed to deposit the Payment with the Clearing Bank, in breach of the Cash Management Agreement.

48.     Blue Hills failed to notify Lender of its receipt of the Payment, in breach of the Cash Management Agreement.

49.     Lender has suffered damages on account of Blue Hills' breach of the Cash Management Agreement.

## COUNT III
### (v. Blue Hills)
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

50.     Lender incorporates and restates the allegations of Paragraphs 1-49 above.

51.     Every contract carries with it an implied obligation of good faith and fair dealing which requires that neither party do anything that will destroy the other's right to receive the fruits of the contract.

52.     Blue Hills breached this obligation by failing to notify the Lender of the ZBA Appeal, by failing to obtain the prior written consent of the Lender to the Settlement Agreement, by executing the Settlement Agreement, by failing to notify the Lender of its receipt of the Payment, and by failing to deposit the Payment in the Clearing Bank.

53.     Lender has suffered damages on account of Blue Hills' breach of the implied covenant of good faith and fair dealing.

- 21 -

## COUNT IV
### (v. all Defendants)
### (Intentional Misrepresentation)

54.     Lender incorporates and restates the allegations of Paragraphs 1-53 above.

55.     Blue Hills had a duty to notify the Lender prior to executing the Settlement Agreement.

56.     Blue Hills intentionally failed to notify the Lender prior to executing the Settlement Agreement.

57.     The Lender reasonably and justifiably relied on Blue Hills' material omissions.

58.     Blue Hills had a duty to notify the Lender of its receipt of the Payment at the time of Blue Hills' receipt of the Payment.

59.     Blue Hills intentionally failed to notify the Lender of its receipt of the Payment.

60.     Under the Guaranty, Langelier and Fineberg are liable for intentional misrepresentation by Blue Hills.

61.     As a result of Blue Hills' intentional misrepresentations, Lender has been damaged.

## COUNT V
### (v. Langelier and Fineberg)
### (Guaranty)

62.     Lender incorporates and restates the allegations of Paragraphs 1-61 above.

63.     Under the Guaranty, Mr. Fineberg and Mr. Langelier are liable for the full amount of the Debt.

64.     Lender has made demand upon Mr. Fineberg and Mr. Langelier under the Guaranty.

65.     Mr. Fineberg and Mr. Langelier have failed to make payment to Lender as required by the Guaranty.

- 22 -

66.     As a result of Mr. Fineberg's and Mr. Langelier's failure to make payment to Lender, Lender has been damaged.

## COUNT VI
(v. all Defendants)
(M.G.L. c.93A)

67.     Lender incorporates and restates the allegations of Paragraphs 1-66 above.

68.     Blue Hills, Gerald S. Fineberg and William Langelier are parties engaged in trade or commerce.

69.     Blue Hills and Mr. Fineberg acted unfairly and deceptively, in violation of M.G.L. c.93A, § 11, by failing to notify the Lender of the ZBA Appeal, by failing to obtain the prior written consent of the Lender to the Settlement Agreement,  by executing the Settlement Agreement, by failing to notify the Lender of its receipt of the Payment, and by failing to deposit the Payment in the Clearing Bank.

70.     As a result of these unfair and deceptive acts, Lender has been damaged.

- 23 -

## **PRAYERS**

WHEREFORE, Lender respectfully requests that the Court enter judgment in its favor on each count, in such amounts as the proof at trial will show, and grant such other relief as is appropriate.

Respectfully submitted,

June 6, 2005

CSFB 1999-C1 ROYALL STREET, LLC,
By its attorneys,

/s/ E. Randolph Tucker
E. Randolph Tucker, BBO #503845
Bruce S. Barnett, BBO #647666
Traci S. Feit, BBO #660688
DLA PIPER RUDNICK GRAY CARY US LLP
One International Place
Boston, MA  02110
(617) 406-6000

- 24 -