UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BLUE HILLS OFFICE PARK LLC,

    Plaintiff, Defendant-in-Counterclaim.

    v.

J.P. MORGAN CHASE BANK, as Trustee for the
Registered Holders of Credit Suisse First Boston
Mortgage Securities Corp., Commercial Mortgage
Pass-Through Certificates, Series 1999-C1.,

    Defendant, Plaintiff-in-Counterclaim

    and

CSFB 1999 – C1 ROYALL STREET, LLC;

    Defendant, Plaintiff-in-Counterclaim,

    v.

WILLIAM LANGELIER and GERALD
FINEBERG,

    Defendants-in-Counterclaim.

Civil Action No.  05-CV-10506 (WJY)

## DEFENDANTS AND PLAINTIFFS-IN-COUNTERCLAIM
## CSFB 1999 – C1 ROYALL STREET, LLC AND J.P. MORGAN CHASE BANK'S
## MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL

Defendants and Plaintiffs-in-Counterclaim CSFB 1999 – C1 Royall Street, LLC

("CSFB") and J.P. Morgan Chase Bank, Trustee ("J.P. Morgan") (together, the "Defendants")

submit this memorandum in support of their motion to compel plaintiff Blue Hills Office Park

LLC ("Blue Hills") and defendants-in-counterclaim William Langelier and Gerald Fineberg to respond to certain of the discovery requests propounded upon them by the Defendants.[1]

## Factual Background

In September 1999, Credit Suisse First Boston (predecessor-in-interest to J.P. Morgan and CSFB) loaned $33,149,000 to Blue Hills (the "Loan"). The Loan was secured by a mortgage on Blue Hills' office park located at 150 Royall Street, Canton, Massachusetts (the "Property"), as well as other loan documents (collectively, the "Loan Documents"), including a guaranty (the "Guaranty") executed by William Langelier and Gerald Fineberg. Blue Hills defaulted on the Loan in August 2004. J.P. Morgan conducted a foreclosure sale of the Property in November 2004 at which CSFB purchased the Property. The foreclosure resulted in a $10.77 million Loan deficiency.

This case consists of two sets of claims arising in connection with the Loan: (1) Blue Hills' Second Amended Complaint against CSFB and J.P. Morgan, claiming wrongful foreclosure in breach of the Loan Documents entered into between the parties (or the parties' predecessors-in-interest); and (2) CSFB's and J.P. Morgan's Counterclaim against Blue Hills and its principals, William Langelier and Gerald Fineberg, for misappropriating mortgaged property in breach of the Loan Documents and in violation of M.G.L. c. 93A, and for refusal to make payment under the Guaranty.

The basis of the Counterclaim is that Blue Hills, without the mortgagee's knowledge or consent, entered into a settlement (the "Settlement") of a zoning appeal (the "Zoning Appeal") initiated by Blue Hills in 2003 to protect the value of the Property, and pocketed a $2 million

---

[1]    The discovery requests were propounded on behalf of CSFB and Credit Suisse First Boston Mortgage Securities Corp. Subsequently, J.P. Morgan was substituted for Credit Suisse First Boston Mortgage Securities Corp. pursuant to an assented-to motion filed by Blue Hills Office Park LLC.

settlement payment (the "Payment").  Under the loan documents, the Zoning Appeal and the Payment constituted mortgaged property, which could not be sold, conveyed, alienated, mortgaged, encumbered, pledged or otherwise transferred without the prior written consent of the mortgagee.

The Zoning Appeal challenged a special permit allowing the property across the street to build a parking garage which would congest traffic and obstruct the views from and of the Property.  The proposed garage was to be built for the benefit of Blue Hills' sole tenant, Equiserve Limited Partnership ("Equiserve"), which planned to vacate the Property and move across the street – but only if the garage were approved.  The Settlement of the Zoning Appeal allowed the garage to be built and insured that Blue Hills would lose its only tenant Equiserve. Blue Hills concealed its receipt of the settlement payment of $2 million (failing to inform the mortgagee or to record the payment in its books and records) and conveyed the Payment to unknown recipients rather than holding it in trust for the mortgagee.  Settling the Zoning Appeal lawsuit and conveying the Payment without the mortgagee's knowledge and consent not only breached the loan documents but also triggered Langelier's and Fineberg's personal liability under the Guaranty for the $10.77 million Loan deficiency that resulted from the foreclosure sale.

The claims set forth in the Second Amended Complaint are based substantially on Blue Hills' allegations concerning communications between it and the servicers of the Loan (who were agents of the Defendants).  Blue Hills alleges that it made numerous oral requests for meetings to discuss a loan workout after Equiserve moved out and Blue Hills defaulted in payment of principal, interest, real estate taxes, and escrow payments.  Blue Hills claims that the servicers made various oral "assurances" that they would meet and work with Blue Hills, and that the servicers failed to follow through on those "assurances."

**General Discovery History**

On September 15, 2005, CSFB and J.P. Morgan served requests for production (the "RFP") and interrogatories (the "Interrogatories") on Blue Hills, Langelier, and Fineberg (referred to collectively herein as the "Blue Hills Parties") pursuant to Fed. R. Civ. P. 33 and 34.

The Blue Hills Parties first produced documents to CSFB and J.P. Morgan on November 15, 2005; this production included no documents in response to several of the requests for production (RFP Nos. 2, 3, 4, 8, 9, and 13). The Blue Hills Parties objected to producing any documents concerning disposition of the Payment. See Blue Hills Parties' Responses to Requests for Production, attached hereto as Exhibits A, B, and C. On November 29, 2005 and December 5, 2005, following service of a draft motion to compel and repeated requests by counsel for CSFB and J.P. Morgan, the Blue Hills Parties produced some additional documents, none of which concern the disposition of the Payment. Most of the documents produced on those dates are documents already in the public record (such as pleadings and documents submitted to state agencies), and letters exchanged between counsel for the Blue Hills Parties and counsel for CSFB and J.P. Morgan. More importantly, the documents appear to have come solely from the files of counsel for the Blue Hills Parties – the Blue Hills Parties themselves seem to have made a limited effort to locate and produce responsive documents in their possession.

The Blue Hills Parties produced no e-mail or other communications between or among the principals of Blue Hills concerning the Zoning Appeal, the Settlement, or the Payment, and produced no e-mail or other communications between the principals of Blue Hills and the individuals with whom they negotiated the Settlement of the Zoning Appeal and the receipt of the Payment. When asked about the absence of e-mail, counsel for the Blue Hills Parties explained that the principals of Blue Hills did not really use email, an assertion at odds with the

deposition testimony of Blue Hills' Director of Accounting, as set forth more fully below. Additionally, the Blue Hills Parties produced no documents responsive to RFP No. 9. Furthermore, in response to RFP Nos. 18, 19, 20, 21, 22, and 23, the Blue Hills Parties expressly stated that they would not produce all responsive documents, but instead would produce only the documents described in their response.

The Blue Hills Parties responded to the Interrogatories on November 11, 2005. The answers were incomplete and inadequate. The Blue Hills Parties objected to answering Interrogatory No. 11, which asks about disposition of the Payment. The responses to Interrogatory Nos. 2 and 7, which requested that the Blue Hills Parties describe the specifics of each communication during the life of the Loan concerning the topics which are the primary basis of Blue Hills' claims and the Defendants' defenses to those claims, were hopelessly conclusory and vague. For example, in answering Interrogatory No. 2, other than making objections and noting that it would produce written communications, Blue Hills' sole response was to state:

> Blue Hills states that it and its agents had several conversations with the Defendants from in or about the fall of 2003 through the date of foreclosure as well as conversations with third parties.

See Blue Hills Parties' Responses to Interrogatories, attached hereto as Exhibits D, E, and F.

Following repeated requests by counsel for CSFB and J.P. Morgan, the Blue Hills Parties agreed to provide supplemental answers to Interrogatory Nos. 2, 7, and 11. Starting in late November, just before Thanksgiving, in response to the draft motion to compel, the Blue Hills Parties repeatedly promised to provide these supplemental answers, eventually stating (in January) that they would provide them "reasonably in advance of the mediation session" that was to occur on January 18, 2006. On January 12, 2006, William Langelier produced his

supplementary answers, but the supplementary answers of Gerald Fineberg and Blue Hills were

not produced until January 20, 2006 – two days <u>after</u> the mediation was held.

Moreover, despite the fact that the Blue Hills Parties took nearly two months to prepare their

supplemental answers, the supplemental answers fail to remedy the deficiencies present in their

initial response.  Instead, they merely restate the allegations made in the Second Amended

Complaint.  The Blue Hills Parties also continued to maintain their objection to providing

information about disposition of the Payment.  <u>See</u> Blue Hills Parties' Supplementary Responses

to Interrogatories, attached hereto as <u>Exhibits G, H, and I</u>.

On February 3, 2006, counsel for CSFB and J.P. Morgan wrote to counsel for the Blue

Hills Parties, describing the inadequacy of many of their responses to CSFB's and J.P. Morgan's

discovery requests and requesting a discovery conference pursuant to Local Rule 37.1(A).  A

copy of that letter is attached hereto as <u>Exhibit J</u>.  A discovery conference was held on

February 8, 2006, at the offices of counsel for the Defendants.  The conference was attended by

Peter McGlynn and Meredith Swisher, counsel for the Blue Hills Parties, and by Bruce Falby

and Traci Feit, counsel for the Defendants.  At the conference, which lasted a little over an hour,

counsel for the Blue Hills Parties stated that complete answers to the interrogatories referenced

in the letter (with one exception relating to the disposition of the Payment) would be provided by

Monday, February 13, 2006.  Counsel for the Blue Hills Parties further represented that the Blue

Hills Parties believed that all responsive documents had already been produced, but that they

would do another search to make sure and produce any responsive documents not previously

produced by Friday, February 17, 2006.

The deposition testimony of Gilbert Stone, however, revealed that the Blue Hills Parties

had not conducted a diligent search for documents.  Mr. Stone, the Director of Accounting for

Fineberg Management (the manager of Blue Hills Office Park LLC), was deposed on February 9,

2006.  The following is an excerpt of Mr. Stone's testimony, taken from the draft transcript (it is not yet final or certified) prepared by the court reporter:

Q.  Other than the documents that Mr. McGlynn showed you yesterday that you already described, have you looked at any other documents in preparation for your deposition?

A.  Yes.

Q.  What documents?

A.  Just basically what I have in my file.  A lot of it was the same stuff that Mr. McGlynn used.

Q.  What file do you have?

A.  Just my correspondence file.

Q.  Do you know if that correspondence file was copied in connection with the production of documents by Blue Hills in that lawsuit?

A.  No.

Q.  Did anybody ever ask you for your file so they could copy it to produce documents in the case?

A.  No.

Q.  Did you find documents in the correspondence file that Mr. McGlynn did not show you?

A.  Yes.

Q.  What documents did you find that he had not shown you?

A.  I keep all of the tax notices that we receive from Wells Fargo, any bank transactions.  You know, it is just a lot of stuff that I didn't throw away.

Q.  Does that file contain copies of any letters that you sent to Wells Fargo?

A.  Yes.

[…]

Q.  Do you use email?

A.  Yes.

[…]

Q.  Did anybody ask you whether you maintained on your computer, saved copies of Blue Hills emails?

A.  No one did.

Q.  Does Mr. Donovan use email, do you know?

A.  Yes.

Q.  Does Mr. Frank use email, do you know?

A.  Yes.

Q.  Does Mr. Needle use email, do you know?

A.  To the best of my knowledge, he does, yeah.

Q.  How about Mr. Fineberg, does he use email?

A.  Yes, I send emails to him.  He does have access to it and does use it, yes.

Q.  Did anybody at Blue Hills or did any attorney for Blue Hills ever ask you to collect and give them all documents concerning the Wells Fargo loan in connection with this case?

A.  No.

Q.  Turn to Page 5 of Exhibit 11.  Look at Paragraph 7.  Did anybody ask you to collect and give them all documents concerning property taxes or property tax escrows?

A.  Property tax escrow is easy.  No.  Property taxes?  I did not make copies of all documents concerning property taxes.

Q.  Nobody asked you for them, correct?

A.  No.

Q.  That is correct?

A.  That is correct.

Q.  Did anybody ask you for any documents concerning monies received by Blue Hills other than monies for rent from Equiserve?

A.  I don't believe so.

On Monday, February 13, counsel for the Blue Hills Parties notified Defendants' counsel that it had located responsive documents that had not previously been produced, and that it would make those documents available for inspection on Tuesday, February 14.  On February 14, when counsel for the Defendants arrived to inspect the documents, counsel for the Blue Hills Parties stated that these documents were not "everything," and that additional documents would be produced later in the week.

As of today, February 17, 2006, no further answers to the disputed interrogatories have been provided and no additional documents have been produced.

## Discussion

In accordance with Local Rule 37.1, each RFP and Interrogatory which raises an issue to be decided by the Court is set out below, along with the response thereto, followed by the Defendants' position as to each contested item.

### RFP and Interrogatories concerning the Payment: RFP No. 4 and Interrogatory No. 11

RFP No. 4:  All documents concerning the Payment.

Response to RFP No. 4 (the portion of this response typed in bold font will be referred to herein as the "Confidentiality Response"):  Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," seeks documents subject to the attorney client privilege and work product doctrine, seeks pleadings that are available to the public, and seeks documents that are irrelevant and not likely to lead to the discovery of admissible evidence.  **In addition, Blue Hills objects to this request to the extent it seeks documents related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:**

> **Confidentiality.  The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information.  The parties shall be able to disclose that the Appeal has been settled.  In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.**

**In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action.  The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available.  Therefore, in the absence of a "subpoena or order, judgment or decree of a court...," Blue Hills is not authorized to release documents related to the settlement of the Zoning Appeal.**

Interrogatory No. 11:  State the amount of the Payment and describe the disposition of the Payment, and in your answer: (a) identify each and every document which forms any part of the source of your information regarding the amount of the Payment or the disposition of the Payment; (b) identify each and

every person who received any portion of the Payment; and (c) identify each and every bank account into which any portion of the Payment was deposited.

<u>Initial Answer to Interrogatory No. 11</u>:  Blue Hills objects to this interrogatory to the extent that it is overly broad, unduly burdensome, vague and ambiguous, seeks information that is subject to attorney-client privilege, and seeks information on the receipt, "disposition" of, and bank accounts related to the settlement amount that is irrelevant and not likely to lead to the discovery of admissible evidence.  Blue Hills further objects to this interrogatory to the extent its multiple subparts exceed the limit on interrogatories under the court order governing phased discovery.  [Confidentiality Response].

<u>Supplemental Answer to Interrogatory No. 11</u>:  Blue Hills objects to this interrogatory to the extent that it is overly broad, unduly burdensome, vague and ambiguous, seeks information that is subject to attorney-client privilege, and seeks information on the receipt, "disposition" of, and bank accounts related to the settlement amount that is irrelevant and not likely to lead to the discovery of admissible evidence.  Blue Hills further objects to this interrogatory to the extent its multiple subparts exceed the limit on interrogatories under the court order governing phased discovery.  Without waiving these objections, Blue Hills states that the amount of the settlement is set forth in the Settlement Agreement, produced on December 8, 2005, Bate Stamped Nos. 1844-1855, and marked "confidential" pursuant to the Confidentiality Stipulation.

The Blue Hills Parties have produced no documents concerning the disposition of the Payment and have instructed their clients, during the depositions held to date, not to answer questions concerning the disposition of the Payment.

The Counterclaim alleges that Blue Hills (1) breached its contractual duty not to transfer claims or causes of action related to or derived from the mortgaged property without the prior written consent of its mortgagee when it executed the Settlement Agreement in exchange for the Payment, (2) breached its contractual duty to notify its mortgagee of the receipt of the Payment, (3) breached its contractual duty to deposit the Payment in the appropriate lockbox account within one business day of receipt, and (4) breached its duty to hold the Payment in trust for the mortgagee.  The Counterclaim further alleges that the Blue Hills Parties violated Mass. Gen. Laws ch. 93A when they purposely concealed the Payment and conveyed it out of Blue Hills for their own benefit.

The disposition of the Payment is thus highly relevant to the Counterclaim.  It is reasonably calculated to lead to the discovery of admissible evidence concerning, inter alia, the state of mind of the Blue Hills Parties in entering into the Settlement, the Blue Hills' Parties state of mind with respect to the conveyance of the Payment out of Blue Hills, and the amount of damages allegedly suffered by Blue Hills.  The Blue Hills Parties have offered to stipulate that Blue Hills conveyed the Payment out of Blue Hills and assert that the identify of the recipient(s) is irrelevant to the claim that the Payment should not have been conveyed.  The Payment, however, was part of the mortgagee's security and the mortgagee is entitled to know where it went.  Moreover, it is highly relevant to the Chapter 93A counterclaim against Blue Hills' principals and individual counterclaim-defendants (Langelier and Fineberg) whether they personally received any portion of the Payment, as so far appears from deposition testimony to be the case.  If so, it supports the claim that they knowingly caused Blue Hills to breach its loan agreement with the improper motive of enriching themselves.  It also supports a finding that they defrauded the mortgagee, by concealing their conversion of mortgaged property, which is another basis for personal liability under the Guaranty.  The disposition of the Payment is thus discoverable under the Supreme Court's broad definition of relevance for discovery purposes:  ". . . any matter that bears on, or that reasonably could lead to any other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 1 (1978) (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947)).

Nor do any of the other objections raised in response to RFP No. 4 and Interrogatory No. 11 provide a justification for the Blue Hills Parties' failures to respond.  RFP No. 4 and Interrogatory No. 11 are neither "overly broad" nor "unduly burdensome" – they are narrowly tailored to obtain documents and information relevant to the disposition of the Payment. Moreover, the Blue Hills Parties have failed to explain (either in their responses or at the

discovery conference held on February 8, 2006) why producing documents and providing information concerning the disposition of the Payment would be "unduly burdensome."

The Blue Hills Parties' contention that the phrase "all documents concerning" in RFP No. 4 is "vague and ambiguous" must be rejected – Local Rule 26.5 is deemed incorporated by reference into the RFP and defines the terms "documents" and "concerning."  Likewise, Interrogatory No. 11 is not vague and ambiguous.  In essence, it asks who received the Payment and where the Payment went – there is nothing vague or ambiguous about it.

Finally, the Confidentiality Response does not excuse the Blue Hills Parties from responding in full to RFP No. 4 and Interrogatory No. 11, for the reasons discussed in the section below (dealing with RFP Nos. 2, 3, 8, and 13).

**RFP Nos. 2, 3, 8, 13**

RFP No. 2:  All documents concerning the Zoning Appeal.

RFP No. 3:  All documents concerning the Settlement.

RFP No. 8:  All documents concerning any negotiations relating to the Zoning Appeal, the Settlement, and/or the Payment.

RFP No. 13:  All documents that concern any communications among or between Blue Hills, Blueview and/or National Development.

Response to RFP Nos. 2, 3, 8 and 13:  Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," seeks documents subject to the attorney client privilege and work product doctrine, seeks pleadings that are available to the public, and seeks documents that are irrelevant and not likely to lead to the discovery of admissible evidence.  [Confidentiality Response].

The Confidentiality Response (or a substantial portion thereof) is also included in the Blue Hills Parties' response to RFP No. 9, although the response to this request contains some additional language that is discussed in greater detail below.

Since the time that the Blue Hills Parties responded to the RFP, the parties to this action entered into a confidentiality agreement designed to protect the confidentiality of documents

subject to the confidentiality provision contained in the Settlement Agreement.  See Confidentiality Agreement (attached hereto as Exhibit K).  The other parties to the Settlement Agreement approved the Confidentiality Agreement and produced subpoenaed documents concerning the settlement.  Subsequently, on November 29, 2005, the Blue Hills Parties produced approximately 200 pages of documents that had not previously been produced.  Of these 200 pages, at least 100 pages consist of publicly available documents, none of which were even conceivably covered by the confidentiality provision in the Settlement Agreement, and all of which therefore should have been produced in the Blue Hills Parties' initial production.  The remaining 100 pages consist principally of letters between counsel for Blue Hills and counsel for National Development, Equiserve, and/or the Defendants.

On December 8, 2006, following repeated requests by counsel for the Defendants, the Blue Hills Parties finally produced the Settlement Agreement and several letters and e-mails between counsel for the parties to the Settlement Agreement.  To date, however, the Blue Hills Parties have produced no documents concerning the substance of the negotiations between the parties to the Settlement Agreement; no documents concerning monies received by Blue Hills other than Equiserve rents and the Payment; and no notes, e-mails, or documents reflecting communications by, among, or between the principals and employees of Blue Hills concerning the Zoning Appeal, the decision to commence the Zoning Appeal, the Settlement, the negotiation of the Settlement, or the Payment.

To the extent the Blue Hills Parties continue to object to RFP Nos. 2, 3, 8, 9, and 13 based on the Confidentiality Response, such an objection is without merit because the Confidentiality Agreement is now in place.

Nor do any of the other objections raised in the Blue Hills Parties' response to RFP Nos. 2, 3, 4, 8, and 13 provide a justification for the Blue Hills Parties' failure to fully respond to

those requests.  The Blue Hills Parties objection that the RFPs are "overly broad" and "unduly burdensome" are without merit: RFP Nos. 2, 3, 8, and 13 seek documents that bear directly on the Defendants' counterclaim and defenses to Blue Hills' Second Amended Complaint, and the Blue Hills Parties have failed to explain (either in their response or at the discovery conference held on February 8, 2006) why producing such documents would be "unduly burdensome." Likewise, the Blue Hills Parties' contention that the phrase "all documents concerning" is "vague and ambiguous" is expressly contradicted by Local Rule 26.5, which is deemed incorporated by reference into all the RFP and which defines the terms "documents" and "concerning."

Finally, the Blue Hills Parties' contention that RFP Nos. 2, 3, 8, and 13 seek documents that are "irrelevant and not likely to lead to the discovery of admissible evidence" is meritless. One of the Defendants' defenses to Blue Hills' claims concerning "wrongful default" is that Blue Hills was in fact in default under the Loan Documents by virtue of its execution of the Settlement Agreement, receipt of the Payment, and failure to deposit the Payment in the Clearing Account (as required by the Loan Documents).  The Defendants' Counterclaim is likewise based on Blue Hills' breaches of the Loan Documents, including Blue Hills' failure to notify J.P. Morgan of the Zoning Appeal, failure to obtain J.P. Morgan's prior written consent to the Settlement Agreement, failure to notify J.P. Morgan of the receipt of the Payment, failure to deposit the Payment in the Clearing Account, and failure to hold the Payment in trust for the mortgagee.  RFP Nos. 2, 3, 8, and 13 request documents which may be relevant to the Defendants' defense and counterclaim, and therefore are entirely proper under the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 26(b); U.S. v. New England Adolescent Research Inst., Inc. et al., 162 F.R.D. 410, 414 (D. Mass. 1995) (relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action).

**RFP No. 9**

RFP No. 9: All documents concerning monies received by Blue Hills other than rents received from Equiserve.

Response:  Blue Hills objects to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning" and "monies received," and seeks documents subject to the attorney client privilege and work product doctrine.  [Confidentiality Response].  Without waiving these objections, Blue Hills will make available for inspection at a mutually convenient time all non-privileged, relevant and responsive documents in its possession, custody or control that are not governed by the above-referenced confidentiality clause.

The Blue Hills Parties have produced no documents responsive to RFP No. 9 and have no valid basis for failing to do so.  The Confidentiality Response is not a valid objection to RFP No. 9, for the reasons previously stated.  The Blue Hills Parties' remaining objections are similarly unavailing.  The request is certainly not vague or ambiguous, as the terms "documents" and "concerning" are defined by the Local Rule and the phrase "monies received" obviously refers to funds received by Blue Hills.  Nor is the request "overly broad" or "unduly burdensome," as the request seeks documents concerning monies other than Equiserve rents, which constituted the vast majority of Blue Hills' revenues, and as the request would require Blue Hills only to check its records and inquire of its principals and employees concerning receipts by Blue Hills.

Moreover, RFP No. 9 is reasonably calculated to lead to the discovery of evidence in support of the Defendants' claims under Mass. Gen. Laws ch.93A.  Blue Hills did not inform Defendants of the Zoning Appeal, the Settlement, or the Payment and did not note the Payment on Blue Hills' financial records.  Defendants are entitled to determine whether Blue Hills similarly concealed the receipt of other payments of which the Defendants are still unaware.  RFP No. 9 is reasonably calculated to lead to the discovery of evidence demonstrating a pattern of unfair and deceptive conduct by the Blue Hills Parties.

