UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BLUE HILLS OFFICE PARK LLC,<br>　　Plaintiff/Defendant-in-Counterclaim | ) ) ) | Civil Action No. 05-CV-10506 (WGY) |
| v. | ) ) |  |
| J.P. MORGAN CHASE BANK, as<br>Trustee for the Registered Holders of<br>Credit Suisse First Boston Mortgage<br>Securities Corp., Commercial Mortgage<br>Pass-Through Certificates, Series 1999-C1,<br>　　Defendant | ) ) ) ) ) ) ) |  |
| and CSFB 1999 – C1 ROYALL STREET,<br>LLC,<br>　　Defendant/Plaintiff-in-Counterclaim | ) ) ) |  |
| and | ) ) |  |
| WILLIAM LANGELIER and GERALD<br>FINEBERG,<br>　　Defendants-in-Counterclaim | ) ) ) ) |  |

**OPPOSITION OF BLUE HILLS OFFICE PARK LLC, GERALD FINEBERG AND
WILLIAM LANGELIER TO MOTION TO COMPEL
OF DEFENDANTS AND PLAINTIFFS-IN-COUNTERCLAIM**

## I. INTRODUCTION

Blue Hills Office Park LLC ("Blue Hills"), Gerald Fineberg ("Fineberg") and William

Langelier ("Langelier") hereby oppose the Motion to Compel ("Motion") filed by Defendants

and Plaintiffs-in-Counterclaim CSFB 1999-C1 Royall Street, LLC ("CSFB") and J.P. Morgan

Bank ("J.P. Morgan") (collectively "Defendants"). In that Blue Hills, Fineberg and Langelier

have supplemented responses to document requests and interrogatories to the full extent required

by the Federal Rules of Civil Procedure and have produced all non-privileged responsive

documents in their possession, custody or control, their compliance with their discovery

obligations is complete. Despite the foregoing, and in an apparent attempt to obtain untoward

strategic advantage, Defendants have filed an unnecessary motion which contains several misrepresentations regarding the conduct of discovery in this matter and does not reflect the substantial efforts Blue Hills, Fineberg and Langelier have exerted to comply with the discovery requests.[1]

In further support of this Opposition, Blue Hills, Fineberg and Langelier aver and assert as follows:

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    CASE BACKGROUND

### The Loan

1.    On or about August 31, 1999, Blue Hills and Credit Suisse First Boston Mortgage Capital LLC  jointly executed a letter containing the terms and conditions  under which Credit Suisse First Boston Mortgage Capital LLC[2] agreed to loan $33.1 million to Blue Hills (the "Loan") secured by a mortgage on Blue Hills' property located at 150 Royall Street, Canton, Massachusetts (the "Property").  The Loan closed on September 14, 1999 and additional Loan documents, including a Note, Mortgage Agreement and Cash Management Agreement, were dated as of September 14, 1999.  By the above-captioned action, Blue Hills seeks, *inter alia,* damages for the Defendants' and their disclosed agents' multiple breaches of the Loan documents.

---

[1] Blue Hills, Fineberg and Langelier also note that Defendants filed the Motion on a late Friday afternoon of a three-day weekend.  This was done after Defendants' counsel informed counsel for Blue Hills, Fineberg and Langelier that there was no need to provide any additional documents until the following Tuesday, February 21, 2006, due the move of the offices of Defendants' law firm.  This demonstrates that Defendants' motivation underlying its motion is not to obtain any information but, rather, to utilize the Motion for purposes of harassment.

[2] Credit Suisse First Boston was the original Loan maker.  Thereafter, Credit Suisse First Boston assigned all of its interests in and obligations under the Loan to defendants J.P. Morgan Chase Bank as Trustee for the Registered Holders of Credit Suisse Bank First Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1991-C1 and then to CSFB 1999-C1 Royall Street LLC.

2.     At the Loan's inception, the parties were aware that the Property's sole tenant,

Boston Equiserve Limited Partnership ("Equiserve"), had a lease due to expire on July 31, 2004

(the "Lease"), and that the Lease was the only source of funds available to service the Loan.  In

recognition of Blue Hills' need to expend money to reposition the Property to attract new tenants

in the event that Equiserve did not extend the Lease, Defendants required Blue Hills to deposit

portions of its cash flow into reserve accounts earmarked for debt service maintenance, real

estate tax and insurance reserves and tenant improvements.

### Equiserve Does Not Renew Lease

3.     In or about May 2003, Equiserve notified Blue Hills that it would not be

exercising its option to renew the Lease.  In 2003, Blue Hills advised Defendants of Equiserve's

notification and engaged Cushman and Wakefield as Blue Hills' leasing agent to market the

Property.  During the period from the fall of 2003 through the foreclosure sale held in November

2004, Blue Hills contacted Defendants' agents, Wells Fargo National Association ("Wells

Fargo") and Lennar Partners, Inc. ("Lennar"), on several occasions to advise them of its re-

leasing efforts.  Wells Fargo representatives assured Blue Hills' representatives that they would

be responsive to Blue Hills' requests, and agreed to schedule a meeting with Blue Hills to

address Property marketing costs and Blue Hills' access to the funds in the Reserve Accounts.

### Blue Hills Requests Disbursements and Meetings

4.     On August 2, 2004, Blue Hills made a written request for disbursements from the

Reserve Accounts to pay principal and interest due on the Note for the month of August, 2004,

and to pay the real estate taxes.  On August 5, 2004, Blue Hills requested a meeting with

Defendants.  On August 13, 2004, Blue Hills sent Wells Fargo a fax enclosing its previous letters

and requesting the involvement of the Special Servicer, Lennar.

5.     On August 19, 2004, Lennar notified Blue Hills in writing that the Loan had been

transferred to Lennar and stated that it looked forward to a "successful working relationship"

with Blue Hills. That same day, Lennar sent Blue Hills another letter advising Blue Hills that it

had the authority to meet with Blue Hills to review the status of the Note and "any issues arising

under [the Loan Documents]."  On September 2, 2004, Blue Hills wrote to Wells Fargo a second

time requesting the disbursement of $254,652.24 to pay principal and interest due on the Note

for the month of September, 2004.  Wells Fargo failed to make the requested disbursements to

Blue Hills.

### Defendants Wrongfully Default Blue Hills

6.    Despite previously advising Blue Hills that it looked forward to a "successful

working relationship" with Blue Hills, and its obligations under the Mortgage Agreement,

Lennar informed Blue Hills by letter dated September 17, 2004, that Blue Hills' requests for

disbursement of sums to pay principal and interest due on the Note for the months of August and

September had been denied because Blue Hills was purportedly in default under the Mortgage

Agreement  and Note as of August 2, 2004 for failure to pay real estate taxes when due.  Lennar

also advised Blue Hills that the Note had been accelerated and was immediately due and payable.

7.    After receiving the August 2, 2004 letter from Blue Hills, Defendants paid the

real estate taxes that were due and did not advise Blue Hills that any failure to pay the taxes

would result in a default.  Moreover, when Lennar sent its September 17, 2004 letter notifying

Blue Hills that it had been retroactively defaulted as of August 2, 2004, it knew that Blue Hills

had previously made requests for a meeting in order to develop a plan to renovate and re-lease

the Property, and it had previously received two written requests from Blue Hills to disburse

money from the Reserve Accounts to pay principal, interest and real estate taxes.  As a result of

Blue Hills' purported default, Defendants refused Blue Hills access to the Reserve Accounts,

rendering Blue Hills' unable to meet its debt service and tax obligations.

8.    Among the most serious Loan breaches were the Defendants' wrongful

declaration that Blue Hills had defaulted on the Loan and its refusal to release to Blue Hills funds

4

held in certain reserve accounts that would have enabled Blue Hills to meet Loan obligations. Defendant's wrongful actions, which culminated in a foreclosure sale of the Property, caused Blue Hills to suffer significant damages.

**Defendants Assert Counterclaim**

9.      Defendants have asserted counterclaims against Blue Hills, Fineberg and Langelier alleging Loan-related breaches relating to Blue Hills' appeal of a zoning decision in 2003 in connection with the abutting property located at 250 Royall Street, Canton, Massachusetts, the settlement of that appeal ("Appeal") and the acceptance of settlement proceeds in exchange for the dismissal of the Appeal.  Defendants assert that such violations triggered the personal liability of Fineberg and Langelier under a limited Guaranty executed in favor of Defendants dated September 14, 1999.

10.      Blue Hills, Fineberg and Langelier deny that the filing of the Appeal and acceptance of settlement proceeds in any way breached Blue Hills' obligations under the Loan Documents.  Further, Blue Hills' actions did not trigger any of the narrow carve-outs to the non-recourse provisions of the Loan Documents which would have given rise to any personal liability of Fineberg or Langelier.

**B.      CONDUCT OF DISCOVERY**

**Blue Hills, Fineberg and Langelier Have Made Diligent**
**Effort to Comply with Discovery Requests.**

11.      On September 15, 2005, Defendants served their first requests for production of documents and first set of interrogatories on Blue Hills, Fineberg and Langelier.  Blue Hills, Fineberg and Langelier responded on November 11, 2005, the date set by agreement of the parties.  Defendants also responded to Blue Hills' discovery requests on that same date.

12.      In their responses, Blue Hills, Fineberg and Langelier objected to certain information sought based upon the existence of a confidentiality clause contained in a Settlement Agreement ("Settlement Agreement") entered into in August 2003 between Blue Hills and

5

various third parties resolving the Appeal.  The Settlement Agreement barred the dissemination of the terms of the settlement without consent or court order.  Blue Hills, Fineberg and Langelier attempted in good faith to obtain the consent of the other parties to the Settlement Agreement so that the requested documents and information could be released.  Unable to obtain such consent, Blue Hills, Fineberg and Langelier had no choice but to assert objections based upon their confidentiality obligations under the Settlement Agreement.

13.    On or about November 29, 2005, Blue Hills supplemented its initial production of documents by producing additional documents not subject to the confidentiality clause of the Settlement Agreement.  The delay in producing these documents was due to Blue Hills careful review of all documents related to the Appeal so that it did not violate the terms of the Settlement Agreement.

14.    On or about December 6, 2005, the parties entered into a Stipulation Regarding the Preservation of Confidential Materials ("Confidentiality Stipulation") that was approved by all parties.  Thereafter, subject to the terms of the Confidentiality Stipulation, on December 8, 2005, Blue Hills, Fineberg and Langelier produced information they were previously prohibited from producing by the confidentiality clause or the Settlement Agreement.  The documents produced were marked as "Confidential" and produced according to the terms of the Confidentiality Stipulation.

15.    Although Blue Hills, Fineberg and Langelier had not formally amended the written responses to document requests, Defendants cannot deny the receipt of additional documents in November and December 2005.  Copies of letters transmitting the supplemental documents to Defendants are attached hereto and incorporated herein as Exhibit "A."

16.    On January 18, 2006, the parties participated in a mediation with the Honorable Rudolph Kass (Ret.).  Subsequent to this unsuccessful attempt at settlement, the parties

commenced additional written discovery and depositions, as set forth by the Court Order dated
July 27, 2005 governing phased discovery.

17.    By letter dated February 3, 2006, Defendants forwarded a letter demanding
supplemental answers to their first set of interrogatories, as well as the production of certain
additional documents.  A copy of that letter is attached hereto and incorporated herein by
reference as Exhibit "B."  Defendants claimed that Blue Hills, Fineberg and Langelier had not
complied with their discovery obligations based upon Defendants' false assumption that there
had been a failure to produce internal e-mails, memoranda, correspondence or communications.
However, after a due and diligent search, it appears that such documents do not exist.  As was
communicated to counsel for the Defendants, Blue Hills, Fineberg and Langelier had already
produced all non-privileged e-mails and internal written communications.  Regardless of having
been informed of this, by letter dated February 3, 2006, Defendants insisted that Blue Hills,
Finbeberg and Langelier produce a "certification" that no such documents exist.  Needless to say,
the purported legal basis for the putative "certification" requirement was not identified nor did
the Defendants produce an iota of evidence that Blue Hills, Fineberg and Langelier were not
being fully forthright and complete in their compliance with discovery obligations.

18.    Counsel for the parties met on February 8, 2006 to discuss the open issues
regarding discovery contained in Defendants' February 3, 2006 letter.  As a courtesy, counsel for
Blue Hills, Langelier and Fineberg agreed to ask their clients – again – to diligently search their
computers and their files to ascertain if there were any additional documents that had not been
produced.  In addition, counsel for Blue Hills, Fineberg and Langelier also represented that all
archived files from the 1999 re-financing would be reviewed a second time.

19.    On or about February 16, 2006, when additional archived files from 1999 were
located, Blue Hills, Fineberg and Langelier promptly made such information available to
Defendants.  Although the vast majority of these documents were duplicative of documents that

had already been produced, Blue Hills, Fineberg and Langelier made such documents available for inspection. A copy of the February 16, 2006 letter confirming this inspection and the production of such additional documents is attached hereto and incorporated herein by reference as Exhibit "C."

20.     Blue Hills, Fineberg and Langelier's diligent search for additional documents, included, without limitation, searches of Bernkopf Goodman LLP's files, Wilmer Cutler Pickering Hale and Dorr LLP's ("Wilmer Cutler") files, Fineberg Management Company's[3] ("FMC") files and files of William Langelier located in California.

21.     On February 16, 2006, Defendants' counsel filed the Notice of Firm Address Change for Defendants relative to their upcoming office move. Before producing additional documents to the Defendants, counsel for Blue Hills, Fineberg and Langelier left a voice mail message with Defendants' counsel inquiring as to the preferred location for document delivery - the old office or the new office. This message was never returned. On Friday, February 17, 2006, counsel for Blue Hills again called Defendants' counsel, who requested that any additional documents not be delivered until Tuesday, February 21, 2006, after the office move. The Motion, at page 8, deceptively states that Blue Hills, Fineberg and Langelier failed to provide documents on February 17, 2006. This completely ignores the dialogue regarding the preferred location and date of delivery discussed, *supra*. A copy of the February 17, 2006 letter confirming the agreement not to produce documents until February 21, 2006, as well as the February 21, 2006 transmittal letter are attached hereto and incorporated herein by reference as Exhibit "D."

<u>**Defendants Fail to Comply with Discovery Deadlines**</u>

22.     Contrary to Defendants' plaint concerning the alleged failure of Blue Hills, Fineberg and Langelier to properly comply with their discovery obligations, the record extant

---

[3] FMC managed the Property and maintained files on behalf of Blue Hills.

demonstrates that Defendants supplemented their responses to Blue Hills' first set of document requests - served on November 15, 2005 - on **six** occasions: February 13, 2006, February 15, 2006, February 24, 2006, February 27, 2006, February 28, 2006 and March 3, 2006.

23.    Defendants appear to adhere to the aphorism that the best defense is a good offense, as the Defendants have failed to comply with the same discovery "rules" they seek to wrongfully enforce against Blue Hills. As discussed, *supra*, Defendants have supplemented their production of documents on six occasions. An explanation for this "dribbling" of information has not been forthcoming. By letter dated February 27, 2006, counsel for Blue Hills requested that Defendants confirm whether additional documents would be produced to Blue Hills. A copy of this February 27, 2006 letter as well as Defendants' letters supplementing documents are attached hereto and incorporated herein by reference as Exhibit "E." No response to the February 27, 2006 letter was received. On March 2, 2006, however, counsel for Defendants represented that additional Wells Fargo documents would be delivered on March 3, 2006 and that more documents might be forthcoming in response to the first set of documents requests. In that three depositions of Wells Fargo witnesses are scheduled to take place in California March 8 and March 9, 2006, the Defendants' dallying is not only suspicious but is quite prejudicial to Blue Hills, Fineberg and Langelier's ability to prepare for these depositions.

## III. ARGUMENT

### A. After Having Diligently Searched for Responsive Documents, Blue Hills, Fineberg and Langelier Produced All Non-Privileged, Relevant and Responsive Documents in their Possession, Custody and Control.

As part of a conscientious search for responsive documents, counsel for Blue Hills, Fineberg and Langelier have reviewed files maintained by the law firms of Bernkopf, Goodman LLP and Wilmer Cutler, counsel for William Langelier, as well as the files maintained by their respective clients at their business offices. The Property was managed by FMC, a small company that does not consistently maintain the categories of documents requested by

Defendants in the Motion.  Regardless, Joseph Donovan, CFO of FMC, and Daniel Frank, its

President,  testified that they reviewed FMC's relevant personnel files, as well as files

maintained by Gilbert Stone, a director of accounting who reported to Mr. Donovan.  Defendants

deceptively refer to Mr. Stone's testimony as indicating that his files had not been reviewed.

However, they have neglected to inform the Court of the testimony by Mr. Donovan and

Mr. Frank indicating that files maintained by Stone had, in fact, been reviewed.

A pertinent portion of Mr. Donovan's deposition testimony addressing the review of

Stone's files is set forth below:

257

9    Q.  I'm sorry, did you say before that you have
10   been involved in collecting documents for production
11   in this case?
12      A.  Yes.
13      Q.  What did you do?
14      A.  There was a request made by our attorneys
15   to pull all the documents; and so that's what I did,
16   I went through and pulled all my documents.
17      Q.  What documents did you pull?
18      A.  I had a couple of files on Blue Hills
19   Office.  I pulled those documents, I pulled those
20   files and I gave it to my attorneys.
21      Q.  Did you search the e-mails on your computer
22   for any e-mails having to do with Blue Hills?
23      A.  Yes, I did.
24      Q.  Did you produce those to your attorneys?

