UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BLUE HILLS OFFICE PARK LLC,

      Plaintiff, Defendant-in-Counterclaim.

      v.

J.P. MORGAN CHASE BANK, as Trustee for the
Registered Holders of Credit Suisse First Boston
Mortgage Securities Corp., Commercial Mortgage
Pass-Through Certificates, Series 1999-C1,

      and

CSFB 1999 – C1 ROYALL STREET, LLC;

      Defendants, Plaintiffs-in-Counterclaim,

      v.

WILLIAM LANGELIER and GERALD
FINEBERG,

      Defendants-in-Counterclaim.

Civil Action No.  05-CV-10506 (WGY)

## MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS AND COUNTERCLAIMANTS AND THEIR COUNSEL TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER

Pursuant to Rules 45(c)(3)(A) and 26(c), Fed. R. Civ. P., Defendants and Counter-

claimants CSFB 1999 – C1 Royall Street LLC ("CSFB") and J.P. Morgan Chase Bank as

Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp.,

Commercial Mortgage Pass-Through Certificates, Series 1999-C1 (the "Trustee") (collectively,

the "Lenders"), along with their counsel, DLA Piper Rudnick Gray Cary US LLP ("DLA

Piper"), submit this memorandum in support of their motion to quash the subpoena served on

DLA Piper's Keeper of Records on March 15, 2006 seeking documents concerning attorneys' fees and damages.  The Lenders further move for a protective order.

### Background

In this action, both the plaintiff, Blue Hills Office Park LLC ("Blue Hills"), and the Lenders (in their counterclaim) assert claims arising from certain agreements between the parties (the "Loan Documents") as well as under Mass. Gen. Laws c.93A.  The Lenders seek to recover attorneys' fees and costs under the provisions of c.93A and the Loan Documents, while Blue Hills seeks attorneys' fees and costs under c. 93A and generally.  Under the governing scheduling order, fact discovery is to be completed by today, March 17, 2006.

Despite the fact that Blue Hills itself has produced no documents concerning the attorneys' fees and costs that Blue Hills seeks to recover in this action, and despite the fact that discovery is to be completed as of today, counsel for Blue Hills and the counterclaim-defendants (referred to herein as the "Blue Hills Parties") two days ago served a subpoena on Lenders' counsel ("Blue Hills' Subpoena," attached hereto as <u>Exhibit A</u>) demanding the production a week from today of:

> (1)    All documents that identify, explain, relate or evidence attorneys' fees and costs that CSFB seeks to recover in the above-captioned lawsuit;
>
> (2)    All documents that identify, explain, relate or evidence attorneys' fees and costs that the Trustee seeks to recover in the above-captioned lawsuit;
>
> (3)    All bills, invoices, WIPS, time sheets or other documents that identify, explain, relate or evidence any attorneys' fees and costs that CSFB and/or the Trustee seeks to recover in the above-captioned lawsuit;
>
> (4)    All documents that identify, explain, relate or evidence all monetary damages that CSFB and/or the Trustee seeks to recover in the above-captioned lawsuit; and
>
> (5)    A privilege log evidencing all documents withheld from production on the basis of attorney-client privilege.

2

On the same day, counsel for the Blue Hills Parties sent a letter (the "McGlynn Letter," attached hereto as Exhibit B) reiterating the demand for attorneys' fees invoices and related documents set forth in Blue Hills' Subpoena.

## Discussion

Blue Hills' Subpoena is improper and should be quashed, for several reasons: (1) the requests concerning attorneys' fees and costs are premature; (2) the requested documents are protected from disclosure by the work product doctrine and attorney-client privilege; (3) the request concerning the Lenders' damages is duplicative and improper; and (4) Blue Hills' Subpoena violates the governing scheduling order in this action.

I.    The Requests Concerning Attorneys' Fees and Costs are Premature.

Disclosure of attorneys' fees and costs, and any discovery pertaining thereto, is meant to occur after the Court has awarded attorneys' fees and costs to a party.  At that time, the Court will decide what evidence of fees and costs is required and what discovery, if any, it will allow on the subject.  See, e.g., Industrial Gen. Corp. v. Sequoia Pac. Sys., Inc., 849 F. Supp. 820, 826 (D. Mass. 1994) (considering application for reasonable attorneys' fees after claimant prevailed on 93A claim); Arthur D. Little Int'l, Inc. v. Dooyang Corp., 979 F. Supp. 919, 928 (D. Mass. 1997).  The court must then ascertain what constitutes "fair and reasonable compensation for the services rendered." Peckham, et al v. Continental Casualty Ins. Co., 895 F.2d 830, 841 (1st Cir. 1990).

