UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BLUE HILLS OFFICE PARK LLC,

    Plaintiff, Defendant-in-Counterclaim.

    v.

                                Civil Action No. 05-CV-10506 (WGY)

J.P. MORGAN CHASE BANK, as Trustee for the
Registered Holders of Credit Suisse First Boston
Mortgage Securities Corp., Commercial Mortgage
Pass-Through Certificates, Series 1999-C1,

    and

CSFB 1999–C1 ROYALL STREET, LLC;

    Defendants, Plaintiffs-in-Counterclaim,

    v.

WILLIAM LANGELIER and GERALD
FINEBERG,

    Defendants-in-Counterclaim.

**MOTION OF DEFENDANTS AND COUNTERCLAIM-PLAINTIFFS
FOR LEAVE TO AMEND COUNTERCLAIM**

    Pursuant to Rule 15(a), Fed. R. Civ. P., defendants and counterclaim-plaintiffs J.P.

Morgan Chase Bank, as Trustee for the Registered Holders of Credit Suisse First Boston

Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1

(the "Trustee") and CSFB 1999–C1 Royall Street, LLC ("CSFB") move for leave to amend their

counterclaim to add factual bases for existing claims and two new claims based on additional

unauthorized transfers of Mortgaged Property revealed by defendants-in-counterclaim during

discovery. A copy of the proposed Amended Counterclaim, redlined to show the changes from

the original Counterclaim, is attached hereto as <u>Exhibit A</u>.  A clean copy of the proposed

Amended Counterclaim is attached hereto as <u>Exhibit B</u>.

The Trustee and CSFB have promptly brought this motion after learning of the facts that

support the amendments from documents that the counterclaim defendants recently produced,

months late and only after the Trustee and CSFB filed a motion to compel production.  The facts

relevant to the amendments are within the control of the counterclaim defendants.  The

amendments to the counterclaim will not require any additional discovery or cause any delay in

the case schedule.  Under the liberal amendment standard of Fed. R. Civ. P. 15(a), the motion for

leave to amend should therefore be allowed.

In support of this motion, the Trustee and CSFB rely on the memorandum of law

submitted herewith.

WHEREFORE, the Trustee and CSFB request that their motion for leave to amend their

counterclaim be allowed.

<div style="margin-left: 40%;">

Respectfully submitted,

</div>

March 29, 2006

<div style="margin-left: 40%;">

CSFB 1999-C1 ROYALL STREET, LLC,
and J.P. MORGAN CHASE BANK, as
Trustee for the Registered Holders of
Credit Suisse First Boston Mortgage
Securities Corp., Commercial Mortgage
Pass-Through Certificates, Series 1999-C1,

By their attorneys,


/s/ Bruce E. Falby
E. Randolph Tucker, BBO #503845
Bruce E. Falby, BBO #544143
Bruce S. Barnett, BBO #647666
Traci S. Feit, BBO #660688
DLA PIPER RUDNICK GRAY CARY US LLP
33 Arch Street, 26th Floor
Boston, MA  02110-1447
(617) 406-6000

</div>

## <u>LOCAL RULE 7.1(A)(2) CERTIFICATION</u>

The undersigned counsel for CSFB and the Trustee certifies that he has conferred with

Peter McGlynn, counsel for defendants-in-counterclaim Blue Hills Office Park LLC, William

Langelier, and Gerald Fineberg, in a good faith attempt to resolve or narrow the issues presented

by this motion.

/s/ Bruce E. Falby
Bruce E. Falby

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BLUE HILLS OFFICE PARK LLC,

    Plaintiff, Defendant-in-Counterclaim.

    v.

J.P. MORGAN CHASE BANK, as Trustee for the
Registered Holders of Credit Suisse First Boston
Mortgage Securities Corp., Commercial Mortgage
Pass-Through Certificates, Series 1999-C1.,
    Defendant, Plaintiff-in-Counterclaim,

    and

CSFB 1999–C1 ROYALL STREET, LLC;
    Defendant, Plaintiff-in-Counterclaim,

    v.

WILLIAM LANGELIER and GERALD
FINEBERG,

    Defendants-in-Counterclaim.

Civil Action No.  05-CV-10506 (WGY)

**AMENDED COUNTERCLAIM OF CSFB 1991-C1 ROYALL STREET, LLC
AND J.P. MORGAN CHASE BANK, AS TRUSTEE FOR THE REGISTERED
HOLDERS OF CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.,
COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 1999-C1**

CSFB 1999-C1 Royall Street, LLC ("CSFB") and J.P. Morgan Chase Bank, as Trustee

for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial

Mortgage Pass-Through Certificates, Series 1999-C1 (the "Trustee") (together, the "Lender"), on

their own behalf and as assignees of the mortgage and other loan documents given by Blue Hills

Office Park, LLC ("Blue Hills") to Credit Suisse First Boston Mortgage Capital, LLC ("Credit

Suisse First Boston"), bring this amended counterclaim against Blue Hills, William J. Langelier,

| Deleted: Lender |
| Deleted: , |
| Deleted: its |
| Deleted: s |

~BOST1:412408
306477-18

and Gerald S. Fineberg, to recover damages flowing from their breaches of contractual and other

duties owed to the Lender and to recover amounts owed to the Lender under a guaranty executed

by Mr. Langelier and Mr. Fineberg.

## **PARTIES**

1.    CSFB is a Delaware limited liability company.  CSFB's sole member is a trust,

whose trustee is the Trustee, a New York corporation with its principal place of business in New

York, New York.

> **Deleted:** Lender
>
> **Deleted:** Lender's
>
> **Deleted:** JP Morgan Chase Bank

2.    The Trustee is a New York banking corporation with its principal place of

business in New York, New York, and a mailing address care of LNR Partners, Inc., 1601

Washington Avenue, Suite 700, Miami Beach, FL 33139.  Trustee was the record holder of the

Blue Hills mortgage and other loan documents from April 20, 2000 until November 10, 2004.

3.    Blue Hills is a Delaware limited liability company.  On information and belief,

the sole member of Blue Hills is a nominee trust, Royall Associates Realty Trust (the "Royall

Associates Trust").  On information and belief, the sole beneficiary of the Royall Associates

Trust is the Royall Associates General Partnership, whose primary partners are William J.

Langelier and Gerald S. Fineberg.

> **Formatted:** Bullets and Numbering
>
> **Deleted:** sole

4.    On information and belief, William J. Langelier is an individual domiciled in

California.

5.    On information and belief, Gerald S. Fineberg is an individual domiciled in

Massachusetts.

