UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLUE HILLS OFFICE PARK LLC,<br><br>  Plaintiff, Defendant-in-Counterclaim.<br><br>  v.<br><br>J.P. MORGAN CHASE BANK, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1,<br><br>  and<br><br>CSFB 1999–C1 ROYALL STREET, LLC;<br><br>  Defendants, Plaintiffs-in-Counterclaim,<br><br>  v.<br><br>WILLIAM LANGELIER and GERALD FINEBERG,<br><br>  Defendants-in-Counterclaim. | Civil Action No.  05-CV-10506 (WGY) |

**MEMORANDUM IN SUPPORT OF MOTION OF COUNTERCLAIM-PLAINTIFFS
FOR LEAVE TO AMEND COUNTERCLAIM**

Defendants and counterclaim-plaintiffs J.P. Morgan Chase Bank, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1 (the "Trustee") and CSFB 1999–C1 Royall Street, LLC ("CSFB") (together, the "Lenders") submit this memorandum in support of their motion for leave to amend their counterclaim based on facts learned from defendants-in-counterclaim during discovery.

The Lenders have promptly brought this motion after learning of the facts that support the amendments from documents that defendants-in-counterclaim recently produced, months late and only after the Lenders filed a motion to compel production. The facts relevant to the amendments are exclusively within the control of the counterclaim defendants. The amendments to the counterclaim will require no additional discovery or modification to the case schedule. Under the liberal amendment standard of Fed. R. Civ. P. 15(a), the motion to amend should therefore be allowed.

**Factual Background**

In September 1999, Credit Suisse First Boston (predecessor-in-interest to the Lenders) loaned $33,149,000 to Blue Hills Office Park LLC ("Blue Hills") (the "Loan"). The Loan was secured by a mortgage on Blue Hills' office park located at 150 Royall Street, Canton, Massachusetts (the "Property"), as well as other loan documents (collectively, the "Loan Documents"), including a guaranty (the "Guaranty") executed by William Langelier and Gerald Fineberg. Blue Hills defaulted on its Loan payments in August 2004. The Trustee conducted a foreclosure sale of the Property in November 2004 at which CSFB purchased the Property. The foreclosure resulted in a $10.77 million Loan deficiency (the "Deficiency").

*The Lenders' Counterclaim*

In their counterclaim (the "Counterclaim"), the Lenders seek to recover, *inter alia*, the $10.77 million Loan Deficiency from Langelier and Fineberg, on the grounds that Blue Hills transferred Mortgaged Property without the Lenders' prior written consent. Blue Hills agreed, in Section 10 of the Mortgage, that it would not, "without the prior consent of [Lender]...sell, convey, alienate, mortgage, encumber, pledge or otherwise transfer the Mortgaged Property or any part thereof, or permit the Mortgaged Property or any part thereof to be sold, conveyed, alienated, mortgaged, encumbered, pledged or otherwise transferred." Under the Guaranty,

Messrs. Langelier and Fineberg agreed that they would each be liable for the full amount of the debt secured by the Loan Documents (the "Debt," now equal to the amount of the Deficiency) if, during the life of the Loan, Blue Hills "fails to obtain Lender's prior written consent to any assignment, transfer, or conveyance of the Mortgaged Property or any interest therein if required by Section 10 of the Mortgage."

The Counterclaim is based primarily on the unauthorized transfer of Mortgaged Property of which the Lenders were aware at the time of filing of the Counterclaim: Blue Hills, without the prior written consent of the Lenders, entered into a settlement (the "Settlement") of a zoning appeal (the "Zoning Appeal") initiated by Blue Hills in 2003 to protect the value of the Property, and pocketed the resulting $2 million settlement payment (the "Payment"). Under the Loan Documents, the Zoning Appeal constituted Mortgaged Property, which could not be sold, conveyed, alienated, mortgaged, encumbered, pledged or otherwise transferred without the prior written consent of the Lenders.

