UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLUE HILLS OFFICE PARK LLC,<br><br>    Plaintiff, Defendant-in-Counterclaim.<br><br>v.<br><br>J.P. MORGAN CHASE BANK, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1, and, CSFB 1999–C1 ROYALL STREET, LLC,<br><br>    Defendants, Plaintiffs-in-Counterclaim,<br><br>v.<br><br>WILLIAM LANGELIER and GERALD FINEBERG,<br><br>    Defendants-in-Counterclaim. | Civil Action No. 05-CV-10506 (WGY) |

### AFFIDAVIT OF EDWARD C. BROWN IN SUPPORT OF DEFENDANTS' AND COUNTERCLAIMANTS' MOTIONS FOR SUMMARY JUDGMENT

I, Edward C. Brown, depose and say as follows:

1. I am an asset manager in the special servicing group of LNR Partners. I service loans that are secured by hotel properties.

2. In 2004, I was the asset manager for hotel properties in Sturbridge, Massachusetts and Lancaster, Pennsylvania (the "Hotels"). The loans for the Hotels were part of pools of mortgages securing commercial mortgage-backed securities. The borrower principal on the Hotels was Gerald Fineberg, although title to each Hotel was held by a single-purpose entity, as is common in the CMBS industry. The Hotels were managed by Fine Hotels, Inc.

3. After each of the Hotels had gone into default for nonpayment of amounts due under the loan documents, I negotiated deed-in-lieu of foreclosure agreements pursuant to which the borrowers turned the Hotels back to the lender and walked away from them.

4. These deed-in-lieu agreements for the Hotels were negotiated in the spring and summer of 2004, and each transaction closed in July 2004. In managing the loans and negotiating the deed-in-lieu agreements, I interacted with Mr. Fineberg, Joseph Donovan, and Kenneth Goldberg on behalf of the borrowers.

5. I have serviced only one other loan that involved Mr. Fineberg or Mr. Goldberg. That loan was secured by a hotel in Williamsburg, Virginia. I have had no other dealings or transactions with Mr. Fineberg or Mr. Goldberg (acting on behalf of Mr. Fineberg or any other client).

6. I have reviewed Mr. Goldberg's deposition testimony in this action regarding alleged conversations with me about Blue Hills Office Park.

7. In one of the conversations I had with Mr. Goldberg in 2004 about the Hotels, he made a vague reference to the fact that he had another loan that would be coming to LNR but would not tell me anything more about the loan or the property.

8. In a later conversation, he again said another loan would be coming to LNR. After I asked for more information, he told me that it was an office building called Blue Hills Office Park, that it had a single tenant who was leaving after which there would be no income, and that the borrower was trying to get the loan transferred from the master servicer to the special servicer. After he told me it was an office building, I told him that I only worked on hotels. I told him that he would have to contact the master servicer about getting a transfer. I did

~BOST1:417695.v1

not suggest anything he should say to get the master servicer to make a transfer. I did not do anything to get the loan transferred from the master servicer to LNR.

9. Mr. Goldberg never told me, in form or substance, that "time was of the essence" with respect to transferring or servicing the Blue Hills loan. He did not say anything in any of our conversations that gave me the impression that there was any urgency at all with respect to the loan or the property.

10. Mr. Goldberg never told me that his client was intent on or committed to keeping the Blue Hills property or that he was looking for an outcome different from the Sturbridge and Lancaster transactions. He never discussed with me the possibility of doing a workout of the Blue Hills loan. He did not say that the borrower was exploring various options with respect to the future of the property and he did not say, in form or in substance, that "there were a whole host of ways [his] client wanted to consider going with the property."

11. My conversations with Mr. Goldberg about Blue Hills left me with the impression that they would be giving the property back to the lender, as they had done in Sturbridge, Lancaster, and Williamsburg.

12. I don't recall any other conversations with Mr. Goldberg about the Blue Hills property, and I don't recall any conversations with him on any subject after the Lancaster and Sturbridge deed-in-lieu transactions closed in July 2004. After the loan was transferred to LNR, which I understand occurred on August 18, 2004, he did not thank me for helping get it transferred (which I had not done) and he did not ask me, in form or in substance, to help "keep [it] on the top burner because time was important."

13. Mr. Fineberg and Mr. Goldberg proposed discounted payoffs for the Sturbridge and Lancaster loans (which LNR rejected), but I do not recall any such proposal for the

~BOST1:417695.v1

Williamsburg loan. As I said earlier, I had no dealings or proposed transactions with Mr. Goldberg or Mr. Fineberg on any other properties.

Signed under the pains and penalties of perjury this 10th day of May, 2006.

_____
Edward C. Brown

4

~BOST1:417695.v1