UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BLUE HILLS OFFICE PARK LLC,

      Plaintiff, Defendant-in-Counterclaim,

      v.

J.P. MORGAN CHASE BANK, as Trustee for the
Registered Holders of Credit Suisse First Boston
Mortgage Securities Corp., Commercial Mortgage
Pass-Through Certificates, Series 1999-C1, and,
CSFB 1999–C1 ROYALL STREET, LLC,

      Defendants, Plaintiffs-in-Counterclaim,

      v.

WILLIAM LANGELIER and GERALD
FINEBERG,

      Defendants-in-Counterclaim.

Civil Action No.  05-CV-10506 (WGY)

**DEFENDANTS' AND PLAINTIFFS-IN-COUNTERCLAIM'S
SECOND SUPPLEMENTAL APPENDIX OF DEPOSITION EXHIBITS**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLUE HILLS OFFICE PARK LLC,<br>　　　Plaintiff, Defendant-in-Counterclaim,<br>　　　　v.<br>J.P. MORGAN CHASE BANK, as Trustee for the<br>Registered Holders of Credit Suisse First Boston<br>Mortgage Securities Corp., Commercial Mortgage<br>Pass-Through Certificates, Series 1999-C1, and,<br>CSFB 1999–C1 ROYALL STREET, LLC,<br>　　　Defendants, Plaintiffs-in-Counterclaim,<br>　　　　v.<br>WILLIAM LANGELIER and GERALD<br>FINEBERG,<br>　　　Defendants-in-Counterclaim. | Civil Action No.  05-CV-10506 (WGY) |

**AFFIDAVIT OF BRUCE S. BARNETT REGARDING
SECOND SUPPLEMENTAL APPENDIX OF DEPOSITION EXHIBITS**

I, Bruce S. Barnett, depose and say as follows:

1.　　　I am counsel to defendants/plaintiffs-in-counterclaim in this action.  I have

personal knowledge of the matters set forth herein.

2.　　　I am filing herewith as Defendants' and Plaintiffs-in-Counterclaim's Second

Supplemental Appendix of Deposition Exhibits a true and correct copy of the following exhibits

marked at depositions in this matter, which are tabbed according to the numbers given to them in

the depositions.  This filing contains exhibits or parts of exhibits referred to in Defendants' and

Plaintiffs-In-Counterclaim's Response to Statement of Undisputed Facts in Support of Blue Hills

Office Park LLC, Gerald Fineberg and William Langelier's Oppositions to Defendants and

Plaintiff-In-Counterclaim's Motions For Summary Judgment and in their memoranda of law in

reply to the oppositions of the plaintiff and defendants-in-counterclaim to their motions for

summary judgment that were not included in the Appendix of Deposition Exhibits filed on May

17, 2006 [dckt. no. 75] or the Supplemental Appendix of Deposition Exhibits filed on May 31, 2006 [dckt. no. 106].

      3.      Attached at Tab 98 is a true and correct copy of excerpts from Deposition Exhibit 98 related to a June 2004 reimbursement of Blue Hills for insurance premiums it had paid directly.

      4.      Attached at Tab 340 is a true and correct copy of excerpts from Deposition Exhibit 340 comprising the exhibit's first page and a Nonconsolidation Opinion given by Bernkopf, Goodman in connection with the Loan.  Other excerpts from Deposition Exhibit 340 were included in the Supplemental Appendix of Deposition Exhibits.

      SIGNED, under the penalties and perjury, this 12th day of June, 2006.


                                            s/ Bruce S. Barnett
                                    Bruce S. Barnett

# DEPOSITION EXHIBIT NO. 98

Blue Hills Office Park LLC

Loan No. 76-0990083

EXHIBIT 98

Polcari

3/1/06    HB

LNR03512

760990083|Escrow Analysis - Corr|2004-08-13



WELLS
FARGO

Commercial Mortgage Servicing
P.O. Box 4036, Concord, CA 94524
1320 Willow Pass Rd., Ste 205
Concord, CA 94520
800 986-9711

June 21, 2004

BLUE HILLS OFFICE PARK LLC
ONE WASHINGTON STREET, SUITE 400
WELLSLEY, MA 02481

RE:   Loan Number: 760990083

Dear Mortgagor(s):

In accordance with your loan agreement, we have reviewed your escrow account and issued the enclosed
Escrow Analysis and Notice of Payment Change.

The purpose of the analysis is to:
1. Calculate the monthly constant amount for tax and/or insurance escrows, and
2. Determine if there will be a shortage of funds on the scheduled disbursement date.

---

**Explanation of Column Headings**
**DISBURSEMENT DATE:** The date the tax payment or the insurance premium will become delinquent.
(Calculations are based on all bills being disbursed from your account one month prior to this date).
**REQUIRED ESCROW:** Months Required multiplied by the Monthly Calculated Amount.
**EXPECTED BALANCE:** The amount of funds projected to be in the escrow account as of the day
preceding the new payment effective date.
**BALANCE DIFFERENCE:** A positive number indicates a surplus.  A negative number indicates a
shortage.
**BEGINNING WITH THE PAYMENT DUE:** The new payment effective date.

---

♦ **Shortage:**    If the analysis reflects a shortage (-), this amount has been divided into 3
installments and added to your monthly payment.

♦ **Surplus:**  If the analysis reflects a surplus, you may elect to leave the funds in the escrow account
or forward a written request for refund of the surplus.  Requests should be directed to the
attention of our Escrow Team at: Wells Fargo, Commercial Mortgage Servicing, PO Box 4036,
Concord, CA 94524 or you may fax your request to (925) 691-5249.  Please reference your loan
number on all correspondence.

Should you have questions about the attached escrow analysis, please contact our Escrow Team at (800)
986-9711, Option 4.

Sincerely,

Wells Fargo Commercial Mortgage Servicing

**LNR03719**

*EACOVER DOC*

*Ver 112003*

page 2 of 16

760990083|Escrow Analysis - Corr|2004-08-13



**WELLS FARGO**

Commercial Mortgage Servicing
P.O. Box 4036, Concord, CA 94524
1320 Willow Pass Rd, Ste 205
Concord, CA 94520
800 986-9711

ESCROW ANALYSIS AND NOTICE OF PAYMENT CHANGE.

BLUE HILLS OFFICE PARK LLC

ONE WASHINGTON STREET, SUITE 400
WELLSLEY, MA          02481

ACCOUNT NO.        76-0990083
DATE OF ANALYSIS   6/17/2004
SCHEDULE DATE      6/17/2004

The purpose of this Escrow Analysis is as follows
1  Calculate the monthly constant amount for taxes and insurance
2. Determine if there will be adequate funds on the disbursement due date  A surplus or shortage may result
from this Escrow Analysis which will be reflected as a positive amount for an overage and a negative (-)
amount for a shortage.  A shortage is divided into 3 installments and added to your monthly payment.  This
amount will be reflected on your next billing statement   If your payments are made through auto debit, the
new payment amount will be deducted from your account.
For an explanation of column headings, please see the enclosed cover letter

| VENDOR | AMOUNT | MONTHLY CALC. AMOUNT | DISBURSEMENT DATE | MONTHS REQUIRED | REQUIRED ESCROW | EXPECTED BALANCE | BALANCE DIFFERENCE |
|---|---|---|---|---|---|---|---|
| 406  HOBBS GROU | 143,062.50 | 11,921 89 | 5/01/2005 | 03 | 35,765.67 | | |
| TOTAL INS ESCRO | 143,062 50 | 11,921.89 | | | 35,765 67 | 259,167.06 | 223,401 39 |
| ACCOUNT TOTAL | 143,062.50 | 11,921.89 | | | 35,765 67 | 259,367 06 | 223,401 39 |

| ESCROW | CALC CONSTANT | MO SHORT/SURP | NEW MONTHLY CONSTANT | OLD MONTHLY CONSTANT | CHANGE AMOUNT |
|---|---|---|---|---|---|
| AX ESCROW | 00 | 00 | 00 | 00 | .00 |
| NS ESCROW | 11,921.89 | 00 | 11,921 89 | 22,085.49 | 10,163.60- |
| ESERVES | | | 67,064.42 | 67,064.42 | 00 |
| MI/FHA | 00 | .00 | 00 | 00 | .00 |
| ISC. | | | 00 | .00 | .00 |
| | | | 78,986.31 | | |