**RFP Nos. 7, 18, 19, 20, 21, 22, and 23**

The Blue Hills Parties' responses to RFP Nos. 7, 18, 19, 20, 21, 22, and 23 are improper for the same reason: they expressly limit the documents to be produced without any valid justification for doing so.  Below are the corresponding requests and responses, followed by the Defendants' position with respect to each response.  The underlined of portion of each response is the express and improper limitation of the documents to be produced.

RFP No. 7: All documents concerning Property taxes and/or Property tax escrows.

Response to RFP No. 7:  Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine.  Without waiving these objections, Blue Hills will make available at a mutually convenient time the business records of Blue Hills regarding payment of taxes in connection with the Property.

RFP No. 18:  All documents concerning or supporting Blue Hills' contention at paragraph 40 of Blue Hills' First Amended Complaint, that Blue Hills' need for "substantial sums of money to upgrade the Property's infrastructure and to make tenant improvements" due to, allegedly, "the down turn in the real estate market coupled with a reduced number of tenants seeking larger blocks of rental space" was "the very contingency anticipated when the Term Sheet was executed."

Response to RFP No. 18:  Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine.  Without waiving these objections, Blue Hills will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender an/or its agents and Blue Hills.

RFP No. 19:  All documents concerning or supporting Blue Hills' contention at paragraph 75 of Blue Hills' First Amended Complaint, that "[a]ll preconditions to Blue Hills' entitlement to disbursement of funds sufficient to pay principal and interest for August and September, 2004 had been satisfied."

Response to RFP No. 19:  Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," seeks documents subject to the attorney client privilege and work product doctrine, and seeks documents related to payments made by Blue Hills in accordance with the Loan Documents that are already in the Lender's possession, custody, or control.  Without waiving these objections, Blue Hills will make available for inspection at a mutually convenient time the material

Loan Documents, and material written communications between the Lender and/or its agents and Blue Hills.

RFP No. 20:  All documents concerning or supporting Blue Hills' contention at paragraph 84 of Blue Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully defaulted Blue Hills."

Response to RFP No. 20:  Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine.  Without waiving these objections, Blue Hills will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills, including, without limitation, the letter to Blue Hills dated September 17, 2004 declaring Blue Hills to be in default of its obligations under the Loan Documents.

RFP No. 21:  All documents concerning or supporting Blue Hills' contention at paragraph 85 of Blue Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully withheld from Blue Hills those amounts which Blue Hills were rightfully entitled to receive out of the Cash Collateral Account."

Response to RFP No. 21:  Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine.  Without waiving these objections, Blue Hills will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills, including, without limitation, the letter to Blue Hills dated September 17, 2004 declaring Blue Hills to be in default of its obligations under the Loan Documents.

RFP No. 22:  All documents concerning or supporting Blue Hills' contention at paragraph 86 of Blue Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully refused to allow Blue Hills to utilize funds on deposit in the Cash Collateral Account to pay principal and interest under the Mortgage Agreement."

Response to RFP No. 22:  Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine.  Without waiving these objections, Blue Hills will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills, including, without limitation, the letter to Blue Hills dated September 17, 2004 declaring Blue Hills to be in default of its obligations under the Loan Documents.

RFP No. 23:  All documents concerning or supporting Blue Hills' contention at paragraph 87 of Blue Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully foreclosed on the Property."

Response to RFP No. 23:  Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine.  Without waiving these objections, Blue Hills will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills, including, without limitation, the letter to Blue Hills dated September 17, 2004 declaring Blue Hills to be in default of its obligations under the Loan Documents.

Each of the above-referenced RFP is clear, limited in scope, and seeks documents relevant to Blue Hills' claims and the Defendants' defenses to those claims.  RFP No. 7 requests documents concerning Property taxes and/or Property tax escrows, a key topic at issue in this action.  Blue Hills contends that the Defendants wrongfully declared that it was in default under the Loan Documents for failure to pay property taxes.  See Second Amended Complaint ¶¶ 76-85.  The Defendants are therefore entitled to the Blue Hills Parties' documents concerning property taxes and property tax escrows, which the Defendants believe will show that (1) Blue Hills knew it was required to pay property taxes on its property, or to ensure that there were sufficient funds in the tax escrow account to pay those taxes; (2) Blue Hills failed to do either of those things with respect to the property tax payment due August 2, 2004; and (3) Blue Hills was in default under the Loan Documents as of August 2, 2004.

RFP Nos. 18-23 ask only for documents concerning or supporting several of the contentions set forth in Blue Hills' complaint.  The Defendants are entitled to documents in the Blue Hills Parties' possession, custody, or control that support or concern those contentions.

## Interrogatory No. 2

Interrogatory:  Describe each communication that took place during the period from July 1, 1999 through November 30, 2004, and concerned the lease between Blue Hills and Equiserve, Equiserve leaving the Property, Blue Hills' efforts to re-lease the

Property, Blue Hills' requests for meetings with the mortgagee or Wells Fargo or LNR Partners, Blue Hills' requests for disbursements from Loan reserve or escrow accounts, payment of property taxes for the Property, and/or payments to the Tax Fund Sub-account (as that term is used in paragraph 29 of Blue Hills' First Amended Complaint), including without limitation communications between you and the mortgagee and/or Wells Fargo and/or LNR Partners, and communications among any principals, members, managers, employees, agents, or affiliates of Blue Hills, and, in your answer: (a) state the nature, date, time, and place of each communication; (b) identify the person(s) who made each communication; (c) identify the person(s) who received each communication; and (d) identify each and every document which reflects, constitutes, or concerns each communication.

<u>Initial Answer</u>:  Blue Hills objects to this interrogatory to the extent that it is overly broad, unduly burdensome, vague and ambiguous and seeks information that is subject to attorney-client privilege.  Blue Hills further objects to this interrogatory to the extent its multiple subparts exceed the limit on interrogatories under the court order governing phased discovery.  Without waiving these objections, Blue Hills states that it and its agents had several conversations with the Defendants from in or about the fall of 2003 through the date of foreclosure as well as conversations with third parties.  With respect to written communications, pursuant to Fed. R. Civ. P. 33(c), Blue Hills will make available at a mutually convenient time all non-privileged and relevant written communications in his possession, custody, or control.

Interrogatory No. 2 seeks evidence relating to communications which are central to Blue Hills' claims against CSFB and J.P. Morgan.  Blue Hills alleges that it had "repeated" communications and "ongoing" discussions with servicers who handled the Loan for CSFB and J.P. Morgan, <u>see</u> Second Amended Complaint ¶¶ 45, 48, and vaguely identifies at least a half dozen apparently oral communications.  <u>See</u> <u>id.</u> at ¶¶ 38, 41, 42, 46, 68, 71.  Indeed, Blue Hills' claim for breach of the implied covenant of good faith and fair dealing is expressly based, at least in part, on allegations that CSFB and J.P. Morgan "repeatedly provid[ed] assurances" to Blue Hills.

Now that the case has reached discovery, and CSFB and J.P. Morgan are seeking specifics about the alleged communications (and any others that are relevant) they are told merely that "Blue Hills...and its agents had several conversations with the Defendants from in or about the fall of 2003 through the date of foreclosure as well as conversations with third parties." <u>See</u> Answer to Interrogatory No. 2.  The Blue Hills Parties' supplemental answer to Interrogatory

No. 2 failed to remedy this deficiency.  In their supplemental answer to Interrogatory No. 2, the

Blue Hills Parties merely parrot the allegations in the complaint, neglecting to describe any

communications at all during the time period from July 1, 1999 to August 31, 2003 and failing to

identify (1) any person(s) who made the alleged communications, (2) any person(s) who received

the alleged communications, (3) any documents reflecting, constituting, or concerning the

alleged communications, and (4) the nature, date, time, and place of each alleged

communication.

The first portion of the Blue Hills Parties' supplemental answer states:

Blue Hills objects to this interrogatory to the extent that it is overly broad, unduly burdensome, vague and ambiguous and seeks information that is subject to attorney-client privilege.  Blue Hills further objects to this interrogatory to the extent its multiple subparts exceed the limit on interrogatories under the court order governing phased discovery.  Without waiving these objections, Blue Hills states that, through its representatives, it contacted the defendants on several occasions from in or about the fall of 2003 through the date of foreclosure as well as having conversations with third parties.  While Blue Hills cannot recall with specificity the dates of various telephone conversations, Blue Hills states that its representatives contacted the defendants to request a meeting to discuss, *inter alia*, Equiserve's vacating the Property as of July 31, 2004, the necessity to more actively market the Property, the possibility of converting the Property to multi-tenant use, and addressing budgets and potential sources of funding for those marketing and re-leasing efforts including, without limitation, access to the reserve funds for Property related purposes.

Below is the remainder of the Blue Hills Parties' supplemental answer to Interrogatory

No. 2, as compared to the corresponding paragraphs of Blue Hills' Second Amended Complaint:

| Blue Hills' Supplemental Answer to Interrogatory No. 2 | Blue Hills' Second Amended Complaint |
|---|---|
| "In early 2004, representatives of Wells Fargo assured Blue Hills that they would be responsive to Blue Hills' requests, including scheduling a meeting to discuss the process to be followed by Blue Hills to access the reserve funds." | "Representatives of Wells Fargo assured Blue Hills during the foregoing time periods that they would be responsive to Blue Hills' requests, including scheduling a meeting with Blue Hills to address Property marketing costs and to discuss the process to be followed by Blue Hills to access the funds in Sub-accounts." (¶ 43) |
| "Despite such assurances, Wells Fargo continued to postpone the scheduling | "Despite such assurances, Wells Fargo failed to schedule any meetings or even to |

| | |
|---|---|
| of the requested meetings, representing to Blue Hills that they were working internally to determine the appropriate lender parties with whom Blue Hills should meet to address those matters." | discuss Blue Hills' access to the funds in the Sub-accounts." (¶ 44)<br><br>"Wells Fargo representatives' responses to Blue Hills' repeated inquiries were that they were still trying to locate the proper people to respond to Blue Hills' requests." (¶ 45) |
| "In or about June, 2004 – two months before the Equiserve Lease was set to expire and more than six months after Blue Hills first requested Wells Fargo's assistance – Wells Fargo informed Blue Hills that it would consider whether the Special Servicer for the Mortgage Loan, Lennar, and not Wells Fargo, would be the proper party to meet with Blue Hills and to respond to Blue Hills' requests." | "In or about June, 2004 – two months before the Equiserve Lease was set to expire and nearly six months after Blue Hills first requested Wells Fargo's assistance – Wells Fargo informed Blue Hills that it was considering if the Special Servicer for the Mortgage Loan, Lennar, and not Wells Fargo, would be the proper party to meet with Blue Hills and properly respond to Blue Hills' requests." (¶ 46) |

There is not a single factual allegation described in either the Blue Hills Parties' initial or supplemental answer to Interrogatory No. 2 that is not alleged in the Second Amended Complaint. These answers are therefore insufficient. See Rickles, Inc. v. Frances Denney Corp. et al., 508 F. Supp. 4, 7 (D. Mass. 1980) (answers are insufficient if they fail to supply facts which were omitted from the complaint, and if they neither clarify nor narrow the broad issues posed by the complaint) (citing U.S. v. West Virginia Pulp and Paper Co., 36 F.R.D. 250 (S.D.N.Y. 1964).

**Interrogatory No. 7**

Interrogatory: State the basis for the allegation, in paragraph 38 of Blue Hills' First Amended Complaint, that "[t]his information [that Equiserve notified Blue Hills that it would not be exercising its option to renew the Equiserve lease] was communicated to either or both of the defendants, through their agents, Wells Fargo.

Initial Answer: Equiserve notified Blue Hills of its intent not to exercise its option to extend its lease in or about May 2003. Shortly thereafter, Blue Hills communicated to Wells Fargo via telephone.

<u>Supplemental Answer</u>:  Equiserve notified Blue Hills of its intent not to exercise
its option to extend its lease in or about May 2003.  Shortly thereafter, Blue Hills
communicated to Wells Fargo via telephone regarding, *inter alia*, Equiserve's
vacating the Property as of July 31, 2004.  See also Answer to Interrogatory
No. 2, incorporated herein by reference.

These answers fail to comply with Local Rule 26.5(C), which defines the phrase "state

the basis" and the words "document," "identify," and "person."  Neither the initial nor

supplementary answer to Interrogatory No. 7 identifies the documents forming the basis of the

answer, identifies which individuals made and received the alleged communication, or states the

date on which the alleged communication was allegedly made.  Instead, the Blue Hills Parties

repeat the allegations in the complaint.  The fact that the Blue Hills Parties' supplemental answer

incorporates their answer to Interrogatory No. 2 actually adds nothing, since their answer to

Interrogatory No. 2 consists solely of allegations set forth in the complaint.

<u>**CONCLUSION**</u>

For all of the foregoing reasons, CSFB and J.P. Morgan respectfully request that the

Court grant their Motion to Compel.

Respectfully submitted,

February 17, 2006                              CSFB 1999-C1 ROYALL STREET, LLC,
                                              and J.P. MORGAN CHASE BANK,

                                              By their attorneys,

                                              /s/ Bruce E. Falby
                                              E. Randolph Tucker, BBO #503845
                                              Bruce E. Falby, BBO #544143
                                              Bruce S. Barnett, BBO #647666
                                              Traci S. Feit, BBO #660688
                                              DLA Piper Rudnick Gray Cary US LLP
                                              One International Place
                                              Boston, MA  02110
                                              (617) 406-6000

## <u>CERTIFICATION UNDER MASS. R. CIV.  P. 37(a)(2)(B) AND LOCAL RULE 7.1(A)(2)</u>

I hereby certify that counsel for defendants and plaintiffs-in-counterclaim CSFB 1999-C1 Royall Street, LLC and J.P. Morgan Chase Bank have conferred with counsel for plaintiff Blue Hills Office Park LLC and defendants-in-counterclaim William Langelier and Gerald Fineberg in a good-faith attempt to resolve or narrow the issues presented in the foregoing motion to compel discovery responses.

<u>/s/ Bruce E. Falby</u>
Bruce E. Falby, Esq.

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BLUE HILLS OFFICE PARK LLC, <br>       Plaintiff/Defendant-in- <br>       Counterclaim <br><br> v. <br><br> CREDIT SUISSE FIRST BOSTON <br> MORTGAGE SECURITY CORP., <br>       Defendant. <br><br> and <br><br> CSFB 1999 – C1 ROYALL STREET, LLC <br>       Defendant/Plaintiff-in- <br>       Counterclaim <br><br> and <br><br> WILLIAM LANGELIER and GERALD <br> FINEBERG, <br>       Defendants-in-Counterclaim | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. 05-CV-10506 (WGY) |

**BLUE HILLS OFFICE PARK LLC'S RESPONSES TO DEFENDANTS' FIRST
REQUEST FOR PRODUCTION OF DOCUMENTS**

Blue Hills Office Park LLC ("Blue Hills") hereby responds to the First Request for

Production of Documents of the Defendants CSFB 1999-C1 Royall Street, LLC ("CSFB") and

Credit Suisse First Boston Mortgage Security Corp. ("CS Bank") as follows:

## I. STATEMENT AND GENERAL OBJECTIONS

Blue Hills objects to Defendants' Request for Production of Documents to the extent its

"definitions" exceed the scope of the Federal Rules of Civil Procedure 26 and 34. In addition,

Defendants' Requests are extremely broad in scope, include information subject to the

attorney/client privilege and/or work-product doctrine, and are overly burdensome.  Blue Hills

hereby incorporates by reference each and every one of the general objections and statements

into all of the following document responses.

## II. RESPONSES

### REQUEST NO. 1

All documents concerning the Loan.

### RESPONSE NO. 1

Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome,

vague and ambiguous with respect to "all documents concerning," and seeks documents subject

to the attorney client privilege and work product doctrine.  Without waiving these objections,

Blue Hills will make available for inspection at a mutually convenient time the material Loan

Documents and material written communications between the Lender and/or its agents and Blue

Hills in its possession, custody and control.

### REQUEST NO. 2

All documents concerning the Zoning Appeal.

### RESPONSE NO. 2

Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome,

vague and ambiguous with respect to "all documents concerning," seeks documents subject to

the attorney client privilege and work product doctrine, seeks pleadings that are available to the

public, and seeks documents that are irrelevant and not likely to lead to the discovery of

admissible evidence.  In addition, Blue Hills objects to this request to the extent it seeks

documents related to the settlement of the Zoning Appeal, as the settlement agreement related to

the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action. The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Blue Hills is not authorized to release documents related to the settlement of the Zoning Appeal.

## REQUEST NO. 3

All documents concerning the Settlement.

## RESPONSE NO. 3

Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," seeks documents subject to the attorney client privilege and work product doctrine, seeks pleadings that are available to the public, and seeks documents that are irrelevant and not likely to lead to the discovery of admissible evidence. In addition, Blue Hills objects to this request to the extent it seeks documents related to the settlement of the Zoning Appeal, as the settlement agreement related to

the Zoning Appeal contains the following language prohibiting disclosure of the terms of

settlement:

> Confidentiality.  The terms of this Agreement are confidential, and
> shall not be disclosed without the parties' written consent to any
> person or entity other than the parties, their respective counsel and
> accountants, and any other persons to whom a party may have a
> legal duty to disclose the information.  The parties shall be able to
> disclose that the Appeal has been settled.  In the event that a party
> is required by subpoena or order, judgment, or decree of a court of
> competent jurisdiction or similar judicial tribunal to disclose the
> existence, terms, or contents of this Agreement, it shall, prior to
> such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills

notified the parties to the settlement of the Lender's discovery requests in this action.  The

parties to the settlement have not consented to the release of the settlement documents due to

concerns over the settlement terms becoming publicly available.  Therefore, in the absence of a

"subpoena or order, judgment or decree of a court . . .," Blue Hills is not authorized to release

documents related to the settlement of the Zoning Appeal.

## REQUEST NO. 4

All documents concerning the Payment.

## RESPONSE NO. 4

Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome,

vague and ambiguous with respect to "all documents concerning," seeks documents subject to

the attorney client privilege and work product doctrine, seeks pleadings that are available to the

public, and seeks documents that are irrelevant and not likely to lead to the discovery of

admissible evidence.  In addition, Blue Hills objects to this request to the extent it seeks

documents related to the settlement of the Zoning Appeal, as the settlement agreement related to

the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality.  The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information.  The parties shall be able to disclose that the Appeal has been settled.  In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action.  The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available.  Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Blue Hills is not authorized to release documents related to the settlement of the Zoning Appeal.

## REQUEST NO. 5

All documents listed on pages 4-5 of the Initial Disclosures of Blue Hills Office Park LLC, William Langelier and Gerald Fineberg.

## RESPONSE NO. 5

Blue Hills will make available for inspection at a mutually convenient time all documents identified in the Initial Disclosures of Blue Hills Office Park LLC, William Langelier and Gerald Fineberg except for documents subject to the confidentiality clause governing the settlement of the Zoning Appeal.  The settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality.  The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any

person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action. The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Blue Hills is not authorized to release documents related to the settlement of the Zoning Appeal.

## REQUEST NO. 6

All documents concerning the "general terms and conditions of the contemplated mortgage financing," as that phrase is used at paragraph 7 of Blue Hills' First Amended Complaint.

## RESPONSE NO. 6

Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Blue Hills will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills in its possession, custody and control, including, without limitation, the Mortgage Financing Application, Term Sheet, and letter dated August 31, 1999 attached to the First Amended Complaint as Exhibit "B."

## REQUEST NO. 7

All documents concerning Property taxes and/or Property tax escrows.

## RESPONSE NO. 7

Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Blue Hills will make available at a mutually convenient time the business records of Blue Hills regarding payment of taxes in connection with the Property.

## REQUEST NO. 8

All documents concerning any negotiations relating to the Zoning Appeal, the Settlement, and/or the Payment.

## RESPONSE NO. 8

Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," seeks documents subject to the attorney client privilege and work product doctrine, seeks pleading that are available to the public, and seeks documents that are irrelevant and not likely to lead to the discovery of admissible evidence. In addition, Blue Hills objects to this request to the extent it seeks documents related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of

> competent jurisdiction or similar judicial tribunal to disclose the
> existence, terms, or contents of this Agreement, it shall, prior to
> such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action. The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Blue Hills is not authorized to release documents related to the settlement of the Zoning Appeal.

## REQUEST NO. 9

All documents concerning monies received by Blue Hills other than rents received from Equiserve.

## RESPONSE NO. 9

Blue Hills objects to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning" and "monies received," and seeks documents subject to the attorney client privilege and work product doctrine. In addition, Blue Hills objects to this request to the extent it seeks documents related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and
> shall not be disclosed without the parties' written consent to any
> person or entity other than the parties, their respective counsel and
> accountants, and any other persons to whom a party may have a
> legal duty to disclose the information. The parties shall be able to
> disclose that the Appeal has been settled. In the event that a party
> is required by subpoena or order, judgment, or decree of a court of
> competent jurisdiction or similar judicial tribunal to disclose the
> existence, terms, or contents of this Agreement, it shall, prior to
> such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills

notified the parties to the settlement of the Lender's discovery requests in this action. The

parties to the settlement have not consented to the release of the settlement documents due to

concerns over the settlement terms becoming publicly available. Therefore, in the absence of a

"subpoena or order, judgment or decree of a court . . .," Blue Hills is not authorized to release

documents related to the settlement of the Zoning Appeal. Without waiving these objections,

Blue Hills will make available for inspection at a mutually convenient time all non-privileged,

relevant and responsive documents in its possession, custody or control that are not governed by

the above-referenced confidentiality clause.

## REQUEST NO. 10

All documents concerning any actual, considered, proposed, anticipated or pursued renovation, remodeling or re-leasing of the Property after Blue Hills learned that Equiserve would not be renewing its lease, including, without limitation, receipts for expenditures made to remodel or re-lease the Property, correspondence or other documents concerning communications with brokers, correspondence or other documents concerning communications with prospective tenants, and documents concerning actual and/or planned expenditures for re-leasing the Property.

## RESPONSE NO. 10

Blue Hills objects to this request as it is overly broad, unduly burdensome, vague and

ambiguous with respect to "all documents concerning," and seeks documents subject to the

attorney client privilege and work product doctrine. Without waiving these objections, Blue

Hills will make available for inspection at a mutually convenient time all non-privileged,

relevant and responsive documents in its possession, custody and control.

## REQUEST NO. 11

All documents that concern any communications concerning the Loan, the Property, property tax payments or property tax escrow payments for the Property, the lease between Blue Hills and Equiserve, Equiserve's leaving the Property, Blue Hills' efforts to re-lease the Property, the Zoning Appeal, the Settlement, the Payment, or the ZBA Decision, including

without limitation any between or among Blue Hills, its mortgagee, Originator, Depositor, Wells Fargo, LNR Partners, the Town of Canton, and/or Lender.

## RESPONSE NO. 11

Blue Hills objects to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," seeks documents subject to the attorney client privilege and work product doctrine, seeks pleadings that are available to the public, and seeks documents that are irrelevant and not likely to lead to the discovery of admissible evidence. In addition, Blue Hills objects to this request to the extent it seeks documents related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action. The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Blue Hills is not authorized to release documents related to the settlement of the Zoning Appeal. Without waiving these objections, Blue Hills will make available for inspection at a mutually convenient time the following documents in its possession, custody, and control:  the material Loan Documents, Blue Hills'

business records with respect to the payment of taxes in connection with the Property, the Equiserve Lease, documents relating to Blue Hills' efforts to re-lease the Property, and material written communications between Blue Hills and the Lender and/or its agents.

**REQUEST NO. 12**

All documents that concern any communications concerning the origination of the Loan.

**RESPONSE NO. 12**

Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents that concern" and "origination," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Blue Hills will make available at a mutually time all material written communications in its possession, custody and control between Blue Hills and the Lender and/or its agents.

**REQUEST NO. 13**

All documents that concern any communications among or between Blue Hills, Blueview and/or National Development.

**RESPONSE NO. 13**

Blue Hills objects to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents that concern," seeks documents subject to the attorney client privilege and work product doctrine, and seeks documents that are irrelevant and not likely to lead to the discovery of admissible evidence. In addition, Blue Hills objects to this request to the extent it seeks information related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> <u>Confidentiality</u>.  The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information.  The parties shall be able to disclose that the Appeal has been settled.  In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action.  The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available.  Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Blue Hills is not authorized to release information or documents related to the settlement of the Zoning Appeal.