258

1       A.  Anything that was available at the time, I
2    gave it to them.
3       Q.  When I say search your e-mails, I mean
4    stored e-mails on your computer.  Is that what you
5    understood me to mean?
6       A.  Yes.  I periodically purge everything on my
7    e-mail lists, so...
8       Q.  Did you have any e-mails on your computer
9    pertaining to Blue Hills?
10      A.  Not that I remember, no.
11      Q.  Do you know what other efforts -- strike
12   that.  Do you know what efforts were made by other
13   people at Fineberg Management or Blue Hills
14   Park LLC to produce documents in this case?
15      A.  I believe each person, to the best of their
16   ability, pulled out what they had.
17      Q.  Who?
18      A.  Dan Frank, Larry Needle.  I went through
19   Gil's files and pulled out what I thought was
20   pertinent information in Gil's files.  I know since
21   your -- his testimony to you the other day, I
22   brought his whole files into the attorneys' office.
23   I also asked him if he had any e-mails, and he told
24   me he had no e-mails having anything to do with
Blue Hills . . .

. . .

Deposition Transcript of Joseph Donovan, pages 257-258.  Copies of the relevant testimony are

attached hereto and incorporated herein by reference as Exhibit "F."

Further, a portion of Mr. Frank's testimony addressing the review of relevant files is set forth below:

### 188

24    Q. Mr. Frank, do you know what efforts Blue

### 189

1    Hills Office Park LLC took to identify and produce
2    documents in this case?
3       A. We did -- ...

20       A. We went through our files, our computer.
21    We produced whatever documents we had.
22       Q. Was someone in charge of that process?
23       A. I think Joe was.  Then we had counsel come
24    in and make sure that we were in compliance.

### 190

1       Q. When you say Joe, you meant Joe Donovan?
2       A. Yeah, sorry.
3       Q. What counsel was involved?
4       A. I think Lydia Chesnick came in.  I know
5    Lydia Chesnick came in to collect it.
6       Q. Can you describe the computer system in
7    your office?
8       A. I have a computer.
9       Q. On your desk?
10       A. No; behind me.
11       Q. Does everybody have their own computer?
12       A. Most people have a computer.
13       Q. Do you know what search was done of the
14    computer system at Fineberg Management to respond to
15    our document request?
16       A. It was a very thorough search engineered by
17    Joe.  What do you do?  You go through all of your
18    files and all of your -- I'm not that --
19       Q. You don't know, do you?
20       A. We went through --
21          MR. McGLYNN:  Objection.
22          Go ahead.
23       A. We went through whatever buttons you have
24    to push.  We pushed out whatever we had.

· · ·

### 193

· · ·
5       Q. Did Mr. Fineberg look at his computer?
6       A. Yes.  Somebody -- he looked at it, yes.
7       Q. How do you know?
8       A. Because I happen to know.
9       Q. How do you know?
10       A. Joe Donovan spoke to him and told him what
11    to do.  We had our IT guy go in there.  He doesn't
12    have hardly anything on his computer.
13       Q. Did you hear Joe talk to Gerry?
14       A. Yes.
15       Q. What did Joe say?
16       A. "We have got to go through your computer
17    for anything relative to Blue Hills Office Park."
18       Q. It was actually an IT guy who did that?
19       A. Yeah.  We didn't know how to get into it.
20       Q. Who is the IT guy?
21       A. Michael Attenborough.
22       Q. He works for Fineberg Management?
23       A. Yeah.
24       Q. He's your IT guy?

### 194

1       A. Yeah.
2       Q. Did anyone talk to Mr. Langelier to try to
3    get his documents?
4       A. Somebody from Bernkopf Goodman &
Baseman --
5    Bernkopf Goodman actually talked to Andy Cohn.
6       Q. How do you know?
7       A. You know what?  I don't know.  I know he
8    produced some documents.  That I do know.
9       Q. How do you know that?
10       A. I don't remember.
11       Q. Have you seen documents produced by
12    Mr. Langelier?
13       A. Lydia Chesnick would not let a stone go
14    unturned.  She's our attorney, one of our attorneys.
15       Q. Did you see documents produced by
16    Mr. Langelier?
17       A. Yeah, I did today. . . .

· · ·

Deposition Transcript of Daniel Frank, pages 188-194. Copies of the relevant testimony are attached hereto and incorporated herein by reference as Exhibit "G."

On March 3, 2006, Blue Hills, Fineberg and Langelier provided formal supplemental responses to Defendants' document requests. These responses indicated that all non-privileged, relevant and responsive documents in their possession, custody and control have been provided to Defendants. A true and complete copy of Blue Hills, Fineberg and Langelier's Supplemental Responses is attached hereto and incorporated herein as Exhibit "H."

**B.    Blue Hills, Fineberg and Langelier Have Timely and Fully Supplemented All Interrogatory Answers.**

By the Court's Order dated July 27, 2005 governing phased discovery, the initial set of interrogatories were limited to 15 while the second set was limited to 30. Defendants' interrogatories contain so many subparts that the total number of interrogatories actually served are well in excess of number permitted by the Order. Copies of Defendants' first and second set of interrogatories are attached hereto as Exhibit "I."

Blue Hills, Fineberg and Langelier have supplemented their answers to Interrogatory Nos. 2, 7 and 11. The answers provided by Blue Hills, Fineberg and Langelier are the most thorough responses they can make based on reasonable and diligent efforts to refresh their memories by, *inter alia*, reviewing any pertinent documents.

Interrogatory Nos. 2 and 7 seeks information concerning verbal communications between or among , *inter alia,* representatives of Blue Hills and representatives of Wells Fargo and Lennar, the Town of Canton, Equiserve, and all internal communications. Defendants request detailed factual descriptions of communications and conversations between 1999 and 2004 between and among multiple persons and/or entities. Interrogatory No. 2 is undisputedly overly broad in scope, unduly burdensome, and contains multiple subparts. Timely objections on these grounds were interposed.

Interrogatory No. 2 states, in pertinent part, the following:

INTERROGATORY NO. 2

Describe each communication that took place during the period from July 1, 1999 through November 30, 2004, and concerned the lease between Blue Hills and Equiserve, Equiserve leaving the Property, Blue Hills' efforts to re-lease the Property, Blue Hills' requests for meetings with the mortgagee or Wells Fargo or LNR Partners, Blue Hills' requests for disbursements from Loan reserve or escrow accounts, payment of property taxes for the Property, and/or payments to the Tax Fund Sub-account (as that term is used in paragraph 29 of Blue Hills' First Amended Complaint), including without limitation communications between you and the mortgagee and/or Wells Fargo and/or LNR Partners, and communications among any principals, members, managers, employees, agents, or affiliates of Blue Hills, and, in your answer:

a)    state the nature, date, time and place of each communication;
b)    identify the person(s) who made each communication;
c)    identify the person(s) who received each communication; and
d)    identify each and every document which reflects, constitutes, or concerns each communication.

Much of the information apparently sought in Interrogatory No. 2 is information which is more readily and usually obtained through the use of oral depositions. See *Cone Mills Corp. v. Joseph Bancroft & Sons Co.,* 33 F.R.D. 318 (D. Del. 1963 ) (interrogatories held too broad, burdensome and oppressive when they sought communications between defendant and over 80 patent licensees). Similarly, Defendants seek oral communications from multiple persons not specifically named  that span a five year period.  This information is more efficiently obtained through the use of depositions, which Defendants have noticed and conducted.  Nonetheless, Blue Hills, Fineberg and Langelier have supplemented their answers to Interrogatory Nos. 2 and 7 to the best of their abilities based on reasonable efforts to express and, if necessary, refresh their recollections.  A copy of Blue Hills' supplemental answers to Interrogatory Nos. 2 and 7 are attached hereto as Exhibit "J."

13

With respect to Interrogatory No. 11, Blue Hills, Fineberg and Langelier initially objected to the information sought because it was subject to the Confidentiality Stipulation. When the Confidentiality Stipulation was executed, Blue Hills, Fineberg and Langelier disclosed the settlement agreement and the amount of the settlement proceeds. The issues to be determined by this Court for purposes of Defendants' counterclaim are whether or not Blue Hills' settlement of the Appeal and receipt of settlement proceeds in connection thereto was a violation of the loan documents executed by Blue Hills and the Defendants. While Blue Hills, Fineberg and Langelier contend that the "disposition" of the settlement proceeds and the specific bank accounts where the funds are held are irrelevant to the legal issues to be determined, they have provided this information to Defendants in their supplemental answer to Interrogatory No. 11. The supplemental answer to Interrogatory No. 11 has been intentionally deleted from Exhibit "J," as it has been designated "Confidential" in accordance with the Confidentiality Stipulation.[4]

## IV.    CONCLUSION

All supplemental answers to interrogatories and responses to document requests have been provided by Blue Hills, Fineberg and Langelier, notwithstanding that counsel is still waiting to hear if additional supplemental responses to Blue Hills' first set of document requests will be provided by Defendants. Based upon the foregoing, Blue Hills, Fineberg and Langelier request that the Court deny Defendants' Motion to Compel.

---

[4] Upon request, Blue Hills, Fineberg and Langelier will provide a copy to the Court for *in camera* inspection. Copies will also be brought to any hearing held on the Motion.

BLUE HILLS OFFICE PARK LLC, WILLIAM
LANGELIER AND GERALD FINEBERG,
By their attorneys,

/s/ Meredith A. Swisher
Peter B. McGlynn, Esq. BBO# 333660
Meredith A. Swisher, Esq. BBO# 646866
BERNKOPF GOODMAN LLP
125 Summer Street, 13th floor
Boston, Massachusetts 02110
(617) 790-3000
pmcglynn@bg-llp.com
mswisher@bg-llp.com

Dated: March 3, 2006
#333363 v1/14500/9985

EXHIBIT A

BERNKOPF
GOODMAN | LLP

November 29, 2005

MEREDITH A. SWISHER

DIRECT DIAL: (617) 790-3336

E-MAIL: MSWISHER@BG-LLP.COM

*Via Hand Delivery*

Bruce S. Barnett, Esq.
Piper Rudnick Gray Cary US LLP
One International Place, 21st Floor
Boston, MA  02110

Re:    *Blue Hills Office Park, LLC v. Credit Suisse First Boston Mortgage
       Capital, LLC, et al.*, Civil Action No. 05-10506-WGY

Dear Bruce:

Enclosed are bate stamped documents Blue Hill 1473 - 1843 which are supplemental
documents responsive to Defendants' Requests for Production of Documents to Blue Hills
Office Park LLC, Gerald Fineberg and William Langelier.

Very truly yours,

Meredith A. Swisher
MAS:vad
Enclosures
cc:    Peter B. McGlynn, Esq. / *without encs.*
#327462 v1/14500/9985

125 SUMMER STREET

BOSTON, MA 02110-1621

617.790.3000 | T

617.790.3300 | F

WWW.BG-LLP.COM

BERNKOPF
GOODMAN|LLP

December 8, 2005

MEREDITH A. SWISHER

DIRECT DIAL: (617) 790-3336

E-MAIL: MSWISHER@BG-LLP.COM

*Via Hand Delivery*

Bruce S. Barnett, Esq.
Piper Rudnick Gray Cary US LLP
One International Place, 21st Floor
Boston, MA  02110

Re:    *Blue Hills Office Park, LLC v. Credit Suisse First Boston Mortgage
        Capital, LLC, et al.,* Civil Action No. 05-10506-WGY

Dear Bruce:

Enclosed are bate stamped documents Blue Hill 1844 - 1945 which are supplemental
confidential documents responsive to Defendants' Requests for Production of Documents to
Blue Hills Office Park LLC, Gerald Fineberg and William Langelier and produced in
accordance with the executed Stipulation Regarding the Preservation of Confidential
Materials.

Very truly yours,

Meredith A. Swisher
MAS:vad
Enclosures
cc:      Peter B. McGlynn, Esq. / *without encs.*
#328395 v1/14500/9985

# EXHIBIT B



**DLA Piper Rudnick Gray Cary US LLP**
One International Place – 21st Floor
Boston, MA 02110-2600
T  617.406.6000
F  617.406.6100
W www.dlapiper.com

BRUCE E. FALBY
bruce.falby@dlapiper.com
T 617.406.6020  F 617.406.6120

February 3, 2006

**BY FAX AND U.S. MAIL**

Peter B. McGlynn, Esq.
Bernkopf Goodman LLP
125 Summer Street, 13th Floor
Boston, MA  02110

Re: *Blue Hills Office Park LLC v. CSFB 1999-C1 Royall Street, LLC, et al.,*
*Civil Action No. 05-CD-10506 (WGY)*

Dear Peter:

I have reviewed your clients' responses to our first set of interrogatories and requests for production, including the supplemental answers to interrogatories that were recently provided by your clients. The responses are inadequate, and for that reason we are currently preparing a motion to compel (1) the production of all responsive documents, and (2) complete answers to interrogatories.

The purpose of this letter is to hopefully narrow or resolve the issues that will otherwise be raised in our motion to compel. Below is a list of the interrogatories and requests for production for which inadequate responses or documents were provided. As the responses of Blue Hills Office Park, LLC ("Blue Hills"), William Langelier, and Gerald Fineberg were identical, the list below of inadequate responses applies to the responses of all three parties.

*Defendants' First Set of Interrogatories* – Nos. 2, 3, 7, 10, 11, and 12.

*Answer No. 2* – First, neither the initial answer nor the supplemental answer (1) provides the nature, date, time, and place of each alleged communication; (2) identifies the person(s) who made and received each alleged communication; or (3) identifies each document which reflects, constitutes, or concerns each alleged communication. Second, neither answer describes any internal communications among or between principals, members, managers, employees, agents, or affiliates of Blue Hills. Third, the supplemental answer to this interrogatory merely parrots the allegations of Blue Hills' Second Amended Complaint instead of properly responding to the interrogatory as written.

*Answer No. 3* – The answer does not comply with Local Rule 26.5(C)(8), which requires that a party requested to "state the basis" of or for a particular claim, assertion, allegation, or contention: (a) identify each and every document...which forms any part



of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory; (b) identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory; (c) state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory; and (d) state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

*Answer No. 7* – Neither the initial answer nor the supplemental answer (1) provides the date or time of the alleged communication or (2) identifies the persons who made or received the communication.

*Answer No. 10* – Neither the initial answer nor the supplemental answer describes each communication that is responsive to the interrogatory, nor do they (1) provide the nature, date, time, and place of each alleged communication; (2) identify the person(s) who made and received each alleged communication; or (3) identify each document which reflects, constitutes, or concerns each alleged communication. Additionally, the answer does not describe any internal communications among or between principals, members, managers, employees, agents, or affiliates of Blue Hills.

*Answer No. 11* – Neither the initial answer nor the supplemental answer describes the disposition of the Payment, nor do they (1) identify each and every document which forms any part of the source of the parties' information regarding the disposition of the Payment, (2) identify each and every person who received any portion of the Payment, or (3) identify each and every bank account into which any portion of the Payment was deposited.

*Answer No. 12* – The answer does not comply with Local Rule 26.5(C)(8).

**_Defendants' First Request for Production_** – *Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, and 28.*

*Request No. 2* – The documents produced in response to this request do not include documents concerning any internal communications relating to the Zoning Appeal, nor do they include notes or e-mails from or to the principals of Blue Hills. Further, it is not clear that all responsive and non-privileged documents in the possession, custody or control of your clients concerning the Zoning Appeal have been produced. If you will provide us with a written (and unqualified) confirmation that your clients have produced all non-privileged and responsive documents in their possession, custody, or control, we will not include this request in our motion to compel.



*Response No. 3* – The documents produced in response to this request do not include documents concerning any internal communications relating to the Settlement, nor do they include notes, e-mails, or other documents reflecting communications from or to the principals of Blue Hills concerning the Settlement. Further, it is not clear that all non-privileged and responsive documents in the possession, custody or control of your clients concerning the Settlement have been produced. If you will provide us with a written (and unqualified) confirmation that your clients have produced all non-privileged and responsive documents in their possession, custody, or control, we will not include this request in our motion to compel.

*Response No. 4* – The documents produced in response to this request do not include documents concerning the receipt, deposit, disposition, or transfer of the Payment, nor do they include documents concerning the negotiation of the amount of the Payment.

*Response No. 5* – It is unclear whether all non-privileged and responsive documents in your clients' possession, custody, or control have been produced. If you will provide us with a written (and unqualified) confirmation that your clients have produced all non-privileged and responsive documents in their possession, custody, or control, we will not include this request in our motion to compel.

*Response No. 6* – The response to No. 6 states that only "material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills" will be produced. Request No. 6, however, is not limited to documents you or your clients deem "material," nor is it limited solely to "written communications between the Lender and/or its agents and Blue Hills." If you will provide us with a written (and unqualified) confirmation that your clients have produced <u>all</u> non-privileged and responsive documents in their possession, custody, or control, we will not include this request in our motion to compel.