In the McGlynn Letter, the Blue Hills Parties nonetheless assert that the Lenders have (by seeking attorneys' fees) placed attorneys' fees "in issue," and that therefore DLA Piper must immediately produce the documents requested in Blue Hills' Subpoena.  In support of this assertion, the Blue Hills Parties cite two cases, one decided by the United States Court of Federal

Claims (<u>Energy Capital Corp. v. United States</u>, 45 Fed. Cl. 481 (Fed. Cl. 2000)) and the other

decided by the D.C. Circuit (<u>Ideal Elec. Security Co. v. International Fidelity Ins. Co.</u>, 129 F.3d

143 (D.C. Cir. 1997)). Significantly, in both of these cases discovery concerning attorneys' fees

and costs occurred only <u>after</u> liability had already been established.

In <u>Ideal Elect. Sec. Co.</u>, the court allowed discovery of attorney billing statements only

after a judicial determination of contractual entitlement to attorneys' fees, where the sole

remaining issue was the amount of the fee award. <u>Id.</u>, 129 F.3d at 150. Likewise, in <u>Energy</u>

<u>Capital Group</u>, discovery concerning attorneys' fees occurred after the defendant had admitted to

breach of contract in a breach of contract claim. <u>Id.</u>, 45 Fed. Cl. at 483. The cases cited by the

Blue Hills Parties thus only serve to underscore the point that attorneys' fees are not "in issue"

until the merits of the case have been resolved, an award of attorneys' fees has been made, and

the court must determine the amount of the award.

    II.    <u>The Requested Documents are Protected From Disclosure by the Work Product</u>
             <u>Doctrine and Attorney-Client Privilege.</u>

Discovery concerning attorneys' fees, including bills, invoices, time sheets, and other

documents, is appropriately delayed until after there has been an award of fees, both to avoid

unnecessary and time-consuming discovery and to protect against the disclosure of attorneys'

work product during the pendency of the action. As the Supreme Court has stated:

> [I]t is essential that a lawyer work with a certain degree of privacy free from
> unnecessary intrusion by opposing parties and their counsel. Proper preparation
> of a client's case demands that he assemble information, sift what he considers to
> be relevant from the irrelevant facts, prepare his legal theories and plan his
> strategies without undue and needless interference.

<u>Hickman v. Taylor</u>, 329 U.S. 495, 510-11 (1947). The disclosure, at this stage of the lawsuit, of

billing records, invoices, time sheets, or other documents revealing the allocation or amount of

time spent by a particular attorney on a particular date – for example, in preparation for a

4

particular deposition or motion – could improperly and unnecessarily reveal DLA Piper's mental

impressions and litigation strategy to the Blue Hills Parties, in violation of the work product

doctrine.

Disclosure of the fee-related documents sought by Blue Hills' Subpoena would violate

the "important principle that an attorney's decisions as to litigation tactics, <u>including the amount</u>

<u>of time to devote to specific tasks,</u> and which steps to take in the preparation of the client's case,

are protected from disclosure absent substantial need." <u>Gumowitz on Behalf of West Seventy-</u>

<u>Ninth Street Assocs. v. Resolution Trust Corp.,</u> 1995 WL 375882, *3 (S.D.N.Y. June 23, 1995)

(granting motion to quash subpoena) (emphasis added); <u>see also</u> Fed. R. Civ. P. 26(b)(3).  No

such "substantial need" exists here, as the amount of attorneys' fees to be awarded is not

currently at issue.  Should the Court decide to award attorneys' fees to a party, the Court will

then determine what evidence of fees is required and what, if any, discovery concerning those

fees is necessary.