## **JURISDICTION AND VENUE**

6.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there

is complete diversity and the amount in controversy exceeds $75,000, exclusive of costs or

interest.  This Court also has jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1367, as

> **Formatted:** Bullets and Numbering

the Lender's claims arise out of the same transaction and occurrence as asserted in the Second

Amended Complaint of plaintiff/defendant-in-counterclaim Blue Hills.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of

the events and omissions giving rise to the claim occurred in this judicial district and a

substantial part of the property that is the subject of this action is situated in this district.

## FACTUAL BACKGROUND

### Credit Suisse First Boston Lends $33 Million to Blue Hills

8.      In September 1999, Credit Suisse First Boston loaned $33,149,000 (the "Loan")

to Blue Hills.

9.      The Loan was secured by a mortgage on Blue Hills' property located at 150

Royall Street, Canton, Massachusetts and known as the Blue Hills Office Park (the "Property"),

and by other instruments and documents, including an Assignment of Leases and Rents (the

"ALR"), the Guaranty, the Cash Management Agreement (copy attached to the Second Amended

Complaint as Exhibit "E"), and UCC Financing Statements.

10.      The Property is improved by a two-story brick building containing approximately

275,000 square feet of space.

11.      The sole tenant of the Property as of September 14, 1999 was Equiserve Limited

Partnership ("Equiserve").

12.      On or about September 14, 1999, Blue Hills executed the Mortgage Agreement

(copy attached to the Second Amended Complaint as Exhibit "C"), the Mortgage Note (the

"Note") (copy attached to the Second Amended Complaint as Exhibit "D"), and the ALR.

13.      Section ¶10 of the Mortgage Agreement provides that Blue Hills shall not "sell,

convey, alienate, mortgage, encumber, pledge or otherwise transfer the Mortgaged Property or

any part thereof, or permit the Mortgaged Property or any part thereof to be sold, conveyed, alienated, mortgaged, encumbered, pledged, or otherwise transferred," without the prior written consent of the Lender or as otherwise expressly provided in the Mortgage Agreement.

14.    Blue Hills agreed not to sell, convey, alienate, mortgage, encumber, pledge, or otherwise transfer any part of the Mortgaged Property without the prior written consent of the Lender.

15.    In the Mortgage Agreement and the UCC Financing Statements, the "Mortgaged Property" is defined to include all "claims...and causes of action that now or hereafter relate to, are derived from or are used in connection with the Mortgaged Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon..."

16.    The Mortgage Agreement and the UCC Financing Statements define the "Mortgaged Property" broadly to include "all estates, rights, titles, interests, [and] privileges...of any nature whatsoever, in any way belonging, relating, or pertaining to the Premises and the Improvements," including causes of action, income, proceeds, awards, payments, revenues, furniture, furnishings, equipment, and accounts relating to the Property.

17.    Under the Mortgage Agreement, it is an Event of Default for Blue Hills to transfer claims or causes of action related to or derived from the Mortgaged Property, or any other part of the Mortgaged Property, without the Lender's prior written consent.  In the event that Blue Hills fails to obtain the Lender's prior written consent to any assignment, transfer, or conveyance of the Mortgaged Property or any portion thereof, the Debt (which includes all indebtedness and interest due under the Note and all other sums due under the Mortgage Agreement, the Note, and the other documents securing the Loan) becomes fully recourse to Blue Hills.

18.    On or about September 14, 1999, Blue Hills executed the Cash Management

~BOST1:412408
306477-18

- 4 -

Agreement.

19.     Pursuant to the Cash Management Agreement, Blue Hills agreed to deposit all
Rents (as defined in the Mortgage Agreement) with the Clearing Bank (as defined in the Cash
Management Agreement) within one Business Day (as defined in the Cash Management
Agreement) of receipt.

20.     Under the Cash Management Agreement, prior to depositing the Rents with the
Clearing Bank, Blue Hills (or its Manager or other affiliate) agreed to hold the Rents in trust for
the Lender.

21.     A breach of the Cash Management Agreement is an Event of Default under the
Mortgage Agreement.

22.     On or about September 14, 1999, Mr. Fineberg and Mr. Langelier individually
executed the Guaranty as "an inducement to Lender to make the Loan."

23.     Pursuant to the Guaranty, Mr. Fineberg and Mr. Langelier each is "liable for the
full amount of the Debt in the event that [...] (D) Borrower fails to obtain Lender's prior written
consent to any assignment, transfer, or conveyance of the Mortgaged Property or any interest
therein if required by Section 10 of the [Mortgage Agreement]."

24.     The "Debt" guaranteed by Mr. Fineberg and Mr. Langelier includes the
indebtedness and interest due under the Note and all other sums due under the Mortgage
Agreement, the Note, and the other documents securing the Loan.

**Blue Hills Sues to Protect the Value of the Property**

25.     On May 22, 2003, a special permit (the "Special Permit") for a parking garage
(which would add approximately 263 parking spaces) was granted by the Town of Canton
Zoning Board of Appeals (the "ZBA") to Blueview Corporate Center LLC, then-owner of the
property and office building located at 250 Royall Street ("Blueview"), which abuts the Property.

**Deleted:** <#>"Rents," as defined in the Cash Management Agreement, include "rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents.... income, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues profits, charges for services rendered, and other consideration of whatever form or nature received by or paid to or for the account of or benefit of Mortgagor or its agents or employees from any and all sources arising from or attributable to the Premises and the Improvements."¶
Under the Cash Management Agreement, Blue Hills agreed to notify Lender, at the time of receipt, of Blue Hills' receipt of Rents in conjunction with "any extraordinary event pursuant to which Borrower receives payments or income (in whatever form) derived from or generated by the use, ownership or operation of the Premises," other than payments from lessees, certain insurance proceeds, condemnation awards, and real estate tax refunds.

**Formatted:** Bullets and Numbering

26.     On June 9, 2003, Blue Hills filed a Complaint in Norfolk Superior Court (the "Zoning Appeal") appealing the ZBA's decision to grant the Special Permit.

27.     In the Zoning Appeal, Blue Hills stated, *inter alia*, that the proposed parking structure was immediately in the sight line of the Property, would partially block the view from the Property, and would be "detrimental and offensive" to Blue Hills and the inhabitants of the Property.  Blue Hills further stated that the proposed parking structure posed a detriment to the Property.

**Blue Hills Agrees to Dismiss its Suit and Waive Rights of Appeal**

28.     During the summer of 2003 Blue Hills negotiated a settlement, under which it agreed to accept a $2 million payment to dismiss the Zoning Appeal and to waive all further rights of appeal of the ZBA's decision granting the Special Permit to Blueview (the "ZBA Decision").