*The Newly Discovered Evidence*

Only recently, through discovery, the Lenders became aware of two other unauthorized transfers of Mortgaged Property by Blue Hills. These transfers provide additional grounds for holding Fineberg and Langelier liable for the Deficiency under the Guaranty, for intentional misrepresentation, and for their violations of M.G.L. c.93A. Additionally, the facts underlying and surrounding the transfers (1) provide additional factual support for the Lenders' claims against Blue Hills for breach of contract, breach of the implied covenant of good faith and fair dealing, intentional misrepresentation, and violations of c.93A; (2) give rise to a claim for avoidance of the unauthorized transfers under the Uniform Fraudulent Transfer Act, Mass. Gen. Laws c.109A; and (3) give rise to a conversion claim against Blue Hills, Fineberg, and Langelier.

On March 3, 2006, Blue Hills produced documents showing that the $2 million Payment resulting from the unauthorized Settlement of the Zoning Appeal had not merely been withheld from the Lenders, it had been conveyed without the prior written consent of the Lenders by Blue Hills, first to Royall Associates Realty Trust (the "Royall Associates Trust"), the sole member of Blue Hills, and subsequently to Fineberg and Langelier, the beneficiaries of the Royall Associates Trust.  The Payment is Mortgaged Property under the Mortgage Agreement, which states that the Mortgaged Property includes (1) awards or payments made with respect to the Property for any injury to or decrease in the value of the Property; (2) revenues of whatever form or nature received by or paid to or for the account of or benefit of Blue Hills from any and all sources arising from or attributable to the property; and (3) proceeds and profits from the sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any portion of the Mortgaged Property.  <u>See</u> Mortgage Agreement Granting Clauses 3, 4, and 8.  The conveyance of the Payment from Blue Hills to Royall Associates Trust (the "Payment Transfer") thus constitutes another unauthorized transfer of Mortgaged Property triggering the liability of Fineberg and Langelier for the full amount of the Debt under the Guaranty.

In their first request for production of documents, served on September 15, 2005, the Lenders asked the Blue Hills Parties for " [a]ll documents concerning the Payment."  The deadline for responding to those requests was mutually extended until November 11, 2005.  The Blue Hills Parties nevertheless did not produce the documents revealing Blue Hills' conveyance of the Payment until March 3, 2006 – almost four months after the deadline and only after the Lenders had filed a motion to compel production on February 17, 2006.  At that point, there were only two weeks left before the close of discovery.

On February 21, 2006, Blue Hills produced documents revealing that Blue Hills had sold approximately 1,000 Haworth Unigroup workstations (the "Workstations") for $100,000 in

August 2004 (the same month in which Blue Hills began defaulting on the Loan payments). Blue Hills sold the Workstations without the prior written consent of the Lenders and without even notifying the Lenders of the transaction and conveyed the proceeds (the "Workstations Sale Proceeds") to the Royall Associates Trust in violation of the Loan Documents. Under the Mortgage Agreement, the Workstations were Mortgaged Property – the Mortgaged Property is defined to include all "furniture, furnishings, equipment...and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, and useable in connection with the present or future operation and occupancy of the Premises and the Improvements..." See Mortgage Agreement Granting Clause Two. The sale of the Workstations and conveyance of the proceeds (the "Workstations Transfer") therefore constitutes an independent basis for holding Fineberg and Langelier liable for the full amount of the Debt under the Guaranty.

Despite the fact that the Lenders requested on September 15, 2005, "[a]ll documents concerning monies received by Blue Hills other than rents received from Equiserve," the Blue Hills Parties did not produce the documents revealing the Workstations Transfer until February 21, 2006 – nearly three months late, less than three weeks before the close of discovery, and, again, only after the Lenders had filed a motion to compel production.[1]

The amended Counterclaim also corrects or supplements existing allegations of the Counterclaim to reflect additional facts learned during discovery. For example, the Blue Hills

---

[1]    The Lenders' motion to compel production of documents filed on February 17, 2006 was preceded by numerous requests for the Blue Hills Parties to produce their documents voluntarily. The withholding by the Blue Hills Parties of the documents concerning the Payment Transfer and Workstations Transfer is even more egregious given that Blue Hills is suing the Lenders for breach of the Loan Documents, and therefore knew that the Lenders would seek discovery concerning Blue Hills' breaches as part of the Lenders' defense to Blue Hills' contract claims.