BEGINNING WITH THE PAYMENT DUE  8/11/2004
OUR MONTHLY PAYMENT WILL BE AS FOLLOWS
     Escrow              78,986 31
     Principal & Interest  254,652.24
     Total Payment       333,638 55
If you have any questions, please call us at (800)986-9711, M-F 8 00 a m to 5.00 p.m PST

BEGINNING WITH THE PAYMENT DUE  11/11/2004
YOUR MONTHLY PAYMENT WILL BE AS FOLLOWS
     Escrow              78,986.31
     Principal & Interest  254,652 24
     Total Payment       333,638 55

**LNR03718**

Page 1 of 1

**Kesler, Marchelle**

To:      CMS CASH MANAGEMENT
Cc:      Fray, Joyce; Lambson, Deborah E.
Subject: Loan Number 76-0990083/BLUE HILLS OFFICE PARK

Please see the attached spread sheet in reference to the above loan  I have completed an analysis and the payment effective date is 8/11/2004. Analysis and cover letter along with refund will go to the borrower on 6/22/2004  Please let me know if you have any questions  Thank you

Marchelle C. Blake
Loan Service Representative
Wells Fargo Commercial Mortgage Servicing
1320 Willow Pass Rd (Suite 205)
Concord, CA 94520
Phone: 800-986-9711 Ext 5397
Fax # 925-691-5249
Email address: blakemc@wellsfargo.com

**LNR03722**

6/21/2004

```
XG073-02     UPDATE                Notes Maintenance           Jun 21,2004 Monday
                                                                     3:15 P.M.
--------------------------------------------------------------------------------
Account number  760990083  BLUE HILLS OF  Note date   6/21/2004
*Note type . . . . . . . .              EA    ESCROW ANALYSIS
Reference number . . . . . ANALYSIS

                            Note Text

        Effective 8/11/2004.
        Mailed to the borrower on 6/22/2004. Also sent Cash Mgmt.
        the updated analysis on 6/21/2004.
        Insurance Overage: $223,401.39 (Refunded to borrower)
        No tax as this is written in loan docs to send shortage
        letter and the borrower will wire funds.




--------------------------------------------------------------------------------

F1=Rtn/Nc                          F12=Edit    Enter=Process    Roll keys
```

LNR03723

# DEPOSITION EXHIBIT NO. 340

EXHIBIT
6 ollberg 340
7·06·0A

# BERNKOPF, GOODMAN & BASEMAN LLP
### COUNSELLORS AT LAW
### 125 SUMMER STREET
### BOSTON, MASSACHUSETTS 02110-1621
### TELEPHONE (617) 790-3000
### TELECOPIER (617) 790-3300

September 14, 1999

Lydia G. Chesnick, Esq.
DIRECT DIAL: (617) 790-3325
e-mail: lchesnick@bgblaw.com

## TELECOMMUNICATION TRANSMITTAL

TO:             ANDREW COHEN, ESQUIRE

COMPANY:        SCHULTE ROTH & ZABEL LLP

TELECOPIER NUMBER:   212-593-5955        PHONE NO:  212-756-2105

FROM:           LYDIA G. CHESNICK   ATTORNEY NO.:  014

TOTAL NUMBER OF PAGES _98_ INCLUDING THIS COVER SHEET

*IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL BACK AS SOON AS POSSIBLE.*

PHONE:              (617) 790-3000

TELECOMMUNICATOR:   Karen Fucillo

CLIENT/MATTER NO:   14500/9547

MESSAGE:

    Attached are copies of the following executed opinions, the originals of which are being Federal Expressed for your receipt on Wednesday:  (1) Due Enforceability Opinion - all executed Exhibits have been appended other than Exhibit B-3 which is the Delaware Certificate from the Secretary of State and is to be delivered post-closing.  Upon our delivery, please append the Delaware LLC Certificate as Exhibit B-3; and (2) Non-Consolidation Opinion.

        Lydia

FAXED

Please Note:  The information contained in this facsimile message is privileged and confidential, and is intended only for the use of the individual named above and others who have been specifically authorized to receive such.  If the recipient is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited.  If you have received this communication in error, or if any problems occur with transmission, please notify us immediately by telephone at (617) 790-3370.  Thank you.

Blue Hill
1946

## BERNKOPF, GOODMAN & BASEMAN LLP

COUNSELLORS AT LAW

125 SUMMER STREET

BOSTON, MASSACHUSETTS 02110-1621

TELEPHONE (617) 790-3000

TELECOPIER (617) 790-3300

September 14, 1999

Credit Suisse First Boston Mortgage Capital LLC
11 Madison Avenue - 5th Floor
New York, New York  10010

RE:    $33,500,000 loan from Credit Suisse First Boston Mortgage Capital LLC ("Lender")
to the Borrower (as defined below) concerning property located at 150 Royall Street,
Canton, Massachusetts known as the Blue Hills Office Park (the "Property")

Ladies and Gentlemen:

As a condition to your entering into the Loan, you have requested an opinion on certain
bankruptcy issues. In particular you have requested our opinion whether, under present reported
decisional authority and statutes applicable to bankruptcy cases, should a Borrower Entity (as
defined below) become a debtor in a case under the United States Bankruptcy Code (Title 11,
U.S.C., the "Bankruptcy Code"), a court exercising bankruptcy jurisdiction and reasonable
judgment after full consideration of all relevant factors would lawfully order the substantive
consolidation of the assets and liabilities of the Borrower with those of such Borrower Entity.

### I.    BACKGROUND AND ASSUMPTIONS

For the limited purpose of rendering this opinion, this firm has acted as counsel to Blue
Hills Office Park LLC, a Delaware limited liability company ("Borrower"); Royall Associates
Realty Trust, a Massachusetts trust, which trust (the "Trust" and/or "Member") is the sole
member of the Borrower; Blue Hills Management Corp. (the "Corporation"), a Massachusetts
corporation serving as the sole manager of the Borrower ("Manager") and one of the three
trustees of the Trust (the "Corporate Trustee") and to Gerald S. Fineberg ("GSF") and William J.
Langelier ("WJL"), the remaining two trustees of the Trust. As to William J. Langelier, this firm
has acted only as special counsel for purposes of his executing those Loan Documents to which
William J. Langelier is a party. The Manager, Trust, Corporation, GSF and WJL are sometimes
hereinafter referred to independently as a "Borrower Entity" and collectively as "Borrower
Entities."

In rendering this opinion, we have reviewed and relied upon various matters in our other
opinion (the "Enforceability Opinion") being delivered to you in connection with the Loan and
this opinion is based upon and subject to the same assumptions, qualifications, exceptions and
other matters referred in the Enforceability Opinion. Capitalized terms not otherwise defined

Blue Hill
2024

BERNKOPF, GOODMAN & BASEMAN LLP

Credit Suisse First Boston Mortgage Capital LLC
September 14, 1999
Page 2

herein shall have the meanings given them in the Enforceability Opinion. In addition, we have
reviewed and relied upon (i) the representations made in the Borrower's Statement, Manager's
Statement and Member's Statement attached hereto as Exhibits A-1, A-2 and A-3 respectively
(collectively, the "Support Statements") and (ii) the facts and representations contained herein or
in any of the documents comprising the Loan Documents or Constituent Documents. We have
assumed, without investigation, that such information, facts and representations, including those
outlined below and upon which we rely, are now, and will remain at all relevant times, accurate.