## REQUEST NO. 14

All documents concerning or supporting Blue Hills' contention at paragraph 11 of Blue Hills' First Amended Complaint, that "[Originator] and Blue Hills agreed that the various required reserve deposits could be accessed by Blue Hills in the event that the Equiserve Lease was not renewed."

## RESPONSE NO. 14

Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine.  Without waiving these objections, Blue Hills will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills in its possession, custody and control.

**REQUEST NO. 15**

All documents concerning or supporting Blue Hills' contention at paragraph 12 of Blue Hills' First Amended Complaint, that "Blue Hills entered the above-described arrangement in reliance upon the foregoing provisions . . ."

**RESPONSE NO. 15**

Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Blue Hills will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills in its possession, custody and control.

**REQUEST NO. 16**

All documents concerning or supporting Blue Hills' contention at paragraph 16 of Blue Hills' First Amended Complaint, that "[t]he terms and provisions of the Term Sheet were incorporated by reference into the Mortgage Agreement and Note."

**RESPONSE NO. 16**

Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Blue Hills will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills in its possession, custody and control.

**REQUEST NO. 17**

All documents concerning or supporting Blue Hills' contention at paragraph 38 of Blue Hills' First Amended Complaint, that "[t]his information was then communicated to either or both of the defendants, through their agent, Wells Fargo."

**RESPONSE NO. 17**

Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome,
vague and ambiguous with respect to "all documents concerning", and seeks information subject
to the attorney client privilege and work product doctrine. Without waiving these objections,
Blue Hills states the information referenced in paragraph 38 of the First Amended Complaint
was communicated via telephone calls and that it has no responsive documents in its possession,
custody or control.

**REQUEST NO. 18**

All documents concerning or supporting Blue Hills' contention at paragraph 40 of Blue
Hills' First Amended Complaint, that Blue Hills' need for "substantial sums of money to
upgrade the Property's infrastructure and to make tenant improvements" due to, allegedly, "the
down turn in the real estate market coupled with a reduced number of tenants seeking larger
blocks of rental space" was "the very contingency anticipated when the Term Sheet was
executed."

**RESPONSE NO. 18**

Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome,
vague and ambiguous with respect to "all documents concerning," and seeks documents subject
to the attorney client privilege and work product doctrine. Without waiving these objections,
Blue Hills will make available for inspection at a mutually convenient time the material Loan
Documents and material written communications between the Lender and/or its agents and Blue
Hills.

**REQUEST NO. 19**

All documents concerning or supporting Blue Hills' contention at paragraph 75 of Blue
Hills' First Amended Complaint, that "[a]ll preconditions to Blue Hills' entitlement to
disbursement of funds sufficient to pay principal and interest for August and September, 2004
had been satisfied."

**RESPONSE NO. 19**

Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," seeks documents subject to the attorney client privilege and work product doctrine, and seeks documents related to payments made by Blue Hills in accordance with the Loan Documents that are already in the Lender's possession, custody or control. Without waiving these objections, Blue Hills will make available for inspection at a mutually convenient time the material Loan Documents, and material written communications between the Lender and/or its agents and Blue Hills.

**REQUEST NO. 20**

All documents concerning or supporting Blue Hills' contention at paragraph 84 of Blue Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully defaulted Blue Hills."

**RESPONSE NO. 20**

Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Blue Hills will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills, including, without limitation, the letter to Blue Hills dated September 17, 2004 declaring Blue Hills to be in default of its obligations under the Loan Documents.

**REQUEST NO. 21**

All documents concerning or supporting Blue Hills' contention at paragraph 85 of Blue Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully withheld from Blue Hills those amounts which Blue Hills were rightfully entitled to receive out of the Cash Collateral Account."

**RESPONSE NO. 21**

Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Blue Hills will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills, including, without limitation, the letter to Blue Hills dated September 17, 2004 declaring Blue Hills to be in default of its obligations under the Loan Documents.

**REQUEST NO. 22**

All documents concerning or supporting Blue Hills' contention at paragraph 86 of Blue Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully refused to allow Blue Hills to utilize funds on deposit in the Cash Collateral Account to pay principal and interest under the Mortgage Agreement."

**RESPONSE NO. 22**

Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Blue Hills will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills, including, without limitation, the letter to Blue Hills dated September 17, 2004 declaring Blue Hills to be in default of its obligations under the Loan Documents.

**REQUEST NO. 23**

All documents concerning or supporting Blue Hills' contention at paragraph 87 of Blue Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully foreclosed on the Property."

**RESPONSE NO. 23**

Blue Hills objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Blue Hills will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills, including, without limitation, the letter to Blue Hills dated September 17, 2004 declaring Blue Hills to be in default of its obligations under the Loan Documents.

**REQUEST NO. 24**

All documents concerning the Clearing Account, including without limitation all account statements and transaction receipts.

**RESPONSE NO. 24**

Blue Hills objects to this request to the extent it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," "Clearing Account," "account statements" and "transaction receipts," seeks documents subject to the attorney client privilege and work product doctrine, and seeks statements of account already in the Lender's possession, custody or control. Further, Blue Hills states that it is presumed for purposes of Request No. 24 that the "Clearing Account" referenced is the account named "LOCKBOX." Without waiving these objections, Blue Hills will make available for inspection at a mutually convenient time certain statements of account received by Blue Hills from Metrowest Bank and Banknorth, N.A. (successor to Metrowest Bank) for that account to the extent they are in Blue Hill's possession, custody or control.

**REQUEST NO. 25**

All documents identified in Blue Hills' responses to Defendants' First Set of Interrogatories.

**RESPONSE NO. 25**

Blue Hills objects to this request as it is overly broad, unduly burdensome, vague and

ambiguous, and seeks documents subject to the attorney client privilege and work product

doctrine.  In addition, Blue Hills objects to this request to the extent it seeks documents related to

the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal

contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality.  The terms of this Agreement are confidential, and
> shall not be disclosed without the parties' written consent to any
> person or entity other than the parties, their respective counsel and
> accountants, and any other persons to whom a party may have a
> legal duty to disclose the information.  The parties shall be able to
> disclose that the Appeal has been settled.  In the event that a party
> is required by subpoena or order, judgment, or decree of a court of
> competent jurisdiction or similar judicial tribunal to disclose the
> existence, terms, or contents of this Agreement, it shall, prior to
> such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills

notified the parties to the settlement of the Lender's discovery requests in this action.  The

parties to the settlement have not consented to the release of the settlement documents due to

concerns over the settlement terms becoming publicly available.  Therefore, in the absence of a

"subpoena or order, judgment or decree of a court . . .," Blue Hills is not authorized to release

documents related to the settlement of the Zoning Appeal.  Without waiving these objections,

Blue Hills will make available for inspection at a mutually convenient time all non-privileged

and responsive documents in its possession, custody and control identified in his answers to

interrogatories and which are not subject to the above-referenced confidentiality agreement.

**REQUEST NO. 26**

All documents identified in William Langelier's responses to Defendants' First Set of Interrogatories.

**RESPONSE NO. 26**

Blue Hills objects to this request as it is overly broad, unduly burdensome, vague and

ambiguous, and seeks documents subject to the attorney client privilege and work product

doctrine. In addition, Blue Hills objects to this request to the extent it seeks documents related to

the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal

contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and
> shall not be disclosed without the parties' written consent to any
> person or entity other than the parties, their respective counsel and
> accountants, and any other persons to whom a party may have a
> legal duty to disclose the information. The parties shall be able to
> disclose that the Appeal has been settled. In the event that a party
> is required by subpoena or order, judgment, or decree of a court of
> competent jurisdiction or similar judicial tribunal to disclose the
> existence, terms, or contents of this Agreement, it shall, prior to
> such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills

notified the parties to the settlement of the Lender's discovery requests in this action. The

parties to the settlement have not consented to the release of the settlement documents due to

concerns over the settlement terms becoming publicly available. Therefore, in the absence of a

"subpoena or order, judgment or decree of a court . . .," Blue Hills is not authorized to release

documents related to the settlement of the Zoning Appeal. Without waiving these objections,

Blue Hills will make available for inspection at a mutually convenient time all non-privileged

and responsive documents in its possession, custody and control identified in its answers to

interrogatories and which are not subject to the above-referenced confidentiality agreement.

**REQUEST NO. 27**

All documents identified in Gerald Fineberg's responses to Defendants' First Set of Interrogatories.

**RESPONSE NO. 27**

Blue Hills objects to this request as it is overly broad, unduly burdensome, vague and

ambiguous, and seeks documents subject to the attorney client privilege and work product

doctrine. In addition, Blue Hills objects to this request to the extent it seeks documents related to

the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal

contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and
> shall not be disclosed without the parties' written consent to any
> person or entity other than the parties, their respective counsel and
> accountants, and any other persons to whom a party may have a
> legal duty to disclose the information. The parties shall be able to
> disclose that the Appeal has been settled. In the event that a party
> is required by subpoena or order, judgment, or decree of a court of
> competent jurisdiction or similar judicial tribunal to disclose the
> existence, terms, or contents of this Agreement, it shall, prior to
> such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills

notified the parties to the settlement of the Lender's discovery requests in this action. The

parties to the settlement have not consented to the release of the settlement documents due to

concerns over the settlement terms becoming publicly available. Therefore, in the absence of a

"subpoena or order, judgment or decree of a court . . .," Blue Hills is not authorized to release

documents related to the settlement of the Zoning Appeal. Without waiving these objections,

Blue Hills will make available for inspection at a mutually convenient time all non-privileged

and responsive documents in its possession, custody and control identified in its answers to

interrogatories and which are not subject to the above-referenced confidentiality agreement.

**REQUEST NO. 28**

All documents concerning other lawsuits involving the Property.

**RESPONSE NO. 28**

Blue Hills objects to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning" and "other lawsuits," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Blue Hills will make available at a mutually convenient time all non-privileged, relevant and responsive documents in its possession, custody or control.

**REQUEST NO. 29**

All documents concerning or supporting your claims or defenses in this action.

**RESPONSE NO. 29**

Blue Hills objects to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine.

**REQUEST NO. 30**

All documents concerning or supporting your damages claims.

**RESPONSE NO. 30**

Blue Hills objects to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Blue Hills will make available for inspection at a mutually convenient time all non-privileged , relevant responsive documents in its possession, custody and control.

**REQUEST NO. 31**

All documents relevant to the subject matter of this action.

**RESPONSE NO. 31**

Blue Hills objects to this request as it is overly broad, unduly burdensome, vague and

ambiguous with respect to "all documents relevant," and seeks documents subject to the attorney

client privilege and work product doctrine.

BLUE HILLS OFFICE PARK LLC
By its attorneys,

Peter B. McGlynn, Esq. BBO# 333660
Meredith A. Swisher, Esq. BBO# 646866
BERNKOPF GOODMAN LLP
125 Summer Street, 13th floor
Boston, Massachusetts 02110
(617) 790-3000
pmcglynn@bg-llp.com
mswisher@bg-llp.com

Dated: November 11, 2005

#322804 v1/14500/9985

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was
served upon (each party appearing pro se and) the attorney of record for
each other party by mail (by hand) Nov 11, 2005

22

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLUE HILLS OFFICE PARK LLC,<br>          Plaintiff/Defendant-in-<br>          Counterclaim<br><br>v.<br><br>CREDIT SUISSE FIRST BOSTON<br>MORTGAGE SECURITY CORP.,<br>          Defendant.<br><br>and<br><br>CSFB 1999 – C1 ROYALL STREET, LLC<br>          Defendant/Plaintiff-in-<br>          Counterclaim<br><br>and<br><br>WILLIAM LANGELIER and GERALD<br>FINEBERG,<br>          Defendants-in-Counterclaim | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 05-CV-10506 (WGY) |

**GERALD FINEBERG'S RESPONSES TO DEFENDANTS' FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS**

Gerald Fineberg ("Fineberg") hereby responds to the First Request for Production of

Documents of the Defendants CSFB 1999-C1 Royall Street, LLC ("CSFB") and Credit Suisse

First Boston Mortgage Security Corp. ("CS Bank") as follows:

## I. STATEMENT AND GENERAL OBJECTIONS

Fineberg objects to Defendants' Request for Production of Documents to the extent its

"definitions" exceed the scope of the Federal Rules of Civil Procedure 26 and 34.  In addition,

Defendants' Requests are extremely broad in scope, include information subject to the attorney

client privilege and/or work product doctrine, and are overly burdensome. Fineberg hereby incorporates by reference each and every one of the general objections and statements into all of the following document responses.

## II. RESPONSES

### REQUEST NO. 1

All documents concerning the Loan.

### RESPONSE NO. 1

Fineberg objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Fineberg will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills in its possession, custody and control.

### REQUEST NO. 2

All documents concerning the Zoning Appeal.

### RESPONSE NO. 2

Fineberg objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," seeks documents subject to the attorney client privilege and work product doctrine, seeks pleadings that are available to the public, and seeks documents that are irrelevant and not likely to lead to the discovery of admissible evidence. In addition, Fineberg objects to this request to the extent it seeks documents related to the settlement of the Zoning Appeal, as the settlement agreement related to

the Zoning Appeal contains the following language prohibiting disclosure of the terms of

settlement:

> Confidentiality. The terms of this Agreement are confidential, and
> shall not be disclosed without the parties' written consent to any
> person or entity other than the parties, their respective counsel and
> accountants, and any other persons to whom a party may have a
> legal duty to disclose the information. The parties shall be able to
> disclose that the Appeal has been settled. In the event that a party
> is required by subpoena or order, judgment, or decree of a court of
> competent jurisdiction or similar judicial tribunal to disclose the
> existence, terms, or contents of this Agreement, it shall, prior to
> such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills

notified the parties to the settlement of the Lender's discovery requests in this action. The

parties to the settlement have not consented to the release of the settlement documents due to

concerns over the settlement terms becoming publicly available. Therefore, in the absence of a

"subpoena or order, judgment or decree of a court . . .," Fineberg is not authorized to release

documents related to the settlement of the Zoning Appeal.

## REQUEST NO. 3

All documents concerning the Settlement.

## RESPONSE NO. 3

Fineberg objects to this request to the extent that it is overly broad, unduly burdensome,

vague and ambiguous with respect to "all documents concerning," seeks documents subject to

the attorney client privilege and work product doctrine, seeks pleadings that are available to the

public, and seeks documents that are irrelevant and not likely to lead to the discovery of

admissible evidence. In addition, Fineberg objects to this request to the extent it seeks

documents related to the settlement of the Zoning Appeal, as the settlement agreement related to

the Zoning Appeal contains the following language prohibiting disclosure of the terms of

settlement:

> Confidentiality.  The terms of this Agreement are confidential, and
> shall not be disclosed without the parties' written consent to any
> person or entity other than the parties, their respective counsel and
> accountants, and any other persons to whom a party may have a
> legal duty to disclose the information.  The parties shall be able to
> disclose that the Appeal has been settled.  In the event that a party
> is required by subpoena or order, judgment, or decree of a court of
> competent jurisdiction or similar judicial tribunal to disclose the
> existence, terms, or contents of this Agreement, it shall, prior to
> such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills

notified the parties to the settlement of the Lender's discovery requests in this action.  The

parties to the settlement have not consented to the release of the settlement documents due to

concerns over the settlement terms becoming publicly available.  Therefore, in the absence of a

"subpoena or order, judgment or decree of a court . . .," Fineberg is not authorized to release

documents related to the settlement of the Zoning Appeal.

## REQUEST NO. 4

All documents concerning the Payment.

## RESPONSE NO. 4

Fineberg objects to this request to the extent that it is overly broad, unduly burdensome,

vague and ambiguous with respect to "all documents concerning," seeks documents subject to

the attorney client privilege and work product doctrine, seeks pleadings that are available to the

public, and seeks documents that are irrelevant and not likely to lead to the discovery of

admissible evidence.  In addition, Fineberg objects to this request to the extent it seeks

documents related to the settlement of the Zoning Appeal, as the settlement agreement related to

the Zoning Appeal contains the following language prohibiting disclosure of the terms of

settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills

notified the parties to the settlement of the Lender's discovery requests in this action. The

parties to the settlement have not consented to the release of the settlement documents due to

concerns over the settlement terms becoming publicly available. Therefore, in the absence of a

"subpoena or order, judgment or decree of a court . . .," Fineberg is not authorized to release

documents related to the settlement of the Zoning Appeal.

## REQUEST NO. 5

All documents listed on pages 4-5 of the Initial Disclosures of Blue Hills Office Park
LLC, William Langelier and Gerald Fineberg.

## RESPONSE NO. 5

Fineberg will make available for inspection at a mutually convenient time all documents

identified in the Initial Disclosures of Blue Hills Office Park LLC, William Langelier and Gerald

Fineberg except for documents subject to the confidentiality clause governing the settlement of

the Zoning Appeal. The settlement agreement related to the Zoning Appeal contains the

following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any

person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action. The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Fineberg is not authorized to release documents related to the settlement of the Zoning Appeal.

## REQUEST NO. 6

All documents concerning the "general terms and conditions of the contemplated mortgage financing," as that phrase is used at paragraph 7 of Blue Hills' First Amended Complaint.

## RESPONSE NO. 6

Fineberg objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Fineberg will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills in its possession, custody and control, including, without limitation, the Mortgage Financing Application, Term Sheet, and letter dated August 31, 1999 attached to the First Amended Complaint as Exhibit "B."

**REQUEST NO. 7**

All documents concerning Property taxes and/or Property tax escrows.

**RESPONSE NO. 7**

Fineberg objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Fineberg will make available at a mutually convenient time the business records of Blue Hills regarding payment of taxes in connection with the Property.

**REQUEST NO. 8**

All documents concerning any negotiations relating to the Zoning Appeal, the Settlement, and/or the Payment.

**RESPONSE NO. 8**

Fineberg objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," seeks documents subject to the attorney client privilege and work product doctrine, seeks pleading that are available to the public, and seeks documents that are irrelevant and not likely to lead to the discovery of admissible evidence. In addition, Fineberg objects to this request to the extent it seeks documents related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of

> competent jurisdiction or similar judicial tribunal to disclose the
> existence, terms, or contents of this Agreement, it shall, prior to
> such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills

notified the parties to the settlement of the Lender's discovery requests in this action. The

parties to the settlement have not consented to the release of the settlement documents due to

concerns over the settlement terms becoming publicly available. Therefore, in the absence of a

"subpoena or order, judgment or decree of a court . . .," Fineberg is not authorized to release

documents related to the settlement of the Zoning Appeal.

## REQUEST NO. 9

All documents concerning monies received by Blue Hills other than rents received from
Equiserve.

## RESPONSE NO. 9

Fineberg objects to this request as it is overly broad, unduly burdensome, vague and

ambiguous with respect to "all documents concerning" and "monies received," and seeks

documents subject to the attorney client privilege and work product doctrine. In addition,

Fineberg objects to this request to the extent it seeks documents related to the settlement of the

Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following

language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and
> shall not be disclosed without the parties' written consent to any
> person or entity other than the parties, their respective counsel and
> accountants, and any other persons to whom a party may have a
> legal duty to disclose the information. The parties shall be able to
> disclose that the Appeal has been settled. In the event that a party
> is required by subpoena or order, judgment, or decree of a court of
> competent jurisdiction or similar judicial tribunal to disclose the
> existence, terms, or contents of this Agreement, it shall, prior to
> such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action. The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Fineberg is not authorized to release documents related to the settlement of the Zoning Appeal. Without waiving these objections, Fineberg will make available for inspection at a mutually convenient time all non-privileged, relevant and responsive documents in his possession, custody or control that are not governed by the above-referenced confidentiality clause.

**REQUEST NO. 10**

All documents concerning any actual, considered, proposed, anticipated or pursued renovation, remodeling or re-leasing of the Property after Blue Hills learned that Equiserve would not be renewing its lease, including, without limitation, receipts for expenditures made to remodel or re-lease the Property, correspondence or other documents concerning communications with brokers, correspondence or other documents concerning communications with prospective tenants, and documents concerning actual and/or planned expenditures for re-leasing the Property.

**RESPONSE NO. 10**

Fineberg objects to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Fineberg will make available for inspection at a mutually convenient time all non-privileged, relevant and responsive documents in his possession, custody and control.

**REQUEST NO. 11**

All documents that concern any communications concerning the Loan, the Property, property tax payments or property tax escrow payments for the Property, the lease between Blue Hills and Equiserve, Equiserve's leaving the Property, Blue Hills' efforts to re-lease the Property, the Zoning Appeal, the Settlement, the Payment, or the ZBA Decision, including

without limitation any between or among Blue Hills, its mortgagee, Originator, Depositor, Wells Fargo, LNR Partners, the Town of Canton, and/or Lender.

## RESPONSE NO. 11

Fineberg objects to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," seeks documents subject to the attorney client privilege and work product doctrine, seeks pleadings that are available to the public, and seeks documents that are irrelevant and not likely to lead to the discovery of admissible evidence. In addition, Fineberg objects to this request to the extent it seeks documents related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action. The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Fineberg is not authorized to release documents related to the settlement of the Zoning Appeal. Without waiving these objections, Fineberg will make available for inspection at a mutually convenient time the following documents in his possession, custody, and control: the material Loan Documents, Blue Hills'

business records with respect to the payment of taxes in connection with the Property, the Equiserve Lease, documents relating to Blue Hills' efforts to re-lease the Property, and material written communications between Blue Hills and the Lender and/or its agents.

## REQUEST NO. 12

All documents that concern any communications concerning the origination of the Loan.

## RESPONSE NO. 12

Fineberg objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents that concern" and "origination," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Fineberg will make available at a mutually time all material written communications in his possession, custody and control between Blue Hills and the Lender and/or its agents.

## REQUEST NO. 13

All documents that concern any communications among or between Blue Hills, Blueview and/or National Development.

## RESPONSE NO. 13

Fineberg objects to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents that concern," seeks documents subject to the attorney client privilege and work product doctrine, and seeks documents that are irrelevant and not likely to lead to the discovery of admissible evidence. In addition, Fineberg objects to this request to the extent it seeks information related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action. The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Fineberg is not authorized to release information or documents related to the settlement of the Zoning Appeal.

**REQUEST NO. 14**

All documents concerning or supporting Blue Hills' contention at paragraph 11 of Blue Hills' First Amended Complaint, that "[Originator] and Blue Hills agreed that the various required reserve deposits could be accessed by Blue Hills in the event that the Equiserve Lease was not renewed."

**RESPONSE NO. 14**

Fineberg objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Fineberg will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills in its possession, custody and control.

**REQUEST NO. 15**

All documents concerning or supporting Blue Hills' contention at paragraph 12 of Blue Hills' First Amended Complaint, that "Blue Hills entered the above-described arrangement in reliance upon the foregoing provisions . . ."

**RESPONSE NO. 15**

Fineberg objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Fineberg will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills in its possession, custody and control.

**REQUEST NO. 16**

All documents concerning or supporting Blue Hills' contention at paragraph 16 of Blue Hills' First Amended Complaint, that "[t]he terms and provisions of the Term Sheet were incorporated by reference into the Mortgage Agreement and Note."

**RESPONSE NO. 16**

Fineberg objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Fineberg will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills in its possession, custody and control.

**REQUEST NO. 17**

All documents concerning or supporting Blue Hills' contention at paragraph 38 of Blue Hills' First Amended Complaint, that "[t]his information was then communicated to either or both of the defendants, through their agent, Wells Fargo."

**RESPONSE NO. 17**

Fineberg objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning", and seeks information subject to the attorney client privilege and work product doctrine. Without waiving these objections, Fineberg states the information referenced in paragraph 38 of the First Amended Complaint was communicated via telephone calls and that he has no responsive documents in his possession, custody or control.

**REQUEST NO. 18**

All documents concerning or supporting Blue Hills' contention at paragraph 40 of Blue Hills' First Amended Complaint, that Blue Hills' need for "substantial sums of money to upgrade the Property's infrastructure and to make tenant improvements" due to, allegedly, "the down turn in the real estate market coupled with a reduced number of tenants seeking larger blocks of rental space" was "the very contingency anticipated when the Term Sheet was executed."

**RESPONSE NO. 18**

Fineberg objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Fineberg will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills.

**REQUEST NO. 19**

All documents concerning or supporting Blue Hills' contention at paragraph 75 of Blue Hills' First Amended Complaint, that "[a]ll preconditions to Blue Hills' entitlement to disbursement of funds sufficient to pay principal and interest for August and September, 2004 had been satisfied."