*Response No. 7* – The response to No. 7 states that only the "business records of Blue Hills regarding payment of taxes in connection with the Property." Request No. 7 is not limited in this manner; it requests <u>all</u> documents concerning the Property taxes and/or Property tax escrows. This would include, for example, documents evidencing communications concerning Property taxes and/or Property tax escrows.

*Response No. 8* – It does not appear that all non-privileged and responsive documents in your clients' possession, custody, or control have been produced. For example, there are no documents reflecting internal communications amongst the principals and employees of Blue Hills, no documents reflecting communications to or from the principals of Blue Hills, and no notes taken by the principals and/or employees of Blue Hills. If you will provide us with a written (and unqualified) confirmation that your clients have produced all non-privileged and responsive documents in their possession, custody, or control, we will not include this request in our motion to compel.



*Response No. 9* – No documents have been produced in response to Request No. 9.

*Response No. 10* – The response to No. 10 states that only "relevant" documents will be produced. Request No. 10, however, is not limited to documents you or your clients deem "relevant." If you will provide us with a written (and unqualified) confirmation that your clients have produced <u>all</u> non-privileged and responsive documents in their possession, custody, or control, we will not include this request in our motion to compel.

*Response No. 11* – The response to No. 11 states that only "the material Loan Documents, Blue Hills' business records with respect to the payment of taxes in connection with the Property, the Equiserve Lease, documents relating to Blue Hills' efforts to re-lease the Property, and material written communications between Blue Hills and the Lender and/or its agents" will be produced. Request No. 11, however, is not limited to those documents. If you will provide us with a written (and unqualified) confirmation that your clients have produced <u>all</u> non-privileged and responsive documents in their possession, custody, or control, we will not include this request in our motion to compel.

*Response No. 12* – The response to No. 12 states that only "material written communications" will be produced. Request No. 12, however, is not limited to documents you or your clients deem "material," nor is it limited to written communications. If you will provide us with a written (and unqualified) confirmation that your clients have produced <u>all</u> non-privileged and responsive documents in their possession, custody, or control, we will not include this request in our motion to compel.

*Response No. 13* – It does not appear that all non-privileged and responsive documents in your clients' possession, custody, or control have been produced. For example, there are no documents reflecting internal communications amongst the principals and employees of Blue Hills, no documents reflecting communications to or from the principals of Blue Hills, and no notes taken by the principals and/or employees of Blue Hills. If you will provide us with a written (and unqualified) confirmation that your clients have produced all non-privileged and responsive documents in their possession, custody, or control, we will not include this request in our motion to compel.

*Response Nos. 14, 15, 16, 18, 19, 20, 21, 22, & 23* – The responses to these requests state that only "material Loan Documents and material written communications between the Lender and/or its agents and Blue Hills" will be produced. The requests, however, are not limited to documents you or your clients deem "material," nor is it limited to "written communications between the Lender and/or its agents and Blue Hills." Each of the requests asks for <u>all</u> documents concerning or supporting certain of the contentions in Blue Hills' complaint. If you will provide us with a written (and unqualified) confirmation that your clients have produced all non-privileged and responsive documents in their possession, custody, or control, we will not include these requests in our motion to compel.



*Response No. 24* – The response to No. 24 states that only "certain statements of account received by Blue Hills..." will be produced. Request No. 24, however, is not limited in this manner. If you will provide us with a written (and unqualified) confirmation that your clients have produced all non-privileged and responsive documents in their possession, custody, or control, including, without limitation, all account statements and transaction receipts in their possession, custody, or control, we will not include this requests in our motion to compel.

*Response Nos. 25, 26, & 27* – The responses to No. 25, 26, and 27 state that only documents "which are not subject to the above-referenced confidentiality agreement" will be produced. The request is not limited in this manner. If you will provide us with a written (and unqualified) confirmation that your clients have produced all non-privileged and responsive documents in their possession, custody, or control, we will not include this requests in our motion to compel.

*Response No. 28* – No documents have been produced in response to Request No. 28. If you will provide us with a written (and unqualified) confirmation that your clients have no non-privileged and responsive documents in their possession, custody, or control, and that there are no other lawsuits (past or present) involving the Property (other than the present matter and the Zoning Appeal), we will not include this request in our motion to compel.

I propose that on Wednesday, Friday, February 8, at 1:00 p.m., we hold a discovery conference pursuant to Local Rule 37.1(A), during which we can discuss each of the above interrogatories and requests in an attempt to narrow the areas of disagreement to the greatest possible extent. Please let me know if this time does not work for you. If I do not hear from you, I will call you on February 8 at 1:00 p.m. to begin the discovery conference.

As previously stated, with respect to many of the discovery requests listed above, a simple written confirmation from your clients that they have produced all responsive and non-privileged documents in their possession, custody, or control would eliminate the need to include those requests in our motion to compel.

Sincerely,

Bruce E. Falby

BEF/lnf

cc:    Meredith A. Swisher, Esq.
       E. Randolph Tucker, Esq.
       Bruce S. Barnett, Esq.
       Traci S. Feit, Esq.

~BOST1:406389.v2

EXHIBIT C

BERNKOPF
GOODMAN LLP

February 16, 2006

MEREDITH A. SWISHER
DIRECT DIAL: (617) 790-3336
E-MAIL: MSWISHER@BG-LLP.COM

*Via Hand Delivery*

Traci S. Feit, Esq.
DLA Piper Rudnick Gray Cary US LLP
One International Place, 21st Floor
Boston, MA 02110

Re:    *Blue Hills Office Park, LLC v. J.P. Morgan Chase Bank, et al.*
       *Capital, LLC, et al.*, Civil Action No. 05-10506-WGY

Dear Traci:

Enclosed pleased find documents bate-stamped Blue Hills 1946 - Blue Hills 4134.  As we discussed on Tuesday, February 14, 2006, we believe that most of the documents you reviewed have been previously produced and the files contain duplicates.  However, in accordance with your instructions, we made a complete copy of those files and have enclosed an invoice for the copies.  Please submit payment in the amount of $437.60 to Bernkopf Goodman LLP.

Please call me if you have any questions.

Very truly yours,

Meredith A. Swisher
MAS:vad
Enclosures
cc:    Billing
#332784 v1/14500/9985

# EXHIBIT D

BERNKOPF
GOODMAN|LLP

February 17, 2006

MEREDITH A. SWISHER
DIRECT DIAL: (617) 790-3336
E-MAIL: MSWISHER@BG-LLP.COM

*Via Facsimile and First Class Mail*

Bruce S. Barnett, Esq.
DLA Piper Rudnick Gray Cary US LLP
33 Arch Street, 26th Floor
Boston, MA 02110

Re:    *Blue Hills Office Park, LLC v. J.P. Morgan, et al.*
       *Capital, LLC, et al.*, Civil Action No. 05-10506-WGY

Dear Bruce:

This letter shall confirm our discussion earlier today regarding production of documents to your office. Yesterday, I left a message with Traci Feit inquiring as to the appropriate office to deliver documents in light of your impending move. When that message was not returned, I had documents delivered to your office at One International Place. It is my understanding that you have received them.

This morning, I left another message with you with the same inquiry regarding additional documents to be delivered. You advised me that because today is "moving day" for your firm, that we should deliver documents to your new address on Tuesday. Therefore, in accordance with your instructions, documents will be delivered to your new office address on Tuesday and will be sent to your attention.

Very truly yours,

Meredith A. Swisher

MAS:kon
#332861 v1/14500/9985

125 SUMMER STREET
BOSTON, MA 02110-1621
617.790.3000 | T
617.790.3300 | F
WWW.BG-LLP.COM



February 21, 2006

MEREDITH A. SWISHER

DIRECT DIAL: (617) 790-3336

E-MAIL: MSWISHER@BG-LLP.COM

*Via Hand Delivery*

Bruce S. Barnett, Esq.
DLA Piper Rudnick Gray Cary US LLP
33 Arch Street, 26th Floor
Boston, MA 02110-1447

Re:    *Blue Hills Office Park, LLC v. J.P. Morgan Chase Bank, et al.*
       *Capital, LLC, et al.,* Civil Action No. 05-10506-WGY

Dear Bruce:

Enclosed pleased find documents bate-stamped Blue Hill 4135 - Blue Hill 5310
supplementing the responses of Blue Hills Office Park LLC, Gerald Fineberg and William
Langelier to CSFB 1999-C1 Royall Street LLC and Credit Suisse First Boston Mortgage
Security Corp.'s First Request for Production of Documents.

As we discussed on Friday, we were prepared to deliver these documents to you last week.
Because your firm is in the process of moving, you instructed us to hold the documents until
today and to deliver them to your new address. Please call me if you have any questions.

Very truly yours,

Meredith A. Swisher
MAS:vad
Enclosures
#332905 v1/14500/9985

125 SUMMER STREET

BOSTON, MA 02110-1621

617.790.3000 | T

617.790.3300 | F

WWW.BG-LLP.COM

EXHIBIT E



February 27, 2006

PETER B. MCGLYNN
DIRECT DIAL: (617) 790-3390
E-MAIL: PMCGLYNN@BG-LLP.COM

***Via Facsimile***

Bruce Falby, Esq.
DLA Piper Rudnick Gray Cary
One International Place
21st Floor
Boston, MA  02110-2600

Re:    *Blue Hills Office Park LLC v. Credit Suisse First Boston Mortgage Capital*
       Civil Action No. 05-10506 (WGY)

Dear Bruce:

This confirms the depositions of Gerald Fineberg on March 21st and Kenneth Goldberg on March 23rd.  This also confirms my consent to extend the discovery deadline to depose these individuals on those dates.

Recently, you have complained to me about the alleged tardiness of Blue Hills Office Park, LLC and Messrs. Fineberg and Langelier's responses to your production requests, yet in the past week and a half we have received five "supplemental" documents packages from you. The last one was received within the past hour or so.  Do you expect any more "supplements"?  If so, please advise me when we may expect them.

I also note that in this morning's "supplement" you have included completely redacted copies of attorneys' invoices.  If you plan on continuing to pursue legal fees in connection with your clients' Counterclaims, please forward copies of legal invoices to me immediately.

Very truly yours,

Peter B. McGlynn

PBM:kon
#333362 v1/14500/9985

125 SUMMER STREET
BOSTON, MA 02110-1621
617.790.3000    T
617.790.3300    F
WWW.BG-LLP.COM



**DLA Piper Rudnick Gray Cary US LLP**
One International Place, 21st Floor
Boston, Massachusetts 02110-2613
T 617.406.6000
F 617.406.6100
W www.dlapiper.com

TRACI S. FEIT
traci.feit@dlapiper.com
T 617.406.6010

February 13, 2006

**BY HAND**

Meredith A. Swisher, Esq.
Bernkopf Goodman LLP
125 Summer Street, 13th Floor
Boston, MA  02110

> Re:    *Blue Hills Office Park LLC v. Credit Suisse*
> *First Boston Mortgage Securities Corp., et al.*
> Civil Action No. 05-CV-10506 (WGY)

Dear Meredith:

Enclosed per our agreement please find the following:

- WLIS CD (Wells Fargo documents); and

- Copies of documents received from DST Realty and National
  Development, Bates labeled DST0001 through DST0070 and ND0001
  through ND0504.

Please let me know if there is anything else you need from us with respect to your first set
of interrogatories and requests for production.

Sincerely,

*Traci Feit*

Traci S. Feit

TSF/lnf
Enclosures

~BOST1:407832.v1

**Serving clients globally**



**DLA Piper Rudnick Gray Cary US LLP**
One International Place, 21st Floor
Boston, Massachusetts 02110-2613
T 617.406.6000
F 617.406.6100
W www.dlapiper.com

BRUCE S. BARNETT
bruce.barnett@dlapiper.com
T 617.406.6002

February 15, 2006

Meredith A. Swisher, Esq.
Bernkopf Goodman LLP
125 Summer Street, 13th Floor
Boston, MA 02110

Re:    *Blue Hills Office Park LLC v. J.P. Morgan Chase Bank, et al.,*
       Defendants' Supplemental Document Production
       Civil Action No. 05-CV-10506 (WGY)

Dear Meredith:

I am writing to confirm that yesterday, during the deposition of Joseph Donovan, I delivered to Peter McGlynn a supplemental document production on behalf of defendants. It was Bates labeled WF01966 through WF02117.

Please do not hesitate to call if you have any questions.

Sincerely,

Bruce S. Barnett

BSB/jmm

cc:    Peter B. McGlynn, Esq.
       Bruce E. Falby, Esq.
       Traci S. Feit, Esq.
       Ms. Nili Yavin

~BOST1:408151.v1
306477-18
**Serving clients globally**



DLA Piper Rudnick Gray Cary US LLP
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
T 617.406.6000
F 617.406.6100
W www.dlapiper.com

BRUCE S. BARNETT
bruce.barnett@dlapiper.com
T 617.406.6002

February 24, 2006

BY HAND DELIVERY

Meredith A. Swisher, Esq.
Bernkopf Goodman LLP
125 Summer Street, 13th Floor
Boston, MA 02110

> Re:   *Blue Hills Office Park, LLC v. Credit Suisse First Boston Mortgage Capital, LLC, et al.*, Civil Action No. 05-10506-WGY
>       <u>Production of Documents of Wells Fargo</u>

Dear Meredith:

Enclosed please find documents responsive to the plaintiff's requests for production in this matter. They are Bates labeled as follows:

WF02118-WF02367
LNR04049-LNR04188

Should you have any questions, please do not hesitate to contact me.

Sincerely,

Bruce S. Barnett

BSB/jmm
enclosures
cc:   Peter B. McGlynn, Esq. (w/o enclosure, by facsimile)
      Bruce E. Falby, Esq. (w/o enclosures)

~BOST1:409020.v1
306477-18
**Serving clients globally**



**DLA Piper Rudnick Gray Cary US LLP**
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
**T** 617.406.6000
**F** 617.406.6100
**W** www.dlapiper.com

BRUCE S. BARNETT
bruce.barnett@dlapiper.com
**T** 617.406.6002

February 27, 2006

BY HAND DELIVERY

Peter B. McGlynn, Esq.
Bernkopf Goodman LLP
125 Summer Street, 13th Floor
Boston, MA 02110

> Re:   *Blue Hills Office Park, LLC v. Credit Suisse First Boston Mortgage*
>       *Capital, LLC, et al.*, Civil Action No. 05-10506-WGY
>       <u>Production of Documents of Wells Fargo</u>

Dear Peter:

Enclosed please find documents responsive to the plaintiff's requests for production in this matter. They are Bates labeled as follows:

LNR04189-LNR04352

Should you have any questions, please do not hesitate to contact me.

Sincerely,

Bruce S. Barnett

enclosures
cc:    Meredith A. Swisher, Esq. (w/o enclosure, by facsimile)
       Bruce E. Falby, Esq. (w/o enclosures)

**DLA PIPER RUDNICK GRAY CARY**

DLA Piper Rudnick Gray Cary US LLP
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
T 617.406.6000
F 617.406.6100
W www.dlapiper.com

BRUCE S. BARNETT
bruce.barnett@dlapiper.com
T 617.406.6002

February 28, 2006

BY HAND DELIVERY

Peter B. McGlynn, Esq.
Bernkopf Goodman LLP
125 Summer Street, 13th Floor
Boston, MA 02110

Re:  *Blue Hills Office Park, LLC v. Credit Suisse First Boston Mortgage Capital, LLC, et al.*, Civil Action No. 05-10506-WGY
Production of Documents of Wells Fargo

Dear Peter:

Enclosed please find copies of the documents responsive to the plaintiff's requests for production in this matter that I emailed to you yesterday afternoon.  They are Bates labeled as follows:

LNR04353-LNR04354

Should you have any questions, please do not hesitate to contact me.

Sincerely,

Bruce S. Barnett

enclosures
cc:  Meredith A. Swisher, Esq. (w/o enclosure, by facsimile)
Bruce E. Falby, Esq. (w/o enclosures)

~BOST1:409474.v1
306477-18
**Serving clients globally**



**DLA Piper Rudnick Gray Cary US LLP**
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
**T** 617.406.6000
**F** 617.406.6100
**W** www.dlapiper.com


Bruce S. Barnett
bruce.barnett@dlapiper.com
**T** 617.406.6002

March 3, 2006

BY HAND DELIVERY
Meredith A. Swisher
Bernkopf Goodman LLP
125 Summer Street, 13th Floor
Boston, MA 02110

> Re:    *Blue Hills Office Park, LLC v. Credit Suisse First Boston Mortgage*
> *Capital, LLC, et al.*, Civil Action No. 05-10506-WGY
> <u>Production of Documents of Wells Fargo</u>

Dear Meredith:

Enclosed please find copies of the documents responsive to the plaintiff's requests for production in this matter. They are Bates labeled as follows:

WF02368-WF03142

Should you have any questions, please do not hesitate to contact me.