Blue Hills' Subpoena should also be quashed because it seeks documents covered by the

attorney-client privilege.  <u>See</u> Federal Rule Civ. P. 45(c)(3)(a)(iii).  The documents requested in

Blue Hills' Subpoena, such as "bills invoices, WIPS, [and] time sheets," are protected from

disclosure by the attorney-client privilege "to the extent that time records and statements reveal

the nature of the services provided." <u>Colonial Gas Co. v. Aetna Casualty & Surety Co.,</u> 144

F.R.D. 600, 607 (D. Mass 1992); <u>see also</u> <u>In re San Juan Dupont Plaza Hotel Fire Litigation,</u> 111

F.3d 220, 232 n.12 (1st Cir. 1997) (quoting <u>Colonial Gas Co</u>); <u>C.J. Calamia Costr. Co. v.</u>

<u>ARDCO/Traverse Lift Co.,</u> 1998 WL 395130, *3 (E.D.La. July 14, 1998) (recognizing common

holding that "time sheets and billing records are protected by the attorney-client privilege to the

extent that they reveal the nature the nature of services performed and/or the type of work

performed by an attorney") (citing Colonial Gas Co.); Real v. Continental Group, Inc., 116

F.R.D. 211, 214 (N.D. Cal. 1986) (declining to allow unlimited discovery of "highly detailed

itemizations of all work performed").

Documents such as "bills, ledgers, statements, and time records which also reveal the

motive of the client in seeking representation, litigation strategy, or the specific nature of

services provided, such as researching particular areas of law," are also shielded from disclosure

by the privilege. Kelley v. LaBrie, 2003 WL 24144575, *3 (Bankr. D. Vt. April 24, 2003),

quoting Clarke v. American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992).

III.    The Request Concerning Lenders' Damages is Duplicative and Improper.

The fourth request set forth in Blue Hills' Subpoena demands that Lenders' counsel

produce all documents concerning Lenders' damages in this action. This request is duplicative

and can only be motivated by a desire to harass, annoy, and/or distract Lenders' counsel. The

Blue Hills Parties have already requested these documents from the Lenders themselves, and the

Lenders have produced their responsive documents. The Blue Hills Parties have neither filed a

motion to compel additional documents from the Lenders nor requested a discovery conference

to discuss the production of additional damages-related documents, instead choosing to subpoena

the Lenders' counsel.

Moreover, the only documents in DLA Piper's possession which are responsive to the

request for damages documents in Blue Hills' Subpoena and which have not already been

produced by the Lenders are (1) documents created by Lenders' counsel in connection with this

action, which are protected from disclosure by the work product doctrine; and (2) documents

reflecting communications with the Lenders, which are protected from disclosure by the

attorney-client privilege.

6

IV.    <u>Blue Hills' Subpoena Violates the Scheduling Order.</u>

Finally, under the Rule 16.1(D) Joint Statement (attached hereto as <u>Exhibit C</u>), which was adopted by the Court as the case management scheduling order in this action, fact discovery is to be completed by today, March 17, 2006.  Blue Hills' Subpoena, which was served two days before this deadline, demands the production of documents on March 24, 2006, which is obviously after the deadline set by the Court.   As such, Blue Hills' Subpoena should be quashed for the additional reason that it is untimely and in violation of the scheduling order.

<u>Conclusion</u>

For all of the above-stated reasons, DLA Piper and the Lenders respectfully request that the Court grant their Motion to Quash Blue Hills' Subpoena.  The Lenders additionally request that the Court issue a protective order precluding the Blue Hills Parties from demanding of the Lenders the same documents they sought to obtain from Lenders' counsel through their Subpoena.

Respectfully submitted,

JP MORGAN CHASE BANK, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1 and CSFB 1999-C1 ROYALL STREET, LLC,

By their attorneys,

 /s/ Bruce E. Falby
E. Randolph Tucker, BBO #503845
Bruce E. Falby, BBO #544143
Bruce S. Barnett, BBO #647666
Traci S. Feit, BBO #660688
DLA Piper Rudnick Gray Cary US LLP
33 Arch Street, 26th Floor
Boston, MA  02110
(617) 406-6000

Dated: March 17, 2006

7

## CERTIFICATION UNDER MASS. R. CIV. P. 26(C) AND LOCAL RULES 7.1 & 37.1

I hereby certify that the provisions of Mass. R. Civ. P. 26(c) and Local Rules 7.1 and 37.1 have been complied with. Counsel for defendants and plaintiffs-in-counterclaim CSFB 1999-C1 Royall Street, LLC and J.P. Morgan Chase Bank have conferred in good faith with counsel for plaintiff Blue Hills Office Park LLC and defendants-in-counterclaim William Langelier and Gerald Fineberg, both in person and by letter, but were unable to resolve or narrow the issues presented in the foregoing motion to quash subpoena and for protective order.