> **Deleted:** On information and belief, d
>
> **Deleted:** substantial cash

29.     Without notifying the Lender or obtaining the Lender's prior written consent, Blue Hills agreed to the offer and executed settlement documents, including (1) a Settlement Agreement waiving all further rights of appeal of the ZBA Decision, and (2) a Lease Termination Agreement with Equiserve.

> **Deleted:** , accepted a cash payment in excess of $1 million

30.     On or about the same date, an entity related to Equiserve (DST Realty of Massachusetts, Inc.) purchased Blueview from Blueview Corporate Center, LLC, and Blue Hills accepted the cash payment of $2 million (the "Payment") provided for in the Settlement Agreement.

> **Formatted:** Bullets and Numbering

31.     Blue Hills never notified the Lender of its receipt of the Payment,  the Zoning Appeal, or the settlement of the Zoning Appeal.

32.     The receipt of the Payment and dismissal of the Zoning Appeal constituted an assignment, transfer or conveyance of an interest in the Mortgaged Property, requiring the

Lender's prior written consent pursuant to section 10 of the Mortgage Agreement.

33.    Blue Hills' execution of the Lease Termination Agreement, without the Lender's prior written consent, was a breach of the Mortgage Agreement and the Assignment of Leases and Rents.

34.    Blue Hills never deposited the Payment with the Clearing Bank, nor has Blue Hills otherwise conveyed Payment to the Lender.

35.    Blue Hills did not record the Payment on the books and records of Blue Hills.

36.    Blue Hills' failure to record the Payment on the books and records of Blue Hills was a breach of section 18(b) of the Mortgage Agreement.

37.    Blue Hills did not report the Payment to the Lender in financial statements submitted to the Lender by Blue Hills.

38.    Blue Hills' failure to report the Payment to the Lender in financial statements submitted to the Lender by Blue Hills was a breach of section 18(b) of the Mortgage Agreement and an Event of Default under section 23(e) of the Mortgage Agreement.

39.    On or about August 8, 2003, without the prior written consent of the Lender, Blue Hills conveyed the Payment to a client fund account at Bernkopf Goodman LLP controlled by, on information and belief, the Royall Associates Trust, the sole member of Blue Hills.

40.    Neither Blue Hills, the Royall Associates Trust, nor the beneficiaries of the Royall Associates Trust had a right to immediate possession of the Payment.

41.    As of August 8, 2003, Blue Hills' liabilities exceeded its assets.

42.    The August 8, 2003 conveyance of the Payment constituted a conveyance of Mortgaged Property requiring the Lender's prior written consent pursuant to section 10 of the Mortgage Agreement.  The conveyance without prior written consent was a breach of section 10 and an Event of Default under section 23(d) of the Mortgage Agreement.

**Deleted:** <#>On August 4, 2003, an entity related to Equiserve (DST Realty of Massachusetts, Inc.) purchased Blueview from Blueview Corporate Center, LLC.¶

43.    On August 29, 2003, counsel for Blue Hills filed a Notice of Dismissal of the ZBA Complaint with the Norfolk Superior Court, which the clerk did not accept for filing.

44.    On September 5, 2003, a Stipulation of Dismissal of the Zoning Appeal signed by all counsel of record was filed with the court and all rights of appeal of the ZBA Decision were thereby waived by Blue Hills.  Blue Hills did not give notice of the filing of the Stipulation of Dismissal to the Lender.

45.    In or around the spring of 2005, the Payment was conveyed from the Royall Associates Trust client fund account to two separate client fund accounts.  On information and belief, one of the accounts is controlled by Gerald Fineberg and the other is controlled by William Langelier.

46.    Neither Gerald Fineberg nor William Langelier, nor any of the beneficiaries of the Royall Associates Trust, has a right to possession of the Payment.

47.    The Lender has the right to possession of the Payment.

**Blue Hills' Sole Tenant Moves to Blueview and Lender Forecloses on the Property**

| Formatted: Bullets and Numbering |
| --- |

48.    The parking garage at Blueview was constructed at the request of Equiserve. Blue Hills, Langelier and Fineberg believed that fact to be true as of August 2003.

49.    At the time it dismissed the Zoning Appeal, Blue Hills was aware that doing so would ensure that Equiserve would move its offices to Blueview.

| Deleted: intended to |
| --- |
| Deleted: V |

50.    On information and belief, on or around July 31, 2004, Equiserve (the Property's sole tenant) allowed its lease of the Property to expire without renewal, vacated the Property and moved to Blueview.

51.    Upon Equiserve's departure, pursuant to the Lease Termination Agreement, approximately 1,000 Haworth Unigroup workstations (the "Workstations") became the property of Blue Hills.

52.     Under the Mortgage Agreement, the Workstations were Mortgaged Property.

53.     In or around August 2004, without notifying the Lender and without obtaining the Lender's prior written consent, Blue Hills sold the Workstations for $100,000.

54.     On information and belief, without the Lender's prior written consent, Blue Hills subsequently conveyed the $100,000 proceeds of the sale of the Workstations (the "Workstations Sale Proceeds") to Royall Associates Trust, the sole member of Blue Hills.

55.     Blue Hills' sale of the Workstations and conveyance of the Workstations Sale Proceeds constituted a transfer and conveyance of Mortgaged Property requiring the Lender's prior written consent pursuant to section 10 of the Mortgage Agreement.  The transfer and conveyance without prior written consent were breaches of section 10 and Events of Default under section 23(d) of the Mortgage Agreement.

56.     Neither Blue Hills, the Royall Associates Trust, nor the beneficiaries of the Royall Associates Trust had a right to immediate possession of the Workstations Sale Proceeds.

57.     When Blue Hills conveyed the Workstations Sale Proceeds to the Royall Associates Trust, Blue Hills' liabilities exceeded its assets.

58.     The Lender has the right to possession of the Workstations Sale Proceeds.

59.     In or around August 2004, Blue Hills received approximately $10,000 in "holdover rent" from Equiserve (the "Holdover Rent"), which Blue Hills did not report to the Lender, did not deposit in the Clearing Bank, and did not otherwise convey to the Lender.

60.     On October 21, 2004, pursuant to Mass. Gen. Laws c. 244, §§ 14 and 17B, the Lender notified Mr. Fineberg and Mr. Langelier of its intention to foreclose on the Property and of Mr. Fineberg's and Mr. Langelier's potential liability to the Lender under the Guaranty in case of a deficiency in the proceeds of the foreclosure sale.

61.     On November 29, 2004, due to numerous defaults by Blue Hills (including Blue

Hills' failure to pay real estate taxes, principal and interest, and escrow payments due under the Loan Documents for four months), the Lender foreclosed on the Property. The amount of the Debt was $33,842,809. The Property was sold for $18,500,000, leaving a deficiency in the proceeds of the foreclosure sale in the amount of $15,342,809, exclusive of prepayment premium.