Parties disclosed only at a deposition taken on March 17, 2006, the last day of the fact discovery period, that Blue Hills had converted and concealed the last $10,000 of rent paid by its tenant Equiserve.

The Lenders have also amended their claim against Blue Hills for breach of the Cash Management Agreement, limiting it to Blue Hills' failure to deposit with the Clearing Bank the last $10,000 of rent paid by Equiserve. That amendment properly reflects the extent of the breach, as the disposition of the Payment would have been controlled by the consent provisions of the Mortgage Agreement applicable to the assignment, transfer or conveyance of Mortgaged Property, not by the Cash Management Agreement.

## Discussion

I.     Leave to Amend Should Be "Freely Given."

Leave to amend a complaint or counterclaim "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). This policy of liberal amendment has been explained by the Supreme Court as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave should, as the rules require, be 'freely given.'

Foman v. Davis, 371 U.S. 178, 182 (1962).

This Court has stated that, in considering a motion to amend under the "rather forgiving standard" established by Rule 15(a), the court must first "consider whether the proposed new claims are futile, that is, whether they would be subject to dismissal for failure to state a claim." MacNeill Engineering Co., Inc. v. Trisport, Ltd., 59 F. Supp. 2d 199, 201 (D. Mass. 1999) (quoting Smith v. Mitre Corp., 949 F. Supp. 943, 945 (D. Mass. 1997)). If the new claims are

not futile, "leave should only be denied if the amendment would be overly prejudicial." MacNeill Engineering Co., 59 F. Supp. 2d at 201.

II.     Amending the Counterclaim Would Not Be Futile.

The proposed amendments to the Counterclaim are not futile. To the contrary, the factual allegations which the Lenders seek to add to their Counterclaim give rise to or augment the Lenders' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, intentional misrepresentation, violation of M.G.L. c.93A, fraudulent conveyance, and liability under the Guaranty.

    A.     Breach of Contract and of the Implied Covenant of Good Faith and Fair Dealing.

The Counterclaim describes several ways in which Blue Hills breached the Mortgage and the implied covenant of good faith and fair dealing. The proposed amendment to the Counterclaim would supplement those claims by adding the factual allegations relating to the Payment Transfer and the Workstations Transfer.

        *(1)     Breach of Contract*

To survive a motion to dismiss, a breach of contract claim must allege (1) that the parties had a valid and binding agreement; (2) that the defendant breached the agreement; and (3) that that the plaintiff suffered damages from the breach." Linton v. New York Life Ins. & Annuity Corp., 392 F. Supp. 2d 39, 41 (D. Mass. 2005) (citing Michelson v. Digital Financial Services, 167 F.3d 715, 720 (1st Cir. 1999)). The additions to the Amended Counterclaim simply set out additional breaches of the Mortgage Agreement by Blue Hills. The transfers of the Payment, the Workstations, and the Workstations Sales Proceeds without the Lenders' prior written consent are breaches of the Mortgage Agreement.

Both the Counterclaim and the Amended Counterclaim allege a valid and binding agreement between the Lenders and Blue Hills, breaches of that agreement by Blue Hills, and

damages suffered by the Lenders as a result. The addition of the contractual breaches occasioned by the Workstations Transfer and the Payment Transfer would thus not be futile because those transfers constitute separate breaches of the Mortgage Agreement between the parties.