We have assumed the authenticity of all documents submitted to us as originals, the
genuineness of all signatures, the conformity to all originals of all documents submitted to us as
copies, the authenticity of the originals of such documents submitted to us as copies and the
authority and competency of the person or persons signing any of the foregoing. The Loan
Documents, Constituent Documents and Support Statements are sometimes referred to herein as
the "Transaction Documents".

## BACKGROUND INFORMATION

We are informed of and have assumed the following:

1.    The Borrower is a Delaware limited liability company, the sole manager of which
is the Manager. The Borrower's sole member is the Trust. The Trust's only trustees are the
Corporate Trustee, GSF and WJL.

2.    Each of the Borrower, the Corporation and the Member complies fully with each
of the Operating Agreement, Articles of Organization, Declaration of Trust and other Constituent
Documents, as applicable, and the applicable laws of the State of Delaware and Commonwealth
of Massachusetts. Each of the Borrower and Corporation maintain its legal existence and good
standing under the laws of the State of Delaware and/or Commonwealth of Massachusetts, as
applicable. Each of the Borrower and Corporation has qualified to do business in the
Commonwealth of Massachusetts to the extent it needs to be and has all required licenses and
permits to conduct its business.

3.    The Borrower does not commingle its assets or business functions with the assets
or business functions of any Borrower Entity or any other entity. The bank accounts and funds
of the Borrower are maintained separately from those of any Borrower Entity, and are maintained
in the name of the Borrower. The Board of Directors of the Manager duly authorizes all the
corporate actions of the Manager, and the Manager and the Member duly authorize all actions of
the Borrower, to the extent required by the terms of their Constituent Documents and the laws of
the State of Delaware and Commonwealth of Massachusetts, as applicable. Each of the
Borrower and the Manager maintains its own separate minutes/records of such actions. Each of

Blue Hill
2025

BERNKOPF, GOODMAN & BASEMAN LLP

Credit Suisse First Boston Mortgage Capital LLC
September 14, 1999
Page 3

the Borrower and the Manager maintains separate and full entity records and financial records for itself only.

    4.    The Corporation has at least two directors, one of whom is not an officer, director or employee of any entity which is, or which directly or indirectly, controls, is controlled by, or is under common control with, any Borrower Entity.

    5.    The financial records and accounts of each of the Borrower, the Manager and the Member are prepared and maintained in accordance with generally accepted accounting principles and are susceptible to audit.

    6.    The Borrower conducts is own business through the Manager and that business is conducted solely in the name of the Borrower. In that regard, all written and oral communications, including, without limitation, letters, invoices, purchase orders and contracts, are made solely in the name of the Borrower. The Borrower has its own stationery and business forms, separate from those of any Borrower Entity.

    7.    The Borrower pays its own expenses and liabilities from its own funds. Invoices and other statements of account from creditors of the Borrower are requested to be addressed and mailed directly to the Borrower. The capitalization of the Borrower is adequate in light of its proposed business and purpose. Such capital has been fully paid in. The capitalization of the Corporation is adequate in light of its proposed business and purpose. Such capital has been fully paid in.

    8.    The Borrower is not liable for the payment of any liability of any Borrower Entity. No Borrower Entity is liability for the payment of any liability of the Borrower, except for such contingent future liability, if any, of GSF and/or WJL as may arise under the Loan Documents for certain carve-outs to the otherwise applicable non-recourse provisions in the Loan Documents. Neither the assets nor the creditworthiness of the Borrower is ever held out as being available for the payment of any liability of any Borrower Entity. The Borrower always describes itself as a separate legal entity and not as a division or department of any Borrower Entity. Each Borrower Entity always describes the Borrower as a separate legal entity and not as a division or department of itself. The Borrower maintains an arm's-length relationship with each Borrower Entity. No transaction between the Borrower and any Borrower Entity is on terms more favorable than in a similar transaction involving an unrelated third party. Assets are not transferred between the Borrower and any Borrower Entity without reasonably equivalent value or with the intent to hinder, delay or defraud creditors. No loans are made between the Borrower and any Borrower Entity. The Borrower's existence is not dependent on the Manager or any other Borrower Entity being its manager or member, and the Borrower's business could

Blue Hill
2026

BERNKOPF, GOODMAN & BASEMAN LLP

Credit Suisse First Boston Mortgage Capital LLC
September 14, 1999
Page 4

be maintained even if the Manager or any other Borrower Entity were not its manager or member.

9.      The Borrower and the Borrower Entities intend to comply with the terms of the Transaction Documents and the Transaction Documents are not modified in any way. The resolutions of the Corporation regarding the transactions contemplated by the Transaction Documents will be continuously maintained as official records of such entity.

10.     None of the Borrower or any of the Borrower Entities is insolvent nor does the Borrower or any of the Borrower Entities expect to become insolvent as a result of the making of the Loan. Neither the Borrower nor the Corporation engages in, nor does it expect to engage in, a business for which its remaining property represents an unreasonably small capitalization. Neither the Borrower nor the Corporation has incurred, intends to incur, or believes that it will incur indebtedness that it believes it will not be able to repay at its maturity.

11.     The Borrower does not intend to file, and the Manager and Corporate Trustee agree that they do not intend to cause the Borrower to file, a voluntary petition for relief under the Bankruptcy Code or any similar law.

12.     The Borrower has certified that its activities are intended to benefit all of its members. The Board of Directors of the Manager has determined by appropriate resolution that the activities of the Manager and the Borrower are a reasonable and practicable course of action that does not impair the rights of creditors of the Manager or any other Borrower Entity. The Manager did not enter into the Operating Agreement with the intent to hinder, delay, or defraud any of its creditors or creditors of any other Borrower Entity.

13.     The Borrower issues separate financial statements for itself in accordance with generally accepted accounting principles, and the Borrower is not included in the financial statements of any Borrower Entity.

14.     No Borrower Entity receives or has received any loan or other extension of credit from a creditor after implying that such Borrower Entity owns the Property or any other asset of the Borrower or that the Property or any other asset of the Borrower is security for such loan or extension of credit.

15.     The Borrower owns the Property and holds record title in its name.

16.     The Articles of Organization of the Corporation provide that the purpose of the Corporation is to act as the Manager and Corporate Trustee and exercise all powers that are necessary or appropriate to accomplish the foregoing and limit its purpose to the foregoing.

Blue Hill
2027

BERNKOPF, GOODMAN & BASEMAN LLP

Credit Suisse First Boston Mortgage Capital LLC
September 14, 1999
Page 5

17.    The Operating Agreement provides that the sole purpose of the Borrower is to own, hold, lease, finance, refinance, sell and/or manage the Property, and do any and all things necessary or appropriate for the accomplishment of the same, and that the Borrower shall not own any asset other than the Property, the income and proceeds therefrom and/or the personal property necessary for the ownership or operation of the Property.  Other than the Property, the income and proceeds therefrom and the personal property in connection therewith, the Borrower has no other material assets.

18.    The Operating Agreement provides that upon dissolution or withdrawal of the Manager, or the bankruptcy, or liquidation of the Manager, the Borrower will dissolve unless all members agree to continue the business of the Borrower and admit a successor manager, which new manager will have all of the purposes and limitations on its activities and obligations identical to the Manager.