**RESPONSE NO. 19**

Fineberg objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," seeks documents subject to the attorney client privilege and work product doctrine, and seeks documents related to payments made by Blue Hills in accordance with the Loan Documents that are already in the Lender's possession, custody or control. Without waiving these objections, Fineberg will make available for inspection at a mutually convenient time the material Loan Documents, and material written communications between the Lender and/or its agents and Blue Hills.

**REQUEST NO. 20**

All documents concerning or supporting Blue Hills' contention at paragraph 84 of Blue Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully defaulted Blue Hills."

**RESPONSE NO. 20**

Fineberg objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Fineberg will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills, including, without limitation, the letter to Blue Hills dated September 17, 2004 declaring Blue Hills to be in default of its obligations under the Loan Documents.

**REQUEST NO. 21**

All documents concerning or supporting Blue Hills' contention at paragraph 85 of Blue Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully withheld from Blue Hills those amounts which Blue Hills were rightfully entitled to receive out of the Cash Collateral Account."

**RESPONSE NO. 21**

Fineberg objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Fineberg will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills, including, without limitation, the letter to Blue Hills dated September 17, 2004 declaring Blue Hills to be in default of its obligations under the Loan Documents.

**REQUEST NO. 22**

All documents concerning or supporting Blue Hills' contention at paragraph 86 of Blue Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully refused to allow Blue Hills to utilize funds on deposit in the Cash Collateral Account to pay principal and interest under the Mortgage Agreement."

**RESPONSE NO. 22**

Fineberg objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Fineberg will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills, including, without limitation, the letter to Blue Hills dated September 17, 2004 declaring Blue Hills to be in default of its obligations under the Loan Documents.

**REQUEST NO. 23**

All documents concerning or supporting Blue Hills' contention at paragraph 87 of Blue Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully foreclosed on the Property."

**RESPONSE NO. 23**

Fineberg objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Fineberg will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills, including, without limitation, the letter to Blue Hills dated September 17, 2004 declaring Blue Hills to be in default of its obligations under the Loan Documents.

**REQUEST NO. 24**

All documents concerning the Clearing Account, including without limitation all account statements and transaction receipts.

**RESPONSE NO. 24**

Fineberg objects to this request to the extent it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," "Clearing Account," "account statements" and "transaction receipts," seeks documents subject to the attorney client privilege and work product doctrine, and seeks statements of account already in the Lender's possession, custody or control. Further, Fineberg states that it is presumed for purposes of Request No. 24 that the "Clearing Account" referenced is the account named "LOCKBOX." Without waiving these objections, Fineberg will make available for inspection at a mutually convenient time certain statements of account received by Blue Hills from Metrowest Bank and Banknorth, N.A. (successor to Metrowest Bank) for that account to the extent they are in Fineberg's possession, custody or control.

**REQUEST NO. 25**

All documents identified in Blue Hills' responses to Defendants' First Set of Interrogatories.

**RESPONSE NO. 25**

Fineberg objects to this request as it is overly broad, unduly burdensome, vague and ambiguous, and seeks documents subject to the attorney client privilege and work product doctrine. In addition, Fineberg objects to this request to the extent it seeks documents related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action. The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Fineberg is not authorized to release documents related to the settlement of the Zoning Appeal. Without waiving these objections, Fineberg will make available for inspection at a mutually convenient time all non-privileged and responsive documents in his possession, custody and control identified in his answers to interrogatories and which are not subject to the above-referenced confidentiality agreement.

## REQUEST NO. 26

All documents identified in William Langelier's responses to Defendants' First Set of Interrogatories.

## RESPONSE NO. 26

Fineberg objects to this request as it is overly broad, unduly burdensome, vague and ambiguous, and seeks documents subject to the attorney client privilege and work product doctrine. In addition, Fineberg objects to this request to the extent it seeks documents related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action. The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Fineberg is not authorized to release documents related to the settlement of the Zoning Appeal. Without waiving these objections, Fineberg will make available for inspection at a mutually convenient time all non-privileged and responsive documents in his possession, custody and control identified in his answers to interrogatories and which are not subject to the above-referenced confidentiality agreement.

**REQUEST NO. 27**

All documents identified in Gerald Fineberg's responses to Defendants' First Set of Interrogatories.

**RESPONSE NO. 27**

Fineberg objects to this request as it is overly broad, unduly burdensome, vague and ambiguous, and seeks documents subject to the attorney client privilege and work product doctrine. In addition, Fineberg objects to this request to the extent it seeks documents related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action. The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Fineberg is not authorized to release documents related to the settlement of the Zoning Appeal. Without waiving these objections, Fineberg will make available for inspection at a mutually convenient time all non-privileged and responsive documents in his possession, custody and control identified in his answers to interrogatories and which are not subject to the above-referenced confidentiality agreement.

**REQUEST NO. 28**

All documents concerning other lawsuits involving the Property.

**RESPONSE NO. 28**

Fineberg objects to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning" and "other lawsuits," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Fineberg will make available at a mutually convenient time all non-privileged, relevant and responsive documents in his possession, custody or control.

**REQUEST NO. 29**

All documents concerning or supporting your claims or defenses in this action.

**RESPONSE NO. 29**

Fineberg objects to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine.

**REQUEST NO. 30**

All documents concerning or supporting your damages claims.

**RESPONSE NO. 30**

Fineberg objects to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Fineberg will make available for inspection at a mutually convenient time all non-privileged , relevant responsive documents in his possession, custody and control.

**REQUEST NO. 31**

All documents relevant to the subject matter of this action.

**RESPONSE NO. 31**

Fineberg objects to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents relevant," and seeks documents subject to the attorney client privilege and work product doctrine.

GERALD FINEBERG
By his attorneys,

Peter B. McGlynn, Esq. BBO# 333660
Meredith A. Swisher, Esq. BBO# 646866
BERNKOPF GOODMAN LLP
125 Summer Street, 13th floor
Boston, Massachusetts 02110
(617) 790-3000
pmcglynn@bg-llp.com
mswisher@bg-llp.com

Dated: November 11, 2005
#323120 v1/14500/9985

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each other party by mail (by hand)

22

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BLUE HILLS OFFICE PARK LLC,<br>　　　Plaintiff/Defendant-in-<br>　　　Counterclaim<br><br>v.<br><br>CREDIT SUISSE FIRST BOSTON<br>MORTGAGE SECURITY CORP.,<br>　　　Defendant.<br><br>and<br><br>CSFB 1999 – C1 ROYALL STREET, LLC<br>　　　Defendant/Plaintiff-in-<br>　　　Counterclaim<br><br>and<br><br>WILLIAM LANGELIER and GERALD<br>FINEBERG,<br>　　　Defendants-in-Counterclaim | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 05-CV-10506 (WGY) |

## WILLIAM LANGELIER'S RESPONSES TO DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

William Langelier ("Langelier") hereby responds to the First Request for Production of

Documents of the Defendants CSFB 1999-C1 Royall Street, LLC ("CSFB") and Credit Suisse

First Boston Mortgage Security Corp. ("CS Bank") as follows:

### I. STATEMENT AND GENERAL OBJECTIONS

Langelier objects to Defendants' Request for Production of Documents to the extent its

"definitions" exceed the scope of the Federal Rules of Civil Procedure 26 and 34. In addition,

Defendants' Requests are extremely broad in scope, include information subject to the

attorney/client privilege and/or work-product doctrine, and are overly burdensome. Langelier hereby incorporates by reference each and every one of the general objections and statements into all of the following document responses.

## II. RESPONSES

### REQUEST NO. 1

All documents concerning the Loan.

### RESPONSE NO. 1

Langelier objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Langelier will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills in its possession, custody and control.

### REQUEST NO. 2

All documents concerning the Zoning Appeal.

### RESPONSE NO. 2

Langelier objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," seeks documents subject to the attorney client privilege and work product doctrine, seeks pleadings that are available to the public, and seeks documents that are irrelevant and not likely to lead to the discovery of admissible evidence. In addition, Langelier objects to this request to the extent it seeks documents related to the settlement of the Zoning Appeal, as the settlement agreement related to

the Zoning Appeal contains the following language prohibiting disclosure of the terms of

settlement:

> Confidentiality.  The terms of this Agreement are confidential, and
> shall not be disclosed without the parties' written consent to any
> person or entity other than the parties, their respective counsel and
> accountants, and any other persons to whom a party may have a
> legal duty to disclose the information.  The parties shall be able to
> disclose that the Appeal has been settled.  In the event that a party
> is required by subpoena or order, judgment, or decree of a court of
> competent jurisdiction or similar judicial tribunal to disclose the
> existence, terms, or contents of this Agreement, it shall, prior to
> such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills

notified the parties to the settlement of the Lender's discovery requests in this action.  The

parties to the settlement have not consented to the release of the settlement documents due to

concerns over the settlement terms becoming publicly available.  Therefore, in the absence of a

"subpoena or order, judgment or decree of a court . . .," Langelier is not authorized to release

documents related to the settlement of the Zoning Appeal.

## REQUEST NO. 3

All documents concerning the Settlement.

## RESPONSE NO. 3

Langelier objects to this request to the extent that it is overly broad, unduly burdensome,

vague and ambiguous with respect to "all documents concerning," seeks documents subject to

the attorney client privilege and work product doctrine, seeks pleadings that are available to the

public, and seeks documents that are irrelevant and not likely to lead to the discovery of

admissible evidence.  In addition, Langelier objects to this request to the extent it seeks

documents related to the settlement of the Zoning Appeal, as the settlement agreement related to

the Zoning Appeal contains the following language prohibiting disclosure of the terms of

settlement:

> <u>Confidentiality</u>. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills

notified the parties to the settlement of the Lender's discovery requests in this action. The

parties to the settlement have not consented to the release of the settlement documents due to

concerns over the settlement terms becoming publicly available. Therefore, in the absence of a

"subpoena or order, judgment or decree of a court . . .," Langelier is not authorized to release

documents related to the settlement of the Zoning Appeal.

## REQUEST NO. 4

All documents concerning the Payment.

## RESPONSE NO. 4

Langelier objects to this request to the extent that it is overly broad, unduly burdensome,

vague and ambiguous with respect to "all documents concerning," seeks documents subject to

the attorney client privilege and work product doctrine, seeks pleadings that are available to the

public, and seeks documents that are irrelevant and not likely to lead to the discovery of

admissible evidence. In addition, Langelier objects to this request to the extent it seeks

documents related to the settlement of the Zoning Appeal, as the settlement agreement related to

the Zoning Appeal contains the following language prohibiting disclosure of the terms of

settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills

notified the parties to the settlement of the Lender's discovery requests in this action. The

parties to the settlement have not consented to the release of the settlement documents due to

concerns over the settlement terms becoming publicly available. Therefore, in the absence of a

"subpoena or order, judgment or decree of a court . . .," Langelier is not authorized to release

documents related to the settlement of the Zoning Appeal.

## REQUEST NO. 5

All documents listed on pages 4-5 of the Initial Disclosures of Blue Hills Office Park
LLC, William Langelier and Gerald Fineberg.

## RESPONSE NO. 5

Langelier will make available for inspection at a mutually convenient time all documents

identified in the Initial Disclosures of Blue Hills Office Park LLC, William Langelier and Gerald

Fineberg except for documents subject to the confidentiality clause governing the settlement of

the Zoning Appeal. The settlement agreement related to the Zoning Appeal contains the

following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any

person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action. The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Langelier is not authorized to release documents related to the settlement of the Zoning Appeal.

## REQUEST NO. 6

All documents concerning the "general terms and conditions of the contemplated mortgage financing," as that phrase is used at paragraph 7 of Blue Hills' First Amended Complaint.

## RESPONSE NO. 6

Langelier objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Langelier will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills in its possession, custody and control, including, without limitation, the Mortgage Financing Application, Term Sheet, and letter dated August 31, 1999 attached to the First Amended Complaint as Exhibit "B."

**REQUEST NO. 7**

All documents concerning Property taxes and/or Property tax escrows.

**RESPONSE NO. 7**

Langelier objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Langelier will make available at a mutually convenient time the business records of Blue Hills regarding payment of taxes in connection with the Property.

**REQUEST NO. 8**

All documents concerning any negotiations relating to the Zoning Appeal, the Settlement, and/or the Payment.

**RESPONSE NO. 8**

Langelier objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," seeks documents subject to the attorney client privilege and work product doctrine, seeks pleading that are available to the public, and seeks documents that are irrelevant and not likely to lead to the discovery of admissible evidence. In addition, Langelier objects to this request to the extent it seeks documents related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of

competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action. The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Langelier is not authorized to release documents related to the settlement of the Zoning Appeal.

**REQUEST NO. 9**

All documents concerning monies received by Blue Hills other than rents received from Equiserve.

**RESPONSE NO. 9**

Langelier objects to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning" and "monies received," and seeks documents subject to the attorney client privilege and work product doctrine. In addition, Langelier objects to this request to the extent it seeks documents related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action. The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Langelier is not authorized to release documents related to the settlement of the Zoning Appeal. Without waiving these objections, Langelier will make available for inspection at a mutually convenient time all non-privileged, relevant and responsive documents in his possession, custody or control that are not governed by the above-referenced confidentiality clause.

**REQUEST NO. 10**

All documents concerning any actual, considered, proposed, anticipated or pursued renovation, remodeling or re-leasing of the Property after Blue Hills learned that Equiserve would not be renewing its lease, including, without limitation, receipts for expenditures made to remodel or re-lease the Property, correspondence or other documents concerning communications with brokers, correspondence or other documents concerning communications with prospective tenants, and documents concerning actual and/or planned expenditures for re-leasing the Property.

**RESPONSE NO. 10**

Langelier objects to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Langelier will make available for inspection at a mutually convenient time all non-privileged, relevant and responsive documents in his possession, custody and control.

**REQUEST NO. 11**

All documents that concern any communications concerning the Loan, the Property, property tax payments or property tax escrow payments for the Property, the lease between Blue Hills and Equiserve, Equiserve's leaving the Property, Blue Hills' efforts to re-lease the Property, the Zoning Appeal, the Settlement, the Payment, or the ZBA Decision, including

without limitation any between or among Blue Hills, its mortgagee, Originator, Depositor, Wells Fargo, LNR Partners, the Town of Canton, and/or Lender.

## RESPONSE NO. 11

Langelier objects to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," seeks documents subject to the attorney client privilege and work product doctrine, seeks pleadings that are available to the public, and seeks documents that are irrelevant and not likely to lead to the discovery of admissible evidence. In addition, Langelier objects to this request to the extent it seeks documents related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action. The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Langelier is not authorized to release documents related to the settlement of the Zoning Appeal. Without waiving these objections, Langelier will make available for inspection at a mutually convenient time the following documents in his possession, custody, and control: the material Loan Documents, Blue Hills'

business records with respect to the payment of taxes in connection with the Property, the

Equiserve Lease, documents relating to Blue Hills' efforts to re-lease the Property, and material

written communications between Blue Hills and the Lender and/or its agents.

**REQUEST NO. 12**

All documents that concern any communications concerning the origination of the Loan.

**RESPONSE NO. 12**

Langelier objects to this request to the extent that it is overly broad, unduly burdensome,

vague and ambiguous with respect to "all documents that concern" and "origination," and seeks

documents subject to the attorney client privilege and work product doctrine. Without waiving

these objections, Langelier will make available at a mutually time all material written

communications in his possession, custody and control between Blue Hills and the Lender and/or

its agents.

**REQUEST NO. 13**

All documents that concern any communications among or between Blue Hills, Blueview
and/or National Development.

**RESPONSE NO. 13**

Langelier objects to this request as it is overly broad, unduly burdensome, vague and

ambiguous with respect to "all documents that concern," seeks documents subject to the attorney

client privilege and work product doctrine, and seeks documents that are irrelevant and not likely

to lead to the discovery of admissible evidence. In addition, Langelier objects to this request to

the extent it seeks information related to the settlement of the Zoning Appeal, as the settlement

agreement related to the Zoning Appeal contains the following language prohibiting disclosure

of the terms of settlement:

Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action. The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Langelier is not authorized to release information or documents related to the settlement of the Zoning Appeal.

**REQUEST NO. 14**

All documents concerning or supporting Blue Hills' contention at paragraph 11 of Blue Hills' First Amended Complaint, that "[Originator] and Blue Hills agreed that the various required reserve deposits could be accessed by Blue Hills in the event that the Equiserve Lease was not renewed."

**RESPONSE NO. 14**

Langelier objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Langelier will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills in its possession, custody and control.

**REQUEST NO. 15**

All documents concerning or supporting Blue Hills' contention at paragraph 12 of Blue Hills' First Amended Complaint, that "Blue Hills entered the above-described arrangement in reliance upon the foregoing provisions . . .."

**RESPONSE NO. 15**

Langelier objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Langelier will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills in its possession, custody and control.

**REQUEST NO. 16**

All documents concerning or supporting Blue Hills' contention at paragraph 16 of Blue Hills' First Amended Complaint, that "[t]he terms and provisions of the Term Sheet were incorporated by reference into the Mortgage Agreement and Note."

**RESPONSE NO. 16**

Langelier objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Langelier will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills in its possession, custody and control.

**REQUEST NO. 17**

All documents concerning or supporting Blue Hills' contention at paragraph 38 of Blue Hills' First Amended Complaint, that "[t]his information was then communicated to either or both of the defendants, through their agent, Wells Fargo."

**RESPONSE NO. 17**

Langelier objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning", and seeks information subject to the attorney client privilege and work product doctrine. Without waiving these objections, Langelier states the information referenced in paragraph 38 of the First Amended Complaint was communicated via telephone calls and that he has no responsive documents in his possession, custody or control.

**REQUEST NO. 18**

All documents concerning or supporting Blue Hills' contention at paragraph 40 of Blue Hills' First Amended Complaint, that Blue Hills' need for "substantial sums of money to upgrade the Property's infrastructure and to make tenant improvements" due to, allegedly, "the down turn in the real estate market coupled with a reduced number of tenants seeking larger blocks of rental space" was "the very contingency anticipated when the Term Sheet was executed."

**RESPONSE NO. 18**

Langelier objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Langelier will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills.

**REQUEST NO. 19**

All documents concerning or supporting Blue Hills' contention at paragraph 75 of Blue Hills' First Amended Complaint, that "[a]ll preconditions to Blue Hills' entitlement to disbursement of funds sufficient to pay principal and interest for August and September, 2004 had been satisfied."

**RESPONSE NO. 19**

Langelier objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," seeks documents subject to the attorney client privilege and work product doctrine, and seeks documents related to payments made by Blue Hills in accordance with the Loan Documents that are already in the Lender's possession, custody or control. Without waiving these objections, Langelier will make available for inspection at a mutually convenient time the material Loan Documents, and material written communications between the Lender and/or its agents and Blue Hills.

**REQUEST NO. 20**

All documents concerning or supporting Blue Hills' contention at paragraph 84 of Blue Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully defaulted Blue Hills."

**RESPONSE NO. 20**

Langelier objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Langelier will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills, including, without limitation, the letter to Blue Hills dated September 17, 2004 declaring Blue Hills to be in default of its obligations under the Loan Documents.

**REQUEST NO. 21**

All documents concerning or supporting Blue Hills' contention at paragraph 85 of Blue Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully withheld from Blue Hills those amounts which Blue Hills were rightfully entitled to receive out of the Cash Collateral Account."

**RESPONSE NO. 21**

Langelier objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine.  Without waiving these objections, Langelier will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills, including, without limitation, the letter to Blue Hills dated September 17, 2004 declaring Blue Hills to be in default of its obligations under the Loan Documents.

**REQUEST NO. 22**

All documents concerning or supporting Blue Hills' contention at paragraph 86 of Blue Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully refused to allow Blue Hills to utilize funds on deposit in the Cash Collateral Account to pay principal and interest under the Mortgage Agreement."

**RESPONSE NO. 22**

Langelier objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine.  Without waiving these objections, Langelier will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills, including, without limitation, the letter to Blue Hills dated September 17, 2004 declaring Blue Hills to be in default of its obligations under the Loan Documents.

**REQUEST NO. 23**

All documents concerning or supporting Blue Hills' contention at paragraph 87 of Blue Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully foreclosed on the Property."

**RESPONSE NO. 23**

Langelier objects to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Langelier will make available for inspection at a mutually convenient time the material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills, including, without limitation, the letter to Blue Hills dated September 17, 2004 declaring Blue Hills to be in default of its obligations under the Loan Documents.

**REQUEST NO. 24**

All documents concerning the Clearing Account, including without limitation all account statements and transaction receipts.

**RESPONSE NO. 24**

Langelier objects to this request to the extent it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," "Clearing Account," "account statements" and "transaction receipts," seeks documents subject to the attorney client privilege and work product doctrine, and seeks statements of account already in the Lender's possession, custody or control. Further, Langelier states that it is presumed for purposes of Request No. 24 that the "Clearing Account" referenced is the account named "LOCKBOX." Without waiving these objections, Fineberg will make available for inspection at a mutually convenient time certain statements of account received by Blue Hills from Metrowest Bank and Banknorth, N.A. (successor to Metrowest Bank) for that account to the extent they are in Langelier's possession, custody or control.

## REQUEST NO. 25

All documents identified in Blue Hills' responses to Defendants' First Set of Interrogatories.

## RESPONSE NO. 25

Langelier objects to this request as it is overly broad, unduly burdensome, vague and ambiguous, and seeks documents subject to the attorney client privilege and work product doctrine. In addition, Langelier objects to this request to the extent it seeks documents related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action. The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Langelier is not authorized to release documents related to the settlement of the Zoning Appeal. Without waiving these objections, Langelier will make available for inspection at a mutually convenient time all non-privileged and responsive documents in his possession, custody and control identified in his answers to interrogatories and which are not subject to the above-referenced confidentiality agreement.

## REQUEST NO. 26

All documents identified in William Langelier's responses to Defendants' First Set of Interrogatories.

## RESPONSE NO. 26

Langelier objects to this request as it is overly broad, unduly burdensome, vague and ambiguous, and seeks documents subject to the attorney client privilege and work product doctrine. In addition, Langelier objects to this request to the extent it seeks documents related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action. The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Langelier is not authorized to release documents related to the settlement of the Zoning Appeal. Without waiving these objections, Langelier will make available for inspection at a mutually convenient time all non-privileged and responsive documents in his possession, custody and control identified in his answers to interrogatories and which are not subject to the above-referenced confidentiality agreement.

**REQUEST NO. 27**

All documents identified in Gerald Fineberg's responses to Defendants' First Set of Interrogatories.

**RESPONSE NO. 27**

Langelier objects to this request as it is overly broad, unduly burdensome, vague and ambiguous, and seeks documents subject to the attorney client privilege and work product doctrine. In addition, Langelier objects to this request to the extent it seeks documents related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action. The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Langelier is not authorized to release documents related to the settlement of the Zoning Appeal. Without waiving these objections, Langelier will make available for inspection at a mutually convenient time all non-privileged and responsive documents in his possession, custody and control identified in his answers to interrogatories and which are not subject to the above-referenced confidentiality agreement.

**REQUEST NO. 28**

All documents concerning other lawsuits involving the Property.

**RESPONSE NO. 28**

Langelier objects to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning" and "other lawsuits," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Langelier will make available at a mutually convenient time all non-privileged, relevant and responsive documents in his possession, custody or control.

**REQUEST NO. 29**

All documents concerning or supporting your claims or defenses in this action.

**RESPONSE NO. 29**

Langelier objects to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine.

**REQUEST NO. 30**

All documents concerning or supporting your damages claims.

**RESPONSE NO. 30**

Langelier objects to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Langelier will make available for inspection at a mutually convenient time all non-privileged , relevant responsive documents in his possession, custody and control.

**REQUEST NO. 31**

All documents relevant to the subject matter of this action.

**RESPONSE NO. 31**

Langelier objects to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents relevant," and seeks documents subject to the attorney client privilege and work product doctrine.