Sincerely,

*Bruce Barnett* /mj

Bruce S. Barnett

enclosures
cc:    Bruce E. Falby, Esq. (w/o enclosures)

# EXHIBIT F

65 (Pages 254 to 257)

Joseph A. Donovan -  Volume 1 - February 14, 2006
C O N F I D E N T I A L

---

254

1  Mr. Donovan, did you say, "Hey, what about meeting
2  with us"?
3      A. Not that I remember, no.
4      Q. In any conversation that anybody at Blue
5  Hills had with Lennar, did you say, "We're not going
6  to give you most of what you asked for because you
7  already have it so we're working on putting
8  financial statements together"?
9          MR. MCGLYNN: I'm sorry, is that a
10 question?
11         MR. FALBY: Yes.
12     Q. Do you have it in mind?
13     A. Could you repeat it, please.
14     Q. In any conversation that anybody at Blue
15 Hills had with Lennar, did they say something to the
16 effect that "we're not going to give you the
17 documents you requested in most instances because
18 Wells Fargo already has them, although we are
19 working on financial statements we'll give you
20 eventually"?
21     A. Not that I'm aware of, no.
22     Q. So how was Lennar supposed to know?
23         MR. MCGLYNN: Objection.
24     A. I don't think Lennar gave us enough time.

---

255

1      Q. If they send you a letter, you don't send
2  them anything, you don't respond, what are they
3  supposed to think?
4          MR. MCGLYNN: Objection.
5      A. You'd have to ask them.
6      Q. Fortunately, I can.
7          MR. MCGLYNN: Is that a question?
8      Q. Were you involved in the collection of
9  documents for production in this case?
10     A. Yes, I was.
11     Q. Do you know of any other documents relevant
12 to this case that you or anybody else at Blue Hills
13 destroyed other than the incomplete financial
14 statements you say you were in the process of
15 preparing as of September 17, 2004?
16         MR. MCGLYNN: Objection as to form.
17     A. No, I'm not aware of any destroyed
18 documents.
19     Q. When's the first time you considered you
20 were going to get in a lawsuit with Lennar?
21         MR. MCGLYNN: If it involves reciting
22 the substance, in whole or in part, of any
23 discussions that you had with counsel, I will
24 caution you not to disclose those.

---

256

1      A. I really don't have a time frame for that.
2      Q. Did you do anything after September 17 to
3  try to work things out with Lennar?
4      A. No --
5          MR. MCGLYNN: 2004?
6          MR. FALBY: Yes.
7      A. No, I did not.
8      Q. Did you do anything to try and convince
9  them to withdraw the default notice and work out the
10 loan with you?
11     A. No, I did not.
12     Q. Do you know if anybody did?
13     A. I don't know.
14     Q. Did you have any involvement whatever with
15 Lennar or the subject of the foreclosure once you
16 got the default notice dated September 17, 2004?
17     A. I'm sorry, can you rephrase that?
18     Q. Did you have any involvement whatever with
19 Lennar or the foreclosure after you got the default
20 notice dated September 17, 2004?
21     A. To the best of my knowledge, no, I think
22 that was it.
23     Q. Did anybody from Blue Hills try to engage
24 Lennar to work out the loan and convince them to

---

257

1  take back the September 17 default letter?
2      A. Not that I'm aware of.
3      Q. Do you know why not?
4          MR. MCGLYNN: Objection.
5      A. In my own personal case, I believed the
6  letter.
7      Q. You believed that was it?
8      A. Yes.
9      Q. I'm sorry, did you say before that you have
10 been involved in collecting documents for production
11 in this case?
12     A. Yes.
13     Q. What did you do?
14     A. There was a request made by our attorneys
15 to pull all the documents; and so that's what I did,
16 I went through and pulled all my documents.
17     Q. What documents did you pull?
18     A. I had a couple of files on Blue Hills
19 Office. I pulled those documents, I pulled those
20 files and I gave it to my attorneys.
21     Q. Did you search the e-mails on your computer
22 for any e-mails having to do with Blue Hills?
23     A. Yes, I did.
24     Q. Did you produce those to your attorneys?

---

66 (Pages 258 to 261)

Joseph A. Donovan - Volume 1 - February 14, 2006
C O N F I D E N T I A L

258

1    A. Anything that was available at the time, I
2 gave it to them.
3    Q. When I say search your e-mails, I mean
4 stored e-mails on your computer. Is that what you
5 understood me to mean?
6    A. Yes. I periodically purge everything on my
7 e-mail lists, so...
8    Q. Did you have any e-mails on your computer
9 pertaining to Blue Hills?
10    A. Not that I remember, no.
11    Q. Do you know what other efforts -- strike
12 that. Do you know what efforts were made by other
13 people at Fineberg Management or Blue Hills Office
14 Park LLC to produce documents in this case?
15    A. I believe each person, to the best of their
16 ability, pulled out what they had.
17    Q. Who?
18    A. Dan Frank, Larry Needle. I went through
19 Gil's files and pulled out what I thought was
20 pertinent information in Gil's files. I know since
21 your -- his testimony to you the other day, I
22 brought his whole files into the attorneys' office.
23 I also asked him if he had any e-mails, and he told
24 me he had no e-mails having anything to do with Blue

259

1 Hills Office Park.
2    Q. How do you know Dan Frank searched his
3 files?
4    A. I assume he did. You'd have to ask him.
5    Q. You don't really know, do you?
6    A. I was responsible for mine more than
7 anything else and I pulled mine.
8    Q. That's fine. I'm just trying to get what
9 you know. You don't really know whether Dan Frank
10 searched his files, do you?
11    A. I assume he did, but I don't know.
12    Q. Nor do you know whether Larry Needle
13 searched his?
14    A. Same answer. I assume he did, but I don't
15 know.
16    Q. Do you know whether those guys searched
17 their e-mails on their computers?
18    A. Again, I assume both of them did, but I
19 don't know.
20    Q. You should not assume anything. Do you
21 know if Mr. Fineberg had any Blue Hills documents
22 that he produced in this case?
23    A. Mr. Fineberg typically doesn't have any
24 files, so whether he produced any documents or not,

260

1 I don't know, but I would suspect there was no
2 documents.
3    Q. Do you ever communicate with Mr. Fineberg?
4    A. Yes, I do.
5    Q. How?
6    A. By telephone, in person.
7    Q. Do you ever communicate with him by e-mail?
8    A. On occasion.
9    Q. Do you know if anybody checked his e-mails
10 in this case?
11    A. I didn't check his e-mails, so I don't
12 know.
13    Q. Do you know if anybody else did?
14    A. I don't know.
15    Q. How about Mr. Langelier; do you know if he
16 has any files that were reviewed introduced in this
17 case?
18    A. I don't know.
19    Q. Are there any central files or repository
20 of files about Blue Hills other than the individual
21 files that each individual kept on the project?
22    A. No.
23    Q. Did Carol Falvey keep files on Blue Hills?
24    A. She would have kept my files, which were

261

1 the ones that I turned over.
2    Q. 'Cause she is your administrative
3 assistant?
4    A. Yes.
5    Q. You are listed in the answers to
6 interrogatories in this case as someone who provided
7 information contained therein. Are you aware of
8 that?
9    A. Contained therein. Could you explain that,
10 please.
11    Q. Sure. The answers to interrogatories say
12 that you provided some of the information that's in
13 them.
14    A. Oh, okay.
15    Q. Were you aware of that?
16    A. Yes.
17    Q. What information did you provide that found
18 its way into the interrogatory answers; do you know?
19    A. I don't know.
20    Q. Would you like to take a gander at the
21 answers to defendants' first set of interrogatories
22 and tell me if you can identify any information that
23 came from you?
24    A. (Witness reviews document.) No. 1, No. 2.

# EXHIBIT G

48 (Pages 186 to 189)

Daniel Frank
Volume 1 - February 16, 2006

186

1 units to condo and made a lot of money.
2     Q. When you went to work for Gerry Fineberg in
3 1971 --
4     A. '72.
5     Q. When you went to work for Gerry Fineberg in
6 1972, he already owned properties?
7     A. Yes.
8     Q. How many?
9     A. Oh, I don't know. A lot.
10     Q. He owned properties before that, and you
11 were renting units in his buildings?
12     A. Yes. I had no ownership whatsoever.
13     Q. You met him through your business dealings?
14     A. Yes.
15     Q. But he became your friend?
16     A. Yes.
17     Q. Did you socialize?
18     A. Yes.
19     Q. What is the vending business that you've
20 described?
21     A. Coin-operated amusement equipment.
22     Q. How did you happen to do that with Gerry
23 Fineberg to start?
24     A. He knew I was doing it and we wanted to

187

1 diversify. So we did it.
2     Q. How long did that last?
3     A. I would say two years. Then the condo
4 craze started.
5     Q. At the point you went to work for him, did
6 he have his company Fineberg Management already?
7     A. I believe so.
8     Q. Technically, you went to work for Fineberg
9 Management?
10     A. No. There was an independent arrangement
11 on the vending business. We called it Tudor Rent.
12     Q. When that ended, did you go to work for
13 Fineberg Management?
14     A. First on commission. It was easy renting
15 apartments.
16     Q. Over what period of years did you deal in
17 condos?
18     A. I'm going to say '78 through '81.
19     Q. Then what did you do?
20     A. Then we started to buy office buildings,
21 some retail and the likes of that.
22     Q. When you say we, did you obtain an
23 ownership interest in any of these?
24     A. In one building I did have a small

188

1 percentage.
2     Q. And that was something that Mr. Fineberg
3 agreed to as additional compensation to you?
4     A. Yeah. I wasn't on salary. I may have been
5 on salary at that time. I don't remember.
6     Q. Other than that small percentage that you
7 owned in that property, did Mr. Fineberg own the
8 rest?
9     A. Yeah.
10     Q. Then what happened?
11     A. Then we went in. We bought more commercial
12 and more retail. We went into the hotel business by
13 default. And here we are today.
14     Q. So you worked for Gerry Fineberg for 34
15 years?
16     A. Yeah. Isn't that a long time?
17     Q. He's been your friend and boss that entire
18 period?
19     A. Yeah. We've had one or two fights. He's
20 the greatest. A great person.
21     MR. FALBY: Let's take a short break and
22 see what else I have to ask you.
23     (A recess was taken.)
24     Q. Mr. Frank, do you know what efforts Blue

189

1 Hills Office Park LLC took to identify and produce
2 documents in this case?
3     A. We did --
4     MR. McGLYNN: Objection. I think that
5 was asked and answered too.
6     You may answer.
7     MR. FALBY: Is that the basis for your
8 objection, asked and answered?
9     MR. McGLYNN: We covered this this
10 morning.
11     MR. FALBY: I asked about his file. You
12 designated him as a 30(b)(6) witness, right?
13     MR. McGLYNN: Partial designation for
14 that. You can ask it. I thought we covered this
15 this morning. You may inquire.
16     MR. FALBY: I want to know if there's
17 any objection other than asked and answered.
18     MR. McGLYNN: No. For a change, the
19 form is fine.
20     A. We went through our files, our computer.
21 We produced whatever documents we had.
22     Q. Was someone in charge of that process?
23     A. I think Joe was. Then we had counsel come
24 in and make sure that we were in compliance.

Daniel Frank
Volume 1 - February 16, 2006

---

**182**

1  **Q. Absolutely what?**
2  A. Absolutely, I knew that.
3  **Q. Did you go to college?**
4  A. Yes.
5  **Q. Where?**
6  A. Boston University.
7  **Q. What year did you graduate?**
8  A. 1959. Why, you know me? No, you couldn't.
9  **Q. What degree did you obtain?**
10  A. BS, social science major, English minor. I
11  also went to Emerson too.
12  **Q. When did you go to Emerson?**
13  A. Kind of simultaneously. My dad passed
14  away, so I got a scholarship. I finished up at BU.
15  I started there and finished up. Why do you ask?
16  **Q. Just getting some background. Sometimes I**
17  **do it at the beginning. For you I saved it for the**
18  **end when we would both be tired.**
19  **You started at BU, then went to Emerson**
20  **and finished up at BU?**
21  A. Yes.
22  **Q. And then got your degree in 1959 when I was**
23  **three years old?**
24  A. That is sad. You see how you treat a

---

**183**

1  senior citizen.
2  **Q. What did you do next?**
3  A. I went to work for the Gilchrist Department
4  Stores.
5  **Q. What did you do for them?**
6  A. I started out as assistant buyer for
7  domestics, linens. I got promoted to assistant
8  buyer of major appliances and buyer of radios.
9  Radios were big. After a year, a year and a half, I
10  got promoted to full buyer of notions, girdles and
11  bras. In my last year, which was five or six years,
12  I gave them my best year ever, earned my bonus, and
13  was making $125 a week and said it was time for a
14  change. I didn't know what the change was. I took
15  a little bit of time, maybe a week.
16  **Q. Let me interrupt. What year was that?**
17  A. '59, '64, '65. Don't push. '64, '65.
18  **Q. I have to ask this, which you will find**
19  **shocking. Gilchrist was a department store?**
20  A. The third largest department store in the
21  United States.
22  **Q. Which has gone the way of the wind?**
23  A. Yes.
24  **Q. What did you do after Gilchrist?**

---

**184**

1  A. I answered an ad; became a rental broker
2  for Hub Apartment Rentals. I never made so much
3  money as I did doing that.
4  **Q. How long did you act as an apartment rental**
5  **agent?**
6  A. The head of the company wanted to go into
7  brokerage, and I was a good salesman, and so he gave
8  me a piece of the action and we made a lot of money.
9  Then things happened. Rent control, oil shortages,
10  and it was not a good business. So we went into the
11  vending business.
12  **Q. How long were you in the apartment rental**
13  **business?**
14  A. Overall with this same person, five or six
15  years. So we went from 1965 to about '71. At that
16  time we had a falling out. And my wife told me to
17  go get a job. So I knocked on Gerry Fineberg's door
18  and he gave me a job. First we were in --
19  **Q. Hold on a second. What was the name of**
20  **your first partner?**
21  A. Channing McDonald.
22  **Q. Were you in the vending business for some**
23  **time with him before you had a falling out?**
24  A. A period of time.

---

**185**

1  **Q. Not too long?**
2  A. Two years.
3  **Q. So that took you through 1971?**
4  A. Yes.
5  **Q. That's when you knocked on Gerry Fineberg's**
6  **door?**
7  A. Yes.
8  **Q. Did you know Gerry Fineberg before you**
9  **knocked on his door?**
10  A. I sure did.
11  **Q. How did you know him?**
12  A. I rented apartments for him. I sold a
13  building for him. Sold him a building. I met him
14  through the brokerage world.
15  **Q. Was he a client of yours when you were a**
16  **broker?**
17  A. He was a friend, a client, call him
18  whatever you want.
19  **Q. What job did you take with Mr. Fineberg?**
20  A. We were in the vending business for a short
21  period of time together. And then we entered --
22  when I say we, the world of Greater Boston entered
23  the condo craze. He made me director of sales. We
24  had three people. We converted maybe 1500, 1900

---

49 (Pages 190 to 193)

Daniel Frank
Volume 1 - February 16, 2006

190

1 **Q.** When you say Joe, you meant Joe Donovan?
2 A. Yeah, sorry.
3 **Q.** What counsel was involved?
4 A. I think Lydia Chesnick came in. I know
5 Lydia Chesnick came in to collect it.
6 **Q.** Can you describe the computer system in
7 your office?
8 A. I have a computer.
9 **Q.** On your desk?
10 A. No; behind me.
11 **Q.** Does everybody have their own computer?
12 A. Most people have a computer.
13 **Q.** Do you know what search was done of the
14 **computer system at Fineberg Management to respond to**
15 **our document request?**
16 A. It was a very thorough search engineered by
17 Joe. What do you do? You go through all of your
18 files and all of your -- I'm not that --
19 **Q.** You don't know, do you?
20 A. We went through --
21 MR. McGLYNN: Objection.
22 Go ahead.
23 A. We went through whatever buttons you have
24 to push. We pushed out whatever we had.

191

1 **Q.** Who actually did that?
2 A. Each one of us.
3 **Q.** What did you do with respect to your
4 **computer?**
5 A. Punched out the -- you've got a lot of it
6 here. I looked at it. Punched out everything and
7 anything that I could find. I don't keep things for
8 long, long periods of time.
9 **Q.** Did you look for relevant emails on your
10 **computer?**
11 A. Yeah.
12 **Q.** Did you find some?
13 A. You see all those emails from Plunkett.
14 **Q.** Those came from your computer?
15 A. Yeah.
16 **Q.** Were you involved with anyone else's
17 **efforts to get documents off of their computer?**
18 A. No. Just the point to get it done.
19 **Q.** Did you tell them to do it?
20 A. Yeah. This is no kid game here. This is
21 for real. Get it done.
22 **Q.** Who did you direct to look on their
23 **computers for emails and other documents responsive**
24 **to the document requests?**

192

1 A. Larry Needle.
2 **Q.** Did you delegate to Larry Needle the
3 **responsibility to make sure that everybody looked at**
4 **their computers?**
5 A. No. Joe Donovan made sure everyone looked
6 at their computers.
7 **Q.** What did you do with Larry Needle?
8 A. Told him to look at his computer and told
9 him to get out any documents that he had on his
10 computers or in his files. Some of his stuff is
11 here too.
12 **Q.** And Joe Donovan told other people to look
13 **at their computers?**
14 A. Yeah.
15 **Q.** How do you know that?
16 A. Because I heard him. Because we talked
17 about it.
18 **Q.** Who else looked at their computers for
19 **relevant documentation?**
20 A. Anyone who had anything to do with Blue
21 Hills.
22 **Q.** Who did that include?
23 A. Okay. Larry Needle, Daniel Frank, Joe
24 Donovan, Gil Stone, Carol Falvey. That's basically

193

1 it. Paul Halloran is dead. He doesn't have a
2 computer.
3 **Q.** He's dead?
4 A. Yeah, he passed away.
5 **Q.** Did Mr. Fineberg look at his computer?
6 A. Yes. Somebody -- he looked at it, yes.
7 **Q.** How do you know?
8 A. Because I happen to know.
9 **Q.** How do you know?
10 A. Joe Donovan spoke to him and told him what
11 to do. We had our IT guy go in there. He doesn't
12 have hardly anything on his computer.
13 **Q.** Did you hear Joe talk to Gerry?
14 A. Yes.
15 **Q.** What did Joe say?
16 A. "We have got to go through your computer
17 for anything relative to Blue Hills Office Park."
18 **Q.** It was actually an IT guy who did that?
19 A. Yeah. We didn't know how to get into it.
20 **Q.** Who is the IT guy?
21 A. Michael Attenborough.
22 **Q.** He works for Fineberg Management?
23 A. Yeah.
24 **Q.** He's your IT guy?