/s/ Bruce E. Falby
Bruce E. Falby, Esq.

~BOST1:411592.v2

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF    Massachusetts

BLUE HILLS OFFICE PARK LLC

                                        **SUBPOENA IN A CIVIL CASE**

V

J.P. MORGAN CHASE BANK, as Trustee for the
Registered Holders of Credit Suisse First Boston
Mortgage Securities Corp., Commercial Mortgage    Case Number:[1]    05-CV-10506 (WJY)
Pass-Through Certificates, Series 1999-C1 *

TO:  Keeper of Records
     DLA Piper Rudnick Gray Cary US LLP
     33 Arch Street, 26th Floor
     Boston, MA 02110

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
   testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
   in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
   place, date, and time specified below (list documents or objects):

     See Exhibit A

| PLACE | DATE AND TIME |
|---|---|
| Bernkopf Goodman LLP, 125 Summer Street, Boston, MA 02110 | Friday, March 24, 2006 5:00 p.m. |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

      Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* Attorney for Plaintiff | March 14, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
      Meredith A. Swisher
      Bernkopf Goodman LLP, 125 Summer Street, Boston, MA 02110 (617) 790-3336

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.    * v. CSFB 1999-C1 Royall Street, LLC.
                                                                                       v. William Langelier and Gerald
                                                                                       Fineberg

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                          DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

_____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,

(ii)   requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)   subjects a person to undue burden.

(B) If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)   requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim.

# EXHIBIT A

## I. DEFINITIONS

1.    The term "Piper" refers to DLA Piper Rudnick Gray Cary US LLP, and each of its partners, associates, principals, members, managers, employees, agents, attorneys, assigns and affiliates.

2.    The term "Blue Hills" shall mean Plaintiff Blue Hills Office Park LLC, including any of its agents, servants, attorneys, and all other persons acting on its behalf.

3.    The term "J.P. Morgan" shall mean Defendant J.P. Morgan Chase Bank, As Trustee For The Registered Holders Of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1 including any of its agents, servants, attorneys, and all other persons acting on its behalf.

4.    The term "CSFB" shall mean Defendant CSFB 1999-C1 Royall Street, LLC including any of its agents, servants, attorneys, and all other persons acting on its behalf.

5.    The Term "Equiserve" refers to Equiserve Limited Partnership, the sole tenant of the Property until July 31, 2004, including any agents, servants, attorneys, and all other persons acting on its behalf.

6.    The term "Lennar" shall mean Lennar Partners, Inc. or LNR Partners, Inc., including any of their agents, servants, attorneys, and all other persons acting on their behalf.

7.    The term "Wells Fargo" shall mean Wells Fargo National Association, including any of its agents, servants, attorneys, and all other persons acting on its behalf.

8.    The term "Fineberg" shall mean Gerald Fineberg, including any agents, servants, attorneys, and all other persons acting on his behalf.

9.     The term "Langelier" shall mean William Langelier, including any agents, servants, attorneys, and all other persons acting on his behalf.

10.    The term "Term Sheet" shall refer collectively to the letter from Credit Suisse First Boston Mortgage LLC to Blue Hills dated July 20, 1999 entitled "Mortgage Financing Application" and the letter from Blue Hills to Credit Suisse First Boston Mortgage LLC dated August 31, 1999.

11.    The term "Mortgage Agreement" shall mean the Mortgage, Assignment of Leases and Rents and Security Agreement dated as of September 14, 1999 between Blue Hills and Credit Suisse First Boston Mortgage Capital, LLC.

12.    The term "Note" shall mean the Mortgage Note dated as of September 14, 1999 between Blue Hills and Credit Suisse First Boston Mortgage Capital, LLC.

13.    The term "Cash Management Agreement" shall mean the Cash Management Agreement dated as of September 14, 1999 among Blue Hills, Fineberg Management, Inc. and Credit Suisse First Boston Mortgage Capital, LLC.

14.    The term "Guaranty" shall mean the Guaranty dated as of September 14, 1999 executed by Gerald Fineberg and William Langelier.

15.    The term "Property" shall mean the property located at 150 Royall Street, Canton, Massachusetts and known as the Blue Hills Office Park.

16.    The term "Zoning Appeal" shall refer to the zoning appeal litigation filed by Blue Hills in connection with the property located at 250 Royall Street, Canton, MA on or about June 9, 2003.