62.     On April 20, 2005, the Lender made written demand upon Mr. Fineberg and Mr. Langelier under the Guaranty.

63.     Neither Mr. Fineberg nor Mr. Langelier has made payment under the Guaranty.

**COUNT I**
(v. Blue Hills)
(Breach of Contract – Mortgage)

64.     The Lender incorporates and restates the allegations of Paragraphs 1-63 above.

65.     By the conduct described above, Blue Hills breached the Mortgage Agreement, including by assigning, transferring and/or conveying Mortgaged Property without the prior written consent of the Lender, making the Debt fully recourse to Blue Hills.

66.     The Lender has suffered damages on account of Blue Hills' breaches of the Mortgage Agreement.

**COUNT II**
(v. Blue Hills)
(Breach of Contract – Cash Management Agreement)

67.     The Lender incorporates and restates the allegations of Paragraphs 1-66 above.

68.     Blue Hills failed to deposit the Holdover Rent with the Clearing Bank, in breach of the Cash Management Agreement.

69.     The Lender has suffered damages on account of Blue Hills' breach of the Cash Management Agreement.

| | |
|---|---|
| **Deleted:** 42 | |
| **Formatted:** Bullets and Numbering | |
| **Deleted:** Blue Hills | |
| **Deleted:** ed | |
| **Deleted:** transferred | |
| **Deleted:** conveyed | |
| **Deleted:** in breach of the Mortgage Agreement | |
| **Deleted:** 45 | |
| **Deleted:** Payment | |
| **Formatted:** Bullets and Numbering | |
| **Deleted:** Blue Hills failed to notify Lender of its receipt of the Payment, in breach of the Cash Management Agreement.¶ | |

**COUNT III**
(v. Blue Hills)
(Breach of Implied Covenant of Good Faith and Fair Dealing)

70.     The Lender incorporates and restates the allegations of Paragraphs 1-69 above.

71.     Every contract carries with it an implied obligation of good faith and fair dealing which requires that neither party do anything that will destroy the other's right to receive the fruits of the contract.

72.     By the conduct described above, Blue Hills breached this obligation, including by failing to notify the Lender of the ZBA Appeal, by failing to obtain the prior written consent of the Lender to the Settlement Agreement and the Lease Termination Agreement, by executing the Settlement Agreement, by failing to notify the Lender of its receipt of the Payment, by conveying the Payment to Royall Associates Trust, by selling the Workstations without the Lender's prior written consent, by failing to notify the Lender of the sale of the Workstations, by conveying the Workstations Sale Proceeds to Royall Associates Trust, and by failing to deposit the Holdover Rent in the Clearing Bank.

73.     The Lender has suffered damages on account of Blue Hills' breaches of the implied covenant of good faith and fair dealing.

**COUNT IV**
(v. all Defendants)
(Intentional Misrepresentation)

74.     The Lender incorporates and restates the allegations of Paragraphs 1-73 above.

75.     Blue Hills had a duty to notify the Lender prior to executing the Settlement Agreement and the Lease Termination Agreement.

76.     Blue Hills intentionally failed to notify the Lender prior to executing the Settlement Agreement and the Lease Termination Agreement in order to induce the Lender's inaction.

~BOST1:412408
306477-18

- 11 -

[Deleted: 49]
[Formatted: Bullets and Numbering]
[Deleted: and by failing to deposit the Payment in the Clearing Bank,]
[Formatted: Bullets and Numbering]
[Deleted: 53]

77.    The Lender reasonably and justifiably relied on Blue Hills' material omissions concerning the Settlement Agreement and the Lease Termination Agreement.

78.    Blue Hills had a duty to notify the Lender of its receipt of the Payment at the time of Blue Hills' receipt of the Payment.

79.    Blue Hills intentionally failed to notify the Lender of its receipt of the Payment in order to induce the Lender's inaction.

80.    Blue Hills subsequently submitted financial statements to the Lender that omitted receipt of the Payment.

81.    The Lender reasonably and justifiably relied on Blue Hills' material omissions concerning the Payment.

82.    Blue Hills had a duty to notify the Lender prior to selling the Workstations.

83.    Blue Hills intentionally failed to notify the Lender prior to selling the Workstations in order to induce the Lender's inaction.

84.    The Lender reasonably and justifiably relied on Blue Hills' material omissions concerning the sale of the Workstations.

85.    Blue Hills had a duty to notify the Lender of its receipt of the Workstations Sales Proceeds.

86.    Blue Hills intentionally failed to notify the Lender of its receipt of the Workstations Sales Proceeds in order to induce the Lender's inaction.

87.    The Lender reasonably and justifiably relied on Blue Hills' material omissions concerning the Workstations Sales Proceeds.

88.    Blue Hills had a duty to notify the Lender of its receipt of the Holdover Rent from Equiserve.

89.    Blue Hills intentionally failed to notify the Lender of its receipt of the Holdover

Rent in order to induce the Lender's inaction.

90.    The Lender reasonably and justifiably relied on Blue Hills' material omissions concerning the receipt of the Holdover Rent from Equiserve.

91.    Under the Guaranty, Langelier and Fineberg are liable for intentional misrepresentation by Blue Hills.

92.    As a result of Blue Hills' intentional misrepresentations, the Lender has been damaged.

**COUNT V**
(v. Langelier and Fineberg)
(Guaranty)

93.    The Lender incorporates and restates the allegations of Paragraphs 1-92 above.

94.    Under the Guaranty, Mr. Fineberg and Mr. Langelier are liable for the full amount of the Debt.

95.    The Lender has made demand upon Mr. Fineberg and Mr. Langelier under the Guaranty.

96.    Mr. Fineberg and Mr. Langelier have failed to make payment to the Lender as required by the Guaranty.

97.    As a result of Mr. Fineberg's and Mr. Langelier's failure to make payment to the Lender, the Lender has been damaged.

**COUNT VI**
(v. all Defendants)
(M.G.L. c.93A)

98.    The Lender incorporates and restates the allegations of Paragraphs 1-97 above.

99.    Blue Hills, Gerald S. Fineberg and William Langelier are parties engaged in trade or commerce.

100.    By the conduct described above, Blue Hills, Fineberg and Langelier acted unfairly

Deleted: 61
Formatted: Bullets and Numbering
Deleted: 66
Formatted: Bullets and Numbering
Deleted: and Mr. Fineberg

and deceptively, in violation of M.G.L. c.93A, § 11. These unfair and deceptive acts were

knowing and willful, entitling the Lender to multiple damages.