*(2)    Breach of the Implied Covenant of Good Faith and Fair Dealing*

To adequately state a claim for breach of the implied covenant of good faith and fair dealing, the plaintiff must allege that there existed an enforceable contract between the two parties, and that the defendant acted in bad faith to deprive the plaintiff of the right to receive the fruits of that contract. See, e.g., Christensen v. Kingston School Committee, 360 F. Supp. 2d 212, 226 (D. Mass. 2005). The Counterclaim alleges the existence of an enforceable contract between the Lenders and Blue Hills, and that Blue Hills acted in bad faith to deprive the Lenders of their right to receive the fruits of that contract. The Amended Counterclaim adds the concealment of the Payment Transfer and the Workstations Transfer to the facts giving rise to Blue Hills' liability for breach of the implied covenant of good faith and fair dealing. As these facts augment the Lenders' claim for breach of the implied covenant of good faith and fair dealing, the addition of these facts would not be futile.

B.    Conversion

Under Massachusetts law, a conversion claim requires (1) an intentional or wrongful exercise of dominion or control; (2) over personal property of another; (3) by one with no right to immediate possession. See, e.g., Kelley v. LaForce, 288 F.3d 1 (1st Cir. 2002). The necessary intent to sustain a conversion claim is the intent "to appropriate the property to himself or to deprive the rightful owner of it." See id. A reasonable belief by the defendant that he had a legal right to possession of the property is not a valid defense to conversion. Id.

The Amended Counterclaim alleges that the Blue Hills Parties intentionally exercised dominion or control over the Payment and the Workstations Sale Proceeds, which were part of

Lenders' collateral, and that the Blue Hills Parties had no right to immediate possession of either. The Amended Counterclaim further alleges that the Lenders were damaged as a result. As a matter of law, when a debtor (such as Blue Hills) makes an unauthorized transfer of collateral (such as the Payment and the Workstations Sale Proceeds), the secured party (here, the Lenders) obtains "an immediate right to the collateral, permitting him to maintain an action for conversion." See, e.g., Harley-Davidson Motor Co., Inc. v. Bank of New England – Old Colony, N.A., 897 F.2d 611, 617 (1st Cir. 1990). Moreover, even if the Lenders did not have an immediate right to the collateral (which the Lenders contend that they did), "the overriding rule . . . is that an action for conversion lies to recover damage to or loss of a chattel by one whose ownership or security interest is harmed." Mancuso v. Gen. Motors Acceptance Corp., 1993 Mass. App. Div. 136, 136 (Mass. App. Div. 1993) (emphasis added); see also Laurin v. DeCarolis Constr. Co., Inc., 372 Mass. 688, 690 (1977) (conversion action may be maintained by one with a property interest in the converted property, whether or not he had a possessory right). The addition of a conversion claim to the Counterclaim would therefore not be futile.

      C.      Intentional Misrepresentation

To adequately state a claim for intentional misrepresentation under Massachusetts law, a plaintiff must allege that the defendant (1) made a false representation; (2) of a material fact; (3) with knowledge of its falsity (4) for the purpose of inducing the plaintiff to act thereon; and (5) that the plaintiff relied upon the representation as true and acted upon it; (6) to his damage. See, e.g., Danca v. Taunton Sav. Bank, 385 Mass. 1, 8 (Mass. 1982). To the extent that the claim involves nondisclosure of a fact, it is actionable as fraud when there is a duty to disclose. Stolzoff v. Waste Sys. Int'l, 58 Mass. App. Ct. 747, 763 (Mass. App. Ct. 2003).

The Amended Counterclaim adds the nondisclosure of the Workstations Transfer to the Lenders' claim for intentional misrepresentation against the Blue Hills Parties. The Lenders

allege that (1) the Blue Hills Parties failed to disclose the Workstations Transfer and the receipt of the Workstations Sale Proceeds in exchange for the transfer, where they had a duty to disclose both; (2) the nondisclosure was material; (3) the Blue Hills Parties knew that the nondisclosure falsely represented to the Lenders that the Workstations Transfer did not occur; (4) the Blue Hills Parties' nondisclosures were intended to induce the Lenders not to exercise their rights under the Loan Documents; (5) that the Lenders relied upon the nondisclosures and acted upon them; and (6) the Lenders were damaged as a result.  The addition of this claim to the Counterclaim would therefore not be futile, as the Amended Counterclaim states a claim for intentional misrepresentation against the Blue Hills Parties.