19.    The Articles of Organization for the Corporation require such entity to have at least one Independent Director, an individual who (A) is not and has not been (and is not affiliated with a company or firm that is or has been) within the five years immediately prior to such individual's appointment as an Independent Director either (i) employed as a director, officer or employee by, (ii) a significant advisor or consultant to, (iii) affiliated with a significant customer or supplier of, (iv) engaged under significant personal service contract(s) with, or (v) affiliated with a tax exempt entity that receive significant contributions from such entity or any of its subsidiaries or affiliates, or the Borrower; (B) at the time of such individual's appointment as an Independent Director, or at any time thereafter while serving as Independent Directors, is not a legal or beneficial owner of any direct or indirect equity interest in such entity or any of its subsidiaries or affiliates, or the Borrower; and (C) is not a spouse, parent, sibling or child of any person described by paragraphs (A) or (B) above; and who shall be required to affirmatively vote on matters enumerated in this paragraph and in the next paragraph.  The provisions regarding the powers of the Independent Director cannot be amended or abrogated without your consent.

20.    The Articles of Organization of the Manager provide that the Manager shall not, without the unanimous affirmative vote of its Board of Directors, institute proceedings to have itself or the Borrower or Trust adjudicated as bankrupt or insolvent; consent to the institution of bankruptcy or insolvency proceedings against itself, the Borrower or the Trust; file a petition seeking, or consenting to, reorganization or relief under any applicable federal or state law relating to bankruptcy for itself, the Borrower or the Trust; consent to the appointment of a receiver, liquidator, assignee, trustee (or other similar official) for itself, the Borrower or Trust or of a substantial part of its or such Borrower's or Trust's property; make any assignment for the benefit of creditors for itself, the Borrower or the Trust; admit in writing the inability of it or the

Blue Hill
2028

---

**BERNKOPF, GOODMAN & BASEMAN LLP**

Credit Suisse First Boston Mortgage Capital LLC
September 14, 1999
Page 6

Borrower to pay its or the Borrower's debts generally as they become due; or authorize any of the foregoing to be done or taken on its or the Borrower's behalf.

21. Each of the Borrower and Corporation have no outstanding liabilities other than, with respect to the Borrower, the Loan and routine current trade payables and each intends not to incur any debt, secured, unsecured, direct or contingent (including guaranteeing any obligations), other than the Loan and routine payables. Each of the Borrower and Borrower Entities have in the past and intend in the future to pay their respective debts as they come due in the ordinary course of business.

22. The Borrower and the Corporation will not use employees of others as if such employees were their own without intending to pay adequate consideration for any services provided, if any.

23. None of the Borrower or Borrower Entities have or will: (a) seek or obtain credit or incur any obligation based upon the assets, guaranty or indemnity of the other, or (b) induce any person or entity to reasonably rely on the creditworthiness of the other.

24. None of the Borrower, Corporation or Member have in the past or will in the future guarantee, indemnify, or become co-obligor with respect to any liabilities or obligations of any other person or entity.

25. Neither the Corporation nor the Member have made any loans to the Borrower, and the Borrower has made no loans to either the Corporation or Member.

26. Neither the Borrower nor the Corporation was established for the purpose of perpetrating a fraud or circumventing public policy.

27. Borrower will disclose all material transactions associated with the Loan and Property in appropriate and timely communications to creditors, which may include public announcements if appropriate.

28. Borrower's title to the Property is free and clear of all liens, claims, security interests and other encumbrances, except those in favor of Lender and/or as permitted by the Loan Documents.

29. In connection with the organization and capitalization of Borrower and the Corporation and in connection with each transaction relating to the financing of the Property, neither the Borrower, the Corporation nor any other Borrower Entity had the intent to hinder,

Blue Hill
2029

BERNKOPF, GOODMAN & BASEMAN LLP

Credit Suisse First Boston Mortgage Capital LLC
September 14, 1999
Page 7

delay or defraud any entity to which they then were, or became on or after the date of such
transfer, indebted.

    30.    The Property is expected to generate sufficient income to enable the Borrower to
timely make all principal, interest and other required Loan payments and to pay all other expenses
due in the ordinary course of Borrower's business.

## II.    LEGAL DISCUSSION - SUBSTANTIVE CONSOLIDATION

    Substantive consolidation is a judicially created doctrine arising from the general equity
powers granted to the United States Bankruptcy Courts.[1]  Although no specific provision of the
Bankruptcy Code expressly authorizes a court to order substantive consolidation, such authority
is derived from Bankruptcy Code Section 105(a) which provides in relevant part that: "The court
may issue any order, process or judgment that is necessary or appropriate to carry out the
provisions of this title."  Under the doctrine of substantive consolidation, a bankruptcy court
may, if appropriate circumstances are determined to exist, consolidate the assets and liabilities of
different entities by merging the assets and liabilities of the entities and treating the related
entities as a consolidated entity for purposes of the bankruptcy proceedings: "The intercompany
claims of the debtor companies are eliminated, the assets of all debtors are treated as common
assets and claims of outside creditors against any of the debtors are treated as against the
common fund...."[2]  Substantive consolidation has also been employed with similar effect to
extend the debtor's bankruptcy proceeding to include in the debtor's estate the assets of a related

---

[1]*F.D.I.C. v. Colonial Realty Co.*, 966 F.2d 57, 59 (2d Cir. 1992); *Eastgroup Properties v. Southern Motel Assocs.*,
935 F.2d 245, 248 (11th Cir. 1991); *In re Auto-Train Corp.*, 810 F.2d 270, 276 (D.C. Cir. 1987); *In re Continental
Vending Mach. Corp.*, 517 F.2d 997, 1000 (2d Cir. 1975); cert. *denied*, 424 U.S. 913 (1976); *In re Drexel Burnham
Lambert Group, Inc.*, 138 B.R. 723 (Bankr. S.D.N.Y. 1992).

[2]*Chemical Bank New York Trust Co. v. Kheel*, 369 F.2d 845, 847 (2d Cir. 1966). *Eastgroup Properties*, 935 F.2d at
248 ("[Substantive consolidation] involves the pooling of assets and liabilities of two or more related entities; the
liabilities of the entities involved are then satisfied from the common pool of assets created by consolidation.");
*Colonial Realty*, 966 F.2d at 58-59; *In re Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988); *In re Snider
Bros.*, 18 B.R. 230, 234 (Bankr. S.D. Mass. 1982) (consolidation enables the court to disregard corporate entities in
order to reach assets for the satisfaction of creditors of a related corporation); *In re Cooper*, 147 B.R. 678, 682
(Bankr. D.NJ. 1992); *Drexel Burnham Lambert*, 138 B.R. at 764. Substantive consolidation is not to be confused
with "joint administration," in which, *inter alia*, "all docketing and noticing is done in one case file for more than
one related case, but the estates and creditor bodies are not merged." *Cooper*, 147 B.R. at 682.  *See also In re
Standard Brands Paint Co.*, 154 B.R. 563-573 (Bankr. C.D. Cal. 1993) (consolidation permitted for plan voting and
distribution purposes only while allowing the entities to remain as separate entities after plan confirmation.).