                              WILLIAM LANGELIER
                              By his attorneys,


                              Peter B. McGlynn, Esq. BBO# 333660
                              Meredith A. Swisher, Esq. BBO# 646866
                              BERNKOPF GOODMAN LLP
                              125 Summer Street, 13th floor
                              Boston, Massachusetts 02110
                              (617) 790-3000
                              pmcglynn@bg-llp.com
Dated: November 11, 2005      mswisher@bg-llp.com

#323119 v1/14500/9985


**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each other party by mail (by hand)

22

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLUE HILLS OFFICE PARK LLC, <br>       Plaintiff/Defendant-in- <br>       Counterclaim <br><br> v. <br><br> CREDIT SUISSE FIRST BOSTON <br> MORTGAGE SECURITY CORP., <br>       Defendant. <br><br> and <br><br> CSFB 1999 – C1 ROYALL STREET, LLC <br>       Defendant/Plaintiff-in- <br>       Counterclaim <br><br> and <br><br> WILLIAM LANGELIER and GERALD <br> FINEBERG, <br>       Defendants-in-Counterclaim | Civil Action No. 05-CV-10506 (WGY) |

## BLUE HILLS OFFICE PARK LLC'S ANSWERS TO DEFENDANTS' FIRST SET OF INTERROGATORIES

Blue Hills Office Park LLC ("Blue Hills") hereby answers the First Set of Interrogatories by the Defendants CSFB 1999-C1 Royall Street, LLC ("CSFB") and Credit Suisse First Boston Mortgage Security Corp. ("CS Bank") as follows:

## GENERAL OBJECTIONS

Blue Hills objects to each of Defendants' interrogatories to the extent that each interrogatory recites or incorporates a "definition" and/or an "instruction" which exceeds the scope of the Federal Rules of Civil Procedure. Blue Hills also objects to each interrogatory to

the extent that each interrogatory is vague, overly broad, unduly burdensome, seeks information

that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence,

seeks information that is not in Smith's possession, custody or control, seeks information that is

already in Defendants' possession, custody or control, seeks information that is subject to the

attorney-client privilege and/or the attorney work-product doctrine, and seeks information that is

otherwise beyond the scope of permissible discovery.

Blue Hills hereby incorporates by reference each and every one of its general objections

into each and every Answer as if fully set forth therein.

Blue Hills reserves its right to supplement its Answers pursuant to Rule 26(e) in the event

that information that may be responsive to these interrogatories becomes available.

## INTERROGATORY NO. 1

Identify each and every person who prepared the responses to these interrogatories and/or
assisted in the preparation of the responses to these interrogatories, and identify the specific
interrogatories with respect to which each such person provided assistance.

## ANSWER NO. 1

Other than counsel, Joseph Donovan, Lawrence Needle, and Daniel Frank assisted in the

preparation of these answers to interrogatories.

## INTERROGATORY NO. 2

Describe each communication that took place during the period from July 1, 1999
through November 30, 2004, and concerned the lease between Blue Hills and Equiserve,
Equiserve leaving the Property, Blue Hills' efforts to re-lease the Property, Blue Hills' requests
for meetings with the mortgagee or Wells Fargo or LNR Partners, Blue Hills' requests for
disbursements from Loan reserve or escrow accounts, payment of property taxes for the
Property, and/or payments to the Tax Fund Sub-account (as that term is used in paragraph 29 of
Blue Hills' First Amended Complaint), including without limitation communications between
you and the mortgagee and/or Wells Fargo and/or LNR Partners, and communications among
any principals, members, managers, employees, agents, or affiliates of Blue Hills, and, in your
answer:

a)    state the nature, date, time and place of each communication;

b)      identify the person(s) who made each communication;
c)      identify the person(s) who received each communication; and
d)      identify each and every document which reflects, constitutes, or concerns
        each communication.

## ANSWER NO. 2

Blue Hills objects to this interrogatory to the extent that it is overly broad, unduly

burdensome, vague and ambiguous and seeks information that is subject to attorney-client

privilege.  Blue Hills further objects to this interrogatory to the extent its multiple subparts

exceed the limit on interrogatories under the court order governing phased discovery.  Without

waiving these objections, Blue Hills states that it and its agents had several conversations with

the Defendants from in or about the fall of 2003 through the date of foreclosure as well as

conversations with third parties.  With respect to written communications, pursuant to Fed. R.

Civ. P. 33(c), Blue Hills will make available at a mutually convenient time all non-privileged and

relevant written communications in his possession, custody or control.

## INTERROGATORY NO. 3

State the basis for the allegation, in paragraph 11 of Blue Hills First Amended Complaint,
that "[Originator] and Blue Hills agreed that the various required reserve deposits could be
accessed by Blue Hills in the event that the Equiserve Lease was not renewed."

## ANSWER NO. 3

Paragraph 6(c)(ix) of the Mortgage Agreement requires the Lender to disburse to Blue

Hills funds from Reserve Accounts established with Blue Hills' own funds to pay principal and

interest due on the Note.  The disbursement arrangements specifically contemplated release of

funds in the event the Equiserve lease was not renewed or extended.  In or about August 1999,

when Blue Hills and the original Lender agreed upon the terms and conditions of the $33.5

million loan to Blue Hills (the "Loan"), the parties were fully aware that the property located at

150 Royall Street, Canton, Massachusetts ("Property") was leased to a single tenant, Equiserve

3

Limited Partnership ("Equiserve"), which lease revenue was the sole recurring source of funds available to service the Loan. The parties were also aware that the Equiserve lease term expired on July 31, 2004, which expiration date is prior to the maturity date of the Loan. As a result, the Lender required Blue Hills to direct a substantial portion of its cash flow from the ownership of the Property into reserve accounts to address the fact that attracting new tenants would likely require significant expenditures to re-tenant the building for a single, a few or multiple tenants. At the time the Equiserve Lease term expired, a total of approximately $4 million was on deposit with the Lender in those Reserve Accounts. It was therefore clearly intended that Blue Hills would have access to deposits in the Reserve Accounts to address the circumstance of the Equiserve Lease not being renewed. The original Term Sheet for the Loan summarizing the intent of the Parties states that "funds will be available to the Borrower for the tenant improvements and leasing commissions necessary to re-let the building." In addition, as the Term Sheet specifically references the renewal of Equiserve's lease (at that time, Bank of Boston), there can be no question that the parties agreed that Blue Hills could access the Reserve Accounts in the event the Equiserve Lease was not renewed. This understanding was confirmed by letter dated August 31, 1999, attached to the First Amended Complaint as Exhibit "B", which states that "the monies held [in reserve] shall additionally be available for monthly debt service payments to the extent the monies from any existing leases in any month are insufficient . . . " The terms of the Mortgage Agreement, including *inter alia* paragraphs 6(b), 6(c)(i), 6(c)(ii), 6(c)(iv), 6(c)(ix), also confirm these understandings.

## INTERROGATORY NO. 4

State the basis for the allegation, in paragraph 16 of Blue Hills' First Amended Complaint, that "[t]he terms and provisions of the Term Sheet were incorporated by reference into the Mortgage Agreement and Note."

4

**ANSWER NO. 4**

The letter from Blue Hills to Credit Suisse First Boston Mortgage Capital LLC dated August 31, 1999 confirmed the terms of the financing and was countersigned by Credit Suisse First Boston Mortgage Capital LLC. The term "loan documents" as defined in the Note specifically includes all documents "executed and delivered in connection with this Note and the Loan." The Term Sheet unquestionably falls within this definition.

**INTERROGATORY NO. 5**

If you contend that Blue Hills' mortgage should have permitted Blue Hills access to Loan reserve or escrow funds to upgrade the Property, make tenant improvements, market the Property, or for any other purpose, on terms other than those stated within the four corners of the Mortgage Agreement, state the basis for that contention and, in your answer, identify those other terms and any documents in which they are stated.

**ANSWER NO. 5**

Blue Hills objects to this interrogatory to the extent that it is vague and ambiguous with respect to "other than those stated within the four corners of the Mortgage Agreement." Without waiving that objection, Blue Hills incorporates its answers to Interrogatory Nos. 3 and 4.

**INTERROGATORY NO. 6**

State the basis for the allegation in paragraph 34 of Blue Hills' First Amended Complaint that "[b]eginning in November, 1999 and continuing into 2004, Blue Hills deposited into the Clearing Account the requisite real estate tax amounts."

**ANSWER NO. 6**

Pursuant to Fed. R. Civ. P. 33(c), Blue Hills will make available at a mutually convenient time their business records regarding the deposits of real estate tax amounts.

**INTERROGATORY NO. 7**

State the basis for the allegation, in paragraph 38 of Blue Hills' First Amended Complaint, that "[t]his information [that Equiserve notified Blue Hills that it would not be exercising its option to renew the Equiserve lease] was communicated to either or both of the defendants, through their agents, Wells Fargo."

5

**ANSWER NO. 7**

Equiserve notified Blue Hills of its intent not to exercise its option to extend its lease in

or about May 2003.  Shortly thereafter, Blue Hills communicated to Wells Fargo via telephone.

**INTERROGATORY NO. 8**

State the basis for the allegation, in paragraph 40 of Blue Hills' First Amended
Complaint, that Blue Hills' need for "substantial sums of money to upgrade the Property's
infrastructure and to make tenant improvements" was "the very contingency anticipated when
the Term Sheet was executed."

**ANSWER NO. 8**

Blue Hills incorporates its answers to Interrogatory Nos. 3 and 4.

**INTERROGATORY NO. 9**

State the basis for the allegation, in paragraph 84 of Blue Hills' First Amended
Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully
defaulted Blue Hills."

**ANSWER NO. 9**

By denying Blue Hills access to the more than $4 million Blue Hills deposited with the

Lender for the purpose of funding debt service and re-tenanting costs upon Equiserve vacating

the Property, the Lender effectively precluded Blue Hills from re-tenanting the Property or

maintaining the Loan.  Therefore, by placing Blue Hills' own funds beyond its reach and by its

refusal to even meet with Blue Hills to discuss the procedure for Blue Hills to access those funds,

the Lender procured the very default Lender then asserted entitled it to retain those funds.

Further, by not applying to the physical condition of the Property the multi-million dollar reserve

Blue Hills set aside for capital upgrades, the Lender adversely impacted the value of the Property

as well as the amount the Lender realized from its sale of the Property.

Blue Hills, by letters dated August 2, 2004 and September 2, 2004, requisitioned the

Lender for advances from the Reserve Accounts for payment of loan carrying costs, consistent

with the terms of the loan documents and the intent of the parties.  The Reserves from which

Blue Hills requisitioned funds were Reserves established to address the very issue that had arisen

– the termination of the Equiserve Lease, the sole source of Borrower's revenue.  The Lender's

failure to release those funds left Blue Hills with no other source of capital since the Lender's

loan documents required Blue Hills to be a single asset entity and expressly prohibited Blue Hills

from entering into any other borrowings.  Thus, the Lender's refusal to release the funds *caused*

the very Event of Default that the Lender asserted was the basis for not releasing the funds from

its Reserves.

In addition to the foregoing, the Lender wrongfully defaulted Blue Hills by virtue of the

fact that in the September 17, 2004 letter to Blue Hills, the Lender asserted that Blue Hills failed

to make certain deposits required by the Loan Documents.  However, those deposits were not yet

due from Blue Hills.  At the time Blue Hills requisitioned for a withdrawal from the Reserves,

Blue Hills was not in default under the Loan Documents.

## INTERROGATORY NO. 10

Describe each communication concerning Blueview, the Special Permit, the ZBA
Decision, the Zoning Appeal, the Settlement, the Payment, the purchase of Blueview by DST
Realty of Massachusetts, Inc. and/or Equiserve's decision to move from the Property to
Blueview, including without limitation communications between you and Joseph P. Plunkett,
Stephen Cesso, Thomas R. McGee, Thomas R. Tye, or any other person, and among any
principals, members, managers, employees, agents, or affiliates of Blue Hills, and in your
answer:

      a)     state the nature, date, time and place of each communication;
      b)     identify the person(s) who made each communication;
      c)     identify the person(s) who received each communication; and
      d)     identify each and every document which reflects, constitutes, or concerns
           each communication.

## ANSWER NO. 10

Blue Hills objects to this interrogatory to the extent that it is overly broad, unduly burdensome, vague and ambiguous, seeks information that is subject to attorney-client privilege, and seeks information that is publicly available. Blue Hills further objects to this interrogatory to the extent its multiple subparts exceed the limit on interrogatories under the court order governing phased discovery. In addition, Blue Hills objects to this interrogatory to the extent it seeks information related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action. The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Blue Hills is not authorized to release information or documents related to the settlement of the Zoning Appeal.

## INTERROGATORY NO. 11

State the amount of the Payment and describe the disposition of the Payment, and in your answer:

a)    identify each and every document which forms any part of the source of your information regarding the amount of the Payment or the disposition of the Payment;

b)    identify each and every person who received any portion of the Payment; and

c)    identify each and every bank account into which any portion of the Payment was deposited.

## ANSWER NO. 11

Blue Hills objects to this interrogatory to the extent that it is overly broad, unduly burdensome, vague and ambiguous, seeks information that is subject to attorney-client privilege, and seeks information on the receipt, "disposition" of, and bank accounts related to the settlement amount that is irrelevant and not likely to lead to the discovery of admissible evidence. Blue Hills further objects to this interrogatory to the extent its multiple subparts exceed the limit on interrogatories under the court order governing phased discovery. In addition, Blue Hills objects to this interrogatory to the extent it seeks information related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the other parties to the settlement of the Lender's discovery requests in this action. The other parties to the settlement have not consented to the release of the settlement documents due

to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Blue Hills is not authorized to release the amount of any payment made in connection with the settlement of the Zoning Appeal or any other information or documents related to the settlement of the Zoning Appeal.

## INTERROGATORY NO. 12

State the basis for the allegation, at page 9 of Blue Hills' Answer to Counterclaim of CSFB 1991 – C1 Royall Street, LLC and at page 11 of the Answer of Defendants-on-Counterclaim Gerald Fineberg and William Blue Hills to Counterclaim of CSFB 1991 – C1 Royall Street, LLC, that "[Lender]'s claims are barred by doctrine of unclean hands."

## ANSWER NO. 12

The Lender and its agents ignored Blue Hills' repeated requests to meet to discuss the expiration of the Equiserve Lease. After ignoring Blue Hills for several months, the Lender wrongfully declared Blue Hills to be in default under the terms of the Mortgage and refused Blue Hills access to funds to which it was entitled. As a result, Blue Hills was not able to meet its obligations under the Loan Documents. Further, Blue Hills incorporates its answers to Interrogatory Nos. 3 and 9.

## INTERROGATORY NO. 13

Stat the basis for the allegation, at page 9 of Blue Hills' Answer to Counterclaim of CSFB 1991 – C1 Royall Street, LLC and at page 12 of the Answer of Defendants-in-Counterclaim Gerald Fineberg and William Blue Hills to Counterclaim of CSFB 1991 – C1 Royall Street, LLC, that "[Lender]'s claims are barred by the doctrines of waiver and estoppel."

## ANSWER NO. 13

Blue Hills incorporates its answers to Interrogatory Nos. 3 and 9.

## INTERROGATORY NO. 14

State the basis for the allegation, at page 9 of Blue Hills' Answer to Counterclaim of CSFB 1991 – C1 Royall Street, LLC and at page 12 of the Answer of Defendants-in-Counterclaim Gerald Fineberg and William Blue Hills to Counterclaim of CSFB 1991 – C1 Royall Street, LLC, that "[Lender]'s claims are barred by the doctrine of laches."

**ANSWER NO. 14**

Blue Hills incorporates its answer to Interrogatory Nos. 3 and 9.

**INTERROGATORY NO. 15**

State the basis for all of your damages claims.

**ANSWER NO. 15**

At present, Blue Hills, Fineberg and Langelier cannot fully quantify their damages until they have had full opportunity to conduct discovery. However, at present it is apparent that they have suffered significant damages as a result of, *inter alia*, Defendants' refusal to release cash reserves and to meet with Blue Hills to discuss the various consents, approvals, and authorizations required by the loan documents to facilitate the marketing of the Property to new tenants. A combination of escrowed funds and additional borrowing/capital, approval for which was to be sought, would have enabled Blue Hills to have pursued re-tenanting of the Property. Together with the offering of ownership interests to attract tenant prospects, the Property could either have been sold or refinanced with payoff or assumption of the loan sufficient to realize recovery of tax costs on disposition plus return of newly loaned and invested capital and a profit in excess of approximately $4,000,000.00. The delineated damages are exclusive of costs, interest, attorneys' fees and other damages which continue to accrue. In addition, Blue Hills seeks treble damages and attorneys' fees pursuant to M.G.L. c. 93A.

11

Signed under the pains and penalties of perjury this 28 day of _October_, 2005.

Blue Hills Office Park LLC

By: _Gerald S. Fine_

Gerald Fineberg, President of
Blue Hills Management Corp.,
Manager of Blue Hills Office Park
LLC,   duly authorized

AS TO OBJECTIONS:

BLUE HILLS OFFICE PARK LLC,
By its attorneys,

Peter B. McGlynn, Esq. BBO# 333660
Meredith A. Swisher, Esq. BBO# 646866
BERNKOPF GOODMAN LLP
125 Summer Street, 13th floor
Boston, Massachusetts 02110
(617) 790-3000
pmcglynn@bg-llp.com
mswisher@bg-llp.com

Dated: Nov 11, 2005

#322802 v1/14500/9985

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was
served upon (each party appearing pro se and) the attorney of record for
each other party by mail (by hand) Nov 11, 2005

12

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BLUE HILLS OFFICE PARK LLC, | ) | |
|     Plaintiff/Defendant-in- | ) | |
|     Counterclaim | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-CV-10506 (WGY) |
| | ) | |
| CREDIT SUISSE FIRST BOSTON | ) | |
| MORTGAGE SECURITY CORP., | ) | |
|     Defendant. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CSFB 1999 – C1 ROYALL STREET, LLC | ) | |
|     Defendant/Plaintiff-in- | ) | |
|     Counterclaim | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WILLIAM LANGELIER and GERALD | ) | |
| FINEBERG, | ) | |
|     Defendants-in-Counterclaim | ) | |

## GERALD FINEBERG'S ANSWERS TO
## DEFENDANTS' FIRST SET OF INTERROGATORIES

Gerald Fineberg ("Fineberg") hereby answers the First Set of Interrogatories by the

Defendants CSFB 1999-C1 Royall Street, LLC ("CSFB") and Credit Suisse First Boston

Mortgage Security Corp. ("CS Bank") as follows:

## GENERAL OBJECTIONS

Fineberg objects to each of Defendants' interrogatories to the extent that each

interrogatory recites or incorporates a "definition" and/or an "instruction" which exceeds the

scope of the Federal Rules of Civil Procedure.  Fineberg also objects to each interrogatory to the

extent that each interrogatory is vague, overly broad, unduly burdensome, seeks information that

is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, seeks

information that is not in Fineberg's possession, custody or control, seeks information that is

already in Defendants' possession, custody or control, seeks information that is subject to the

attorney-client privilege and/or the attorney work-product doctrine, and seeks information that is

otherwise beyond the scope of permissible discovery.

Fineberg hereby incorporates by reference each and every one of his general objections

into each and every Answer as if fully set forth therein.

Fineberg reserves the right to supplement his Answers pursuant to Rule 26(e) in the event

that information that may be responsive to these interrogatories becomes available.

## INTERROGATORY NO. 1

Identify each and every person who prepared the responses to these interrogatories and/or
assisted in the preparation of the responses to these interrogatories, and identify the specific
interrogatories with respect to which each such person provided assistance.

## ANSWER NO. 1

Other than counsel, Joseph Donovan, Lawrence Needle, and Daniel Frank assisted in the

preparation of these answers to interrogatories.

## INTERROGATORY NO. 2

Describe each communication that took place during the period from July 1, 1999
through November 30, 2004, and concerned the lease between Blue Hills and Equiserve,
Equiserve leaving the Property, Blue Hills' efforts to re-lease the Property, Blue Hills' requests
for meetings with the mortgagee or Wells Fargo or LNR Partners, Blue Hills' requests for
disbursements from Loan reserve or escrow accounts, payment of property taxes for the
Property, and/or payments to the Tax Fund Sub-account (as that term is used in paragraph 29 of
Blue Hills' First Amended Complaint), including without limitation communications between
you and the mortgagee and/or Wells Fargo and/or LNR Partners, and communications among
any principals, members, managers, employees, agents, or affiliates of Blue Hills, and, in your
answer:

a)    state the nature, date, time and place of each communication;

2

b)    identify the person(s) who made each communication;
c)    identify the person(s) who received each communication; and
d)    identify each and every document which reflects, constitutes, or concerns
      each communication.

## ANSWER NO. 2

Fineberg objects to this interrogatory to the extent that it is overly broad, unduly

burdensome, vague and ambiguous and seeks information that is subject to attorney-client

privilege.  Fineberg further objects to this interrogatory to the extent its multiple subparts exceed

the limit on interrogatories under the court order governing phased discovery.  Without waiving

these objections, Fineberg states that Blue Hills and its agents had several conversations with the

Defendants from in or about the fall of 2003 through the date of foreclosure as well as

conversations with third parties.  With respect to written communications, pursuant to Fed. R.

Civ. P. 33(c), Fineberg will make available at a mutually convenient time all non-privileged and

relevant written communications in his possession, custody or control.

## INTERROGATORY NO. 3

State the basis for the allegation, in paragraph 11 of Blue Hills First Amended Complaint,
that "[Originator] and Blue Hills agreed that the various required reserve deposits could be
accessed by Blue Hills in the event that the Equiserve Lease was not renewed."

## ANSWER NO. 3

Paragraph 6(c)(ix) of the Mortgage Agreement requires the Lender to disburse to Blue

Hills funds from Reserve Accounts established with Blue Hills' own funds to pay principal and

interest due on the Note.  The disbursement arrangements specifically contemplated release of

funds in the event the Equiserve lease was not renewed or extended.  In or about August 1999,

when Blue Hills and the original Lender agreed upon the terms and conditions of the $33.5

million loan to Blue Hills (the "Loan"), the parties were fully aware that the property located at

150 Royall Street, Canton, Massachusetts ("Property") was leased to a single tenant, Equiserve

Limited Partnership ("Equiserve"), which lease revenue was the sole recurring source of funds available to service the Loan. The parties were also aware that the Equiserve lease term expired on July 31, 2004, which expiration date is prior to the maturity date of the Loan. As a result, the Lender required Blue Hills to direct a substantial portion of its cash flow from the ownership of the Property into reserve accounts to address the fact that attracting new tenants would likely require significant expenditures to re-tenant the building for a single, a few or multiple tenants. At the time the Equiserve Lease term expired, a total of approximately $4 million was on deposit with the Lender in those Reserve Accounts. It was therefore clearly intended that Blue Hills would have access to deposits in the Reserve Accounts to address the circumstance of the Equiserve Lease not being renewed. The original Term Sheet for the Loan summarizing the intent of the Parties states that "funds will be available to the Borrower for the tenant improvements and leasing commissions necessary to re-let the building." In addition, as the Term Sheet specifically references the renewal of Equiserve's lease (at that time, Bank of Boston), there can be no question that the parties agreed that Blue Hills could access the Reserve Accounts in the event the Equiserve Lease was not renewed. This understanding was confirmed by letter dated August 31, 1999, attached to the First Amended Complaint as Exhibit "B", which states that "the monies held [in reserve] shall additionally be available for monthly debt service payments to the extent the monies from any existing leases in any month are insufficient . . . " The terms of the Mortgage Agreement, including *inter alia* paragraphs 6(b), 6(c)(i), 6(c)(ii), 6(c)(iv), 6(c)(ix), also confirm these understandings.

## INTERROGATORY NO. 4

State the basis for the allegation, in paragraph 16 of Blue Hills' First Amended Complaint, that "[t]he terms and provisions of the Term Sheet were incorporated by reference into the Mortgage Agreement and Note."

**ANSWER NO. 4**

The letter from Blue Hills to Credit Suisse First Boston Mortgage Capital LLC dated

August 31, 1999 confirmed the terms of the financing and was countersigned by Credit Suisse

First Boston Mortgage Capital LLC. The term "loan documents" as defined in the Note

specifically includes all documents "executed and delivered in connection with this Note and the

Loan." The Term Sheet unquestionably falls within this definition.

**INTERROGATORY NO. 5**

If you contend that Blue Hills' mortgage should have permitted Blue Hills access to Loan
reserve or escrow funds to upgrade the Property, make tenant improvements, market the
Property, or for any other purpose, on terms other than those stated within the four corners of the
Mortgage Agreement, state the basis for that contention and, in your answer, identify those other
terms and any documents in which they are stated.

**ANSWER NO. 5**

Fineberg objects to this interrogatory to the extent that it is vague and ambiguous with

respect to "other than those stated within the four corners of the Mortgage Agreement." Without

waiving that objection, Fineberg incorporates his answers to Interrogatory Nos. 3 and 4.