50 (Pages 194 to 197)

Daniel Frank
Volume 1 - February 16, 2006

---

**194**

1    A. Yeah.
2    Q. Did anyone talk to Mr. Langelier to try to
3 get his documents?
4    A. Somebody from Bernkopf Goodman & Baseman --
5 Bernkopf Goodman actually talked to Andy Cohn.
6    Q. How do you know?
7    A. You know what? I don't know. I know he
8 produced some documents. That I do know.
9    Q. How do you know that?
10    A. I don't remember.
11    Q. Have you seen documents produced by
12 Mr. Langelier?
13    A. Lydia Chesnick would not let a stone go
14 unturned. She's our attorney, one of our attorneys.
15    Q. Did you see documents produced by
16 Mr. Langelier?
17    A. Yeah, I did today.
18    Q. What documents did you see that were
19 produced by Mr. Langelier?
20    A. I don't know. I think I don't.
21    Q. Do you know for a fact that Mr. Langelier
22 produced any documents?
23    A. I don't know for a fact.
24    Q. Do you know for a fact that all of Larry

---

**195**

1 Needle, Joe Donovan, Gil Stone and Carol Falvey
2 searched their files for documents in response to
3 our requests?
4    A. That I do know.
5    Q. You do know?
6    A. Yes.
7    Q. And to your knowledge, they produced --
8    A. Whatever they had.
9    Q. Let me finish it. To your knowledge, they
10 gave to your attorneys whatever responsive documents
11 that they have?
12    A. Yes.
-13    Q. I take it that neither Larry Needle, Joe
14 Donovan, Gil Stone, Carol Falvey or yourself have
15 any documents that relate to the disposition of the
16 settlement payment, correct?
17    A. I didn't have it. I can't speak for them.
18 I doubt it for -- I know Larry didn't. I don't know
19 whether Joe did or didn't.
20    Q. Does Fineberg Management or Fine Hotels
21 have separately files of any sort?
22    A. Yes.
23    Q. Is there a central file or files kept on
24 Blue Hills?

---

**196**

1    A. Yes.
2    Q. Did somebody go through?
3    A. Yes.
4    Q. Let me ask the question. Did somebody go
5 through the central files maintained by Fineberg
6 Management on Blue Hills Office Park to find
7 documents responsive to our request?
8    A. Yes.
9    Q. Who?
10    A. Lydia Chesnick and Carol Falvey. Joe
11 Donovan supervised it. I'll let it go that way.
12    Q. Do you know for a fact that anyone reviewed
13 the central files containing Blue Hills documents in
14 connection with a document production?
15    A. We were told --
16       MR. McGLYNN: That was the same question
17 you just asked.
18       MR. FALBY: I'm asking whether he knows
19 it or whether he's assuming it. Sometimes he
20 assumes stuff and sometimes he knows it. I am
21 trying to find out which.
22    Q. Do you know for a fact that somebody went
23 through the central files?
24    A. I do know for a fact.

---

**197**

1    Q. How do you know?
2    A. Because Lydia Chesnick was there with her
3 checklist.
4    Q. And you saw her go through the central
5 files?
6    A. No, I did not.
7    Q. How do you know she did?
8    A. Because she's an experienced lawyer and
9 knows what you wanted.
10    Q. Do you have any other basis for saying that
11 someone went through the central files?
12    A. Yeah.
13    Q. Wait a minute. Do you have any other basis
14 for saying someone went through the central files
15 other than the fact that Lydia was there in your
16 office with a checklist?
17    A. And Joe Donovan was responsible for
18 collecting all the stuff and he's very thorough.
19    Q. Other than the fact that Lydia was in your
20 office with a checklist and that Joe Donovan was
21 responsible for collecting everything and that he's
22 a very thorough fellow, do you have any other basis
23 to say that somebody went through the central files
24 on Blue Hills?

---

# EXHIBIT H

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLUE HILLS OFFICE PARK LLC,<br>　　　Plaintiff/Defendant-in-Counterclaim<br><br>v.<br><br>J.P. MORGAN CHASE BANK, as<br>Trustee for the Registered Holders of<br>Credit Suisse First Boston Mortgage<br>Securities Corp., Commercial Mortgage<br>Pass-Through Certificates, Series 1999-C1,<br>　　　Defendant<br><br>and CSFB 1999 – C1 ROYALL STREET,<br>LLC,<br>　　　Defendant/Plaintiff-in-Counterclaim<br><br>and<br><br>WILLIAM LANGELIER and GERALD<br>FINEBERG,<br>　　　Defendants-in-Counterclaim | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　Civil Action No. 05-CV-10506 (WGY) |

**SUPPLEMENTAL RESPONSE OF BLUE HILLS OFFICE PARK LLC,
WILLIAM LANGELIER AND GERALD FINEBERG TO DEFENDANTS'
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Blue Hills Office Park LLC ("Blue Hills"), William Langelier ("Langelier") and Gerald
Fineberg ("Fineberg") hereby supplement their responses to the Defendants' First Request for
Production of Documents as follows:

## I. STATEMENT AND GENERAL OBJECTIONS

Blue Hill, Fineberg and Langelier object to Defendants' Request for Production of
Documents to the extent its "definitions" exceed the scope of the Federal Rules of Civil
Procedure 26 and 34. In addition, Defendants' Requests are extremely broad in scope, include

information subject to the attorney/client privilege and/or work-product doctrine, and are overly

burdensome. Blue Hills, Fineberg and Langelier hereby incorporate by reference each and every

one of the general objections and statements into all of the following document responses.

Blue Hills, Fineberg and Langelier further contend that all documents responsive to the

defendants' production requests have been furnished with the exception of documents withheld

on the basis of the attorney-client and/or attorney work product privileges. Blue Hills also

asserts that it has attempted, without success, to reach a mutual agreement with the defendants

concerning the preparation and exchange of privilege logs as of this date.

## II. RESPONSES

### REQUEST NO. 1

All documents concerning the Loan.

### RESPONSE NO. 1

Blue Hills, Langelier and Fineberg object to this request to the extent that it is overly

broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning,"

and seeks documents subject to the attorney client privilege and work product doctrine. Without

waiving these objections, Blue Hills, Langelier and Fineberg have produced all non-privileged,

relevant and responsive documents in their possession, custody or control.

### REQUEST NO. 2

All documents concerning the Zoning Appeal.

### RESPONSE NO. 2

Blue Hills, Langelier and Fineberg object to this request to the extent that it is overly

broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning,"

seeks documents subject to the attorney client privilege and work product doctrine, seeks

pleadings that are available to the public, and seeks documents that are irrelevant and not likely

to lead to the discovery of admissible evidence.  Without waiving these objections, and subject to

the Stipulation Regarding the Preservation of Confidential Materials ("Confidentiality

Stipulation"), Blue Hills, Langelier and Fineberg have produced all non-privileged, relevant and

responsive documents in their possession, custody or control.

## REQUEST NO. 3

All documents concerning the Settlement.

## RESPONSE NO. 3

Blue Hills, Langelier and Fineberg object to this request to the extent that it is overly

broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning,"

seeks documents subject to the attorney client privilege and work product doctrine, seeks

pleadings that are available to the public, and seeks documents that are irrelevant and not likely

to lead to the discovery of admissible evidence.  Without waiving these objections, and subject to

the Confidentiality Stipulation, Blue Hills, Langelier and Fineberg have produced all non-

privileged, relevant and responsive documents in their possession, custody or control.

## REQUEST NO. 4

All documents concerning the Payment.

## RESPONSE NO. 4

Blue Hills, Langelier and Fineberg object to this request to the extent that it is overly

broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning,"

seeks documents subject to the attorney client privilege and work product doctrine, seeks

pleadings that are available to the public, and seeks documents that are irrelevant and not likely

to lead to the discovery of admissible evidence.  Without waiving these objections, and subject to

the Confidentiality Stipulation, Blue Hills, Langelier and Fineberg have produced bank

statements and/or ledger cards from Bernkopf Goodman LLP and Wilmer Cutler Pickering Hale

and Dorr, LLP evidencing the Payment received in escrow by Bernkopf Goodman LLP on or

about August 8, 2003, the subsequent transfer of one-half of the Payment to Wilmer Cutler

Pickering Hale and Dorr, LLP, and the transfer from Bernkopf Goodman LLP's accounts in

Century Bank to Danvers Bank on or about April, 2005, which intra bank transfer was for

reasons unrelated to the Payment.

## REQUEST NO. 5

All documents listed on pages 4-5 of the Initial Disclosures of Blue Hills Office Park
LLC, William Langelier and Gerald Fineberg.

## RESPONSE NO. 5

Blue Hills, Fineberg and Langelier state that all relevant and non-privileged documents

identified in the Initial Disclosures of Blue Hills Office Park LLC, William Langelier and Gerald

Fineberg have been produced.

## REQUEST NO. 6

All documents concerning the "general terms and conditions of the contemplated
mortgage financing," as that phrase is used at paragraph 7 of Blue Hills' First Amended
Complaint.

## RESPONSE NO. 6

Blue Hills, Fineberg and Langelier object to this request to the extent that it is overly

broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning,"

and seeks documents subject to the attorney client privilege and work product doctrine. Without

waiving these objections, Blue Hills, Langelier and Fineberg have produced all non-privileged,

relevant and responsive documents in their possession, custody or control.

- 4 -

**REQUEST NO. 7**

All documents concerning Property taxes and/or Property tax escrows.

**RESPONSE NO. 7**

Blue Hills, Fineberg and Langelier object to this request to the extent that it is overly

broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning,"

and seeks documents subject to the attorney client privilege and work product doctrine. Without

waiving these objections, Blue Hills, Langelier and Fineberg have produced all non-privileged,

relevant and responsive documents in their possession, custody or control.

**REQUEST NO. 8**

All documents concerning any negotiations relating to the Zoning Appeal, the Settlement,
and/or the Payment.

**RESPONSE NO. 8**

Blue Hills, Fineberg and Langelier object to this request to the extent that it is overly

broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning,"

seeks documents subject to the attorney client privilege and work product doctrine, seeks

pleadings that are available to the public, and seeks documents that are irrelevant and not likely

to lead to the discovery of admissible evidence. Without waiving these objections, and subject to

the Confidentiality Stipulation, Blue Hills, Langelier and Fineberg have produced all non-

privileged, relevant and responsive documents in their possession, custody or control.

**REQUEST NO. 9**

All documents concerning monies received by Blue Hills other than rents received from
Equiserve.

**RESPONSE NO. 9**

Blue Hills, Fineberg and Langelier object to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning" and "monies received," seeks documents subject to the attorney client privilege and work product doctrine, and seeks documents that are irrelevant and not likely to lead to the discovery of admissible evidence. Without waiving these objections, and subject to the Confidentiality Stipulation, Blue Hills, Langelier and Fineberg have produced all non-privileged, relevant and responsive documents in their possession, custody or control.

**REQUEST NO. 10**

All documents concerning any actual, considered, proposed, anticipated or pursued renovation, remodeling or re-leasing of the Property after Blue Hills learned that Equiserve would not be renewing its lease, including, without limitation, receipts for expenditures made to remodel or re-lease the Property, correspondence or other documents concerning communications with brokers, correspondence or other documents concerning communications with prospective tenants, and documents concerning actual and/or planned expenditures for re-leasing the Property.

**RESPONSE NO. 10**

Blue Hills, Fineberg and Langelier object to this request as it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Blue Hills, Langelier and Fineberg have produced all non-privileged, relevant and responsive documents in their possession, custody or control.

**REQUEST NO. 11**

All documents that concern any communications concerning the Loan, the Property, property tax payments or property tax escrow payments for the Property, the lease between Blue Hills and Equiserve, Equiserve's leaving the Property, Blue Hills' efforts to re-lease the Property, the Zoning Appeal, the Settlement, the Payment, or the ZBA Decision, including without limitation any between or among Blue Hills, its mortgagee, Originator, Depositor, Wells Fargo, LNR Partners, the Town of Canton, and/or Lender.

**RESPONSE NO. 11**

Blue Hills, Fineberg and Langelier object to this request as it is overly broad, unduly

burdensome, vague and ambiguous with respect to "all documents concerning," seeks documents

subject to the attorney client privilege and work product doctrine, seeks pleadings that are

available to the public, and seeks documents that are irrelevant and not likely to lead to the

discovery of admissible evidence. Without waiving these objections, and subject to the

Confidentiality Stipulation, Blue Hills, Langelier and Fineberg have produced all non-privileged,

relevant and responsive documents in their possession, custody or control.

**REQUEST NO. 12**

All documents that concern any communications concerning the origination of the Loan.

**RESPONSE NO. 12**

Blue Hills, Fineberg and Langelier object to this request to the extent that it is overly

broad, unduly burdensome, vague and ambiguous with respect to "all documents that concern"

and "origination," and seeks documents subject to the attorney client privilege and work product

doctrine. Without waiving these objections, Blue Hills, Langelier and Fineberg have produced

all non-privileged, relevant and responsive documents in their possession, custody or control.

**REQUEST NO. 13**

All documents that concern any communications among or between Blue Hills, Blueview
and/or National Development.

**RESPONSE NO. 13**

Blue Hills, Fineberg and Langelier object to this request as it is overly broad, unduly

burdensome, vague and ambiguous with respect to "all documents that concern," seeks

documents subject to the attorney client privilege and work product doctrine, and seeks

- 7 -

documents that are irrelevant and not likely to lead to the discovery of admissible evidence.

Without waiving these objections, and subject to the Confidentiality Stipulation, Blue Hills,

Langelier and Fineberg have produced all non-privileged, relevant and responsive documents in

their possession, custody or control.

## REQUEST NO. 14

All documents concerning or supporting Blue Hills' contention at paragraph 11 of Blue Hills' First Amended Complaint, that "[Originator] and Blue Hills agreed that the various required reserve deposits could be accessed by Blue Hills in the event that the Equiserve Lease was not renewed."

## RESPONSE NO. 14

Blue Hills, Fineberg and Langelier object to this request to the extent that it is overly

broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning"

and seeks documents subject to the attorney client privilege and work product doctrine.  Without

waiving these objections, Blue Hills, Langelier and Fineberg have produced all non-privileged,

relevant and responsive documents in their possession, custody or control.

## REQUEST NO. 15

All documents concerning or supporting Blue Hills' contention at paragraph 12 of Blue Hills' First Amended Complaint, that "Blue Hills entered the above-described arrangement in reliance upon the foregoing provisions . . .."

## RESPONSE NO. 15

Blue Hills, Fineberg and Langelier object to this request to the extent that it is overly

broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning"

and seeks documents subject to the attorney client privilege and work product doctrine.  Without

waiving these objections, Blue Hills, Langelier and Fineberg have produced all non-privileged,

relevant and responsive documents in their possession, custody or control.

## REQUEST NO. 16

All documents concerning or supporting Blue Hills' contention at paragraph 16 of Blue Hills' First Amended Complaint, that "[t]he terms and provisions of the Term Sheet were incorporated by reference into the Mortgage Agreement and Note."

## RESPONSE NO. 16

Blue Hills, Fineberg and Langelier object to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning" and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Blue Hills, Langelier and Fineberg have produced all non-privileged, relevant and responsive documents in their possession, custody or control.

## REQUEST NO. 17

All documents concerning or supporting Blue Hills' contention at paragraph 38 of Blue Hills' First Amended Complaint, that "[t]his information was then communicated to either or both of the defendants, through their agent, Wells Fargo."

## RESPONSE NO. 17

Blue Hills, Fineberg and Langelier object to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," and seeks information subject to the attorney client privilege and work product doctrine. Without waiving these objections, Blue Hills, Fineberg and Langelier state that the information referenced in paragraph 38 of the First Amended Complaint was communicated via telephone calls and that no such documents exist.

## REQUEST NO. 18

All documents concerning or supporting Blue Hills' contention at paragraph 40 of Blue Hills' First Amended Complaint, that Blue Hills' need for "substantial sums of money to upgrade the Property's infrastructure and to make tenant improvements" due to, allegedly, "the down turn in the real estate market coupled with a reduced number of tenants seeking larger blocks of rental space" was "the very contingency anticipated when the Term Sheet was executed."