17.    The term "Loan" shall mean the $33,149,000.00 million loan to Blue Hills from Credit Suisse First Boston Mortgage Capital, LLC.

18.    The term "Loan Documents" shall mean the Term Sheet, Mortgage Agreement, Note, Cash Management Agreement, Guaranty and other documents as defined in paragraph 1(r) of the Note.

19.    The term "communication," unless otherwise specified, shall mean the written or oral transmission of a word, statement, fact, opinion, thing, idea, instruction, demand, question, or statement of any nature whatsoever, including, but not limited to, documents, correspondence and conversations, as defined herein.

20.    The term "conversation" or "oral communication," unless otherwise specified, shall mean any manner of oral communication between or involving one or ore persons, regardless of the medium by which such communication occurred.

21.    The term "correspondence" or "written communication," unless otherwise specified, shall mean any documents sent by one or more persons to one or more other persons, including but not limited to internal office communications.

22.    The term "referring to" or "relating to" as used herein shall mean connected with, bearing upon or applying in any way to the person, thing, event or subject matter described or mentioned.

23.    The term "person" as used herein shall mean the plural as well as the singular and includes a natural person, firm, partnership, limited partnership, corporation, association, trust, business trust, joint venture, sole proprietorship or any other business or governmental entity or agency and also includes the officers, employees, agents, attorneys, divisions, subsidiaries, affiliates and predecessors and successors in interest thereof.  When the pronoun he or his is used, reference is made to both males and females unless the context expressly indicates otherwise.

3

24.    The term "any" means each and all.

25.    The word "person" means any individual, natural person and/or entity or entities including, but not limited to any corporation, partnership, sole proprietorship, firm, trust, group, association, joint venture, governmental agency or form of public or private entity, and shall include the singular as well as plural.

26.    The words "document" and "documents" mean and include any and all written, sketched, typed, printed, prerecorded, photographed, copied, photocopied, taped or recorded material whatsoever regardless of the identity of the person or persons who prepared, produced, reproduced or made the document. This Request includes and encompasses both the front and reverse side of all original documents (and attachments thereto) and the front and reverse side of all copies of such original documents (and attachments thereto) containing markings or notations which are not set forth on the original documents. For purposes of illustration only, and without limiting the foregoing definition, the term "documents: includes: microfilm, microfiche, computer printouts and other printouts of any type whatsoever, books corporate minutes or other minutes of meetings, records, quotations, contracts, guarantees, letters of credit, security agreements, liens, mortgages, orders, memoranda, agreements, pamphlets, financing or refinancing agreements, workout plans, proposals or agreements, prospectus(es), circulars, bulletins, income statements, financial statements, projections, marketing plans, balance sheets, statistics, audits, analyses, computer data sheets, computer software, computer tapes, or discs, computer programs, computer runs, transfer ledgers, wire transfers, mail ledgers, telecopy ledgers, letters and correspondence (whether sent or received), requests for bids or quotations, specifications, notes or memoranda of telephone conversations or other conversations, discussions or activities, diaries, day books, calendars, desk pads, inter-office communications,

note pads, purchase orders, bookings, invoices, summaries, analyses, reports, papers, recommendations, indexes, tapes, data compilations, journals, statements, studies, comparisons, graphs, charts, worksheets, work files, or any other written or printed materials whatsoever.

27.    The word "communication" or "communications" as used herein means any oral or written transmittal or any information whatsoever, or request for any information whatsoever made from one person to another person, whether made in person, by wire, telephone, correspondence, message or by any other means whatsoever.

28.    The word "or" shall be all inclusive and shall be taken in the conjunctive as well as the disjunctive and shall mean "and" as well as "or" and it shall be construed to bring the maximum number of documents within the scope of this Request.

29.    "Related to", "relating to", "referring to", or "relate to" means referring to, relating to, reporting to, embodying, establishing, evidencing, comprising, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, presenting or constituting.

## II. **REQUESTS**

1.    All documents that identify, explain, relate or evidence attorneys' fees and costs that CSFB seeks to recover in the above-captioned lawsuit.

2.    All documents that identify, explain, relate or evidence attorneys' fees and costs that J.P. Morgan seeks to recover in the above-captioned lawsuit.

3.    All bills, invoices, WIPS, time sheets or other documents that identify, explain, relate or evidence any attorneys' fees and costs that CSFB and/or J.P. Morgan seeks to recover in the above-captioned lawsuit.