Deleted: , by failing to notify the Lender of the ZBA Appeal, by failing to obtain the prior written consent of the Lender to the Settlement Agreement, by executing the Settlement Agreement, by failing to notify the Lender of its receipt of the Payment, and by failing to deposit the Payment in the Clearing Bank

101.    As a result of these unfair and deceptive acts, the Lender has been damaged.

## COUNT VI
### (v. Blue Hills)
### (Uniform Fraudulent Transfer Act, M.G.L. c.109A)

Formatted: Bullets and Numbering

102.    The Lender incorporates and restates the allegations of Paragraphs 1-101 above.

103.    Blue Hills conveyed the Payment and the Workstations Sale Proceeds with the

intent to hinder, delay or defraud the Lender.

104.    Blue Hills conveyed the Payment and the proceeds of Workstations Sale Proceeds

without receiving a reasonably equivalent value.

105.    Blue Hills was insolvent when it conveyed the Payment and the Workstations

Sale Proceeds.

106.    The conveyance of the Payment and the Workstations Sale Proceeds should be

invalidated and the judgment herein be declared a lien on the Payment and the Workstations Sale

Proceeds for the benefit of the Lender.

## COUNT VII
### (v. all Defendants)
### (Conversion)

Formatted: Bullets and Numbering

107.    The Lender incorporates and restates the allegations of Paragraphs 1-105 above.

108.    Blue Hills, Langelier and Fineberg intentionally and wrongfully exercised

ownership, control, or dominion over the Payment, the Holdover Rent and Workstations Sale

Proceeds.

109.    The Payment, the Holdover Rent, and the Workstations Sale Proceeds were part

of the Mortgaged Property under the Mortgage Agreement.

110.    Blue Hills, Langelier, and Fineberg had no right to possession of the Payment, the

Holdover Rent, or of the Workstations Sale Proceeds at the time of the conversion.

111.    The Lender has suffered damages on account of Blue Hills', Langelier's, and

Fineberg's conversion of the Payment, the Holdover Rent, and the Workstations Sale Proceeds.

**PRAYERS**

WHEREFORE, CSFB and the Trustee respectfully request that the Court enter judgment

in their favor on each count, in such amounts as the proof at trial will show; award attorneys'

fees under the Mortgage Agreement, the Guaranty, the other Loan documents and M.G.L. c.93A;

and grant such other relief as is appropriate.

| | Deleted: Lender |
|---|---|
| | Deleted: s |
| | Deleted: its |
| | Deleted: , |

Respectfully submitted,

March 29, 2006                    CSFB 1999-C1 ROYALL STREET, LLC,
and J.P. MORGAN CHASE BANK, as
Trustee for the Registered Holders of
Credit Suisse First Boston Mortgage
Securities Corp., Commercial Mortgage
Pass-Through Certificates, Series 1999-C1,

| | Deleted: December 2, 2005 |
|---|---|

By their attorneys,

| | Deleted: its |
|---|---|

/s/ Bruce S. Barnett
E. Randolph Tucker, BBO #503845
Bruce E. Falby, BBO #544143
Bruce S. Barnett, BBO #647666
Traci S. Feit, BBO #660688
DLA PIPER RUDNICK GRAY CARY US LLP
33 Arch Street, 26th Floor
Boston, MA  02110
(617) 406-6000

| | Deleted: One International Place |
|---|---|

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BLUE HILLS OFFICE PARK LLC,

       Plaintiff, Defendant-in-Counterclaim.

       v.

J.P. MORGAN CHASE BANK, as Trustee for the
Registered Holders of Credit Suisse First Boston
Mortgage Securities Corp., Commercial Mortgage
Pass-Through Certificates, Series 1999-C1.,
       Defendant, Plaintiff-in-Counterclaim,

       and

CSFB 1999–C1 ROYALL STREET, LLC;
       Defendant, Plaintiff-in-Counterclaim,

       v.

WILLIAM LANGELIER and GERALD
FINEBERG,

       Defendants-in-Counterclaim.

Civil Action No.  05-CV-10506 (WGY)

### AMENDED COUNTERCLAIM OF CSFB 1991-C1 ROYALL STREET, LLC AND J.P. MORGAN CHASE BANK, AS TRUSTEE FOR THE REGISTERED HOLDERS OF CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 1999-C1

CSFB 1999-C1 Royall Street, LLC ("CSFB") and J.P. Morgan Chase Bank, as Trustee

for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial

Mortgage Pass-Through Certificates, Series 1999-C1 (the "Trustee") (together, the "Lender"), on

their own behalf and as assignees of the mortgage and other loan documents given by Blue Hills

Office Park, LLC ("Blue Hills") to Credit Suisse First Boston Mortgage Capital, LLC ("Credit

Suisse First Boston"), bring this amended counterclaim against Blue Hills, William J. Langelier,

and Gerald S. Fineberg, to recover damages flowing from their breaches of contractual and other duties owed to the Lender and to recover amounts owed to the Lender under a guaranty executed by Mr. Langelier and Mr. Fineberg.

## PARTIES

1.      CSFB is a Delaware limited liability company.  CSFB's sole member is a trust, whose trustee is the Trustee, a New York corporation with its principal place of business in New York, New York.

2.      The Trustee is a New York banking corporation with its principal place of business in New York, New York, and a mailing address care of LNR Partners, Inc., 1601 Washington Avenue, Suite 700, Miami Beach, FL 33139.  Trustee was the record holder of the Blue Hills mortgage and other loan documents from April 20, 2000 until November 10, 2004.

3.      Blue Hills is a Delaware limited liability company.  On information and belief, the sole member of Blue Hills is a nominee trust, Royall Associates Realty Trust (the "Royall Associates Trust").  On information and belief, the sole beneficiary of the Royall Associates Trust is the Royall Associates General Partnership, whose primary partners are William J. Langelier and Gerald S. Fineberg.

4.      On information and belief, William J. Langelier is an individual domiciled in California.

5.      On information and belief, Gerald S. Fineberg is an individual domiciled in Massachusetts.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity and the amount in controversy exceeds $75,000, exclusive of costs or interest.  This Court also has jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1367, as

the Lender's claims arise out of the same transaction and occurrence as asserted in the Second

Amended Complaint of plaintiff/defendant-in-counterclaim Blue Hills.

      7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of

the events and omissions giving rise to the claim occurred in this judicial district and a

substantial part of the property that is the subject of this action is situated in this district.

## FACTUAL BACKGROUND

### Credit Suisse First Boston Lends $33 Million to Blue Hills

      8.      In September 1999, Credit Suisse First Boston loaned $33,149,000 (the "Loan")

to Blue Hills.