D.    Violation of M.G.L. c.93A

Under M.G.L. c.93A, "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful.  To survive a motion to dismiss a claim under c.93A, the plaintiff must allege that a person who is engaged in trade or business committed an unfair or deceptive trade practice and that the plaintiff suffered a loss of money or property as a result.  M.G.L. c.93A; see also Brandon Assoc., LLC v. Failsafe Air Safety Sys. Corp., 384 F. Supp. 2d 442, 446 (D. Mass. 2005).

The Amended Counterclaim alleges, with respect to the Payment Transfer and the Workstations Transfer, that the Blue Hills Parties, each of whom is engaged in trade or commerce, conveyed portions of the Lenders' security and then intentionally concealed those conveyances from the Lenders.  These acts certainly fall "within at least the penumbra of some common-law, statutory or other established concept of unfairness," and are otherwise "immoral, unethical, oppressive, or unscrupulous" – the Blue Hills Parties sought to deprive the Lenders of their rights under the Loan Documents and to fraudulently conceal the fact of that deprivation from the Lenders.  See Brandon Assoc., LLC, 384 F. Supp. 2d at 446.  The Amended

Counterclaim further alleges that the Blue Hills Parties' unfair and deceptive acts damaged the Lenders. The amendment of the Counterclaim to include the facts relating to the Payment Transfer and Workstations Transfer to the Counterclaim would therefore not be futile, as those facts provide additional grounds for the liability of the Blue Hills Parties under M.G.L. c.93A.

      E.      <u>Fraudulent Conveyance</u>

Under section 5 of the Uniform Fraudulent Transfer Act (the "UFTA"), M.G.L. c.109A, "a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation...with actual intent to hinder, delay, or defraud any creditor of the debtor." Additionally, under section 6(a) of the UFTA, "a transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." The UFTA further provides that where a debtor makes a fraudulent transfer, the lender is entitled to avoidance of the transfer to the extent necessary to satisfy the lender's claim. M.G.L. c.109A, § 8(a)(1).

The Amended Counterclaim seeks to avoid Blue Hills' transfer of the Payment and of the Workstations Sales Proceeds on the grounds that the transfers were fraudulent under the UFTA. It alleges that Blue Hills made the transfers with the intent to hinder, delay, or defraud the Lenders. It further alleges that that the Lenders' claims arose prior to the Payment Transfer and the transfer of the Workstations Sale Proceeds and that Blue Hills was insolvent at the time of

the transfers.[2]  Finally, the Amended Counterclaim seeks avoidance of the Payment Transfer and the transfer of the Workstations Sale Proceeds.  As such, the addition of a claim under the UFTA to Lenders' Counterclaim would not be futile.

    F.    <u>Liability Under the Guaranty</u>

Under Massachusetts law, instruments of guaranty, like other contracts, are enforceable in accordance with their terms, and the rights of the parties are ascertained from the terms of the guaranty.  <u>Merrimack Valley Natl. Bank v. Baird</u>, 372 Mass. 721, 725-726, 363 N.E.2d 688 (1977).  Under the terms of the Guaranty, Langelier and Fineberg are liable for the full amount of the Debt (which is now equivalent to the Deficiency) if, during the life of the Loan, Blue Hills "fails to obtain Lender's prior written consent to any assignment, transfer, or conveyance of the Mortgaged Property or any interest therein if required by Section 10 of the Mortgage."

The Amended Counterclaim alleges the existence of a valid Guaranty, alleges that Fineberg and Langelier executed the Guaranty "as an inducement to Lender to make the Loan," and describes the facts giving rise to their liability under the Guaranty.  It asserts that the Payment Transfer and the Workstations Transfer provide independent grounds for holding Fineberg and Langelier liable for the Deficiency under the Guaranty, because (1) those transfers constituted transfers of Mortgaged Property; and (2) Blue Hills did not obtain Lender's prior written consent to the transfers.  The addition of these factual allegations to the Amended Counterclaim would therefore not be futile because they augment Lenders' claim against Fineberg and Langelier under the Guaranty.