Blue Hill
2030

BERNKOPF, GOODMAN & BASEMAN LLP

Credit Suisse First Boston Mortgage Capital LLC
September 14, 1999
Page 8

entity which is not a debtor in a case under the Bankruptcy Code.[3]  Additionally, the bankruptcy court is empowered to consolidate estates as to certain claims even if it does not consolidate as to all claims.[4]

In that the power to order substantive consolidation derives from the equity jurisdiction of the federal bankruptcy courts, whether or not to allow substantive consolidation is determined on a case-by-case basis and the federal court decisions reflect an analysis of the particular factual circumstances presented in each case.  A court's inquiry should include an examination of, *inter alia,* the corporate structures of the entities proposed to be consolidated, their intercorporate relationships, and their relationships with their respective creditors and other third-parties.  Thus, since the doctrine of substantive consolidation is an equitable one, the federal courts should also examine, *inter alia,* the impact upon the creditors of each entity if consolidation was to be ordered.[5]

The reported decisional law indicates a general recognition by the courts that substantive consolidation is an extraordinary remedy vitally affecting substantive rights, which, due to the potential inequities caused because consolidation almost invariably redistributes wealth among the creditors of consolidated entities, should only rarely be granted.[6]  Courts have ordered substantive consolidation where the proponents have demonstrated either (a) a harm to be avoided; or (b) a benefit to be effected generally which, under the circumstances and considering whether the rights of third-parties would be unduly prejudiced thereby, it is equitable to effect.[7]

---

[3] *Chauncey H. Levy, Joint Administration and Consolidation,* 85 COMM. L.J. 538, 539 (1980); *see also, In re Munford, Inc.,* 115 B.R 390, 397-98 (Bankr. N.D. Ga. 1990) (substantive consolidation "is recognized as an alternative means to bring a non-debtor's assets into a debtor's estate").

[4] *In re Parkway Calabasas Ltd.,* 89 B.R. 832, 837 (Bankr. C.D. Cal. 1988) (noting that to protect creditors, court may qualify the consolidation or only consolidate certain claims—unsecured rather than secured), *aff'd* 949 F.2d 1058 (9th Cir. 1991).

[5] *Augie/Restivo,* 860 F. 2d at 518.

[6] *Auto-Train,* 810 F.2d at 276; *Augie/Restivo,* 860 F.2d at 518; *Snider Bros.,* 18 B.R. at 234 ("substantive consolidation, in almost all instances, threatens to prejudice the rights of creditors . . . . This is so because separate debtors will almost always have different ratios of assets to liabilities"); *Kheel,* 369 F.2d at 847 ("The power to consolidate should be used sparingly because of the possibility of unfair treatment of creditors of a corporate debtor who have dealt solely with that debtor without knowledge of its interrelationship with others."); *see also Eastgroup Properties v. Southern Motel Assocs.,* 935 F.2d 245, 248 (11th Cir. 1991); *Continental Vending Mach.,* 517 F.2d at 1001; *In re Flora Mir Candy Corp.,* 432 F.2d 1060, 1062-63 (2d Cir. 1970); *In re Julien Co.,* 120 B.R. 930, 935 (Bankr. W.D. Tenn. 1990).

Blue Hill
2031

BERNKOPF, GOODMAN & BASEMAN LLP

Credit Suisse First Boston Mortgage Capital LLC
September 14, 1999
Page 9

In order to properly apply this balancing of interests, "a court must conduct a searching inquiry to ensure that consolidation yields benefits offsetting the harm it inflicts on the objecting parties."[8]

Circumstances where consolidation has been ordered include cases where it was proven that one or more entities were "mere instrumentalities" or "alter egos" of one another. This has occurred under a variety of factual patterns.[9] *Fish v. East* is particularly instructive and contains a list of factors to be considered in determining whether one entity is a "mere instrumentality" of another:

A.    The parent corporation owns all or a majority of the capital stock of the subsidiary.

B.    The parent and subsidiary corporations have common directors or officers.

C.    The parent corporation finances the subsidiary.

---

[7]*Augie/Restivo*, 860 F.2d at 515; *Flora Mir Candy*, 432 F.2d at 1060; *Eastgroup Properties*, 935 F.2d at 249; *In re Giller*, 962 F.2d 796, 799 (8th Cir. 1992); *In re Hemingway Transp., Inc.*, 954 F.2d 1, 12 (1st Cir. 1992); *In re Amereco Envtl. Servs., Inc.*, 125 B.R. 566, 568 (Bankr. W.D. Mo. 1991); *In re Holywell Corp.*, 59 B.R. 340, 347 (S.D. Fla. 1986); *In re DRW Property Co.*, 54 B.R. 489, 495 (Bankr. N.D. Tex. 1985); *see also Eastgroup Properties*, 935 F.2d at 249 (court granted substantive consolidation under the standard whereby once an objector has made a showing of sole reliance on the credit of one entity and prejudice will flow from consolidation, "the court may order consolidation only if it determines that the demonstrated benefits of consolidation 'heavily' outweigh the harm") (quoting *Auto-Train*, 810 F.2d at 276); *In re Nit Lie Inns*, 8 Bankr. CT. Dec. 936 (Bankr. S.D. Cal. 1982); *In re Mortgage Inv. Co.*, 111 B.R. 604, 610 (Bankr. W.D. Tex. 1990); *Savior v. Franklin National Bank of Long Island*, 328 F.2d 446 (2d Cir. 1964); *Amereco Envtl. Servs.*, 125 B.R. at 568; *accord In re Vecco Constr. Indus.*, 4 B.R. 407 (Bankr. E.D. Va. 1980); *In re F.A. Potts & Co.*, 23 B.R. 569 (Bankr. E.D. Pa. 1982); *In re Murray Indus.*, 119 B.R. 820, 829 (Bankr. M.D., Fla. 1990); *In re Stevenson*, 153 B.R. 52 (Bankr. D. Idaho 1993); *but see, Standard Brands Paint*, 154 B.R. at 571-72 (substantive consolidation ordered where the debtors functioned as a consolidated entity and had multiple interdebtor guaranties and debts).

[8]*In re Auto-Train*, 810 F.2d at 276; *Snider Bros.*, 18 B.R. at 238 ("First the applicant must show that there is a necessity for consolidation, or a harm to be avoided by use of the equitable remedy of substantive consolidation . . . [then] there is still the matter of the defense that the benefits of consolidation do not outweigh the harm to be caused to the objector.")

[9]*Fish v. East*, 114 F.2d 177 (10th Cir. 1940); *In re Luth*, 28 B.R. 564 (Bankr. D. Idaho 1983); *Soviero*, 328 F.2d at 446; *Stone v. Eacho*, 127 F.2d 284 (4th Cir. 1942), *cert. denied*, 317 U.S. 635 (1942); *In re I.R.C.C., Inc.*, 105 B.R. 237, 242 (Bankr. S.D.N.Y. 1989); *Cooper*, 147 B.R. at 683; *In re Moran Pipe & Supply Co.*, 130 B.R. 588, 591 (Bankr. E.D. Okla. 1991); *Mortgage Inv.*, 111 B.R. at 610; *see also B. Simon v. New Center Hospital (In re New Center Hospital)*, 187 B.R. 560 (D.C. E.D. Mich. 1995) (District Court upheld Bankruptcy Court decision ordering substantive consideration where 5 of 7 of the *Augie/Restivo* factors had been established).

BERNKOPF, GOODMAN & BASEMAN LLP

Credit Suisse First Boston Mortgage Capital LLC
September 14, 1999
Page 10

      D.      The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

      E.      The subsidiary has grossly inadequate capital.

      F.      The parent corporation pays the salaries or expenses or losses of the subsidiary.

      G.      The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.

      H.      In the papers of the parent corporation, and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division.

      I.      The directors or executives of the subsidiary do not act independently in the interest of the subsidiary, but take direction from the parent corporation.

      J.      The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.[10]

Courts have also ordered substantive consolidation where interrelationships among entities have become hopelessly obscured and there would be great difficulty and expense in separating the assets, liabilities and businesses of the entities so that separate administration would not be practicable since the time and expense necessary even to attempt to unscramble the intercompany relationships and transactions are so substantial so as to threaten the realization of any net assets for all the creditors. These key factors were summarized in *In re Augie/Restivo Baking Co., supra* as "(i) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit, or (ii) whether the affairs of debtors are so entangled that consolidation will benefit all creditors."[11]

Although the "mere instrumentality" and "hopelessly obscured" cases comprise a large bulk of the reported decisions considering substantive consolidation, there are other cases in which the courts have ordered substantive consolidation to enhance the debtor's chances of a successful reorganization.[12] It is important to note, however, that in these cases the courts have

---

[10]*Id.* at 191.