**INTERROGATORY NO. 6**

State the basis for the allegation in paragraph 34 of Blue Hills' First Amended Complaint
that "[b]eginning in November, 1999 and continuing into 2004, Blue Hills deposited into the
Clearing Account the requisite real estate tax amounts."

**ANSWER NO. 6**

Pursuant to Fed. R. Civ. P. 33(c), Fineberg will make available at a mutually convenient

time the business records of Blue Hills regarding the deposits of real estate tax amounts.

**INTERROGATORY NO. 7**

State the basis for the allegation, in paragraph 38 of Blue Hills' First Amended
Complaint, that "[t]his information [that Equiserve notified Blue Hills that it would not be
exercising its option to renew the Equiserve lease] was communicated to either or both of the
defendants, through their agents, Wells Fargo."

**ANSWER NO. 7**

Equiserve notified Blue Hills of its intent not to exercise its option to extend its lease in

or about May 2003.  Shortly thereafter, Blue Hills communicated to Wells Fargo via telephone.

**INTERROGATORY NO. 8**

State the basis for the allegation, in paragraph 40 of Blue Hills' First Amended
Complaint, that Blue Hills' need for "substantial sums of money to upgrade the Property's
infrastructure and to make tenant improvements" was "the very contingency anticipated when
the Term Sheet was executed."

**ANSWER NO. 8**

Fineberg incorporates his answers to Interrogatory Nos. 3 and 4.

**INTERROGATORY NO. 9**

State the basis for the allegation, in paragraph 84 of Blue Hills' First Amended
Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully
defaulted Blue Hills."

**ANSWER NO. 9**

By denying Blue Hills access to the more than $4 million Blue Hills deposited with the

Lender for the purpose of funding debt service and re-tenanting costs upon Equiserve vacating

the Property, the Lender effectively precluded Blue Hills from re-tenanting the Property or

maintaining the Loan.  Therefore, by placing Blue Hills' own funds beyond its reach and by its

refusal to even meet with Blue Hills to discuss the procedure for Blue Hills to access those funds,

the Lender procured the very default Lender then asserted entitled it to retain those funds.

Further, by not applying to the physical condition of the Property the multi-million dollar reserve

Blue Hills set aside for capital upgrades, the Lender adversely impacted the value of the Property

as well as the amount the Lender realized from its sale of the Property.

Blue Hills, by letters dated August 2, 2004 and September 2, 2004, requisitioned the Lender for advances from the Reserve Accounts for payment of loan carrying costs, consistent with the terms of the loan documents and the intent of the parties.  The Reserves from which Blue Hills requisitioned funds were Reserves established to address the very issue that had arisen – the termination of the Equiserve Lease, the sole source of Borrower's revenue.  The Lender's failure to release those funds left Blue Hills with no other source of capital since the Lender's loan documents required Blue Hills to be a single asset entity and expressly prohibited Blue Hills from entering into any other borrowings.  Thus, the Lender's refusal to release the funds *caused* the very Event of Default that the Lender asserted was the basis for not releasing the funds from its Reserves.

In addition to the foregoing, the Lender wrongfully defaulted Blue Hills by virtue of the fact that in the September 17, 2004 letter to Blue Hills, the Lender asserted that Blue Hills failed to make certain deposits required by the Loan Documents.  However, those deposits were not yet due from Blue Hills.  At the time Blue Hills requisitioned for a withdrawal from the Reserves, Blue Hills was not in default under the Loan Documents.

## INTERROGATORY NO. 10

Describe each communication concerning Blueview, the Special Permit, the ZBA Decision, the Zoning Appeal, the Settlement, the Payment, the purchase of Blueview by DST Realty of Massachusetts, Inc. and/or Equiserve's decision to move from the Property to Blueview, including without limitation communications between you and Joseph P. Plunkett, Stephen Cesso, Thomas R. McGee, Thomas R. Tye, or any other person, and among any principals, members, managers, employees, agents, or affiliates of Blue Hills, and in your answer:

   a)    state the nature, date, time and place of each communication;
   b)    identify the person(s) who made each communication;
   c)    identify the person(s) who received each communication; and
   d)    identify each and every document which reflects, constitutes, or concerns each communication.

7

**ANSWER NO. 10**

Fineberg objects to this interrogatory to the extent that it is overly broad, unduly burdensome, vague and ambiguous, seeks information that is subject to attorney-client privilege, and seeks information that is publicly available. Fineberg further objects to this interrogatory to the extent its multiple subparts exceed the limit on interrogatories under the court order governing phased discovery. In addition, Fineberg objects to this interrogatory to the extent it seeks information related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action. The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Fineberg is not authorized to release information or documents related to the settlement of the Zoning Appeal.

**INTERROGATORY NO. 11**

State the amount of the Payment and describe the disposition of the Payment, and in your answer:

a)    identify each and every document which forms any part of the source of your information regarding the amount of the Payment or the disposition of the Payment;

b)    identify each and every person who received any portion of the Payment; and

c)    identify each and every bank account into which any portion of the Payment was deposited.

**ANSWER NO. 11**

Fineberg objects to this interrogatory to the extent that it is overly broad, unduly burdensome, vague and ambiguous, seeks information that is subject to attorney-client privilege, and seeks information on the receipt, "disposition" of, and bank accounts related to the settlement amount that is irrelevant and not likely to lead to the discovery of admissible evidence. Fineberg further objects to this interrogatory to the extent its multiple subparts exceed the limit on interrogatories under the court order governing phased discovery. In addition, Fineberg objects to this interrogatory to the extent it seeks information related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the other parties to the settlement of the Lender's discovery requests in this action. The other parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available. Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Fineberg is not authorized to release the amount of any payment made in connection with the settlement of the Zoning Appeal or any other information or documents related to the settlement of the Zoning Appeal.

## INTERROGATORY NO. 12

State the basis for the allegation, at page 9 of Blue Hills' Answer to Counterclaim of CSFB 1991 – C1 Royall Street, LLC and at page 11 of the Answer of Defendants-on-Counterclaim Gerald Fineberg and William Langelier to Counterclaim of CSFB 1991 – C1 Royall Street, LLC, that "[Lender]'s claims are barred by doctrine of unclean hands."

## ANSWER NO. 12

The Lender and its agents ignored Blue Hills' repeated requests to meet to discuss the expiration of the Equiserve Lease. After ignoring Blue Hills for several months, the Lender wrongfully declared Blue Hills to be in default under the terms of the Mortgage and refused Blue Hills access to funds to which it was entitled. As a result, Blue Hills was not able to meet its obligations under the Loan Documents. Further, Fineberg incorporates his answers to Interrogatory Nos. 3 and 9.

## INTERROGATORY NO. 13

State the basis for the allegation, at page 9 of Blue Hills' Answer to Counterclaim of CSFB 1991 – C1 Royall Street, LLC and at page 12 of the Answer of Defendants-in-Counterclaim Gerald Fineberg and William Langelier to Counterclaim of CSFB 1991 – C1 Royall Street, LLC, that "[Lender]'s claims are barred by the doctrines of waiver and estoppel."

## ANSWER NO. 13

Fineberg incorporates his answers to Interrogatory Nos. 3 and 9.

**INTERROGATORY NO. 14**

State the basis for the allegation, at page 9 of Blue Hills' Answer to Counterclaim of CSFB 1991 – C1 Royall Street, LLC and at page 12 of the Answer of Defendants-in-Counterclaim Gerald Fineberg and William Langelier to Counterclaim of CSFB 1991 – C1 Royall Street, LLC, that "[Lender]'s claims are barred by the doctrine of laches."

**ANSWER NO. 14**

Fineberg incorporates his answer to Interrogatory Nos. 3 and 9.

**INTERROGATORY NO. 15**

State the basis for all of your damages claims.

**ANSWER NO. 15**

At present, Blue Hills, Fineberg and Langelier cannot fully quantify their damages until they have had full opportunity to conduct discovery. However, at present it is apparent that they have suffered significant damages as a result of, *inter alia*, Defendants' refusal to release cash reserves and to meet with Blue Hills to discuss the various consents, approvals, and authorizations required by the loan documents to facilitate the marketing of the Property to new tenants. A combination of escrowed funds and additional borrowing/capital, approval for which was to be sought, would have enabled Blue Hills to have pursued re-tenanting of the Property. Together with the offering of ownership interests to attract tenant prospects, the Property could either have been sold or refinanced with payoff or assumption of the loan sufficient to realize recovery of tax costs on disposition plus return of newly loaned and invested capital and a profit in excess of approximately $4,000,000.00. The delineated damages are exclusive of costs, interest, attorneys' fees and other damages which continue to accrue. In addition, Blue Hills seeks treble damages and attorneys' fees pursuant to M.G.L. c. 93A.

11

Signed under the pains and penalties of perjury this 28 day of _October_, 2005.

_Gerald Fineberg_

Gerald Fineberg

AS TO OBJECTIONS:

GERALD FINEBERG
By his attorneys,

Peter B. McGlynn, Esq. BBO# 333660
Meredith A. Swisher, Esq. BBO# 646866
BERNKOPF GOODMAN LLP
125 Summer Street, 13th floor
Boston, Massachusetts 02110
(617) 790-3000
pmcglynn@bg-llp.com
mswisher@bg-llp.com

Dated: ~~October~~ Nov 11, 2005
#323118 v1/14500/9985

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was
served upon (each party appearing pro se and) the attorney of record for
each other party by mail (by hand) Nov 14, 2005

12

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BLUE HILLS OFFICE PARK LLC, <br>      Plaintiff/Defendant-in- <br>      Counterclaim <br><br> v. <br><br> CREDIT SUISSE FIRST BOSTON <br> MORTGAGE SECURITY CORP., <br>      Defendant. <br><br> and <br><br> CSFB 1999 – C1 ROYALL STREET, LLC <br>      Defendant/Plaintiff-in- <br>      Counterclaim <br><br> and <br><br> WILLIAM LANGELIER and GERALD <br> FINEBERG, <br>      Defendants-in-Counterclaim | Civil Action No. 05-CV-10506 (WGY) |

## WILLIAM LANGELIER'S ANSWERS TO DEFENDANTS' FIRST SET OF INTERROGATORIES

William Langelier ("Langelier") hereby answers the First Set of Interrogatories by the Defendants CSFB 1999-C1 Royall Street, LLC ("CSFB") and Credit Suisse First Boston Mortgage Security Corp. ("CS Bank") as follows:

## GENERAL OBJECTIONS

Langelier objects to each of Defendants' interrogatories to the extent that each interrogatory recites or incorporates a "definition" and/or an "instruction" which exceeds the scope of the Federal Rules of Civil Procedure. Langelier also objects to each interrogatory to the

extent that each interrogatory is vague, overly broad, unduly burdensome, seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, seeks information that is not in Langelier's possession, custody or control, seeks information that is already in Defendants' possession, custody or control, seeks information that is subject to the attorney-client privilege and/or the attorney work-product doctrine, and seeks information that is otherwise beyond the scope of permissible discovery.

Langelier hereby incorporates by reference each and every one of his general objections into each and every Answer as if fully set forth therein.

Langelier reserves his right to supplement his Answers pursuant to Rule 26(e) in the event that information that may be responsive to these interrogatories becomes available.

## INTERROGATORY NO. 1

Identify each and every person who prepared the responses to these interrogatories and/or assisted in the preparation of the responses to these interrogatories, and identify the specific interrogatories with respect to which each such person provided assistance.

## ANSWER NO. 1

Other than counsel, Joseph Donovan, Lawrence Needle, and Daniel Frank assisted in the preparation of these answers to interrogatories.

## INTERROGATORY NO. 2

Describe each communication that took place during the period from July 1, 1999 through November 30, 2004, and concerned the lease between Blue Hills and Equiserve, Equiserve leaving the Property, Blue Hills' efforts to re-lease the Property, Blue Hills' requests for meetings with the mortgagee or Wells Fargo or LNR Partners, Blue Hills' requests for disbursements from Loan reserve or escrow accounts, payment of property taxes for the Property, and/or payments to the Tax Fund Sub-account (as that term is used in paragraph 29 of Blue Hills' First Amended Complaint), including without limitation communications between you and the mortgagee and/or Wells Fargo and/or LNR Partners, and communications among any principals, members, managers, employees, agents, or affiliates of Blue Hills, and, in your answer:

    a)      state the nature, date, time and place of each communication;

b)  identify the person(s) who made each communication;
c)  identify the person(s) who received each communication; and
d)  identify each and every document which reflects, constitutes, or concerns each communication.

## ANSWER NO. 2

Langelier objects to this interrogatory to the extent that it is overly broad, unduly burdensome, vague and ambiguous and seeks information that is subject to attorney-client privilege.  Langelier further objects to this interrogatory to the extent its multiple subparts exceed the limit on interrogatories under the court order governing phased discovery.  Without waiving these objections, Langelier states that Blue Hills and its agents had several conversations with the Defendants from in or about the fall of 2003 through the date of foreclosure as well as conversations with third parties.  With respect to written communications, pursuant to Fed. R. Civ. P. 33(c), Langelier will make available at a mutually convenient time all non-privileged and relevant written communications in his possession, custody or control.

## INTERROGATORY NO. 3

State the basis for the allegation, in paragraph 11 of Blue Hills First Amended Complaint, that "[Originator] and Blue Hills agreed that the various required reserve deposits could be accessed by Blue Hills in the event that the Equiserve Lease was not renewed."

## ANSWER NO. 3

Paragraph 6(c)(ix) of the Mortgage Agreement requires the Lender to disburse to Blue Hills funds from Reserve Accounts established with Blue Hills' own funds to pay principal and interest due on the Note.  The disbursement arrangements specifically contemplated release of funds in the event the Equiserve lease was not renewed or extended.  In or about August 1999, when Blue Hills and the original Lender agreed upon the terms and conditions of the $33.5 million loan to Blue Hills (the "Loan"), the parties were fully aware that the property located at 150 Royall Street, Canton, Massachusetts ("Property") was leased to a single tenant, Equiserve

3

Limited Partnership ("Equiserve"), which lease revenue was the sole recurring source of funds available to service the Loan.  The parties were also aware that the Equiserve lease term expired on July 31, 2004, which expiration date is prior to the maturity date of the Loan.  As a result, the Lender required Blue Hills to direct a substantial portion of its cash flow from the ownership of the Property into reserve accounts to address the fact that attracting new tenants would likely require significant expenditures to re-tenant the building for a single, a few or multiple tenants. At the time the Equiserve Lease term expired, a total of approximately $4 million was on deposit with the Lender in those Reserve Accounts.  It was therefore clearly intended that Blue Hills would have access to deposits in the Reserve Accounts to address the circumstance of the Equiserve Lease not being renewed.  The original Term Sheet for the Loan summarizing the intent of the Parties states that "funds will be available to the Borrower for the tenant improvements and leasing commissions necessary to re-let the building."  In addition, as the Term Sheet specifically references the renewal of Equiserve's lease (at that time, Bank of Boston), there can be no question that the parties agreed that Blue Hills could access the Reserve Accounts in the event the Equiserve Lease was not renewed.  This understanding was confirmed by letter dated August 31, 1999, attached to the First Amended Complaint as Exhibit "B", which states that "the monies held [in reserve] shall additionally be available for monthly debt service payments to the extent the monies from any existing leases in any month are insufficient . . . " The terms of the Mortgage Agreement, including *inter alia* paragraphs 6(b), 6(c)(i), 6(c)(ii), 6(c)(iv), 6(c)(ix), also confirm these understandings.

## INTERROGATORY NO. 4

State the basis for the allegation, in paragraph 16 of Blue Hills' First Amended Complaint, that "[t]he terms and provisions of the Term Sheet were incorporated by reference into the Mortgage Agreement and Note."

**ANSWER NO. 4**

The letter from Blue Hills to Credit Suisse First Boston Mortgage Capital LLC dated

August 31, 1999 confirmed the terms of the financing and was countersigned by Credit Suisse

First Boston Mortgage Capital LLC. The term "loan documents" as defined in the Note

specifically includes all documents "executed and delivered in connection with this Note and the

Loan." The Term Sheet unquestionably falls within this definition.

**INTERROGATORY NO. 5**

If you contend that Blue Hills' mortgage should have permitted Blue Hills access to Loan
reserve or escrow funds to upgrade the Property, make tenant improvements, market the
Property, or for any other purpose, on terms other than those stated within the four corners of the
Mortgage Agreement, state the basis for that contention and, in your answer, identify those other
terms and any documents in which they are stated.

**ANSWER NO. 5**

Langelier objects to this interrogatory to the extent that it is vague and ambiguous with

respect to "other than those stated within the four corners of the Mortgage Agreement." Without

waiving that objection, Langelier incorporates his answers to Interrogatory Nos. 3 and 4.

**INTERROGATORY NO. 6**

State the basis for the allegation in paragraph 34 of Blue Hills' First Amended Complaint
that "[b]eginning in November, 1999 and continuing into 2004, Blue Hills deposited into the
Clearing Account the requisite real estate tax amounts."

**ANSWER NO. 6**

Pursuant to Fed. R. Civ. P. 33(c), Langelier will make available at a mutually convenient

time the business records of Blue Hills regarding the deposits of real estate tax amounts.

**INTERROGATORY NO. 7**

State the basis for the allegation, in paragraph 38 of Blue Hills' First Amended
Complaint, that "[t]his information [that Equiserve notified Blue Hills that it would not be
exercising its option to renew the Equiserve lease] was communicated to either or both of the
defendants, through their agents, Wells Fargo."

**ANSWER NO. 7**

Equiserve notified Blue Hills of its intent not to exercise its option to extend its lease in or about May 2003. Shortly thereafter, Blue Hills communicated to Wells Fargo via telephone.

**INTERROGATORY NO. 8**

State the basis for the allegation, in paragraph 40 of Blue Hills' First Amended Complaint, that Blue Hills' need for "substantial sums of money to upgrade the Property's infrastructure and to make tenant improvements" was "the very contingency anticipated when the Term Sheet was executed."

**ANSWER NO. 8**

Langelier incorporates his answers to Interrogatory Nos. 3 and 4.

**INTERROGATORY NO. 9**

State the basis for the allegation, in paragraph 84 of Blue Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully defaulted Blue Hills."

**ANSWER NO. 9**

By denying Blue Hills access to the more than $4 million Blue Hills deposited with the Lender for the purpose of funding debt service and re-tenanting costs upon Equiserve vacating the Property, the Lender effectively precluded Blue Hills from re-tenanting the Property or maintaining the Loan. Therefore, by placing Blue Hills' own funds beyond its reach and by its refusal to even meet with Blue Hills to discuss the procedure for Blue Hills to access those funds, the Lender procured the very default Lender then asserted entitled it to retain those funds. Further, by not applying to the physical condition of the Property the multi-million dollar reserve Blue Hills set aside for capital upgrades, the Lender adversely impacted the value of the Property as well as the amount the Lender realized from its sale of the Property.

Blue Hills, by letters dated August 2, 2004 and September 2, 2004, requisitioned the Lender for advances from the Reserve Accounts for payment of loan carrying costs, consistent with the terms of the loan documents and the intent of the parties. The Reserves from which Blue Hills requisitioned funds were Reserves established to address the very issue that had arisen – the termination of the Equiserve Lease, the sole source of Borrower's revenue. The Lender's failure to release those funds left Blue Hills with no other source of capital since the Lender's loan documents required Blue Hills to be a single asset entity and expressly prohibited Blue Hills from entering into any other borrowings. Thus, the Lender's refusal to release the funds *caused* the very Event of Default that the Lender asserted was the basis for not releasing the funds from its Reserves.

In addition to the foregoing, the Lender wrongfully defaulted Blue Hills by virtue of the fact that in the September 17, 2004 letter to Blue Hills, the Lender asserted that Blue Hills failed to make certain deposits required by the Loan Documents. However, those deposits were not yet due from Blue Hills. At the time Blue Hills requisitioned for a withdrawal from the Reserves, Blue Hills was not in default under the Loan Documents.

## INTERROGATORY NO. 10

Describe each communication concerning Blueview, the Special Permit, the ZBA Decision, the Zoning Appeal, the Settlement, the Payment, the purchase of Blueview by DST Realty of Massachusetts, Inc. and/or Equiserve's decision to move from the Property to Blueview, including without limitation communications between you and Joseph P. Plunkett, Stephen Cesso, Thomas R. McGee, Thomas R. Tye, or any other person, and among any principals, members, managers, employees, agents, or affiliates of Blue Hills, and in your answer:

    a)    state the nature, date, time and place of each communication;
    b)    identify the person(s) who made each communication;
    c)    identify the person(s) who received each communication; and
    d)    identify each and every document which reflects, constitutes, or concerns each communication.

**ANSWER NO. 10**

Langelier objects to this interrogatory to the extent that it is overly broad, unduly burdensome, vague and ambiguous, seeks information that is subject to attorney-client privilege, and seeks information that is publicly available.  Langelier further objects to this interrogatory to the extent its multiple subparts exceed the limit on interrogatories under the court order governing phased discovery.  In addition, Langelier objects to this interrogatory to the extent it seeks information related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality.  The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information.  The parties shall be able to disclose that the Appeal has been settled.  In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the parties to the settlement of the Lender's discovery requests in this action.  The parties to the settlement have not consented to the release of the settlement documents due to concerns over the settlement terms becoming publicly available.  Therefore, in the absence of a "subpoena or order, judgment or decree of a court . . .," Langelier is not authorized to release information or documents related to the settlement of the Zoning Appeal.

**INTERROGATORY NO. 11**

State the amount of the Payment and describe the disposition of the Payment, and in your answer:

a)     identify each and every document which forms any part of the source of your information regarding the amount of the Payment or the disposition of the Payment;

b)     identify each and every person who received any portion of the Payment; and

c)     identify each and every bank account into which any portion of the Payment was deposited.

## ANSWER NO. 11

Langelier objects to this interrogatory to the extent that it is overly broad, unduly burdensome, vague and ambiguous, seeks information that is subject to attorney-client privilege, and seeks information on the receipt, "disposition" of, and bank accounts related to the settlement amount that is irrelevant and not likely to lead to the discovery of admissible evidence. Langelier further objects to this interrogatory to the extent its multiple subparts exceed the limit on interrogatories under the court order governing phased discovery. In addition, Langelier objects to this interrogatory to the extent it seeks information related to the settlement of the Zoning Appeal, as the settlement agreement related to the Zoning Appeal contains the following language prohibiting disclosure of the terms of settlement:

> Confidentiality. The terms of this Agreement are confidential, and shall not be disclosed without the parties' written consent to any person or entity other than the parties, their respective counsel and accountants, and any other persons to whom a party may have a legal duty to disclose the information. The parties shall be able to disclose that the Appeal has been settled. In the event that a party is required by subpoena or order, judgment, or decree of a court of competent jurisdiction or similar judicial tribunal to disclose the existence, terms, or contents of this Agreement, it shall, prior to such disclosure, promptly notify each party.

In accordance with this language contained in the settlement agreement, Blue Hills notified the other parties to the settlement of the Lender's discovery requests in this action. The other parties to the settlement have not consented to the release of the settlement documents due

to concerns over the settlement terms becoming publicly available. Therefore, in the absence of

a "subpoena or order, judgment or decree of a court . . .," Langelier is not authorized to release

the amount of any payment made in connection with the settlement of the Zoning Appeal or any

other information or documents related to the settlement of the Zoning Appeal.

## INTERROGATORY NO. 12

State the basis for the allegation, at page 9 of Blue Hills' Answer to Counterclaim of
CSFB 1991 – C1 Royall Street, LLC and at page 11 of the Answer of Defendants-on-
Counterclaim Gerald Fineberg and William Langelier to Counterclaim of CSFB 1991 – C1
Royall Street, LLC, that "[Lender]'s claims are barred by doctrine of unclean hands."

## ANSWER NO. 12

The Lender and its agents ignored Blue Hills' repeated requests to meet to discuss the

expiration of the Equiserve Lease. After ignoring Blue Hills for several months, the Lender

wrongfully declared Blue Hills to be in default under the terms of the Mortgage and refused Blue

Hills access to funds to which it was entitled. As a result, Blue Hills was not able to meet its

obligations under the Loan Documents. Further, Langelier incorporates his answers to

Interrogatory Nos. 3 and 9.

## INTERROGATORY NO. 13

Stat the basis for the allegation, at page 9 of Blue Hills' Answer to Counterclaim of
CSFB 1991 – C1 Royall Street, LLC and at page 12 of the Answer of Defendants-in-
Counterclaim Gerald Fineberg and William Langelier to Counterclaim of CSFB 1991 – C1
Royall Street, LLC, that "[Lender]'s claims are barred by the doctrines of waiver and estoppel."