**RESPONSE NO. 18**

Blue Hills, Fineberg and Langelier object to this request to the extent that it is overly

broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning"

and seeks documents subject to the attorney client privilege and work product doctrine. Without

waiving these objections, Blue Hills, Langelier and Fineberg have produced all non-privileged,

relevant and responsive documents in their possession, custody or control.

**REQUEST NO. 19**

All documents concerning or supporting Blue Hills' contention at paragraph 75 of Blue
Hills' First Amended Complaint, that "[a]ll preconditions to Blue Hills' entitlement to
disbursement of funds sufficient to pay principal and interest for August and September, 2004
had been satisfied."

**RESPONSE NO. 19**

Blue Hills, Fineberg and Langelier object to this request to the extent that it is overly

broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning"

and seeks documents subject to the attorney client privilege and work product doctrine. Without

waiving these objections, Blue Hills, Langelier and Fineberg have produced all non-privileged,

relevant and responsive documents in their possession, custody or control.

**REQUEST NO. 20**

All documents concerning or supporting Blue Hills' contention at paragraph 84 of Blue
Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or
Wells Fargo, wrongfully defaulted Blue Hills."

**RESPONSE NO. 20**

Blue Hills, Fineberg and Langelier object to this request to the extent that it is overly

broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning"

and seeks documents subject to the attorney client privilege and work product doctrine. Without

waiving these objections, Blue Hills, Langelier and Fineberg have produced all non-privileged, relevant and responsive documents in their possession, custody or control.

**REQUEST NO. 21**

All documents concerning or supporting Blue Hills' contention at paragraph 85 of Blue Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully withheld from Blue Hills those amounts which Blue Hills were rightfully entitled to receive out of the Cash Collateral Account."

**RESPONSE NO. 21**

Blue Hills, Fineberg and Langelier object to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning" and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Blue Hills, Langelier and Fineberg have produced all non-privileged, relevant and responsive documents in their possession, custody or control.

**REQUEST NO. 22**

All documents concerning or supporting Blue Hills' contention at paragraph 86 of Blue Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully refused to allow Blue Hills to utilize funds on deposit in the Cash Collateral Account to pay principal and interest under the Mortgage Agreement."

**RESPONSE NO. 22**

Blue Hills, Fineberg and Langelier object to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning" and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Blue Hills, Langelier and Fineberg have produced all non-privileged, relevant and responsive documents in their possession, custody or control.

**REQUEST NO. 23**

All documents concerning or supporting Blue Hills' contention at paragraph 87 of Blue Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully foreclosed on the Property."

**RESPONSE NO. 23**

Blue Hills, Fineberg and Langelier object to this request to the extent that it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning" and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, Blue Hills, Langelier and Fineberg have produced all non-privileged, relevant and responsive documents in their possession, custody or control.

**REQUEST NO. 24**

All documents concerning the Clearing Account, including without limitation all account statements and transaction receipts.

**RESPONSE NO. 24**

Blue Hills, Fineberg and Langelier object to this request to the extent it is overly broad, unduly burdensome, vague and ambiguous with respect to "all documents concerning," "Clearing Account," "account statements" and "transaction receipts," seeks documents subject to the attorney client privilege and work product doctrine, and seeks statements of account already in the Lender's possession, custody or control. Without waiving these objections, Blue Hills, Langelier and Fineberg have produced all non-privileged, relevant and responsive documents in their possession, custody or control.

**REQUEST NO. 25**

All documents identified in Blue Hills' responses to Defendants' First Set of Interrogatories.

- 12 -

**RESPONSE NO. 25**

Blue Hills, Fineberg and Langelier object to this request as it is overly broad, unduly burdensome, vague and ambiguous, and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, and subject to the Confidentiality Stipulation, Blue Hills has produced all non-privileged, relevant and responsive documents in its possession, custody or control.

**REQUEST NO. 26**

All documents identified in William Langelier's responses to Defendants' First Set of Interrogatories.

**RESPONSE NO. 26**

Blue Hills, Fineberg and Langelier object to this request as it is overly broad, unduly burdensome, vague and ambiguous, and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, and subject to the Confidentiality Stipulation, Langelier has produced all non-privileged, relevant, and responsive documents in his possession, custody and control.

**REQUEST NO. 27**

All documents identified in Gerald Fineberg's responses to Defendants' First Set of Interrogatories.

**RESPONSE NO. 27**

Blue Hills, Fineberg and Langelier object to this request as it is overly broad, unduly burdensome, vague and ambiguous, and seeks documents subject to the attorney client privilege and work product doctrine. Without waiving these objections, and subject to the Confidentiality Stipulation, Fineberg has produced all non-privileged, relevant, and responsive documents in his possession, custody and control.

**REQUEST NO. 28**

All documents concerning other lawsuits involving the Property.

**RESPONSE NO. 28**

Blue Hills, Fineberg and Langelier object to this request as it is overly broad, unduly

burdensome, vague and ambiguous with respect to "all documents concerning" and "other

lawsuits," and seeks documents subject to the attorney client privilege and work product

doctrine. Without waiving these objections, Blue Hills states that two insurance claims are

pending, which are being handled by St. Paul/Travelers and by Murdock Claims Management

Co. Documents related to the investigation of these claims are not in the possession, custody or

control of Blue Hills, Fineberg or Langelier.

**REQUEST NO. 29**

All documents concerning or supporting your claims or defenses in this action.

**RESPONSE NO. 29**

Blue Hills, Fineberg and Langelier object to this request as it is overly broad, unduly

burdensome, vague and ambiguous with respect to "all documents concerning," and seeks

documents subject to the attorney client privilege and work product doctrine.

**REQUEST NO. 30**

All documents concerning or supporting your damages claims.

**RESPONSE NO. 30**

Blue Hills, Fineberg and Langelier object to this request as it is overly broad, unduly

burdensome, vague and ambiguous with respect to "all documents concerning," and seeks

documents subject to the attorney client privilege and work product doctrine. Without waiving

these objections, Blue Hills will produce all non-privileged, relevant responsive documents in its

possession, custody and control.

## REQUEST NO. 31

All documents relevant to the subject matter of this action.

## RESPONSE NO. 31

Blue Hills, Fineberg and Langelier object to this request as it is overly broad, unduly

burdensome, vague and ambiguous with respect to "all documents relevant," and seeks

documents subject to the attorney client privilege and work product doctrine.

BLUE HILLS OFFICE PARK LLC, WILLIAM
LANGELIER AND GERALD FINEBERG,
By their attorneys,

Peter B. McGlynn, Esq. BBO# 333660
Meredith A. Swisher, Esq. BBO# 646866
BERNKOPF GOODMAN LLP
125 Summer Street, 13th floor
Boston, Massachusetts 02110
(617) 790-3000
pmcglynn@bg-llp.com
mswisher@bg-llp.com

Dated:     March 3, 2006
#332374 v1/14500/9985

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was
served upon (each party appearing pro se and) the attorney of record for
each other party by mail/by hand     March 3, 2006  .

# EXHIBIT I

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BLUE HILLS OFFICE PARK LLC,<br><br>    Plaintiff, Defendant-in-Counterclaim.<br><br>    v.<br><br>CREDIT SUISSE FIRST BOSTON MORTGAGE<br>SECURITIES CORP.,<br><br>    Defendant,<br><br>    and<br><br>CSFB 1999 – C1 ROYALL STREET, LLC;<br><br>    Defendant, Plaintiff-in-Counterclaim,<br><br>    v.<br><br>WILLIAM LANGELIER and GERALD<br>FINEBERG,<br><br>    Defendants-in-Counterclaim. | Civil Action No.  05-CV-10506 (WGY) |

## DEFENDANTS' FIRST SET OF INTERROGATORIES ADDRESSED TO BLUE HILLS OFFICE PARK LLC, WILLIAM LANGELIER, AND GERALD FINEBERG

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant Credit Suisse First Boston Mortgage Securities Corp. and defendant/counterclaim-plaintiff CSFB 1999 – C1 Royall Street, LLC hereby propound the following interrogatories, to be answered by Blue Hills Office

Park, LLC, William Langelier, and Gerald Fineberg within 30 days of service of these interrogatories.

## DEFINITIONS AND INSTRUCTIONS

1.      "Blue Hills," "you," and "your" refers to plaintiff Blue Hills Office Park, LLC, and each of its principals, members, managers, employees, agents, attorneys, assigns and affiliates, including but not limited to Fineberg Management, Inc., William J. Langelier, Gerald S. Fineberg, Joseph Donovan, Daniel Frank, and Larry Needle.

2.      "Blueview" refers to the property and improvements located at 250 Royall Street and referenced at paragraph 25 of Lender's Counterclaim.

3.      "Blueview LLC" refers to Blueview Corporate Center LLC, one-time owner of Blueview, referenced at paragraph 25 of Lender's Counterclaim, and each of its principals, members, managers, employees, agents, attorneys, assigns, and affiliates.

4.      "Cash Management Agreement" refers to the cash management agreement dated September 14, 1999 between Blue Hills and Originator, and attached to Blue Hills' First Amended Complaint as Exhibit "E"

5.      "Depositor" refers to defendant Credit Suisse Bank First Boston Mortgage Securities Corp. and each of its directors, officers, employees, agents, attorneys, assigns, and affiliates.

6.      "Equiserve" refers to Equiserve Limited Partnership, the sole tenant of the Property as of September 14, 1999, and each of its principals, partners, managers, employees, agents, attorneys, assigns, and affiliates.

7.      "Lender" refers to defendant and plaintiff-in-counterclaim CSFB 1999 – C1 Royall Street, LLC and each of its members, managers, employees, agents, attorneys, assigns, and affiliates.

2

~BOST1:390718.v5

8.    "LNR Partners" refers to LNR Partners, Inc., formerly known as Lennar Partners, Inc., referenced at paragraph 46 of Blue Hills' First Amended Complaint, and each of its members, managers, employees, agents, attorneys, assigns, and affiliates.

9.    "Loan" refers to the loan evidenced by the Mortgage Note.

10.    "Mortgage Agreement" refers to the mortgage agreement dated September 14, 1999, between Blue Hills and Originator, and attached as Exhibit "C" to Blue Hills' First Amended Complaint.

11.    "Mortgage Note" refers to the mortgage note dated September 14, 1999, between Blue Hills and Originator, and attached as Exhibit "D" to Blue Hills' First Amended Complaint.

12.    "Originator" refers to Credit Suisse First Boston Mortgage Capital, LLC and each of its members, managers, employees, agents, attorneys, assigns, and affiliates.

13.    "Payment" refers to the payment made to Blue Hills pursuant to the Settlement, and referenced at paragraph 29 of Lender's Counterclaim.

14.    "Property" refers to the property located at 150 Royall Street, Canton, Massachusetts, known as the Blue Hills Office Park and referenced at paragraph 5 of plaintiff's First Amended Complaint.

15.    "Settlement" refers to the settlement referenced at paragraph 29 of Blue Hills' Answer to Lender's Counterclaim, and consummated by the settlement agreement referenced at paragraph 29 of Lender's Counterclaim, pursuant to which Blue Hills received the Payment.

16.    "Wells Fargo" refers to Wells Fargo Bank, National Association and each of its directors, officers, employees, agents, attorneys, assigns, and affiliates.

17.    "Zoning Appeal" refers to the litigation initiated by the complaint filed by Blue Hills in Norfolk Superior Court on June 9, 2003 appealing the ZBA Decision, referenced at paragraph 26 of Lender's Counterclaim.

18.    "ZBA Decision" refers to the decision of the Town of Canton Zoning Board of Appeals granting a special permit ("Special Permit") to Blueview LLC, referenced at paragraph 25 of Lender's Counterclaim.

19.    If you object to answering all or any part of any interrogatory on the grounds of privilege, set forth the full grounds of such privilege including the circumstances of the privilege and, in the case of any communication claimed to be privileged, the date, time, place, parties and subject matter of such communication.

20.    These requests are continuing and require supplemental responses to the extent required by Fed. R. Civ. P. 26(e).

## INTERROGATORIES

1.    Identify each and every person who prepared the responses to these interrogatories and/or assisted in the preparation of the responses to these interrogatories, and identify the specific interrogatories with respect to which each such person provided assistance.

2.    Describe each communication that took place during the period from July 1, 1999 through November 30, 2004, and concerned the lease between Blue Hills and Equiserve, Equiserve leaving the Property, Blue Hills' efforts to re-lease the Property, Blue Hills' requests for meetings with the mortgagee or Wells Fargo or LNR Partners, Blue Hills' requests for disbursements from Loan reserve or escrow accounts, payment of property taxes for the Property, and/or payments to the Tax Fund Sub-account (as that term is used in paragraph 29 of Blue Hills' First Amended Complaint), including without limitation communications between

4

you and the mortgagee and/or Wells Fargo and/or LNR Partners, and communications among any principals, members, managers, employees, agents, or affiliates of Blue Hills, and, in your answer:

    (a)    state the nature, date, time and place of each communication;

    (b)    identify the person(s) who made each communication;

    (c)    identify the person(s) who received each communication; and

    (d)    identify each and every document which reflects, constitutes, or concerns each communication.

3.    State the basis for the allegation, in paragraph 11 of Blue Hills' First Amended Complaint, that "[Originator] and Blue Hills agreed that the various required reserve deposits could be accessed by Blue Hills in the event that the Equiserve Lease was not renewed."

4.    State the basis for the allegation, in paragraph 16 of Blue Hills' First Amended Complaint, that "[t]he terms and provisions of the Term Sheet were incorporated by reference into the Mortgage Agreement and Note."

5.    If you contend that Blue Hills' mortgagee should have permitted Blue Hills access to Loan reserve or escrow funds to upgrade the Property, make tenant improvements, market the Property, or for any other purpose, on terms other than those stated within the four corners of the Mortgage Agreement, state the basis for that contention and, in your answer, identify those other terms and any documents in which they are stated.

6.    State the basis for the allegation in paragraph 34 of Blue Hills' First Amended Complaint that "[b]eginning in November, 1999 and continuing into 2004, Blue Hills deposited into the Clearing Account the requisite real estate tax amounts."

7.    State the basis for the allegation, in paragraph 38 of Blue Hills' First Amended Complaint, that "[t]his information [that Equiserve notified Blue Hills that it would not be

5

~BOST1:390718.v5

exercising its option to renew the Equiserve lease] was communicated to either or both of the defendants, through their agent, Wells Fargo."

8.    State the basis for the allegation, in paragraph 40 of Blue Hills' First Amended Complaint, that Blue Hills' need for "substantial sums of money to upgrade the Property's infrastructure and to make tenant improvements" was "the very contingency anticipated when the Term Sheet was executed."

9.    State the basis for the allegation, in paragraph 84 of Blue Hills' First Amended Complaint, that "[t]he defendants, through their agents, Lennar and/or Wells Fargo, wrongfully defaulted Blue Hills."

10.    Describe each communication concerning Blueview, the Special Permit, the ZBA Decision, the Zoning Appeal, the Settlement, the Payment, the purchase of Blueview by DST Realty of Massachusetts, Inc., and/or Equiserve's decision to move from the Property to Blueview, including without limitation communications between you and Joseph P. Plunkett, Stephen Cesso, Thomas R. McGee, Thomas R. Tye, or any other person, and among any principals, members, managers, employees, agents, or affiliates of Blue Hills, and in your answer:

    (a)    state the nature, date, time and place of each communication;

    (b)    identify the person(s) who made each communication;

    (c)    identify the person(s) who received each communication; and

    (d)    identify each and every document which reflects, constitutes, or concerns each communication.

11.    State the amount of the Payment and describe the disposition of the Payment, and in your answer:

(a)     identify each and every document which forms any part of the source of your information regarding the amount of the Payment or the disposition of the Payment;

(b)     identify each and every person who received any portion of the Payment; and

(c)     identify each and every bank account into which any portion of the Payment was deposited.

12.     State the basis for the allegation, at page 9 of Blue Hills' Answer to Counterclaim of CSFB 1991 – C1 Royall Street, LLC and at page 11 of the Answer of Defendants-in-Counterclaim Gerald Fineberg and William Langelier to Counterclaim of CSFB 1991 – C1 Royall Street, LLC, that "[Lender]'s claims are barred by doctrine of unclean hands."

13.     State the basis for the allegation, at page 9 of Blue Hills' Answer to Counterclaim of CSFB 1991 – C1 Royall Street, LLC and at page 12 of the Answer of Defendants-in-Counterclaim Gerald Fineberg and William Langelier to Counterclaim of CSFB 1991 – C1 Royall Street, LLC, that "[Lender]'s claims are barred by the doctrines of waiver and estoppel."

14.     State the basis for the allegation, at page 9 of Blue Hills' Answer to Counterclaim of CSFB 1991 – C1 Royall Street, LLC and at page 12 of the Answer of Defendants-in-Counterclaim Gerald Fineberg and William Langelier to Counterclaim of CSFB 1991 – C1 Royall Street, LLC, that "[Lender]'s claims are barred by the doctrine of laches."