4.    All documents that identify, explain, relate or evidence all monetary damages that CSFB and/or J.P. Morgan seeks to recover in the above-captioned lawsuit.

5.    A privilege log evidencing all documents withheld from production on the basis of attorney-client privilege.

#334175 v1/14500/9985

5



March 15, 2006

PETER B. MCGLYNN
DIRECT DIAL: (617) 790-3390
E-MAIL: PMCGLYNN@BG-LLP.COM

*Via Facsimile*

Bruce E. Falby, Esq.
DLA Piper Rudnick Gray Cary US LLP
33 Arch Street, 26th Floor
Boston, MA 02110-1447

Re:     *Blue Hills Office Park, LLC v. J.P. Morgan, et al.*
          Civil Action No. 05-10506-WGY

Dear Bruce:

In response to your letter dated March 8, 2006, I do not object to the rescheduling of the depositions of Mr. Fineberg or Mr. Goldberg as long as the 7-hour limit set forth by Fed. R. Civ. P. 30(d) is not exceeded. Mr. Fineberg's deposition is currently scheduled for March 21, 2006. However, Mr. Goldberg will be out of town and is not scheduled to return until early April. Please provide me some dates in April for Mr. Goldberg's deposition.

We do, however, object to any additional depositions of Messrs. Donovan and Frank. Your request to depose these gentlemen concerning the "Payment" is unwarranted. You and Bruce Barnett had ample opportunity to inquire about the "Payment" during your deposition of William Langelier last Friday in San Francisco. To the extent that Messrs. Fineberg or Goldberg are aware of any of the "Payment" details, you can direct those inquiries to them during their depositions.

Your refusal to provide us with the documents supporting your clients' claims for attorneys' fees until some unspecified "appropriate time" in the future, is also objectionable and is unacceptable. Your clients cannot hide behind the attorney-client privilege where, as here, they are placing attorneys' fees "in issue." *Energy Capital Corp. v. United States*, 45 Fed Ct. 481 (2000) (plaintiff waived attorney client privilege and work product protection with regard to unredacted legal bills by seeking attorneys' fees as an element of damages); see also, *Ideal Electronic Security Co. v. International Fidelity Insurance Co.*, 129 F.3d 143, 151-152 (D.C. Cir. 1997).

Accordingly, please furnish to me this week copies of all attorneys' fees and expense invoices in existence as of this date, including any documents evidencing any arrangements which your clients have to receive any discount off the invoiced rates. As this matter proceeds, your clients must seasonably supplement these discovery responses generally and more especially with respect to all claimed attorneys' fees and expenses.

125 SUMMER STREET
BOSTON, MA 02110 1621
617.790.3000    T
617.790.3300    F
WWW.BG-LLP.COM

Bruce E. Falby, Esq.
March 15, 2006
Page 2

BERNKOPF
GOODMAN LLP

Inasmuch as you and I have already conferred on this matter as required by Local
Rule 7.1.(a)(2), be advised that, if I do not receive either the requested documents by this
Friday or your written representation that they will be delivered within a reasonable time (not
to exceed two weeks) coupled with your agreement that a deposition of the Keeper of the
Records of your firm can be held after the deposition discovery deadline, we will be seeking
appropriate relief from Judge Young.

Very truly yours,

Peter B. McGlynn

PBM:kon
#333998 V2/14500/9985

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BLUE HILLS OFFICE PARK LLC,<br>　　　　Plaintiff/Defendant-in-<br>　　　　Counterclaim | ) ) ) ) ) | |
| v. | ) ) | Civil Action No. 05-CV-10506 (WGY) |
| CREDIT SUISSE FIRST BOSTON<br>MORTGAGE SECURITIES CORP.,<br>　　　　Defendant. | ) ) ) ) | |
| and | ) ) | |
| CSFB 1999 – C1 ROYALL STREET, LLC<br>　　　　Defendant/Plaintiff-in-<br>　　　　Counterclaim | ) ) ) ) | |
| and | ) ) | |
| WILLIAM LANGELIER and GERALD<br>FINEBERG,<br>　　　　Defendants-in-Counterclaim | ) ) ) ) | |

## <u>REVISED LOCAL RULE 16.1(D) JOINT STATEMENT</u>

　　　　Pursuant to Federal R. Civ. P. 16, Local Rule 16.1, Fed.R.Civ.P. 26(f) and Local Rule 26.1, the parties, having conferred as required by Local Rule 16.1(B), hereby submit this revised Local Rule 16.1(D) Joint Statement for the Court's consideration.