      9.      The Loan was secured by a mortgage on Blue Hills' property located at 150

Royall Street, Canton, Massachusetts and known as the Blue Hills Office Park (the "Property"),

and by other instruments and documents, including an Assignment of Leases and Rents (the

"ALR"), the Guaranty, the Cash Management Agreement (copy attached to the Second Amended

Complaint as Exhibit "E"), and UCC Financing Statements.

      10.     The Property is improved by a two-story brick building containing approximately

275,000 square feet of space.

      11.     The sole tenant of the Property as of September 14, 1999 was Equiserve Limited

Partnership ("Equiserve").

      12.     On or about September 14, 1999, Blue Hills executed the Mortgage Agreement

(copy attached to the Second Amended Complaint as Exhibit "C"), the Mortgage Note (the

"Note") (copy attached to the Second Amended Complaint as Exhibit "D"), and the ALR.

      13.     Section ¶10 of the Mortgage Agreement provides that Blue Hills shall not "sell,

convey, alienate, mortgage, encumber, pledge or otherwise transfer the Mortgaged Property or

any part thereof, or permit the Mortgaged Property or any part thereof to be sold, conveyed, alienated, mortgaged, encumbered, pledged, or otherwise transferred," without the prior written consent of the Lender or as otherwise expressly provided in the Mortgage Agreement.

14.    Blue Hills agreed not to sell, convey, alienate, mortgage, encumber, pledge, or otherwise transfer any part of the Mortgaged Property without the prior written consent of the Lender.

15.    In the Mortgage Agreement and the UCC Financing Statements, the "Mortgaged Property" is defined to include all "claims...and causes of action that now or hereafter relate to, are derived from or are used in connection with the Mortgaged Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon..."

16.    The Mortgage Agreement and the UCC Financing Statements define the "Mortgaged Property" broadly to include "all estates, rights, titles, interests, [and] privileges...of any nature whatsoever, in any way belonging, relating, or pertaining to the Premises and the Improvements," including causes of action, income, proceeds, awards, payments, revenues, furniture, furnishings, equipment, and accounts relating to the Property.

17.    Under the Mortgage Agreement, it is an Event of Default for Blue Hills to transfer claims or causes of action related to or derived from the Mortgaged Property, or any other part of the Mortgaged Property, without the Lender's prior written consent.  In the event that Blue Hills fails to obtain the Lender's prior written consent to any assignment, transfer, or conveyance of the Mortgaged Property or any portion thereof, the Debt (which includes all indebtedness and interest due under the Note and all other sums due under the Mortgage Agreement, the Note, and the other documents securing the Loan) becomes fully recourse to Blue Hills.

18.    On or about September 14, 1999, Blue Hills executed the Cash Management

Agreement.

19.     Pursuant to the Cash Management Agreement, Blue Hills agreed to deposit all Rents (as defined in the Mortgage Agreement) with the Clearing Bank (as defined in the Cash Management Agreement) within one Business Day (as defined in the Cash Management Agreement) of receipt.

20.     Under the Cash Management Agreement, prior to depositing the Rents with the Clearing Bank, Blue Hills (or its Manager or other affiliate) agreed to hold the Rents in trust for the Lender.

21.     A breach of the Cash Management Agreement is an Event of Default under the Mortgage Agreement.

22.     On or about September 14, 1999, Mr. Fineberg and Mr. Langelier individually executed the Guaranty as "an inducement to Lender to make the Loan."

23.     Pursuant to the Guaranty, Mr. Fineberg and Mr. Langelier each is "liable for the full amount of the Debt in the event that [...] (D) Borrower fails to obtain Lender's prior written consent to any assignment, transfer, or conveyance of the Mortgaged Property or any interest therein if required by Section 10 of the [Mortgage Agreement]."

24.     The "Debt" guaranteed by Mr. Fineberg and Mr. Langelier includes the indebtedness and interest due under the Note and all other sums due under the Mortgage Agreement, the Note, and the other documents securing the Loan.

### Blue Hills Sues to Protect the Value of the Property

25.     On May 22, 2003, a special permit (the "Special Permit") for a parking garage (which would add approximately 263 parking spaces) was granted by the Town of Canton Zoning Board of Appeals (the "ZBA") to Blueview Corporate Center LLC, then-owner of the property and office building located at 250 Royall Street ("Blueview"), which abuts the Property.

26.     On June 9, 2003, Blue Hills filed a Complaint in Norfolk Superior Court (the "Zoning Appeal") appealing the ZBA's decision to grant the Special Permit.

27.     In the Zoning Appeal, Blue Hills stated, *inter alia*, that the proposed parking structure was immediately in the sight line of the Property, would partially block the view from the Property, and would be "detrimental and offensive" to Blue Hills and the inhabitants of the Property.  Blue Hills further stated that the proposed parking structure posed a detriment to the Property.

### Blue Hills Agrees to Dismiss its Suit and Waive Rights of Appeal

28.     During the summer of 2003 Blue Hills negotiated a settlement, under which it agreed to accept a $2 million payment to dismiss the Zoning Appeal and to waive all further rights of appeal of the ZBA's decision granting the Special Permit to Blueview (the "ZBA Decision").

29.     Without notifying the Lender or obtaining the Lender's prior written consent, Blue Hills agreed to the offer and executed settlement documents, including (1) a Settlement Agreement waiving all further rights of appeal of the ZBA Decision, and (2) a Lease Termination Agreement with Equiserve.

30.     On or about the same date, an entity related to Equiserve (DST Realty of Massachusetts, Inc.) purchased Blueview from Blueview Corporate Center, LLC, and Blue Hills accepted the cash payment of $2 million (the "Payment") provided for in the Settlement Agreement.

31.     Blue Hills never notified the Lender of its receipt of the Payment,  the Zoning Appeal, or the settlement of the Zoning Appeal.

32.     The receipt of the Payment and dismissal of the Zoning Appeal constituted an assignment, transfer or conveyance of an interest in the Mortgaged Property, requiring the

Lender's prior written consent pursuant to section 10 of the Mortgage Agreement.

33.     Blue Hills' execution of the Lease Termination Agreement, without the Lender's prior written consent, was a breach of the Mortgage Agreement and the Assignment of Leases and Rents.

34.     Blue Hills never deposited the Payment with the Clearing Bank, nor has Blue Hills otherwise conveyed Payment to the Lender.

35.     Blue Hills did not record the Payment on the books and records of Blue Hills.

36.     Blue Hills' failure to record the Payment on the books and records of Blue Hills was a breach of section 18(b) of the Mortgage Agreement.