---

[2]    A debtor is deemed "insolvent" for purposes of the UFTA if "the sum of the debtor's debts is greater than all of the debtor's assets, at fair valuation."  M.G.L. c.109A, § 3(a).

III.   Amending the Counterclaim Will Not Cause Defendants Any Prejudice.

The Counterclaim alleges various breaches of the Loan Documents and contends that some of those breaches also constituted violations of M.G.L. c.93A and of other common law duties owed to the Lenders.  The Amended Counterclaim merely incorporates the additional breaches of the Loan Documents belatedly revealed to the Lenders by the Blue Hills Parties as well as other facts learned through discovery.  The Lenders are seeking only to amend the Counterclaim to reflect facts learned during discovery from the counterclaim defendants.  Adding these facts and the corresponding claims against the Blue Hills Parties to the Counterclaim does not prejudice the Blue Hills Parties whatsoever, considering that all of the relevant witnesses and facts are wholly within their control.  No discovery by the Blue Hills Parties as to these facts is necessary, nor will the amendment delay the case at all.

Moreover, the test for what constitutes "prejudice" sufficient to deny a motion to amend a complaint or counterclaim is not whether some practical prejudice will result from the amendment; rather, the question is whether "the allowing of the amendment [would produce] a grave injustice to the defendants."  Patton v. Guyer, 443 F.2d 79, 86 (10th Cir. 1971).  The allowing of the amendment in this case would not produce such an injustice.  To the contrary, to the extent that the Blue Hills Parties could claim any prejudice at all as a result of the amendment, any prejudice would be the fault of the Blue Hills Parties themselves, and would therefore be outweighed by the prejudice that would be suffered by the Lenders should their motion be denied.  See Covel v. Safetech, Inc., 90 F.R.D. 427 (D. Mass. 1981) (prejudice to defendant outweighed by other factors where defendant was the effective cause of the delay in bringing motion to amend complaint); see also Phoenix Technologies, Inc. v. TRW, Inc., 834 F. Supp. 148, 151 (E.D. Penn. 1993) (amendment allowed after close of discovery to add counterclaims based on facts known to plaintiff and learned by defendants in discovery).  As one

court put it, the test is not whether prejudice would result from the amendment, but whether <u>undue</u> prejudice would result.  <u>Alberto-Culver Co. v. Gillette Co.</u>, 408 F. Supp. 1160, 1162 (N.D. Ill. 1976).  Where, as here, the counterclaim-defendants' dilatory discovery tactics are responsible for any prejudice that they might suffer as a result of the amendment, the amendment should be allowed.  <u>See</u> <u>Covel</u>, 90 F.R.D. at 434-35.  The counterclaim-defendants delayed for months in producing the documents evidencing the Payment Transfer and the Workstations Transfer, and produced them only after the Lenders had filed a motion to compel production of documents.

Rule 15, Fed. R. Civ. P., states that leave to amend pleadings is to be "freely given when justice so requires."  In the circumstances of this case, where (1) the Lenders seek to amend their Counterclaim based on evidence initially withheld by the Blue Hills Parties, (2) the Lenders sought promptly to amend their Counterclaim once that evidence was produced, and (3) the amendments will not require additional discovery or delay this case, justice requires that the Lenders be permitted to amend the Counterclaim.

**Conclusion**

For all of the above-stated reasons, the Counterclaim-Plaintiffs respectfully request that the Court grant their Motion for Leave to Amend Their Counterclaim.

March 29, 2006

Respectfully submitted,

CSFB 1999-C1 ROYALL STREET, LLC, and J.P. MORGAN CHASE BANK, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1,

By their attorneys,

/s/ Bruce E. Falby
E. Randolph Tucker, BBO #503845
Bruce E. Falby, BBO #544143
Bruce S. Barnett, BBO #647666
Traci S. Feit, BBO #660688
DLA P<small>IPER</small> R<small>UDNICK</small> G<small>RAY</small> C<small>ARY</small> US LLP
33 Arch Street, 26th Floor
Boston, MA  02110-1447
(617) 406-6000