[11]*Augie/Restivo, 860* F.2d at 518; *see also In re. New Center Hospital,* 187 B.R. at 569.

[12]*In re Manzey Land & Cattle Co.,* 17 B.R. 332, 338 (Bankr. D.S.D. 1982); F.A. *Potts Co.,* 23 B.R. at 573; *Murray Indus.,* 119 B.R. at 832; *Munford,* 115 B.R. at 396; *Nite Lite Inns,* 8 Bankr. Ct. Dec. at 938.

Blue Hill
2033

BERNKOPF, GOODMAN & BASEMAN LLP

Credit Suisse First Boston Mortgage Capital LLC
September 14, 1999
Page 11

emphasized the absence of any harm or prejudice to any particular group, or have concluded, after considering the equities, that any harm or prejudice is outweighed by the benefits of substantive consolidation.[13] We also note that several cases have considered the test articulated in 1942 in the case of *Stone v. Eacho* that "by ignoring the separate corporate entity of the subsidiar[ies] and consolidating the proceeding with those of the parent corporation can all the creditors receive that equality of treatment which it is the purpose of the bankruptcy act to afford."[14] Arguably, these cases reflect "the courts' recognition of the increasingly widespread existence in the business world of parent and subsidiary corporations with interrelated corporate structures and functions"[15] and suggest that, in the absence of harm or prejudice to any particular group, a court would be less concerned with traditional concepts of actual or constructive blameworthy behavior. However, a contrary decision was handed down by the United States Court of Appeals for the Second Circuit to the effect that merely furthering the reorganization effort is not, in the absence of the more traditional factors, enough to warrant substantive consolidation:

---

[13] *Manzey Land & Cattle Co.*, 17 B.R. at 338 (no prejudice); F.A. *Potts Co.*, 23 B.R. at 574 (no prejudice); *Munford*, 115 B.R. at 395-96 (on a motion to dismiss a substantive consolidation complaint the court indicated that consolidation would not prejudice creditors); *Nite Lite Inns*, 8 Bankr. Ct. Dec. at 938 (no prejudice); *Murray Indus.*, 119 B.R. at 832 (the court concluded, after consideration of the relevant equities and noting the support of the official creditors' committee for substantive consolidation, that the benefits to creditors from substantive consolidation outweighed the prejudice to an equity holder and a creditor who was an insider).

[14] *Stone v. Eacho*, 17 F.2d 284, 288 (4th Cir.), *cert. denied*, 317 U.S. 635 (1942).

[15] F.A. *Potts Co.*, 23 B.R. at 571; *see also Eastgroup Properties v. Southern Motel Assocs.*, 935 F.2d 245, 248-249 (11th Cir. 1991) (noting a "modern" or "liberal" trend toward allowing substantive consolidation in "recognition of the widespread use of interrelated corporate structures by subsidiary corporations operating under a parent entity's corporate umbrella"); *Rickton Int'l Corp.*, 12 B.R. at 555; *In re Vecco Constr. Indus.*, 4 B. R. at 407; *In re Interstate Stores, Inc.*, 5 Bankr. Ct. Dec. 1249 or B.R. 755 (Bankr. S.D.N.Y. 1980). (It has been suggested that such recognition of interrelated corporate structures expresses a view known as "enterprise law;" the application of legal principles based upon a finding that related debtors are conducting an economically integrated business as consistent parts of a single enterprise, notwithstanding formal organization of the components as separate legal entities) *see* PHILLIP BLUMBERG, THE LAW OF CORPORATE GROUPS: PROCEDURAL PROBLEMS OF PARENT & SUBSIDIARY CORPORATIONS §§ 1.03, 10.10.1 (1985). While, as noted above, we are aware of substantive consolidation cases in which such economic integration was recognized, we are not aware of any reported decision, other than the recent decision in *Standard Brands Paint*, 154 B.R. at 571-72, in which a demonstration of economic integration was, in and of itself, dispositive. *But see* BLUMBERG, *supra*, § 10.11.7. Additionally, although many of these cases note that consolidation is used sparingly, the reality is that the courts are increasingly ready to order consolidation for economically integrated debtors in a corporate group when it will implement the administration of the estate.

Blue Hill
2034

BERNKOPF, GOODMAN & BASEMAN LLP

Credit Suisse First Boston Mortgage Capital LLC
September 14, 1999
Page 12

> "[W]e do not believe that a proposed reorganization plan alone can justify substantive consolidation. Where, as in the instant case, creditors such as Union and MHTC knowingly made loans to separate entities and no irremediable commingling of assets has occurred, a creditor cannot be made to sacrifice the priority of its claims against its debtor by fiat based on the bankruptcy court's speculation that it knows the creditor's interests better than does the creditor itself."[16]

As a cautionary note, we are constrained to point out that - with an eye to the so-called "modern" or "liberal" trend - a number of courts have held that the assets and liabilities of a non-debtor affiliated entity or individual may be substantively consolidated with those of a debtor's estate. *Simon v. New Center Hospital (In re New Center Hospital)*, 187 B.R. 560 (Bankr. E.D. Mich. 1995); *White v. Creditor's Service Corp. (In re Creditors Service Corp.)*, 195 B.R. 680 (Bankr S.D. Ohio 1996); *Bracaglia v. Manzo (In re United Stairs Corp.)*, 176 B.R. 359 (Bankr. D.N.J. 1995); *Mather v. G.K. Pipe Corp., (In re Moran Pipe & Supply Co., Inc.)*, 130 B.R. 588 (Bankr. E.D. Okla. 1991); *In re Fairfield Construction Co.*, 1995 WL 434474 (Bankr. E.D. Mich.); *Munford, Inc. v. TOC Retail, Inc. (In the Matter of Munford, Inc.)*, 115 B.R. 390 (Bankr. N.D. Ga. 1990); *In re Tureaud*, 45 B.R. 658 (Bankr. N.D. Okla. 1985); *In re. Crabtree*, 39 B.R. 718 (Bankr. E.D. Tenn. 1984); *In the Matter of Lewellyn*, 26 B.R. 246 (Bankr. S.D.N.Y. 1982); *In re 1438 Meridian Place, N.W., Inc.*, 15 B.R. 89 (Bankr. D.D.C. 1981).

Courts faced with the defense that Section 303 of the Bankruptcy Code provides the exclusive means to place a person into bankruptcy proceedings, have flatly rejected the argument. *Munford, supra.* 115 B.R. at 396; *Meridian Place, supra,* 15 B.R. at 95. As the *Munford* court stated, "[s]ubstantive consolidation...must be considered as a remedy which is entirely independent of, and indeed inconsistent with, the involuntary petition remedy. Accordingly, it is recognized as an alternative means to bring a non-debtor's assets into a debtor's estate." *Id.* 115 B.R. at 397.

Some courts and commentators have questioned the practice of substantively consolidating non-debtors and debtors, but even those courts have not held a court powerless to do so. *In re. Ira S. Davis*, 1993 Bankr LEXIS 1383 (Bankr E.D. PA.); *Morris Operations v. Robbins Le-Cocq, Inc. (In re Lease-of-Fleet, Inc)*.(141 B.R. 869) (Bankr E.D. PA 1992). Critics of this practice note that the Bankruptcy Court's authority to substantively consolidate debtors and non-debtors is questionable and that substantive consolidation of a non-debtor allows "circumvention" of Section 303's procedural requirements, as well as that section's sanction provisions. *See generally C.J. Predko, Substantive Consolidation Involving Non-debtors:*

---

[16] *Augie/Restivo Baking Co.*, 860 F.2d at 520.