## ANSWER NO. 13

Langelier incorporates his answers to Interrogatory Nos. 3 and 9.

## INTERROGATORY NO. 14

State the basis for the allegation, at page 9 of Blue Hills' Answer to Counterclaim of
CSFB 1991 – C1 Royall Street, LLC and at page 12 of the Answer of Defendants-in-
Counterclaim Gerald Fineberg and William Langelier to Counterclaim of CSFB 1991 – C1
Royall Street, LLC, that "[Lender]'s claims are barred by the doctrine of laches."

**ANSWER NO. 14**

Langelier incorporates his answer to Interrogatory Nos. 3 and 9.

**INTERROGATORY NO. 15**

State the basis for all of your damages claims.

**ANSWER NO. 15**

At present, Blue Hills, Fineberg and Langelier cannot fully quantify their damages until they have had full opportunity to conduct discovery. However, at present it is apparent that they have suffered significant damages as a result of, *inter alia*, Defendants' refusal to release cash reserves and to meet with Blue Hills to discuss the various consents, approvals, and authorizations required by the loan documents to facilitate the marketing of the Property to new tenants. A combination of escrowed funds and additional borrowing/capital, approval for which was to be sought, would have enabled Blue Hills to have pursued re-tenanting of the Property. Together with the offering of ownership interests to attract tenant prospects, the Property could either have been sold or refinanced with payoff or assumption of the loan sufficient to realize recovery of tax costs on disposition plus return of newly loaned and invested capital and a profit in excess of approximately $4,000,000.00. The delineated damages are exclusive of costs, interest, attorneys' fees and other damages which continue to accrue. In addition, Blue Hills seeks treble damages and attorneys' fees pursuant to M.G.L. c. 93A.

Signed under the pains and penalties of perjury this 28th day of October, 2005.

_____
William Langelier

AS TO OBJECTIONS:

WILLIAM LANGELIER
By his attorneys,

_____
Peter B. McGlynn, Esq. BBO# 333660
Meredith A. Swisher, Esq. BBO# 646866
BERNKOPF GOODMAN LLP
125 Summer Street, 13th floor
Boston, Massachusetts 02110
(617) 790-3000
pmcglynn@bg-llp.com
mswisher@bg-llp.com

Dated: Nov 11, 2005

#322802 v1/14500/9985

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each other party by mail (by hand) Nov 11, 2005

_____

12

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BLUE HILLS OFFICE PARK LLC,<br>        Plaintiff/Defendant-in-Counterclaim | ) ) ) ) | |
| v. | ) ) | Civil Action No. 05-CV-10506 (WGY) |
| J.P. MORGAN CHASE BANK, as<br>Trustee for the Registered Holders of<br>Credit Suisse First Boston Mortgage<br>Securities Corp., Commercial Mortgage<br>Pass-Through Certificates, Series 1999-C1,<br>        Defendant | ) ) ) ) ) ) ) | |
| and CSFB 1999 – C1 ROYALL STREET,<br>LLC,<br>        Defendant/Plaintiff-in-Counterclaim | ) ) ) ) | |
| and | ) ) | |
| WILLIAM LANGELIER and GERALD<br>FINEBERG,<br>        Defendants-in-Counterclaim | ) ) ) ) | |

**BLUE HILLS OFFICE PARK LLC'S SUPPLEMENTAL ANSWERS
TO DEFENDANTS' FIRST SET OF INTERROGATORIES**

Blue Hills Office Park LLC ("Blue Hills") hereby supplements its answers to

Interrogatory Nos. 2, 7, 10 and 11 of the First Set of Interrogatories by the Defendants CSFB

1999-C1 Royall Street, LLC ("CSFB") and Credit Suisse First Boston Mortgage Security Corp.

("CS Bank") as follows:

**GENERAL OBJECTIONS**

Blue Hills objects to each of Defendants' interrogatories to the extent that each

interrogatory recites or incorporates a "definition" and/or an "instruction" which exceeds the

scope of the Federal Rules of Civil Procedure. Blue Hills also objects to each interrogatory to

the extent that each interrogatory is vague, overly broad, unduly burdensome, seeks information

that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence,

seeks information that is not in Blue Hills' possession, custody or control, seeks information that

is already in Defendants' possession, custody or control, seeks information that is subject to the

attorney-client privilege and/or the attorney work-product doctrine, and seeks information that is

otherwise beyond the scope of permissible discovery.

Blue Hills hereby incorporates by reference each and every one of its general objections

into each and every Answer as if fully set forth therein.

Blue Hills reserves the right to supplement its Answers pursuant to Rule 26(e) in the

event that information that may be responsive to these interrogatories becomes available.

## INTERROGATORY NO. 2

Describe each communication that took place during the period from July 1, 1999
through November 30, 2004, and concerned the lease between Blue Hills and Equiserve,
Equiserve leaving the Property, Blue Hills' efforts to re-lease the Property, Blue Hills' requests
for meetings with the mortgagee or Wells Fargo or LNR Partners, Blue Hills' requests for
disbursements from Loan reserve or escrow accounts, payment of property taxes for the
Property, and/or payments to the Tax Fund Sub-account (as that term is used in paragraph 29 of
Blue Hills' First Amended Complaint), including without limitation communications between
you and the mortgagee and/or Wells Fargo and/or LNR Partners, and communications among
any principals, members, managers, employees, agents, or affiliates of Blue Hills, and, in your
answer:

        a)      state the nature, date, time and place of each communication;
        b)      identify the person(s) who made each communication;
        c)      identify the person(s) who received each communication; and
        d)      identify each and every document which reflects, constitutes, or concerns
                each communication.

## ANSWER NO. 2

Blue Hills objects to this interrogatory to the extent that it is overly broad, unduly

burdensome, vague and ambiguous and seeks information that is subject to attorney-client

- 2 -

privilege. Blue Hills further objects to this interrogatory to the extent its multiple subparts

exceed the limit on interrogatories under the court order governing phased discovery. Without

waiving these objections, Blue Hills states that, through its representatives, it contacted the

defendants on several occasions from in or about the fall of 2003 through the date of foreclosure

as well as having conversations with third parties. While Blue Hills cannot recall with

specificity the dates of various telephone conversations, Blue Hills states that its representatives

contacted the defendants to request a meeting to discuss, *inter alia*, Equiserve's vacating the

Property as of July 31, 2004, the necessity to more actively market the Property, the possibility

of converting the Property to multi-tenant use, and addressing budgets and potential sources of

funding for those marketing and re-leasing efforts including, without limitation, access to the

reserve funds for Property related purposes. In early 2004, representatives of Wells Fargo

assured Blue Hills that they would be responsive to Blue Hills' requests, including scheduling a

meeting with Blue Hills to address Property marketing costs and to discuss the process to be

followed by Blue Hills to access the reserve funds. Despite such assurances, Wells Fargo

continued to postpone the scheduling of the requested meetings, representing to Blue Hills that

they were working internally to determine the appropriate lender parties with whom Blue Hills

should meet to address those matters. In or about June, 2004 – two months before the Equiserve

Lease was set to expire and more than six months after Blue Hills first requested Wells Fargo's

assistance – Wells Fargo informed Blue Hills that it would consider whether the Special Servicer

for the Mortgage Loan, Lennar, and not Wells Fargo, would be the proper party to meet with

Blue Hills and to respond to Blue Hills' requests. By letter dated August 2, 2004 to Wells Fargo,

Blue Hills requested a disbursement from the reserve accounts to pay principal and interest due

on the Note for the month of August, 2004, as well as money to pay real estate taxes. Thereafter,

by letter dated August 5, 2004, Blue Hills again contacted Wells Fargo and notified it that, in

fact, Equiserve had vacated the Property and that no replacement tenant had been found. Blue

Hills also requested a meeting with Wells Fargo to discuss the status of and the future

performance of the loan. In addition, Blue Hills requested that Lennar attend the meeting as

well. Blue Hills' files were apparently not transferred by Wells Fargo to Lennar until on or

about August 19, 2004, as evidenced by Lennar's letter to Blue Hills dated August 19, 2004. On

September 2, 2004, Blue Hills again wrote to Wells Fargo and requested a distribution of

$254,652.24 to pay principal and interest on the Note for the month of September, 2004. With

respect to all written communications, pursuant to Fed. R. Civ. P. 33(d), Blue Hills refers to the

documents Bate-Stamped Blue Hills 001-1472 produced on November 15, 2005.

**INTERROGATORY NO. 7**

State the basis for the allegation, in paragraph 38 of Blue Hills' First Amended
Complaint, that "[t]his information [that Equiserve notified Blue Hills that it would not be
exercising its option to renew the Equiserve lease] was communicated to either or both of the
defendants, through their agents, Wells Fargo."

**ANSWER NO. 7**

Equiserve notified Blue Hills of its intent not to exercise its option to extend its lease in

or about May 2003. Shortly thereafter, Blue Hills communicated to Wells Fargo via telephone

regarding, *inter alia*, Equiserve's vacating the Property as of July 31, 2004. See also Answer to

Interrogatory No. 2, incorporated herein by reference.

**INTERROGATORY NO. 10**

Describe each communication concerning Blueview, the Special Permit, the ZBA
Decision, the Zoning Appeal, the Settlement, the Payment, the purchase of Blueview by DST
Realty of Massachusetts, Inc. and/or Equiserve's decision to move from the Property to
Blueview, including without limitation communications between you and Joseph P. Plunkett,
Stephen Cesso, Thomas R. McGee, Thomas R. Tye, or any other person, and among any
principals, members, managers, employees, agents, or affiliates of Blue Hills, and in your
answer:

- 4 -

a)  state the nature, date, time and place of each communication;
b)  identify the person(s) who made each communication;
c)  identify the person(s) who received each communication; and
d)  identify each and every document which reflects, constitutes, or concerns each communication.

## ANSWER NO. 10

Blue Hills objects to this interrogatory to the extent that it is overly broad, unduly burdensome, vague and ambiguous, seeks information that is subject to attorney-client privilege, and seeks information that is publicly available.  Blue Hills further objects to this interrogatory to the extent its multiple subparts exceed the limit on interrogatories under the court order governing phased discovery.  Without waiving these objections, pursuant to Fed. R. Civ. P. 33(d), Blue Hills refers to the documents Bate-Stamped 1473 - 1843 produced on November 29, 2005 and the documents produced on December 8, 2005, Bated stamped 1844 - 1945, which are marked "confidential" and are subject to the Stipulation Regarding the Preservation of Confidential Materials ("Confidentiality Stipulation").  While telephone conversations occurred among counsel for the various parties involved in the Special Permit, Zoning Appeal, and settlement of the Zoning Appeal, the date, times and places of each communication cannot be recalled with specificity.

## INTERROGATORY NO. 11

State the amount of the Payment and describe the disposition of the Payment, and in your answer:

a)  identify each and every document which forms any part of the source of your information regarding the amount of the Payment or the disposition of the Payment;

b)  identify each and every person who received any portion of the Payment; and

c)  identify each and every bank account into which any portion of the Payment was deposited.



## ANSWER NO. 11

Blue Hills objects to this interrogatory to the extent that it is overly broad, unduly burdensome, vague and ambiguous, seeks information that is subject to attorney-client privilege, and seeks information on the receipt, "disposition" of, and bank accounts related to the settlement amount that is irrelevant and not likely to lead to the discovery of admissible evidence. Blue Hills further objects to this interrogatory to the extent its multiple subparts exceed the limit on interrogatories under the court order governing phased discovery. Without waiving these objections, Blue Hills states that the amount of the settlement is set forth in the Settlement Agreement, produced on December 8, 2005, Bate Stamped Nos. 1844 - 1855, and marked "confidential" pursuant to the Confidentiality Stipulation.

Signed under the pains and penalties of perjury this 17th day of _____ January _____, 2006.

BLUE HILLS OFFICE PARK LLC

By: Gerald Fineberg, President of
Its: Blue Hills Management Corp., Manager of
    Blue Hills Office Park LLC, duly authorized

AS TO OBJECTIONS:

BLUE HILLS OFFICE PARK LLC
By its attorneys,

Peter B. McGlynn, Esq. BBO# 333660
Meredith A. Swisher, Esq. BBO# 646866
BERNKOPF GOODMAN LLP
125 Summer Street, 13th floor
Boston, Massachusetts 02110
(617) 790-3000
pmcglynn@bg-llp.com
mswisher@bg-llp.com

Dated: 1/18/06
#330231 v1/14500/9985

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each other party by mail/(by hand) 1/18/06

- 6 -

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

BLUE HILLS OFFICE PARK LLC,  )
    Plaintiff/Defendant-in-Counterclaim  )
                                 )
v.                               )     Civil Action No. 05-CV-10506 (WGY)
                                 )
J.P. MORGAN CHASE BANK, as  )
Trustee for the Registered Holders of  )
Credit Suisse First Boston Mortgage  )
Securities Corp., Commercial Mortgage  )
Pass-Through Certificates, Series 1999-C1,  )
    Defendant               )
                                 )
and CSFB 1999 – C1 ROYALL STREET,  )
LLC,                            )
    Defendant/Plaintiff-in-Counterclaim  )
                               )
and                            )
                               )
WILLIAM LANGELIER and GERALD  )
FINEBERG,                )
    Defendants-in-Counterclaim  )

## GERALD FINEBERG'S SUPPLEMENTAL ANSWERS TO
## DEFENDANTS' FIRST SET OF INTERROGATORIES

Gerald Fineberg ("Fineberg") hereby supplements his answers to Interrogatory Nos. 2, 7,

10 and 11 of the First Set of Interrogatories by the Defendants CSFB 1999-C1 Royall Street,

LLC ("CSFB") and Credit Suisse First Boston Mortgage Security Corp. ("CS Bank") as follows:

### GENERAL OBJECTIONS

Fineberg objects to each of Defendants' interrogatories to the extent that each

interrogatory recites or incorporates a "definition" and/or an "instruction" which exceeds the

scope of the Federal Rules of Civil Procedure.  Fineberg also objects to each interrogatory to the

extent that each interrogatory is vague, overly broad, unduly burdensome, seeks information that

is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, seeks

information that is not in Fineberg's possession, custody or control, seeks information that is

already in Defendants' possession, custody or control, seeks information that is subject to the

attorney-client privilege and/or the attorney work-product doctrine, and seeks information that is

otherwise beyond the scope of permissible discovery.

Fineberg hereby incorporates by reference each and every one of his general objections

into each and every Answer as if fully set forth therein.

Fineberg reserves the right to supplement his Answers pursuant to Rule 26(e) in the event

that information that may be responsive to these interrogatories becomes available.

## INTERROGATORY NO. 2

Describe each communication that took place during the period from July 1, 1999 through November 30, 2004, and concerned the lease between Blue Hills and Equiserve, Equiserve leaving the Property, Blue Hills' efforts to re-lease the Property, Blue Hills' requests for meetings with the mortgagee or Wells Fargo or LNR Partners, Blue Hills' requests for disbursements from Loan reserve or escrow accounts, payment of property taxes for the Property, and/or payments to the Tax Fund Sub-account (as that term is used in paragraph 29 of Blue Hills' First Amended Complaint), including without limitation communications between you and the mortgagee and/or Wells Fargo and/or LNR Partners, and communications among any principals, members, managers, employees, agents, or affiliates of Blue Hills, and, in your answer:

    a)      state the nature, date, time and place of each communication;
    b)      identify the person(s) who made each communication;
    c)      identify the person(s) who received each communication; and
    d)      identify each and every document which reflects, constitutes, or concerns each communication.

## ANSWER NO. 2

Fineberg objects to this interrogatory to the extent that it is overly broad, unduly

burdensome, vague and ambiguous and seeks information that is subject to attorney-client

privilege. Fineberg further objects to this interrogatory to the extent its multiple subparts exceed

the limit on interrogatories under the court order governing phased discovery. Without waiving

these objections, Fineberg states that Blue Hills, through its representatives, contacted the

defendants on several occasions from in or about the fall of 2003 through the date of foreclosure

as well as having conversations with third parties. While Fineberg cannot recall with specificity

the dates of various telephone conversations, Fineberg states that Blue Hills or its representatives

contacted the defendants to request a meeting to discuss, *inter alia*, Equiserve's vacating the

Property as of July 31, 2004, the necessity to more actively market the Property, the possibility

of converting the Property to multi-tenant use, and addressing budgets and potential sources of

funding for those marketing and re-leasing efforts including, without limitation, access to the

reserve funds for Property related purposes. In early 2004, representatives of Wells Fargo

assured Blue Hills that they would be responsive to Blue Hills' requests, including scheduling a

meeting with Blue Hills to address Property marketing costs and to discuss the process to be

followed by Blue Hills to access the reserve funds. Despite such assurances, Wells Fargo

continued to postpone the scheduling of the requested meetings, representing to Blue Hills that

they were working internally to determine the appropriate lender parties with whom Blue Hills

should meet to address those matters. In or about June, 2004 – two months before the Equiserve

Lease was set to expire and more than six months after Blue Hills first requested Wells Fargo's

assistance – Wells Fargo informed Blue Hills that it would consider whether the Special Servicer

for the Mortgage Loan, Lennar, and not Wells Fargo, would be the proper party to meet with

Blue Hills and to respond to Blue Hills' requests. By letter dated August 2, 2004 to Wells Fargo,

Blue Hills requested a disbursement from the reserve accounts to pay principal and interest due

on the Note for the month of August, 2004, as well as money to pay real estate taxes. Thereafter,

by letter dated August 5, 2004, Blue Hills again contacted Wells Fargo and notified it that, in

fact, Equiserve had vacated the Property and that no replacement tenant had been found. Blue

Hills also requested a meeting with Wells Fargo to discuss the status of and the future

performance of the loan. In addition, Blue Hills requested that Lennar attend the meeting as

well. Blue Hills' files were apparently not transferred by Wells Fargo to Lennar until on or

about August 19, 2004, as evidenced by Lennar's letter to Blue Hills dated August 19, 2004. On

September 2, 2004, Blue Hills again wrote to Wells Fargo and requested a distribution of

$254,652.24 to pay principal and interest on the Note for the month of September, 2004. With

respect to all written communications, pursuant to Fed. R. Civ. P. 33(d), Fineberg refers to the

documents Bate-Stamped Blue Hills 001-1472 produced on November 15, 2005.

## INTERROGATORY NO. 7

State the basis for the allegation, in paragraph 38 of Blue Hills' First Amended
Complaint, that "[t]his information [that Equiserve notified Blue Hills that it would not be
exercising its option to renew the Equiserve lease] was communicated to either or both of the
defendants, through their agents, Wells Fargo."

## ANSWER NO. 7

Equiserve notified Blue Hills of its intent not to exercise its option to extend its lease in

or about May 2003. Shortly thereafter, Blue Hills communicated to Wells Fargo via telephone

regarding, *inter alia*, Equiserve's vacating the Property as of July 31, 2004. See also Answer to

Interrogatory No. 2, incorporated herein by reference.

## INTERROGATORY NO. 10

Describe each communication concerning Blueview, the Special Permit, the ZBA
Decision, the Zoning Appeal, the Settlement, the Payment, the purchase of Blueview by DST
Realty of Massachusetts, Inc. and/or Equiserve's decision to move from the Property to
Blueview, including without limitation communications between you and Joseph P. Plunkett,
Stephen Cesso, Thomas R. McGee, Thomas R. Tye, or any other person, and among any
principals, members, managers, employees, agents, or affiliates of Blue Hills, and in your
answer:

     a)      state the nature, date, time and place of each communication;

- 4 -

b)      identify the person(s) who made each communication;
c)      identify the person(s) who received each communication; and
d)      identify each and every document which reflects, constitutes, or concerns each communication.

## ANSWER NO. 10

Fineberg objects to this interrogatory to the extent that it is overly broad, unduly burdensome, vague and ambiguous, seeks information that is subject to attorney-client privilege, and seeks information that is publicly available. Fineberg further objects to this interrogatory to the extent its multiple subparts exceed the limit on interrogatories under the court order governing phased discovery. Without waiving these objections, pursuant to Fed. R. Civ. P. 33(d), Fineberg refers to the documents Bate-Stamped 1473 - 1843 produced on November 29, 2005 and the documents produced on December 8, 2005, Bated stamped 1844 - 1945, which are marked "confidential" and are subject to the Stipulation Regarding the Preservation of Confidential Materials ("Confidentiality Stipulation"). While telephone conversations occurred among counsel for the various parties involved in the Special Permit, Zoning Appeal, and settlement of the Zoning Appeal, the date, times and places of each communication cannot be recalled with specificity.

## INTERROGATORY NO. 11

State the amount of the Payment and describe the disposition of the Payment, and in your answer:

a)      identify each and every document which forms any part of the source of your information regarding the amount of the Payment or the disposition of the Payment;

b)      identify each and every person who received any portion of the Payment; and

c)      identify each and every bank account into which any portion of the Payment was deposited.

- 5 -

## ANSWER NO. 11

Fineberg objects to this interrogatory to the extent that it is overly broad, unduly burdensome, vague and ambiguous, seeks information that is subject to attorney-client privilege, and seeks information on the receipt, "disposition" of, and bank accounts related to the settlement amount that is irrelevant and not likely to lead to the discovery of admissible evidence. Fineberg further objects to this interrogatory to the extent its multiple subparts exceed the limit on interrogatories under the court order governing phased discovery. Without waiving these objections, Fineberg states that the amount of the settlement is set forth in the Settlement Agreement, produced on December 8, 2005, Bate Stamped Nos. 1844 - 1855, and marked "confidential" pursuant to the Confidentiality Stipulation.

Signed under the pains and penalties of perjury this 17th day of _____ January _____, 2006.

_____
Gerald Fineberg

AS TO OBJECTIONS:

GERALD FINEBERG
By his attorneys,

_____
Peter B. McGlynn, Esq. BBO# 333660
Meredith A. Swisher, Esq. BBO# 646866
BERNKOPF GOODMAN LLP
125 Summer Street, 13th floor
Boston, Massachusetts 02110
(617) 790-3000
pmcglynn@bg-llp.com
mswisher@bg-llp.com

Dated: 1/18/06
#328973 v1/14500/9985

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each other party by mail (by hand) e-mail *MSwisher*

1/18/06

- 6 -

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BLUE HILLS OFFICE PARK LLC,<br>　　　Plaintiff/Defendant-in-Counterclaim | ) ) ) ) | |
| v. | ) ) ) | Civil Action No. 05-CV-10506 (WGY) |
| J.P. MORGAN CHASE BANK, as<br>Trustee for the Registered Holders of<br>Credit Suisse First Boston Mortgage<br>Securities Corp., Commercial Mortgage<br>Pass-Through Certificates, Series 1999-C1,<br>　　　Defendant | ) ) ) ) ) ) ) | |
| and CSFB 1999 – C1 ROYALL STREET,<br>LLC,<br>　　　Defendant/Plaintiff-in-Counterclaim | ) ) ) ) | |
| and | ) ) | |
| WILLIAM LANGELIER and GERALD<br>FINEBERG,<br>　　　Defendants-in-Counterclaim | ) ) ) ) | |

**WILLIAM LANGELIER'S SUPPLEMENTAL ANSWERS TO
DEFENDANTS' FIRST SET OF INTERROGATORIES**

William Langelier ("Langelier") hereby supplements his answers to Interrogatory Nos. 2,

7, 10 and 11 of the First Set of Interrogatories by the Defendants CSFB 1999-C1 Royall Street,

LLC ("CSFB") and Credit Suisse First Boston Mortgage Security Corp. ("CS Bank") as follows:

**GENERAL OBJECTIONS**

Langelier objects to each of Defendants' interrogatories to the extent that each

interrogatory recites or incorporates a "definition" and/or an "instruction" which exceeds the

scope of the Federal Rules of Civil Procedure.  Langelier also objects to each interrogatory to the

extent that each interrogatory is vague, overly broad, unduly burdensome, seeks information that

is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, seeks

information that is not in Langelier's possession, custody or control, seeks information that is

already in Defendants' possession, custody or control, seeks information that is subject to the

attorney-client privilege and/or the attorney work-product doctrine, and seeks information that is

otherwise beyond the scope of permissible discovery.

Langelier hereby incorporates by reference each and every one of his general objections

into each and every Answer as if fully set forth therein.

Langelier reserves the right to supplement his Answers pursuant to Rule 26(e) in the

event that information that may be responsive to these interrogatories becomes available.