15.     State the basis for all of your damages claims.

~BOST1:390718.v5

CSFB 1999 – C1 ROYALL STREET, LLC
and CREDIT SUISSE FIRST BOSTON
MORTGAGE SECURITY CORP.,

By their attorneys,

E. Randolph Tucker, BBO #503845
Bruce E. Falby, BBO# 544143
Bruce S. Barnett, BBO #647668
Traci S. Feit, BBO #660688
DLA PIPER RUDNICK GRAY CARY US LLP
One International Place
Boston, MA  02110
(617) 406-6000

Dated: September 15, 2005

~BOST1:390718.v5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLUE HILLS OFFICE PARK LLC, <br><br>     Plaintiff, Defendant-in-Counterclaim. <br><br>     v. <br><br> J.P. MORGAN CHASE BANK, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1, <br><br>     Defendant, Plaintiff-in-Counterclaim, <br><br>     and <br><br> CSFB 1999 – C1 ROYALL STREET, LLC; <br><br>     Defendant, Plaintiff-in-Counterclaim, <br><br>     v. <br><br> WILLIAM LANGELIER and GERALD FINEBERG, <br><br>     Defendants-in-Counterclaim. | Civil Action No.  05-CV-10506 (WGY) |

## DEFENDANTS' SECOND SET OF INTERROGATORIES ADDRESSED TO BLUE HILLS OFFICE PARK LLC, WILLIAM LANGELIER, AND GERALD FINEBERG

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant/counterclaim-plaintiff J.P. Morgan Chase Bank and defendant/counterclaim-plaintiff CSFB 1999 – C1 Royall Street, LLC hereby propound the following interrogatories, to be answered by Blue Hills Office



Park, LLC, William Langelier, and Gerald Fineberg within 30 days of service of these interrogatories.

## DEFINITIONS AND INSTRUCTIONS

1.    "Blue Hills," "you," and "your" refers to plaintiff Blue Hills Office Park, LLC, and each of its principals, members, managers, employees, agents, attorneys, assigns and affiliates, including but not limited to Fineberg Management, Inc., William J. Langelier, Gerald S. Fineberg, Joseph Donovan, Daniel Frank, and Larry Needle.

2.    "Blueview" refers to the property and improvements located at 250 Royall Street and referenced at paragraph 25 of Lender's Counterclaim.

3.    "Blueview LLC" refers to Blueview Corporate Center LLC, one-time owner of Blueview, referenced at paragraph 25 of Lender's Counterclaim, and each of its principals, members, managers, employees, agents, attorneys, assigns, and affiliates.

4.    "Cash Management Agreement" refers to the cash management agreement dated September 14, 1999 between Blue Hills and Credit Suisse First Boston, and attached to Blue Hills' First Amended Complaint as Exhibit "E"

5.    "Equiserve" refers to Equiserve Limited Partnership, the sole tenant of the Property as of September 14, 1999, and each of its principals, partners, managers, employees, agents, attorneys, assigns, and affiliates.

6.    "J.P. Morgan" refers to defendant and plaintiff-in-counterclaim J.P. Morgan Chase Bank, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1, and each of its principals, members, managers, employees, agents, attorneys, assigns, and affiliates.

2

7.    "Lender" refers to defendant and plaintiff-in-counterclaim CSFB 1999 – C1 Royall Street, LLC and each of its principals, members, managers, employees, agents, attorneys, assigns, and affiliates.

8.    "LNR Partners" refers to LNR Partners, Inc., formerly known as Lennar Partners, Inc., referenced at paragraph 46 of Blue Hills' First Amended Complaint, and each of its principals, members, managers, employees, agents, attorneys, assigns, and affiliates.

9.    "Loan" refers to the loan evidenced by the Mortgage Note.

10.    "Mortgage Agreement" refers to the mortgage agreement dated September 14, 1999, between Blue Hills and Originator, and attached as Exhibit "C" to Blue Hills' First Amended Complaint.

11.    "Mortgage Note" refers to the mortgage note dated September 14, 1999, between Blue Hills and Originator, and attached as Exhibit "D" to Blue Hills' First Amended Complaint.

12.    "Payment" refers to the payment made to Blue Hills pursuant to the Settlement, and referenced at paragraph 29 of Lender's Counterclaim.

13.    "Property" refers to the property located at 150 Royall Street, Canton, Massachusetts, known as the Blue Hills Office Park and referenced at paragraph 5 of plaintiff's First Amended Complaint.

14.    "Settlement" refers to the settlement referenced at paragraph 29 of Blue Hills' Answer to Lender's Counterclaim, and consummated by the settlement agreement referenced at paragraph 29 of Lender's Counterclaim, pursuant to which Blue Hills received the Payment.

15.    "Wells Fargo" refers to Wells Fargo Bank, National Association and each of its principals, directors, officers, employees, agents, attorneys, assigns, and affiliates.

~BOST1:405714.v4



16.    "Zoning Appeal" refers to the litigation initiated by the complaint filed by Blue Hills in Norfolk Superior Court on June 9, 2003 appealing the ZBA Decision, referenced at paragraph 26 of Lender's Counterclaim.

17.    "ZBA Decision" refers to the decision of the Town of Canton Zoning Board of Appeals granting a special permit to Blueview LLC, referenced at paragraph 25 of Lender's Counterclaim.

18.    If you object to answering all or any part of any interrogatory on the grounds of privilege, set forth the full grounds of such privilege including the circumstances of the privilege and, in the case of any communication claimed to be privileged, the date, time, place, parties and subject matter of such communication.

19.    These requests are continuing and require supplemental responses to the extent required by Fed. R. Civ. P. 26(e).

20.    The uniform definitions set forth at Rule 26.5, Local Rules of the United States District Court for the District of Massachusetts, are incorporated herein by reference.

## INTERROGATORIES

1.    Identify each and every person who prepared the responses to these interrogatories and/or assisted in the preparation of the responses to these interrogatories, and identify the specific interrogatories with respect to which each such person provided assistance.

2.    If you contend that the letter attached as Exhibit "G" to Blue Hills' Second Amended Complaint was delivered to Wells Fargo on or before August 2, 2004, state the basis for that contention.

~BOST1:405714.v4

4

3.    If you contend that Blue Hills believed, at any time between August 2, 2004 and September 17, 2004, that Wells Fargo had granted the requests set forth in the letters attached as Exhibits "G" and "I," state the basis for that contention.

4.    Identify any documents in the following categories sent by Blue Hills to Wells Fargo, LNR, J.P. Morgan, or Lender, including, without limitation, any cover letters, e-mails, or transmittal sheets: (1) business plan(s) concerning Blue Hills' plans for the Property following Equiserve's departure, (2) documents concerning Blue Hills' plans to secure new capital for the Property, whether through new or existing investors, (3) other document concerning Blue Hills' plans for the Property following Equiserve's departure.

5.    Identify any documents sent to Wells Fargo, LNR, Trustee, or Lender in response to the letter dated August 19, 2004 and attached as Exhibit "K" to Blue Hills' Second Amended Complaint.

6.    State the basis for Blue Hills', Langelier's, and Fineberg's denial of Request No. 10 set forth in Defendants' First Set of Requests for Admission Addressed to Blue Hills Office Park LLC, William Langelier and Gerald Fineberg, which states that "Blue Hills never made the 'Replacement Escrow Fund' payment contemplated by ¶ 6(b) of the Mortgage Agreement that was due on August 11, 2004."

7.    State the basis for Blue Hills', Langelier's, and Fineberg's denial of Request No. 11 set forth in Defendants' First Set of Requests for Admission Addressed to Blue Hills Office Park LLC, William Langelier and Gerald Fineberg, which states that "Blue Hills never made the 'Base Leasing Escrow Fund' payment contemplated by ¶ 6(c) of the Mortgage Agreement that was due on August 11, 2004."

~BOST1:405714.v4

8.    State the basis for the allegation, in paragraph 41 of Blue Hills' Second Amended Complaint, that "[d]uring the same time period, Blue Hills communicated with Wells Fargo, the defendants' agent, to advise Wells Fargo of its efforts and its difficulties as aforementioned."

9.    State the basis for the allegation, in paragraph 42 of Blue Hills' Second Amended Complaint, that "[i]n early 2004, Blue Hills again contacted Wells Fargo to confirm that Equiserve would not be renewing the Equiserve Lease; thus requiring Blue Hills to arrange access to funds in the Sub-accounts to enable Blue Hills to attract viable tenant prospects."

10.    State the basis for the allegation, in paragraph 43 of Blue Hills' Second Amended Complaint, that "[r]epresentatives of Wells Fargo assured Blue Hills during the foregoing time periods that they would be responsive to Blue Hills' requests, including scheduling a meeting with Blue Hills to address Property marketing costs and to discuss the process to be followed by Blue Hills to access the funds in Sub-accounts."

11.    State the basis for the allegation, in paragraph 45 of Blue Hills' Second Amended Complaint, that "Wells Fargo representatives' responses to Blue Hills' repeated inquiries were that they were still trying to locate the proper people to respond to Blue Hills' requests."

12.    State the basis for the allegation, in paragraph 46 of Blue Hills' Second Amended Complaint, that "[i]n or about June 2004...Wells Fargo informed Blue Hills that it was considering if the Special Servicer for the Mortgage Loan Documents...and not Wells Fargo, would be the proper party to meet with Blue Hills and properly respond to Blue Hills' requests."

13.    State the basis for the allegation, in paragraph 47 of Blue Hills' Second Amended Complaint, that "[f]or over six months, Wells Fargo promised, but failed to locate, a representative with authority to address Blue Hills' requests regarding, *inter alia*, re-leasing of the Property and the procedures for accessing the funds in the Sub-accounts."

6

14.     State the basis for the allegation, in paragraph 59 of Blue Hills' Second Amended Complaint, that "Blue Hills conducted its own investigation as to who could be responsive to Blue Hills' requests."

15.     State the basis for the allegation, in paragraph 60 of Blue Hills' Second Amended Complaint, that "Blue Hills contacted a representative of Lennar who suggested the content of a letter which, if sent by Blue Hills to Wells Fargo, could redirect Blue Hills' files to Lennar who would thereafter respond to Blue Hills."

16.     State the basis for the allegation, in paragraph 68 of Blue Hills' Second Amended Complaint,  that "Blue Hills promptly complied with the document requests contained in Lennar's August 19, 2004 letter."

17.     State the basis for the allegation, in paragraph 82 of Blue Hills' Second Amended Complaint, that "at the time that Lennar sent out its letter on September 17, 2004 to Blue Hills, defaulting, retroactively, Blue Hills as of August 2, 2004, it knew that Blue Hills had made repeated requests to have a meeting to develop the joint plan to renovate and re-lease the Property..."

18.     State the basis for Blue Hills' contention at page 9 of Blue Hills' Answer to Counterclaim of CSFB 1999 – C1 Royall Street, LLC, that "[t]o the extent CSFB claims to have suffered damages, CSFB has failed to mitigate those damages."

19.     State the basis for Blue Hills' contention at page 9 of Blue Hills' Answer to Counterclaim of J.P. Morgan, that "J.P. Morgan's claims are barred by doctrine of unclean hands."



20.    State the basis for Blue Hills' contention at page 9 of Blue Hills' Answer to Counterclaim of J.P. Morgan, that "J.P. Morgan's claims are barred by the doctrines of waiver and estoppel."

21.    State the basis for Blue Hills' contention at page 9 of Blue Hills' Answer to Counterclaim of J.P. Morgan, that "J.P. Morgan's claims are barred by the doctrine of laches."

22.    State the basis for Blue Hills' contention at page 9 of Blue Hills' Answer to Counterclaim of J.P. Morgan, that "[t]o the extent J.P. Morgan claims to have suffered damages, J.P. Morgan has failed to mitigate those damages."

23.    Identify each individual who, on behalf of Blue Hills Office Park LLC, communicated with Wells Fargo, LNR Partners, J.P. Morgan, or Lender from January 1, 2003 through November 30, 2004 concerning the lease between Blue Hills and Equiserve, Equiserve leaving the Property, Blue Hills' efforts to re-lease the Property, Blue Hills' requests for meetings with the mortgagee or Wells Fargo or LNR Partners, Blue Hills' requests for disbursements from Loan reserve or escrow accounts, payment of property taxes for the Property, and/or payments to the Tax Fund Sub-account (as that term is used in paragraph 29 of Blue Hills' Second Amended Complaint).

24.    Describe the manner in which the letter attached as Exhibit "G" to Blue Hills' Second Amended Complaint was delivered to Wells Fargo, and the date on which the letter was delivered to Wells Fargo.

~BOST1:405714.v4

25.     If you deny any of the Requests for Admission served upon you by the defendants, state the basis for that denial.

26.     Identify and describe any communications you had with Wells Fargo or Trustee from September 14, 1999 to February 28, 2000, concerning property tax escrows or the payment of property taxes for the Property.

CSFB 1999 – C1 ROYALL STREET, LLC
and J.P. MORGAN CHASE BANK,

By their attorneys,

E. Randolph Tucker, BBO #503845
Bruce E. Falby, BBO# 544143
Bruce S. Barnett, BBO #647668
Traci S. Feit, BBO #660688
DLA PIPER RUDNICK GRAY CARY US LLP
One International Place
Boston, MA  02110
(617) 406-6000

Dated: January 30, 2006

## CERTIFICATE OF SERVICE

I, Traci S. Feit, hereby certify that a true copy of the within document was served upon all counsel of record by hand delivery on January 30, 2006.

Traci S. Feit

# EXHIBIT J

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BLUE HILLS OFFICE PARK LLC,<br>       Plaintiff/Defendant-in-Counterclaim<br><br>v.<br><br>J.P. MORGAN CHASE BANK, as<br>Trustee for the Registered Holders of<br>Credit Suisse First Boston Mortgage<br>Securities Corp., Commercial Mortgage<br>Pass-Through Certificates, Series 1999-C1,<br>       Defendant<br><br>and CSFB 1999 – C1 ROYALL STREET,<br>LLC,<br>       Defendant/Plaintiff-in-Counterclaim<br><br>and<br><br>WILLIAM LANGELIER and GERALD<br>FINEBERG,<br>       Defendants-in-Counterclaim | Civil Action No. 05-CV-10506 (WGY) |

### BLUE HILLS OFFICE PARK LLC'S SECOND SUPPLEMENTATION TO ITS ANSWERS TO DEFENDANTS' FIRST SET OF INTERROGATORIES

Blue Hills Office Park LLC ("Blue Hills") hereby supplements its answers to Interrogatories 2, 7 and 11 of the First Set of Interrogatories propounded by the Defendants.

### GENERAL OBJECTIONS

Blue Hills objects to each of Defendants' interrogatories to the extent that each interrogatory recites or incorporates a "definition" and/or an "instruction" which exceeds the scope of the Federal Rules of Civil Procedure. Blue Hills also objects to each interrogatory to the extent that each interrogatory is vague, overly broad, unduly burdensome, seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, seeks information that is not in Blue Hills's possession, custody or control, seeks information

that is already in Defendants' possession, custody or control, seeks information that is subject to

the attorney-client privilege and/or the attorney work-product doctrine, and seeks information

that is otherwise beyond the scope of permissible discovery.

Blue Hills hereby incorporates by reference each and every one of its general objections

into each and every Answer as if fully set forth therein.

## INTERROGATORY NO. 2

Describe each communication that took place during the period from July 1, 1999
through November 30, 2004, and concerned the lease between Blue Hills and Equiserve,
Equiserve leaving the Property, Blue Hills' efforts to re-lease the Property, Blue Hills' requests
for meetings with the mortgagee or Wells Fargo or LNR Partners, Blue Hills' requests for
disbursements from Loan reserve or escrow accounts, payment of property taxes for the
Property, and/or payments to the Tax Fund Sub-account (as that term is used in paragraph 29 of
Blue Hills' First Amended Complaint), including without limitation communications between
you and the mortgagee and/or Wells Fargo and/or LNR Partners, and communications among
any principals, members, managers, employees, agents, or affiliates of Blue Hills, and, in your
answer:

a) state the nature, date, time and place of each communication;
b) identify the person(s) who made each communication;
c) identify the person(s) who received each communication; and
d) identify each and every document which reflects, constitutes, or concerns
each communication.

## ANSWER NO. 2

Blue Hills renews its objections to this interrogatory to the extent that it is overly broad,

unduly burdensome, vague and ambiguous and seeks information that is subject to attorney-

client privilege. Blue Hills further objects to this interrogatory to the extent its multiple subparts

exceed the limit on interrogatories permitted under the court order governing discovery and the

Federal Rules of Civil Procedure. Without waiving these objections, Blue Hills states as follows

with respect to written communications from July 1, 1999 through November 30, 2004,

identified in Interrogatory No. 2:

- 2 -

From July 1999 through September 1999, numerous written communications occurred between representatives of Credit Suisse First Boston Mortgage Capital LLC or its counsel, Schulte Roth & Zabel LLP, and representatives of Blue Hills Office Park LLC, Fineberg Management Company and their counsel, Bernkopf Goodman LLP.  Communications also occurred between representatives of Credit Suisse First Boston Mortgage Capital LLC or its counsel Schulte Roth & Zabel LLP  and William Langelier.  In addition, numerous written communications involving third parties, such as First American Title Insurance Company occurred, in connection with the re-financing of the property located at 150 Royall Street, Canton, Massachusetts owned by Blue Hills Office Park, LLC ("Property").  Pursuant to Federal Rule of Civil Procedure 33(d), Blue Hills states that such written communications have been produced as documents bate-stamped Blue Hill  001 - 0462 and 1936 - 4677.