## I.　　AGENDA FOR SCHEDULING CONFERENCE

　　　　The parties propose that the pre-trial matters set forth herein be discussed during the scheduling conference.

## II.      INITIAL DISCLOSURE - RULE 26(a)(1) and LOCAL RULE 26.2

The parties have agreed that they will exchange required automatic disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on or before August 31, 2005.  At this stage, the parties believe that they may benefit from phased discovery with the opportunity for mediation after limited discovery has been completed during the initial discovery phase.

## III.      ALTERNATIVE DISPUTE RESOLUTION

The parties are willing to engage in mediation at the conclusion of the initial discovery phase.

## IV.      PROPOSED PRE-TRIAL SCHEDULE

A proposed pre-trial schedule, including a joint discovery plan and proposed schedule for the filing of motions, is as follows:

A.      Initial Discovery Phase

| EVENT | COMPLETION DATE |
|---|---|
| • Service of Initial interrogatories (not more than 15), initial document requests and initial requests for admission (not more than 15). | September 15, 2005 |
| • Initial depositions (no more than 3 per each side of the versus) to be completed. | December 2, 2005 |

B.      Mediation Phase

Non-binding mediation shall be completed by January 16, 2005.  Mediation statements shall be exchanged by the parties and submitted to the mediator not less than 10 days prior to the scheduled date of mediation.  Parties are free to also submit confidential statements to the mediator as well.

C.      Final Discovery Phase

| EVENT | COMPLETION DATE |
|-------|-----------------|
| ● Additional interrogatories (not more than additional 30), requests for admission (not than additional 30) and additional document requests served. | January 30, 2006 |
| ● All fact discovery including all non-expert depositions to be completed. | March 17, 2006 |
| ● Expert disclosures pursuant to Fed. R. Civ. 26(a)(2) to be completed. | March 31, 2006 |
| ● Expert depositions completed | April 21, 2006 |
| ● Dispositive motions filed. | May 17, 2006 |
| ● Pretrial disclosures pursuant to Fed. R. Civ. P. 26(a)(3) completed. | August 25, 2006 |
| ● Final pretrial conference. | September 1, 2006 |
| ● Trial. | September 29, 2006 |

All dates set forth herein may be modified by written agreement of the parties and approval of the Court, or upon motion for good cause shown.

## V.      MAGISTRATE JUDGE

The parties do not consent to trial by magistrate judge at this time.

## VI.      OTHER MATTERS.

● Discovery Limits

Except as provided above, the parties accept the discovery event limits set forth in the Local Rules.

- Certification of Counsel and Parties Pursuant to LR 16.1(D)(3)

The parties and their counsel will file separate certifications in accordance with Local

Rule 16.1(D)(3).

Respectfully submitted,


Plaintiff
BLUE HILLS OFFICE PARK
By its attorneys,

Defendants
CREDIT SUISSE FIRST BOSTON
MORTGAGE SECURITIES CORP., and
CSFB 1999 – C1 ROYALL STREET, LLC
By its attorneys,


 /s/  Peter B. McGlynn
Peter B. McGlynn, Esq. BBO# 333660
Meredith A. Swisher, Esq. BBO# 646866
BERNKOPF GOODMAN LLP
125 Summer Street, 13th floor
Boston, Massachusetts 02110
(617) 790-3000
pmcglynn@bg-llp.com
mswisher@bg-llp.com

  /s/ E. Randolph Tucker
E. Randolph Tucker (BBO# 503845)
Bruce E. Falby (BBO# 544143)
Bruce S. Barnett (BBO# 647668)
Traci S. Feit (BBO# 630668)
DLA Piper Rudnick Gray Cary US LLP
One International Place, 21st Floor
Boston, MA 02110-2613
617-406-6000


Dated:  July 26, 2005

## **CERTIFICATE OF SERVICE**

I, Peter McGlynn, hereby certify that, this 26th day of July 2005, the **Revised Local Rule 16.1(D) Joint Statement** was served upon all parties entitled to notice via electronic notice.

/s/  Peter B. McGlynn
Peter McGlynn

#316366 v1/14500/9985