37.     Blue Hills did not report the Payment to the Lender in financial statements submitted to the Lender by Blue Hills.

38.     Blue Hills' failure to report the Payment to the Lender in financial statements submitted to the Lender by Blue Hills was a breach of section 18(b) of the Mortgage Agreement and an Event of Default under section 23(e) of the Mortgage Agreement.

39.     On or about August 8, 2003, without the prior written consent of the Lender, Blue Hills conveyed the Payment to a client fund account at Bernkopf Goodman LLP controlled by, on information and belief, the Royall Associates Trust, the sole member of Blue Hills.

40.     Neither Blue Hills, the Royall Associates Trust, nor the beneficiaries of the Royall Associates Trust had a right to immediate possession of the Payment.

41.     As of August 8, 2003, Blue Hills' liabilities exceeded its assets.

42.     The August 8, 2003 conveyance of the Payment constituted a conveyance of Mortgaged Property requiring the Lender's prior written consent pursuant to section 10 of the Mortgage Agreement.  The conveyance without prior written consent was a breach of section 10 and an Event of Default under section 23(d) of the Mortgage Agreement.

43.     On August 29, 2003, counsel for Blue Hills filed a Notice of Dismissal of the ZBA Complaint with the Norfolk Superior Court, which the clerk did not accept for filing.

44.     On September 5, 2003, a Stipulation of Dismissal of the Zoning Appeal signed by all counsel of record was filed with the court and all rights of appeal of the ZBA Decision were thereby waived by Blue Hills.  Blue Hills did not give notice of the filing of the Stipulation of Dismissal to the Lender.

45.     In or around the spring of 2005, the Payment was conveyed from the Royall Associates Trust client fund account to two separate client fund accounts.  On information and belief, one of the accounts is controlled by Gerald Fineberg and the other is controlled by William Langelier.

46.     Neither Gerald Fineberg nor William Langelier, nor any of the beneficiaries of the Royall Associates Trust, has a right to possession of the Payment.

47.     The Lender has the right to possession of the Payment.

**Blue Hills' Sole Tenant Moves to Blueview and Lender Forecloses on the Property**

48.     The parking garage at Blueview was constructed at the request of Equiserve. Blue Hills, Langelier and Fineberg believed that fact to be true as of August 2003.

49.     At the time it dismissed the Zoning Appeal, Blue Hills was aware that doing so would ensure that Equiserve would move its offices to Blueview.

50.     On information and belief, on or around July 31, 2004, Equiserve (the Property's sole tenant) allowed its lease of the Property to expire without renewal, vacated the Property and moved to Blueview.

51.     Upon Equiserve's departure, pursuant to the Lease Termination Agreement, approximately 1,000 Haworth Unigroup workstations (the "Workstations") became the property of Blue Hills.

52.     Under the Mortgage Agreement, the Workstations were Mortgaged Property.

53.     In or around August 2004, without notifying the Lender and without obtaining the Lender's prior written consent, Blue Hills sold the Workstations for $100,000.

54.     On information and belief, without the Lender's prior written consent, Blue Hills subsequently conveyed the $100,000 proceeds of the sale of the Workstations (the "Workstations Sale Proceeds") to Royall Associates Trust, the sole member of Blue Hills.

55.     Blue Hills' sale of the Workstations and conveyance of the Workstations Sale Proceeds constituted a transfer and conveyance of Mortgaged Property requiring the Lender's prior written consent pursuant to section 10 of the Mortgage Agreement.  The transfer and conveyance without prior written consent were breaches of section 10 and Events of Default under section 23(d) of the Mortgage Agreement.

56.     Neither Blue Hills, the Royall Associates Trust, nor the beneficiaries of the Royall Associates Trust had a right to immediate possession of the Workstations Sale Proceeds.

57.     When Blue Hills conveyed the Workstations Sale Proceeds to the Royall Associates Trust, Blue Hills' liabilities exceeded its assets.

58.     The Lender has the right to possession of the Workstations Sale Proceeds.

59.     In or around August 2004, Blue Hills received approximately $10,000 in "holdover rent" from Equiserve (the "Holdover Rent"), which Blue Hills did not report to the Lender, did not deposit in the Clearing Bank, and did not otherwise convey to the Lender.

60.     On October 21, 2004, pursuant to Mass. Gen. Laws c. 244, §§ 14 and 17B, the Lender notified Mr. Fineberg and Mr. Langelier of its intention to foreclose on the Property and of Mr. Fineberg's and Mr. Langelier's potential liability to the Lender under the Guaranty in case of a deficiency in the proceeds of the foreclosure sale.

61.     On November 29, 2004, due to numerous defaults by Blue Hills (including Blue

Hills' failure to pay real estate taxes, principal and interest, and escrow payments due under the Loan Documents for four months), the Lender foreclosed on the Property. The amount of the Debt was $33,842,809. The Property was sold for $18,500,000, leaving a deficiency in the proceeds of the foreclosure sale in the amount of $15,342,809, exclusive of prepayment premium.

62.     On April 20, 2005, the Lender made written demand upon Mr. Fineberg and Mr. Langelier under the Guaranty.

63.     Neither Mr. Fineberg nor Mr. Langelier has made payment under the Guaranty.

## COUNT I
### (v. Blue Hills)
### (Breach of Contract – Mortgage)

64.     The Lender incorporates and restates the allegations of Paragraphs 1-63 above.

65.     By the conduct described above, Blue Hills breached the Mortgage Agreement, including by assigning, transferring and/or conveying Mortgaged Property without the prior written consent of the Lender, making the Debt fully recourse to Blue Hills.

66.     The Lender has suffered damages on account of Blue Hills' breaches of the Mortgage Agreement.

## COUNT II
### (v. Blue Hills)
### (Breach of Contract – Cash Management Agreement)

67.     The Lender incorporates and restates the allegations of Paragraphs 1-66 above.

68.     Blue Hills failed to deposit the Holdover Rent with the Clearing Bank, in breach of the Cash Management Agreement.

69.     The Lender has suffered damages on account of Blue Hills' breach of the Cash Management Agreement.

## COUNT III
(v. Blue Hills)
(Breach of Implied Covenant of Good Faith and Fair Dealing)

70.    The Lender incorporates and restates the allegations of Paragraphs 1-69 above.

71.    Every contract carries with it an implied obligation of good faith and fair dealing which requires that neither party do anything that will destroy the other's right to receive the fruits of the contract.