Blue Hill
2035

BERNKOPF, GOODMAN & BASEMAN LLP

Credit Suisse First Boston Mortgage Capital LLC
September 14, 1999
Page 13

*Conceptual and Jurisdictional Difficulties in Bankruptcy*, 41 WAYNE L. Rev. 1741 (Summer 1995).

We must also point out that where, as here, there is a unity of ownership between the special purpose entity Borrower, the Manager and the Member, there is a greater risk that a bankruptcy court would be willing to order substantive consolidation of assets especially where the affiliated parties are economically integrated entities.[17] Based on the existence of these factors and the fact that neither the Member nor the Manager have made loans to provide working capital to the Borrower a bankruptcy court would likely find that the creditors of these entities did not rely upon the credit or assets of the Borrower.[18]

*A fortiori*, the question of whether, and under what circumstances, a court should order substantive consolidation cannot be answered in the abstract, but must take into account the actual facts and circumstances of the operations and relations of those entities over time; and

---

[17] See Philip I. Blumberg, The Law of Corporate Groups, Problems in the Bankruptcy or Reorganization of Parent and Subsidiary Corporations, Including the Law of Corporate Guaranties §10.10.5 (1985 & Supp. 1994). Further factors courts have considered in recent opinions include: (1) the degree of economic integration of the components of corporate groups and their common conduct of a unitary business, see, e.g. *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 741-44 (Bankr. S.D. N.Y. 1992); *In re IRCC Inc.*, 105 B.R. 237, 241-42 (Bankr. S.D.N.Y. 1989); *Holywell Corp. v. Bank of N.Y.*, 59 B.R. 340, 347 (S.D. Fla. 1986); *In re Turead*, 45 B.R. 658 (Bankr. N.D. Okla. 1985) aff'd, 59 B.R. 973 (N.D. Okla. 1986); (2) to what degree the creditor relied on the credit of the enterprise, see, e.g., *Eastgroup Properties*, 935 F. 2d 251; *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 744 (Bankr. N.D. Tex. 1985); (3) whether the new entity intermingled formerly separate accounts, see, e.g. *Drabvkin v. Midland Ross Corp. (In re Auto Train Corp.)*, 810 F. 2d 270, 276 (D.C. Cir. 1987); *Chemical Bank N.Y. Trust Co. v. Kheel (In re Seatrade Corp.)*, 369 F. 2d 845, 847 (2d Cir. 1966); *In re Murray Indus.*, 119 B.R. 820, 831 (Bankr. M.D. Fla. 1990); (4) whether the new entity intermingled formerly separate assets, see, e.g., *In re Baker & Getty Fin. Servs., Inc.*, 78 B.R. 139, 142 (Bankr. N.D. Ohio 1987); *In re Richton Int'l Corp.*, 12 B.R. 555, 558 (Bankr. S.D.N.Y. 1981); and (5) the guidance provided by veil-piercing jurisprudence, see e.g., *FDIC v. Colonial Realty Co.*, 966 F. 2d 57, 60-61 (2d Cir. 1992).

[18] In *Anaconda Bldg. Materials Co. v. Newland*, 336 F. 2d 625 (9th Cir. 1964), the court considered the ability of a corporate parent's creditors to reach the assets of the parent's financial subsidiaries. The parent, a builder of prefabricated homes, had formed four subsidiaries to sell debentures in order to raise cash. The funds were used to buy the parent's mortgages at a discount. The parent then used the money in its construction business. The court, affirming the decision of the court below on a "clearly erroneous" standard, declined to permit creditors of the parent to reach the assets of the subsidiaries since:

1. The subsidiaries were operated as separate entities;
2. On balance, the parent was the beneficiary of the corporate relationship;
3. The objecting creditors did not rely upon the credit of the subsidiaries and were benefited rather than prejudiced by the way in which the subsidiaries were operated;
4. There was no fraud or overreaching attributable to the subsidiaries or the debenture holders detrimental to the objecting creditors; and
5. There was no unjust enrichment of the debenture holders. *Id.* at 628.

Blue Hill
2036

BERNKOPF, GOODMAN & BASEMAN LLP

Credit Suisse First Boston Mortgage Capital LLC
September 14, 1999
Page 14

with respect to the Borrower, the Corporation and/or other Borrower Entities, as the case may be, the circumstances of their future actions and operations cannot be known today.

We have also assumed, with your consent, that a party in interest would timely present an objection to substantive consolidation of the subject entity and brief and argue such objection[19] and that the entire issue of substantive consolidation would be tried by competent bankruptcy counsel on behalf of the Borrower, the Corporation and/or other Borrower Entities, as the case may be, and that the Bankruptcy Court would follow the rationale and precedent outlined in this letter.

Compliance with the foregoing and the absence of any factors inconsistent therewith will, in our view, be significant with respect to any effort to substantively consolidate in a bankruptcy proceeding involving the Borrower, the Corporation and/or other Borrower Entities. Another significant factor which we have also assumed with your consent is that the Borrower and Property are expected to generate sufficient income to make timely payments of principal and interest on the Loan and to pay all other expenses due in the ordinary course of their respective businesses.

Based solely on the facts and assumptions set forth above and below, and subject to the discussion contained herein and the reasoned analysis of the reported decisional authority and statutes applied to federal bankruptcy cases set forth herein, it is our opinion that, (a) in the event of the filing of a petition for relief under the Bankruptcy Code by or against one of the Borrower Entities, a bankruptcy court or other federal court having competent jurisdiction over such debtors which acted reasonably and correctly applied the applicable law to the assumed facts set forth herein, would not grant an order to consolidate the assets and liabilities of the Borrower with those of the Borrower Entities over the objection of creditors of the Borrower or the Lender; and (b) in the event of a filing of a petition for relief under the Bankruptcy Code by or against the Borrower, a bankruptcy court or other federal court having competent jurisdiction over such debtors which acted reasonably and correctly applied the applicable law to the assumed facts set forth herein would not grant an order to consolidate the assets and liabilities of the Manager with those of the Borrower over the objection of creditors of the Manager or the Lender.

---

[19]*See In re Buckhead Am. Corp.*, Nos. 91-978 to 91-986 (Bankr. D. Del. Aug. 13, 1992) (court substantively consolidated eight debtors after all objections by creditors had been withdrawn); *In re Standard Brands Paint Co.*, 154 B.R. 563, 571-72 (Bankr. C.D. Cal. 1993) (court substantively consolidated five debtors for voting and distribution purposes in the absence of any objection by creditors).

**Blue Hill
2037**

BERNKOPF, GOODMAN & BASEMAN LLP

Credit Suisse First Boston Mortgage Capital LLC
September 14, 1999
Page 15

## III. QUALIFICATIONS

We express no opinion regarding the selection or the employment of the independent director of the Manager as a device to promote separateness and/or to reduce or eliminate the possibility of the Manager's initiation of solvency proceedings with respect to the Borrower or the Manager. However, you are specifically advised that there is decisional law which suggests that a designated director who was called upon to approve or disapprove a corporate transaction holding a possible conflict of interest between the corporation and the directors' designator, should disclose the conflict and abstain. *Philips v. Institutform of N.A., Inc.*, C.A. No. 9173 (Del. Ch. Aug. 27, 1987) slip. op. at 27; *Weinberger v. UOP, Inc.*, 578. 2d 701 (Del. ch. 1983); *See also Balotti & Andy Finklestein, The Delaware Law of Corporations and Business Organizations*, 144.3-144.6 (1989 Supp.). Accordingly, we do not express any opinion as to whether the independent director of the Manager will not be compelled or may voluntarily elect to place the Manager or the Borrower in a voluntary bankruptcy proceeding or may elect some other act of insolvency to protect the interests of the Borrower or the Manager.