## INTERROGATORY NO. 2

Describe each communication that took place during the period from July 1, 1999
through November 30, 2004, and concerned the lease between Blue Hills and Equiserve,
Equiserve leaving the Property, Blue Hills' efforts to re-lease the Property, Blue Hills' requests
for meetings with the mortgagee or Wells Fargo or LNR Partners, Blue Hills' requests for
disbursements from Loan reserve or escrow accounts, payment of property taxes for the
Property, and/or payments to the Tax Fund Sub-account (as that term is used in paragraph 29 of
Blue Hills' First Amended Complaint), including without limitation communications between
you and the mortgagee and/or Wells Fargo and/or LNR Partners, and communications among
any principals, members, managers, employees, agents, or affiliates of Blue Hills, and, in your
answer:

    a)      state the nature, date, time and place of each communication;
    b)      identify the person(s) who made each communication;
    c)      identify the person(s) who received each communication; and
    d)      identify each and every document which reflects, constitutes, or concerns
            each communication.

## ANSWER NO. 2

Langelier objects to this interrogatory to the extent that it is overly broad, unduly

burdensome, vague and ambiguous and seeks information that is subject to attorney-client

privilege. Langelier further objects to this interrogatory to the extent its multiple subparts exceed

the limit on interrogatories under the court order governing phased discovery. Without waiving these objections, Langelier states that Blue Hills, through its representatives, contacted the defendants on several occasions from in or about the fall of 2003 through the date of foreclosure as well as having conversations with third parties. While Langelier cannot recall with specificity the dates of various telephone conversations, Langelier states that Blue Hills or its representatives contacted the defendants to request a meeting to discuss, *inter alia*, Equiserve's vacating the Property as of July 31, 2004, the necessity to more actively market the Property, the possibility of converting the Property to multi-tenant use, and addressing budgets and potential sources of funding for those marketing and re-leasing efforts including, without limitation, access to the reserve funds for Property related purposes. In early 2004, representatives of Wells Fargo assured Blue Hills that they would be responsive to Blue Hills' requests, including scheduling a meeting with Blue Hills to address Property marketing costs and to discuss the process to be followed by Blue Hills to access the reserve funds. Despite such assurances, Wells Fargo continued to postpone the scheduling of the requested meetings, representing to Blue Hills that they were working internally to determine the appropriate lender parties with whom Blue Hills should meet to address those matters. In or about June, 2004 – two months before the Equiserve Lease was set to expire and more than six months after Blue Hills first requested Wells Fargo's assistance – Wells Fargo informed Blue Hills that it would consider whether the Special Servicer for the Mortgage Loan, Lennar, and not Wells Fargo, would be the proper party to meet with Blue Hills and to respond to Blue Hills' requests. By letter dated August 2, 2004 to Wells Fargo, Blue Hills requested a disbursement from the reserve accounts to pay principal and interest due on the Note for the month of August, 2004, as well as money to pay real estate taxes. Thereafter, by letter dated August 5, 2004, Blue Hills again contacted Wells Fargo and notified it

that, in fact, Equiserve had vacated the Property and that no replacement tenant had been found.

Blue Hills also requested a meeting with Wells Fargo to discuss the status of and the future

performance of the loan.  In addition, Blue Hills requested that Lennar attend the meeting as

well.  Blue Hills' files were apparently not transferred by Wells Fargo to Lennar until on or

about August 19, 2004, as evidenced by Lennar's letter to Blue Hills dated August 19, 2004.  On

September 2, 2004, Blue Hills again wrote to Wells Fargo and requested a distribution of

$254,652.24 to pay principal and interest on the Note for the month of September, 2004.  With

respect to all written communications, pursuant to Fed. R. Civ. P. 33(d), Langelier refers to the

documents Bate-Stamped Blue Hills 001-1472 produced on November 15, 2005.

## INTERROGATORY NO. 7

State the basis for the allegation, in paragraph 38 of Blue Hills' First Amended
Complaint, that "[t]his information [that Equiserve notified Blue Hills that it would not be
exercising its option to renew the Equiserve lease] was communicated to either or both of the
defendants, through their agents, Wells Fargo."

## ANSWER NO. 7

Equiserve notified Blue Hills of its intent not to exercise its option to extend its lease in

or about May 2003.  Shortly thereafter, Blue Hills communicated to Wells Fargo via telephone

regarding, *inter alia*,  Equiserve's vacating the Property as of July 31, 2004.  See also Answer to

Interrogatory No. 2, incorporated herein by reference.

## INTERROGATORY NO. 10

Describe each communication concerning Blueview, the Special Permit, the ZBA
Decision, the Zoning Appeal, the Settlement, the Payment, the purchase of Blueview by DST
Realty of Massachusetts, Inc. and/or Equiserve's decision to move from the Property to
Blueview, including without limitation communications between you and Joseph P. Plunkett,
Stephen Cesso, Thomas R. McGee, Thomas R. Tye, or any other person, and among any
principals, members, managers, employees, agents, or affiliates of Blue Hills, and in your
answer:

a)      state the nature, date, time and place of each communication;

- 4 -

b)    identify the person(s) who made each communication;
c)    identify the person(s) who received each communication; and
d)    identify each and every document which reflects, constitutes, or concerns each communication.

## ANSWER NO. 10

Langelier objects to this interrogatory to the extent that it is overly broad, unduly burdensome, vague and ambiguous, seeks information that is subject to attorney-client privilege, and seeks information that is publicly available. Langelier further objects to this interrogatory to the extent its multiple subparts exceed the limit on interrogatories under the court order governing phased discovery. Without waiving these objections, pursuant to Fed. R. Civ. P. 33(d), Langelier refers to the documents Bate-Stamped 1473 - 1843 produced on November 29, 2005 and the documents produced on December 8, 2005, Bated stamped 1844 - 1945, which are marked "confidential" and are subject to the Stipulation Regarding the Preservation of Confidential Materials ("Confidentiality Stipulation"). While telephone conversations occurred among counsel for the various parties involved in the Special Permit, Zoning Appeal, and settlement of the Zoning Appeal, the date, times and places of each communication cannot be recalled with specificity.

## INTERROGATORY NO. 11

State the amount of the Payment and describe the disposition of the Payment, and in your answer:

a)    identify each and every document which forms any part of the source of your information regarding the amount of the Payment or the disposition of the Payment;

b)    identify each and every person who received any portion of the Payment; and

c)    identify each and every bank account into which any portion of the Payment was deposited.

- 5 -

## ANSWER NO. 11

Langelier objects to this interrogatory to the extent that it is overly broad, unduly burdensome, vague and ambiguous, seeks information that is subject to attorney-client privilege, and seeks information on the receipt, "disposition" of, and bank accounts related to the settlement amount that is irrelevant and not likely to lead to the discovery of admissible evidence. Langelier further objects to this interrogatory to the extent its multiple subparts exceed the limit on interrogatories under the court order governing phased discovery. Without waiving these objections, Langelier states that the amount of the settlement is set forth in the Settlement Agreement, produced on December 8, 2005, Bate Stamped Nos. 1844 - 1855, and marked "confidential" pursuant to the Confidentiality Stipulation.

Signed under the pains and penalties of perjury this 11th day of January 2006.

_____
Wilham Langelier

AS TO OBJECTIONS:

WILLIAM LANGELIER
By his attorneys,

_____
Peter B. McGlynn, Esq. BBO# 333660
Meredith A. Swisher, Esq. BBO# 646866
BERNKOPF GOODMAN LLP
125 Summer Street, 13th floor
Boston, Massachusetts 02110
(617) 790-3000
pmcglynn@bg-llp.com
mswisher@bg-llp.com

Dated: January 12, 2006
#330292/v1/14500/9985

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each other party by mail (by hand) e-mail

January 12, 2006
_____

- 6 -



**DLA Piper Rudnick Gray Cary US LLP**
One International Place – 21st Floor
Boston, MA 02110-2600
T 617.406.6000
F 617.406.6100
W www.dlapiper.com

BRUCE E. FALBY
bruce.falby@dlapiper.com
T 617.406.6020  F 617.406.6120

February 3, 2006

**BY FAX AND U.S. MAIL**

Peter B. McGlynn, Esq.
Bernkopf Goodman LLP
125 Summer Street, 13th Floor
Boston, MA  02110

> Re:    *Blue Hills Office Park LLC v. CSFB 1999-C1 Royall Street, LLC, et al.*,
>         Civil Action No. 05-CD-10506 (WGY)

Dear Peter:

I have reviewed your clients' responses to our first set of interrogatories and requests for production, including the supplemental answers to interrogatories that were recently provided by your clients. The responses are inadequate, and for that reason we are currently preparing a motion to compel (1) the production of all responsive documents, and (2) complete answers to interrogatories.

The purpose of this letter is to hopefully narrow or resolve the issues that will otherwise be raised in our motion to compel. Below is a list of the interrogatories and requests for production for which inadequate responses or documents were provided. As the responses of Blue Hills Office Park, LLC ("Blue Hills"), William Langelier, and Gerald Fineberg were identical, the list below of inadequate responses applies to the responses of all three parties.

**_Defendants' First Set of Interrogatories_** – *Nos. 2, 3, 7, 10, 11, and 12.*

*Answer No. 2* – First, neither the initial answer nor the supplemental answer (1) provides the nature, date, time, and place of each alleged communication; (2) identifies the person(s) who made and received each alleged communication; or (3) identifies each document which reflects, constitutes, or concerns each alleged communication. Second, neither answer describes any internal communications among or between principals, members, managers, employees, agents, or affiliates of Blue Hills. Third, the supplemental answer to this interrogatory merely parrots the allegations of Blue Hills' Second Amended Complaint instead of properly responding to the interrogatory as written.

*Answer No. 3* – The answer does not comply with Local Rule 26.5(C)(8), which requires that a party requested to "state the basis" of or for a particular claim, assertion, allegation, or contention: (a) identify each and every document...which forms any part



of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory; (b) identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory; (c) state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory; and (d) state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

*Answer No. 7* – Neither the initial answer nor the supplemental answer (1) provides the date or time of the alleged communication or (2) identifies the persons who made or received the communication.

*Answer No. 10* – Neither the initial answer nor the supplemental answer describes each communication that is responsive to the interrogatory, nor do they (1) provide the nature, date, time, and place of each alleged communication; (2) identify the person(s) who made and received each alleged communication; or (3) identify each document which reflects, constitutes, or concerns each alleged communication. Additionally, the answer does not describe any internal communications among or between principals, members, managers, employees, agents, or affiliates of Blue Hills.

*Answer No. 11* – Neither the initial answer nor the supplemental answer describes the disposition of the Payment, nor do they (1) identify each and every document which forms any part of the source of the parties' information regarding the disposition of the Payment, (2) identify each and every person who received any portion of the Payment, or (3) identify each and every bank account into which any portion of the Payment was deposited.

*Answer No. 12* – The answer does not comply with Local Rule 26.5(C)(8).

**_Defendants' First Request for Production_** – *Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, and 28.*

*Request No. 2* – The documents produced in response to this request do not include documents concerning any internal communications relating to the Zoning Appeal, nor do they include notes or e-mails from or to the principals of Blue Hills. Further, it is not clear that all responsive and non-privileged documents in the possession, custody or control of your clients concerning the Zoning Appeal have been produced. If you will provide us with a written (and unqualified) confirmation that your clients have produced all non-privileged and responsive documents in their possession, custody, or control, we will not include this request in our motion to compel.

**DLA PIPER RUDNICK GRAY CARY**

Peter B. McGlynn, Esq.
February 3, 2006
Page 3

*Response No. 3* – The documents produced in response to this request do not include documents concerning any internal communications relating to the Settlement, nor do they include notes, e-mails, or other documents reflecting communications from or to the principals of Blue Hills concerning the Settlement. Further, it is not clear that all non-privileged and responsive documents in the possession, custody or control of your clients concerning the Settlement have been produced. If you will provide us with a written (and unqualified) confirmation that your clients have produced all non-privileged and responsive documents in their possession, custody, or control, we will not include this request in our motion to compel.

*Response No. 4* – The documents produced in response to this request do not include documents concerning the receipt, deposit, disposition, or transfer of the Payment, nor do they include documents concerning the negotiation of the amount of the Payment.

*Response No. 5* – It is unclear whether all non-privileged and responsive documents in your clients' possession, custody, or control have been produced. If you will provide us with a written (and unqualified) confirmation that your clients have produced all non-privileged and responsive documents in their possession, custody, or control, we will not include this request in our motion to compel.

*Response No. 6* – The response to No. 6 states that only "material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills" will be produced. Request No. 6, however, is not limited to documents you or your clients deem "material," nor is it limited solely to "written communications between the Lender and/or its agents and Blue Hills." If you will provide us with a written (and unqualified) confirmation that your clients have produced all non-privileged and responsive documents in their possession, custody, or control, we will not include this request in our motion to compel.

*Response No. 7* – The response to No. 7 states that only the "business records of Blue Hills regarding payment of taxes in connection with the Property." Request No. 7 is not limited in this manner; it requests all documents concerning the Property taxes and/or Property tax escrows. This would include, for example, documents evidencing communications concerning Property taxes and/or Property tax escrows.

*Response No. 8* – It does not appear that all non-privileged and responsive documents in your clients' possession, custody, or control have been produced. For example, there are no documents reflecting internal communications amongst the principals and employees of Blue Hills, no documents reflecting communications to or from the principals of Blue Hills, and no notes taken by the principals and/or employees of Blue Hills. If you will provide us with a written (and unqualified) confirmation that your clients have produced all non-privileged and responsive documents in their possession, custody, or control, we will not include this request in our motion to compel.



*Response No. 9* – No documents have been produced in response to Request No. 9.

*Response No. 10* – The response to No. 10 states that only "relevant" documents will be produced. Request No. 10, however, is not limited to documents you or your clients deem "relevant." If you will provide us with a written (and unqualified) confirmation that your clients have produced all non-privileged and responsive documents in their possession, custody, or control, we will not include this request in our motion to compel.

*Response No. 11* – The response to No. 11 states that only "the material Loan Documents, Blue Hills' business records with respect to the payment of taxes in connection with the Property, the Equiserve Lease, documents relating to Blue Hills' efforts to re-lease the Property, and material written communications between Blue Hills and the Lender and/or its agents" will be produced. Request No. 11, however, is not limited to those documents. If you will provide us with a written (and unqualified) confirmation that your clients have produced all non-privileged and responsive documents in their possession, custody, or control, we will not include this request in our motion to compel.

*Response No. 12* – The response to No. 12 states that only "material written communications" will be produced. Request No. 12, however, is not limited to documents you or your clients deem "material," nor is it limited to written communications. If you will provide us with a written (and unqualified) confirmation that your clients have produced all non-privileged and responsive documents in their possession, custody, or control, we will not include this request in our motion to compel.

*Response No. 13* – It does not appear that all non-privileged and responsive documents in your clients' possession, custody, or control have been produced. For example, there are no documents reflecting internal communications amongst the principals and employees of Blue Hills, no documents reflecting communications to or from the principals of Blue Hills, and no notes taken by the principals and/or employees of Blue Hills. If you will provide us with a written (and unqualified) confirmation that your clients have produced all non-privileged and responsive documents in their possession, custody, or control, we will not include this request in our motion to compel.

*Response Nos. 14, 15, 16, 18, 19, 20, 21, 22, & 23* – The responses to these requests state that only "material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills" will be produced. The requests, however, are not limited to documents you or your clients deem "material," nor is it limited to "written communications between the Lender and/or its agents and Blue Hills." Each of the requests asks for all documents concerning or supporting certain of the contentions in Blue Hills' complaint. If you will provide us with a written (and unqualified) confirmation that your clients have produced all non-privileged and responsive documents in their possession, custody, or control, we will not include these requests in our motion to compel.



*Response No. 24* – The response to No. 24 states that only "certain statements of account received by Blue Hills..." will be produced. Request No. 24, however, is not limited in this manner. If you will provide us with a written (and unqualified) confirmation that your clients have produced all non-privileged and responsive documents in their possession, custody, or control, including, without limitation, all account statements and transaction receipts in their possession, custody, or control, we will not include this requests in our motion to compel.

*Response Nos. 25, 26, & 27* – The responses to No. 25, 26, and 27 state that only documents "which are not subject to the above-referenced confidentiality agreement" will be produced. The request is not limited in this manner. If you will provide us with a written (and unqualified) confirmation that your clients have produced all non-privileged and responsive documents in their possession, custody, or control, we will not include this requests in our motion to compel.

*Response No. 28* – No documents have been produced in response to Request No. 28. If you will provide us with a written (and unqualified) confirmation that your clients have no non-privileged and responsive documents in their possession, custody, or control, and that there are no other lawsuits (past or present) involving the Property (other than the present matter and the Zoning Appeal), we will not include this request in our motion to compel.

I propose that on Wednesday, Friday, February 8, at 1:00 p.m., we hold a discovery conference pursuant to Local Rule 37.1(A), during which we can discuss each of the above interrogatories and requests in an attempt to narrow the areas of disagreement to the greatest possible extent. Please let me know if this time does not work for you. If I do not hear from you, I will call you on February 8 at 1:00 p.m. to begin the discovery conference.

As previously stated, with respect to many of the discovery requests listed above, a simple written confirmation from your clients that they have produced all responsive and non-privileged documents in their possession, custody, or control would eliminate the need to include those requests in our motion to compel.

Sincerely,

Bruce E. Falby

BEF/lnf

cc:    Meredith A. Swisher, Esq.
       E. Randolph Tucker, Esq.
       Bruce S. Barnett, Esq.
       Traci S. Feit, Esq.

~BOST1:406389.v2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BLUE HILLS OFFICE PARK LLC,

    Plaintiff, Defendant-in-Counterclaim.

    v.

J.P. MORGAN CHASE BANK, as Trustee for the
Registered Holders of Credit Suisse First Boston
Mortgage Securities Corp., Commercial Mortgage
Pass-Through Certificates, Series 1999-C1.,

    Defendant, Plaintiff-in-Counterclaim

    and

CSFB 1999 – C1 ROYALL STREET, LLC;

    Defendant, Plaintiff-in-Counterclaim,

    v.

WILLIAM LANGELIER and GERALD
FINEBERG,

    Defendants-in-Counterclaim.

Civil Action No.  05-CV-10506 (WJY)

## STIPULATION REGARDING THE
## PRESERVATION OF CONFIDENTIAL MATERIALS

    The parties hereto, and their respective counsel, recognizing that the parties may possess

information confidential in nature about which the parties desire to inquire during discovery and

other proceedings in this case, but which should not be made available to the public generally, or

to any third parties, hereby stipulate and agree as follows:

    1.    The provisions of this Stipulation (the "Stipulation") shall govern the discovery,

disclosure and use in the above-referenced action of all documents, deposition or other

testimony, interrogatory answers, responses to requests for admission, and other information produced or given to the parties in this action ("Materials").

2.     In connection with this action, any party may designate any nonpublic Materials containing sensitive business information as reasonably determined by the party designating the materials as "Confidential" being produced by that party as "Confidential" under the terms of this Stipulation. The parties agree that, for purposes of this Stipulation, documents related to Blue Hill Office Park, LLC's settlement with DST Realty, Inc. and Blueview Corporate Center LLC constitute sensitive business information.

3.     Any Material to be designated "Confidential" shall be so designated by stamping the Material with the legend "Confidential," prior to its production. Stamping such a legend on the cover of any multi-page document shall so designate all pages of such document, unless otherwise indicated.

4.     Counsel for any party may object to the "Confidential" designation of any or all such material, but based only on the following grounds: (i) the material is already part of the public domain, (ii) the material has already been publicly disclosed by lawful means; or (iii) the material does not constitute sensitive business information. In such event, said counsel shall advise the parties within 30 days as to such objections and the reasons therefor. If the party making the "Confidential" designation objects to the proposed disclosure, all the items shall continue to be treated as Confidential Materials pending a resolution of the parties' dispute, and it shall be the obligation of the party objecting to the "Confidential" designation to obtain a reasonably prompt hearing after reasonable notice to all parties before this Court with respect to the propriety of the designation. In the event one party seeks such a hearing, the other parties will cooperate in obtaining a reasonably prompt hearing with respect thereto.

- 2 -

5.     If any party wishes to use or inquire about at any deposition, at trial or in any other hearing or proceeding in the above-referenced action, any Materials designated as "Confidential" herein, the portion of the deposition or trial transcript which relates to such Materials shall be designated as Confidential by the confidentiality proponent by making a statement on the record to that effect and thereafter such portion of the transcript shall be treated as Confidential Material and shall be subject to the confidentiality provisions hereof. Notwithstanding the foregoing, however, nothing herein shall prevent or in any way restrict the use of or inquiry about Confidential Materials at trial or at any other courtroom hearing or proceeding if the Court declines to seal the proceedings, impound the Confidential Materials, or otherwise maintain the confidentiality of the Confidential Materials.

6.     Materials (including portions of deposition hearing and trial transcripts) designated as "Confidential," or information derived therefrom, shall be deemed confidential, shall be maintained in strict confidence by the counsel of record for the party to whom such materials are produced or given, and shall not be disclosed or made available by such counsel to any person except:

a)     to the partners, associates, secretaries, paralegal assistants, and employees of such counsel to the extent reasonably necessary to render professional services in the litigation;

b)     to parties or representatives of the parties who are assisting counsel in the conduct of the litigation;

c)     to witnesses in this action and to any signatory or identified recipient or transmitter of Confidential Materials;

d)     to court officials and personnel involved in this action (including court reporters, persons operating video recording equipment at depositions, and any special master appointed by the Court);

e)     to any person designated by the Court in the interest of justice, upon such terms as the Court may deem proper;

f)    to outside consultants or experts retained for the purpose of assisting counsel in the litigation so long as they agree in writing to the provisions of this Stipulation;

g)    to employees of parties involved solely in one or more aspects of organizing, filing, coding, converting, storing, or retrieving data or designing programs for handling data connected with these actions, including the performance of such duties in relation to a computerized litigation support system; and to employees of third-party contractors performing one or more of these functions; and

h)    any other person upon prior written consent from counsel for all other parties.

7.    Copies of any Confidential Materials may be attached to any pleading filed in Court provided the submitting party first moves to impound the Confidential Materials pursuant to Local Rule 7.2.

8.    Any person who receives or otherwise secures access to Confidential Materials pursuant to this Stipulation (other than court officials or personnel) shall be provided a copy of this Stipulation and requested to abide by its terms and not to disclose, reveal or discuss such Confidential Materials to or with any person who is not entitled to disclosure of such materials under paragraph 6 hereof.

9.    Nothing here shall prohibit the parties to this action from seeking further protection with respect to the disclosure and use of any Confidential Materials.

10.    Any third party who receives a subpoena from any party in this action may designate any Materials produced in response to the subpoena as Confidential in accordance with the terms of this Stipulation and such materials shall be treated as Confidential Materials hereunder to the same extent as if designated by a party.

11.    If a party in possession of Confidential Materials receives a subpoena or other compulsory process from a non-party to this Stipulation seeking production or other disclosure of Confidential Materials, that party shall give written and telephonic notice to counsel for all other parties no more than four business days after receipt of the subpoena or other compulsory process, so that the parties have the opportunity, if they elect to do so, to object to production. In the event that production of such documents is made, they shall still be treated as confidential by the parties to this Stipulation, and the party seeking to enforce this agreement shall bear the

- 4 -

burden of enforcing and defending this agreement with respect to any parties who receive such documents through subpoena or other compulsory process.

12.    This Stipulation shall survive as an agreement among the parties after the final determination of all aspects of this action.

13.    This Stipulation shall be without prejudice to the right of the parties to oppose a production request or discovery of any information on grounds other than the confidentiality of the required material or instructions.

| BLUE HILLS OFFICE PARK, WILLIAM LANGELIER, AND GERALD FINEBERG, | CSFB 1999 – C1 ROYALL STREET, LLC and J.P. MORGAN CHASE BANK, |
|---|---|
| By their attorneys, | By their attorneys, |
| Peter B. McGlynn, Esq. BBO# 333660<br>Meredith A. Swisher, Esq. BBO# 646866<br>BERNKOPF GOODMAN LLP<br>125 Summer Street, 13th floor<br>Boston, Massachusetts 02110<br>(617) 790-3000 | E. Randolph Tucker (BBO# 503845)<br>Bruce E. Falby (BBO# 544143)<br>Bruce S. Barnett (BBO# 647668)<br>Traci S. Feit (BBO# 630668)<br>DLA Piper Rudnick Gray Cary US LLP<br>One International Place, 21st Floor<br>Boston, MA 02110-2613<br>617-406-6000 |

Dated:  December 6, 2005

#327866 v2/14500