From 1999 - 2004, Blue Hills had communications with Equiserve regarding its lease. Pursuant to Federal Rule of Civil Procedure 33(d), Blue Hills states that such written communications have been produced as documents bate-stamped Blue Hill 1253 - 1386.

From in or about October 1999 through November 2004, several written communications were exchanged between Wells Fargo and Blue Hills, including monthly statements, communications regarding taxes, communications regarding insurance, and e-mails.  Pursuant to Federal Rule of Civil Procedure 33(d), Blue Hills states that such communications have been produced as documents bate-stamped Blue Hill 0463 - 0509, 4696 - 4699, 4721 - 4728, 4855 - 4921, 5014 - 5305.

During 2004, Blue Hills, Wells Fargo and Lennar exchanged the following written communications:

1.     Letter dated January 12, 2004 from Wells Fargo to Blue Hills regarding the escrow account lacking insufficient funds to pay the 3rd quarter installment of Town of Canton property taxes.  This letter was produced as documents bate-stamped Blue Hill 0498 – 0499.

2.     Letter dated January 19, 2004 from Wells Fargo to Blue Hills regarding the escrow account having insufficient funds to pay 3rd Quarter installment of Canton Town property taxes, produced as document bate-stamped Blue Hill 0466.

3.     E-mail dated January 26, 2004 from Deanna Engstrom to Gil Stone regarding a wire transfer, produced as documents bate-stamped Blue Hill 4887 - 4888.

4.     Letter dated April 28, 2004 from Wells Fargo to Blue Hills regarding the escrow account having insufficient funds to pay 4th Quarter installment of Canton Town property taxes, produced as document bate-stamped Blue Hill 0467.

5.     Letter dated April 28, 2004 from Gil Stone to Keisha Hunt authorizing transfer of funds, produced as document bate-stamped Blue Hill 0486.

6.     Fax dated April 28, 2004 of letter dated April 28, 2004 from Gil Stone to Keisha Hunt authorizing transfer of funds, produced as documents bate-stamped Blue Hill 4882 – 4885.

7.     E-mail dated June 9, 2004 from Marchelle Blake to Joe Donovan and Gil Stone regarding Wells Fargo Insurance Escrow, produced as documents bate-stamped Blue Hill 0470 – 0471.

8.     Wells Fargo Monthly Statement for Tenant Improvement Reserve for period June 1, 2004 though June 30, 2004, produced as document bate-stamped Blue Hill 0477.

9.     Wells Fargo Monthly Statement for Miscellaneous Reserve for period June 1, 2004 though June 30, 2004, produced as document bate-stamped Blue Hill 0478.

10.     Wells Fargo Monthly Statement for Replacement Reserve for period June 1, 2004 though June 30, 2004, produced as document bate-stamped Blue Hill 0479.

11.     Wells Fargo Monthly Statement for Cash Collateral Reserve for period June 1, 2004 though June 30, 2004, produced as document bate-stamped Blue Hill 0480.

12.     Letter dated July 16, 2004 from Wells Fargo to Blue Hills regarding escrow account having insufficient funds to pay 1st Quarter installment of Canton Town property taxes, produced as document bate-stamped Blue Hill 0468.

13.     Letter dated August 2, 2004 from Joe Donovan to Tim Parish requesting a withdrawal of funds from reserves, produced as document bate-stamped Blue Hill 1229.

14.     Fax dated August 4, 2004 of letter dated August 2, 2004 from Joe Donovan to Tim Parish requesting a withdrawal of funds from reserves, produced as document bate-stamped Blue Hill 4679.

15.     Fax dated August 5, 2004 of letter dated August 4, 2004 from Donovan to Tim Parish notifying Wells Fargo that Equiserve had vacated the Property, produced as document bate-stamped Blue Hill 1249.

16.     Fax dated August 13, 2004 from Joe Donovan to Curt Mellegni indicating that he is sorry they keep missing each other, produced as documents bate-stamped Blue Hill 1245 – 1248.

17.     Two letters dated August 19, 2004 from Lennar to Blue Hills regarding certain servicing responsibilities having been transferred to Lennar, produced as documents bate-stamped Blue Hill 0481 – 0485.

18.     Letter dated August 19, 2004 from Lennar to Blue Hills agreeing to discuss the status of the loan, produced as documents bate-stamped Blue Hill 4859 – 4861.

19.    Fax dated August 24, 2004 of letter dated August 19, 2004 from Lennar to Blue Hills regarding certain servicing responsibilities having been transferred to Lennar, produced as documents bate-stamped Blue Hill 1232 – 1244.

20.    Fax dated August 26, 2004 of signed letter dated August 19, 2004 from Fineberg Management to Lennar, produced as documents bate-stamped Blue Hill 1240 - 1244.

21.    Letter dated September 2, 2004 from Joe Donovan to Tim Parish requesting withdrawal of reserve funds, produced as document bate-stamped Blue Hill 1228.

22.    Letter dated September 17, 2004 from Lennar to Joseph Donovan produced as documents bate-stamped Blue Hill 1225 – 1226.

23.    Foreclosure notice dated October 21, 2004 from Bruce Barnett to Gerald Fineberg, produced as documents bate-stamped Blue Hills 1221 – 1224.

24.    Letter dated November 10, 2004 from Kenneth Goldberg to Bruce Barnett, produced as documents bate-stamped Blue Hill 1219 – 1220.

25.    Letter dated November 12, 2004 from Randall Tucker to Kenneth Goldberg, produced as documents bate-stamped Blue Hill 1217 -1218.

26.    E-mail from Andrew Cohn to Randolph Tucker, produced as document bate-stamped Blue Hill 1473.

27.    Letter dated November 17, 2004 from Kenneth Goldberg to Randolph Tucker responding to letter dated November 12, 2004, produced as documents bate-stamped Blue Hill 1214 – 1216.

28.    Letter dated November 18, 2004 from Randolph Tucker to Kenneth Goldberg responding to letter dated November 17, 2004, produced as documents bate-stamped Blue Hill 1212 – 1213.

29.    Letter dated November 19, 2004 from Kenneth Goldberg to Randolph Tucker, produced as document bate-stamped Blue Hill 1211.

30.    Letter dated November 23, 2004 from Randall Rosen to Larry Needle indicating retention of Finard & Company as property management company, produced as document bate-stamped Blue Hill 5105.

In 2003 and 2004, Blue Hills also exchanged written communications with Cushman and Wakefield as well as other brokers and prospective tenants as follows:

1.    On or about May 14, 2003, Joseph Plunkett, of Cushman and Wakefield, sent an E-mail to Larry Needle, produced as document bate-stamped Blue Hill 0552.

2.    On or about May 30, 2003, Joseph Plunkett sent a letter to Barry Gosin of Newmark & Company Real Estate, regarding Allied Domecq, produced as document bate-stamped Blue Hill 0568.

3.    On or about September 8, 2003, Joseph Plunkett sent a letter to Mark Roth of Cushman & Wakefield, regarding New York Life Investment Management, produced as document bate-stamped Blue Hill 0584.

4.    On or about January 28, 2004, Kelly Zeidler, of Cushman & Wakefield, sent an E-mail to Dan Frank, produced as document bate-stamped Blue Hill 0589.

5.    On or about March 15, 2004, Joseph Plunkett sent an E-mail to Larry Needle, produced as document bate-stamped Blue Hill 0614.

6.    On or about March 24, 2004, Joseph Plunkett sent two (2) E-mails to Larry Needle, produced as documents bate-stamped Blue Hill 0615 – 0659.

7.    On or about March 29, 2004, Joseph Plunkett sent an E-mail to Dan Frank, produced as documents bate-stamped Blue Hill 0660 – 0663.

8.    On or about March 31, 2004, Joseph Plunkett sent an E-mail to Dan Frank, produced as documents bate-stamped Blue Hill 0664 – 0666.

9.    On or about April 2, 2004, Joseph Plunkett sent an E-mail to Larry Needle, produced as documents bate-stamped Blue Hill 0672 – 0676.

10.    On or about April 4, 2004, Joseph Plunkett sent an E-mail to Larry Needle, produced as documents bate-stamped Blue Hill 0677.

11.    On or about April 5, 2004, Joseph Plunkett sent an E-mail to Larry Needle, produced as documents bate-stamped Blue Hill 0678 – 0679.

12.    On or about April 5, 2004, Joseph Plunkett sent three (3) E-mails to Dan Frank, produced as documents bate-stamped Blue Hill 0681 – 0695.

13.    On or about April 7, 2004, Joseph Plunkett sent an E-mail to Larry Needle, produced as documents bate-stamped Blue Hill 0697.

14.    On or about April 22, 2004, Joseph Plunkett sent an E-mail to Dan Frank, produced as documents bate-stamped Blue Hill 0732.

15.    On or about April 27, 2004, Joseph Plunkett sent an E-mail to Dan Frank, produced as documents bate-stamped Blue Hill 0733 – 0736.

16.    On or about May 3, 2004, Joseph Plunkett sent an E-mail to Dan Frank, produced as documents bate-stamped Blue Hill 0737.

17.    On or about May 13, 2004, Kelly Zeidler sent an E-mail to Dan Frank, produced as documents bate-stamped Blue Hill 0738 - 0748.

18.    On or about June 3, 2004, Kelly Zeidler sent an E-mail to Dan Frank, produced as documents bate-stamped Blue Hill 0749 – 0754.

19.    On or about June 8, 2004, Joseph Plunkett sent an E-mail to Dan Frank, produced as documents bate-stamped Blue Hill 0755 – 0762.

20.    On or about July 14, 2004, Joseph Plunkett sent two (2) E-mails to Larry Needle, produced as documents bate-stamped Blue Hill 0762 – 0767.

21.    On or about July 21, 2004, Joseph Plunkett sent an E-mail to Dan Frank, produced as documents bate-stamped Blue Hill 0768 – 0772.

22.    On or about October 1, 2004, Jason Bryer, of Cushman and Wakefield, sent two (2) E-mails to Dan Frank, produced as documents bate-stamped Blue Hill 0778 – 0788.

23.    On or about November 4, 2004, Leigh Morrissette, of Cushman and Wakefield, sent an E-mail to Dan Frank, produced as documents bate-stamped Blue Hill 0793 – 0794.

24.    On or about November 23, 2004, Joseph Plunkett sent an E-mail to Dan Frank, produced as document bate-stamped Blue Hill 0797.

Pursuant to Federal Rule of Civil Procedure 33(d), Blue Hills states that all other written communications requested by Interrogatory No. 2 may be ascertained from the documents produced by Blue Hills bate-stamped Blue Hill 001 - 5508.

Blue Hills also exchanged oral communications summarized as follows:

Gil Stone recalls having communications with Wells Fargo regarding real estate tax and insurance issues during the period 2001 - 2004.  Mr. Stone also recalls being informed that Paul Halloran, who is now deceased, had similar communications with Wells Fargo regarding tax and insurance issues between 1999 and 2001.  Gil Stone cannot recall the dates of communications with Marchelle Blake, Brent Lloyd and other Wells Fargo representatives.  Mr. Stone did, however, occasionally make notes of telephone conversations.  Mr. Stones' notes, produced as

document bate-stamped Blue Hill 4883, indicate that Mr. Stone had discussions in April 2004 with Wells Fargo's Brent Lloyd.

Joseph Donovan recalls having communications with Joseph Rubino in 1999, including meeting with Mr. Rubino and also speaking with him on the telephone. These 1999 communications were in connection with requests for various documents relating to the re-financing. Mr. Donovan does not recall the dates of these discussions with specificity. In addition, Mr. Donovan recalls having at least three or four discussions with representatives of Wells Fargo and Lennar in 2003 and in 2004 in which he discussed the status of replacing Equiserve as a tenant. Mr. Donovan recalls speaking with Brent Lloyd. He also recalls speaking with other individuals at Wells Fargo, although he cannot recall the names of such individuals or the dates of the discussions.

Kenneth Goldberg recalls having communications in 1999 with Joseph Rubino and counsel in connection with the re-financing. Mr. Goldberg cannot recall these communications with specificity. Mr. Goldberg also recalls communicating with individuals at Lennar at various times in 2004 including Chris Brown and Job Warshaw. Mr. Goldberg recalls discussions with Chris Brown during which they discussed how the Blue Hills file could/would be transferred over to LNR as Special Servicer so that a meeting could be scheduled to discuss the Loan status and begin the tasks attendant with loan restructuring. Mr. Goldberg also recalls two telephone conversations with Job Warshaw during which Mr. Goldberg re-confirmed to Mr. Warshaw Blue Hills' prior notification that Equiserve had moved out of the Property and that Blue Hills had retained the services of Cushman & Wakefield to actively solicit tenants for the building and other similar topics including Mr. Warshaw's August 19, 2004 "pre-negotiation" letter.

Daniel Frank recalls conversations in 1999 with CSFB's Joseph Rubino in connection with the re-financing of Blue Hills Office Park, LLC's property. Mr. Frank also recalls having conversations in 2002 with Thomas McGee and having a meeting with Mr. McGee in 2002 regarding the Equiserve lease. In addition, Mr. Frank recalls communications with Cushman & Wakefield regarding the re-leasing of the Property. Mr. Frank also recalls having at least one conversation with Joe Polcari in October 2004 in which he requested a meeting with the Lender.

Larry Needle recalls that he had various conversations with Cushman & Wakefield and, on occasion, he met with Cushman & Wakefield and prospective tenants for the Property. Mr. Needle also communicated with LNR's Joseph Polcari and one other representative, who inspected the Property in or about September 2004. Mr. Needle also recalls attending Zoning Board meetings at the Town of Canton in 2004 and attending at least one meeting with Theodore Tye of National Development. Mr. Needle is unable to recall the dates of these meetings.

William Langelier recalls speaking to Joseph Rubino in 1999 in connection with the re-financing. In addition, Mr. Langelier recalls speaking to Tom Shuler, a mortgage broker who provided Mr. Rubino as a contact. Mr. Langelier cannot recall the dates and subject matter of those communications with specificity. Mr. Langelier also recalls speaking to Daniel Frank about the Loan, but cannot recall the dates and subject matter of those communications with specificity.

Gerald Fineberg recalls having at least one meeting with Joseph Rubino, although he does not recall the date or subject matter of the communication. Mr. Fineberg also recalls one or possibly two meetings with Theodore Tye, although he does not recall the dates of those meetings. In addition, Mr. Fineberg had various communications with the employees of

- 11 -

Fineberg Management Company, although he does not recall specific communications responsive to Interrogatory No. 2.

## INTERROGATORY NO. 7

State the basis for the allegation, in paragraph 38 of Blue Hills' First Amended Complaint, that "[t]his information [that Equiserve notified Blue Hills that it would not be exercising its option to renew the Equiserve lease] was communicated to either or both of the defendants, through their agents, Wells Fargo."

## ANSWER NO. 7

Equiserve notified Blue Hills of its intent not to exercise its option to extend its lease in or about May 2003. Equiserve and Blue Hills then entered into a Lease Termination Agreement dated as of August 5, 2003. Shortly thereafter, Joseph Donovan called Wells Fargo on the telephone regarding, *inter alia*, Equiserve's notification to Blue Hills that it would not be renewing its lease which would expire July 31, 2004. The date of this communication cannot be recalled by Mr. Donovan, although he recalls speaking with Wells Fargo representatives in 2003 regarding the replacement of Equiserve as a tenant at the Property. In addition and without limitation to the foregoing, and Blue Hills' answers to Defendants' Second Set of Interrogatories, Blue Hills states that documents adduced on discovery thus far have confirmed that the Defendants knew as early as the summer and fall of 2003 that Equiserve would not be renewing its lease and also confirmed that they received information to that effect from Blue Hills representatives.

## INTERROGATORY NO. 11

State the amount of the Payment and describe the disposition of the Payment, and in your answer:

a)      identify each and every document which forms any part of the source of your information regarding the amount of the Payment or the disposition of the Payment;

b)      identify each and every person who received any portion of the Payment; and

c)      identify each and every bank account into which any portion of the Payment was
deposited.

## ANSWER NO. 11

**THE FOLLOWING ANSWER IS SUBJECT TO THE STIPULATION REGARDING
THE PRESERVATION OF CONFIDENTIAL MATERIALS DATED DECEMBER 6,
2005.**

REDACTED

REDACTED

Signed under the pains and penalties of perjury this <u>2nd</u> day of <u>March</u>, 2006.

Blue Hills Office Park LLC

By: _Gerald Fineberg_

Gerald Fineberg, President of
Blue Hills Management Corp.,
Manager of Blue Hills Office Park
LLC,   duly authorized

AS TO OBJECTIONS:

BLUE HILLS OFFICE PARK LLC,
By its attorneys,

_Meredith Swisher_

Peter B. McGlynn, Esq. BBO# 333660
Meredith A. Swisher, Esq. BBO# 646866
BERNKOPF GOODMAN LLP
125 Summer Street, 13th floor
Boston, Massachusetts 02110
(617) 790-3000
pmcglynn@bg-llp.com
mswisher@bg-llp.com

Dated:   March 3, 2006

#332873 v2   14500/9985

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was
served upon (each party appearing pro se and the attorney of record for
each other party by mail (by hand)

14