72.    By the conduct described above, Blue Hills breached this obligation, including by failing to notify the Lender of the ZBA Appeal, by failing to obtain the prior written consent of the Lender to the Settlement Agreement and the Lease Termination Agreement, by executing the Settlement Agreement, by failing to notify the Lender of its receipt of the Payment, by conveying the Payment to Royall Associates Trust, by selling the Workstations without the Lender's prior written consent, by failing to notify the Lender of the sale of the Workstations, by conveying the Workstations Sale Proceeds to Royall Associates Trust, and by failing to deposit the Holdover Rent in the Clearing Bank.

73.    The Lender has suffered damages on account of Blue Hills' breaches of the implied covenant of good faith and fair dealing.

## COUNT IV
(v. all Defendants)
(Intentional Misrepresentation)

74.    The Lender incorporates and restates the allegations of Paragraphs 1-73 above.

75.    Blue Hills had a duty to notify the Lender prior to executing the Settlement Agreement and the Lease Termination Agreement.

76.    Blue Hills intentionally failed to notify the Lender prior to executing the Settlement Agreement and the Lease Termination Agreement in order to induce the Lender's inaction.

77.    The Lender reasonably and justifiably relied on Blue Hills' material omissions concerning the Settlement Agreement and the Lease Termination Agreement.

78.    Blue Hills had a duty to notify the Lender of its receipt of the Payment at the time of Blue Hills' receipt of the Payment.

79.    Blue Hills intentionally failed to notify the Lender of its receipt of the Payment in order to induce the Lender's inaction.

80.    Blue Hills subsequently submitted financial statements to the Lender that omitted receipt of the Payment.

81.    The Lender reasonably and justifiably relied on Blue Hills' material omissions concerning the Payment.

82.    Blue Hills had a duty to notify the Lender prior to selling the Workstations.

83.    Blue Hills intentionally failed to notify the Lender prior to selling the Workstations in order to induce the Lender's inaction.

84.    The Lender reasonably and justifiably relied on Blue Hills' material omissions concerning the sale of the Workstations.

85.    Blue Hills had a duty to notify the Lender of its receipt of the Workstations Sales Proceeds.

86.    Blue Hills intentionally failed to notify the Lender of its receipt of the Workstations Sales Proceeds in order to induce the Lender's inaction.

87.    The Lender reasonably and justifiably relied on Blue Hills' material omissions concerning the Workstations Sales Proceeds.

88.    Blue Hills had a duty to notify the Lender of its receipt of the Holdover Rent from Equiserve.

89.    Blue Hills intentionally failed to notify the Lender of its receipt of the Holdover

Rent in order to induce the Lender's inaction.

90.     The Lender reasonably and justifiably relied on Blue Hills' material omissions concerning the receipt of the Holdover Rent from Equiserve.

91.     Under the Guaranty, Langelier and Fineberg are liable for intentional misrepresentation by Blue Hills.

92.     As a result of Blue Hills' intentional misrepresentations, the Lender has been damaged.

**COUNT V**
(v. Langelier and Fineberg)
(Guaranty)

93.     The Lender incorporates and restates the allegations of Paragraphs 1-92 above.

94.     Under the Guaranty, Mr. Fineberg and Mr. Langelier are liable for the full amount of the Debt.

95.     The Lender has made demand upon Mr. Fineberg and Mr. Langelier under the Guaranty.

96.     Mr. Fineberg and Mr. Langelier have failed to make payment to the Lender as required by the Guaranty.

97.     As a result of Mr. Fineberg's and Mr. Langelier's failure to make payment to the Lender, the Lender has been damaged.

**COUNT VI**
(v. all Defendants)
(M.G.L. c.93A)

98.     The Lender incorporates and restates the allegations of Paragraphs 1-97 above.

99.     Blue Hills, Gerald S. Fineberg and William Langelier are parties engaged in trade or commerce.

100.     By the conduct described above, Blue Hills, Fineberg and Langelier acted unfairly

and deceptively, in violation of M.G.L. c.93A, § 11.  These unfair and deceptive acts were knowing and willful, entitling the Lender to multiple damages.

101.    As a result of these unfair and deceptive acts, the Lender has been damaged.

## COUNT VI
### (v. Blue Hills)
### (Uniform Fraudulent Transfer Act, M.G.L. c.109A)

102.    The Lender incorporates and restates the allegations of Paragraphs 1-101 above.

103.    Blue Hills conveyed the Payment and the Workstations Sale Proceeds with the intent to hinder, delay or defraud the Lender.

104.    Blue Hills conveyed the Payment and the proceeds of Workstations Sale Proceeds without receiving a reasonably equivalent value.

105.    Blue Hills was insolvent when it conveyed the Payment and the Workstations Sale Proceeds.

106.    The conveyance of the Payment and the Workstations Sale Proceeds should be invalidated and the judgment herein be declared a lien on the Payment and the Workstations Sale Proceeds for the benefit of the Lender.

## COUNT VII
### (v. all Defendants)
### (Conversion)

107.    The Lender incorporates and restates the allegations of Paragraphs 1-105 above.

108.    Blue Hills, Langelier and Fineberg intentionally and wrongfully exercised ownership, control, or dominion over the Payment, the Holdover Rent and Workstations Sale Proceeds.

109.    The Payment, the Holdover Rent, and the Workstations Sale Proceeds were part of the Mortgaged Property under the Mortgage Agreement.

110.    Blue Hills, Langelier, and Fineberg had no right to possession of the Payment, the

Holdover Rent, or of the Workstations Sale Proceeds at the time of the conversion.

111.    The Lender has suffered damages on account of Blue Hills', Langelier's, and

Fineberg's conversion of the Payment, the Holdover Rent, and the Workstations Sale Proceeds.


## PRAYERS

WHEREFORE, CSFB and the Trustee respectfully request that the Court enter judgment

in their favor on each count, in such amounts as the proof at trial will show; award attorneys'

fees under the Mortgage Agreement, the Guaranty, the other Loan documents and M.G.L. c.93A;

and grant such other relief as is appropriate.


Respectfully submitted,

March 29, 2006                          CSFB 1999-C1 ROYALL STREET, LLC,
                                        and J.P. MORGAN CHASE BANK, as
                                        Trustee for the Registered Holders of
                                        Credit Suisse First Boston Mortgage
                                        Securities Corp., Commercial Mortgage
                                        Pass-Through Certificates, Series 1999-C1,

                                        By their attorneys,


                                        /s/ Bruce S. Barnett
                                        E. Randolph Tucker, BBO #503845
                                        Bruce E. Falby, BBO #544143
                                        Bruce S. Barnett, BBO #647666
                                        Traci S. Feit, BBO #660688
                                        DLA PIPER RUDNICK GRAY CARY US LLP
                                        33 Arch Street, 26th Floor
                                        Boston, MA  02110
                                        (617) 406-6000