We also do not express any opinion as to any matters governed by any law other than the federal bankruptcy law of the United States and the general corporate laws of Massachusetts and decisional authority thereunder including, without limitation, any state or federal common or statutory law involving "piercing" of corporate entities. We also do not express any opinion as to whether or not the Borrower or the Manager could be the subject of an involuntary bankruptcy proceeding. *See, e.g. In re. Kingston Square Associates et al.*, 214 B.R. 713 (Bankr. S.D.N.Y. 1997) (bankruptcy proceeding not dismissed even though there were allegations that the debtors colluded with petitioning creditors to file an involuntary petition to circumvent by-law provisions designed to prevent debtors from filing voluntary petitions.) We also do not express any opinion with respect to the transfer of the Property or the effect thereof, from the originator to the Borrower, including without limitation, any transferee liability, whether such transfer was a "true sale". We also express no opinion with respect to whether, if the originator of the Property were to become a debtor in a case under the Bankruptcy Code, the transfer of the Property from the originator to the Borrower would be avoided by the court as a fraudulent conveyance or based on other similar theories under the Bankruptcy Code or applicable state law.

In rendering our opinion, we have relied on the legislative history, learned treatises and policy of the relevant statutes, judicial decisions discussing certain facts and circumstances similar to those that are present in this transaction, and the judicial decisions discussing other issues we have deemed relevant to our opinion. Accordingly, our opinion is not based on directly applicable judicial precedent, but rather on what we believe to be a sound analysis of such material as presently exists.

Blue Hill
2038

BERNKOPF, GOODMAN & BASEMAN LLP

Credit Suisse First Boston Mortgage Capital LLC
September 14, 1999
Page 16

We note that nothing inherent in the organizational structure of affiliated entities to the Borrower or the Corporation can of themselves be regarded as dispositive with respect to whether a substantive consolidation will be ordered. Rather, applicable judicial precedent teaches that it is the behavior of the entities involved that most influences whether two or more entities will be substantively consolidated. Ultimately, then, whether or not the Borrower Entities or Borrower's assets and liabilities will be substantively consolidated at some time in the future will depend for the most part on facts and circumstances that may or may not exist at the time of the proposed consolidation and which are out of our control and out of the control of the recipients of this opinion letter.

We do not express any opinion or advise, either implicitly or otherwise, with respect to any subject not addressed expressly in the opinion set forth in Part II. Without limiting the foregoing, this opinion does not provide any advice concerning the bankruptcy process in general or strategic factors or circumstances that might affect the outcome of the bankruptcy proceedings. We express no opinion or view as to the availability or effect of a preliminary injunction, temporary restraining order or other such temporary relief, or equitable remedies other than substantive consolidation.

This opinion relates solely to the Bankruptcy Code and the reported decisional authority and treatises noted or cited herein. In addition, this opinion letter is issued based upon and is subject to your acknowledgment that legal opinions on bankruptcy law matters unavoidably have inherent limitations that generally do not exist with respect to the type of legal issues on which opinions to third parties are typically given. Reasoned opinions such as are contained herein are subject to the uncertainties and limitations inherent in opining on bankruptcy law matters. Further, the inherent limitations of legal opinions on bankruptcy law matters exist in large part because of the pervasive equity powers which bankruptcy court possess, the overriding goal of reorganization to which other legal rights and policies may be subordinated, the relevance to and impact on the Bankruptcy Court's exercise of judicial discretion of future facts and circumstances, the nature of the bankruptcy process in general and other factors beyond the scope of this opinion, including without limitation, temporary restraining orders, preliminary injunctions or other similar orders issued pending determination of the merits and the impact which delay may have in any bankruptcy proceeding.

This opinion letter has been furnished to you solely in connection with this Loan transaction and on the condition that the opinion expressed herein may not be published or otherwise communicated by you to any other party except your successor or assigns including

**Blue Hill**
**2039**

BERNKOPF, GOODMAN & BASEMAN LLP

Credit Suisse First Boston Mortgage Capital LLC
September 14, 1999
Page 17

certificate holders or any duly authorized and acting agency which rates the Loan, without our
specific prior written approval in each instance. No one other than you and the entities specified
in the preceding sentence may rely upon the opinions expressed herein.

Very truly yours,

*Bernkopf, Goodman & Baseman LLP*

Bernkopf, Goodman & Baseman LLP

#184132 v2/14500/9547

Blue Hill
2040

**EXHIBIT A-1**

**BORROWER'S STATEMENT**

In connection with the Opinion concerning Substantive Consolidation (the "Opinion") to be delivered by Bernkopf, Goodman & Baseman LLP ("BGB") in connection with that certain loan from Credit Suisse First Boston Mortgage Capital LLC ("Lender") to the Borrower concerning property located at 150 Royall Street, Canton, Massachusetts known as the Blue Hills Office Park (the "Property"), the undersigned hereby certifies to BGB, Lender and its successors and assigns, to the best of its knowledge after due inquiry and review of the Opinion, that:

1.    the undersigned understands that BGB and Lender and its successors and assigns are relying on this statement in connection with the execution and delivery of the Opinion and the making of the Loan; and

2.    the facts and assumptions contained in the Opinion, insofar as they pertain to the undersigned, are true and correct as of the date hereof.

EXECUTED as an instrument under seal as of this 19th day of September, 1999.

BLUE HILL OFFICE PARK LLC,
a Delaware limited liability company

By:  Blue Hills Management Corp., a
     Massachusetts corporation, its Manager

By: _Gerald_____
     Gerald S. Fineberg, President

#184132 v2/14500/9547

Blue Hill
2041

**EXHIBIT A-2**

**MANAGER'S STATEMENT**

In connection with the Opinion concerning Substantive Consolidation (the "Opinion") to be delivered by Bernkopf, Goodman & Baseman LLP ("BGB") in connection with that certain loan from Credit Suisse First Boston Mortgage Capital LLC ("Lender") to the Borrower concerning property located at 150 Royall Street, Canton, Massachusetts known as the Blue Hills Office Park (the "Property"), the undersigned hereby certifies to BGB, Lender and its successors and assigns, to the best of its knowledge after due inquiry and review of the Opinion, that:

1.　the undersigned understands that BGB and Lender and its successors and assigns are relying on this statement in connection with the execution and delivery of the Opinion and the making of the Loan; and

2.　the facts and assumptions contained in the Opinion, insofar as they pertain to the undersigned, are true and correct as of the date hereof.

EXECUTED as an instrument under seal as of this 10th day of September, 1999.

BLUE HILLS MANAGEMENT CORP.

By: _Gerald S. Fineberg_____
　　　Gerald S. Fineberg, President

#184132 v2/14500/9547

Blue Hill
2042

**EXHIBIT A-3**

**MEMBER'S STATEMENT**

In connection with the Opinion concerning Substantive Consolidation (the "Opinion") to be delivered by Bernkopf, Goodman & Baseman LLP ("BGB") in connection with that certain loan from Credit Suisse First Boston Mortgage Capital LLC ("Lender") to the Borrower concerning property located at 150 Royall Street, Canton, Massachusetts known as the Blue Hills Office Park (the "Property"), the undersigned hereby certifies to BGB, Lender and its successors and assigns, to the best of its knowledge after due inquiry and review of the Opinion, that:

1.    the undersigned understands that BGB and Lender and its successors and assigns are relying on this statement in connection with the execution and delivery of the Opinion and the making of the Loan; and

2.    the facts and assumptions contained in the Opinion, insofar as they pertain to the undersigned, are true and correct as of the date hereof.

EXECUTED as an instrument under seal as of this 10th day of September, 1999.

ROYALL ASSOCIATES REALTY TRUST

By: _Gerald S. Fineberg_

Gerald S. Fineberg, Trustee

#184132 Y2/14500/9547

Blue Hill
2043