UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLUE HILLS OFFICE PARK LLC,<br><br>    Plaintiff, Defendant-in-Counterclaim.<br><br>    v.<br><br>J.P. MORGAN CHASE BANK, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1,<br><br>    and<br><br>CSFB 1999–C1 ROYALL STREET, LLC,<br><br>    Defendants, Plaintiffs-in-Counterclaim,<br><br>    v.<br><br>WILLIAM LANGELIER and GERALD FINEBERG,<br><br>    Defendants-in-Counterclaim. | Civil Action No.  05-CV-10506 (WGY) |

**DEFENDANTS AND PLAINTIFFS-IN-COUNTERCLAIM'S MEMORANDUM
IN SUPPORT OF MOTION TO STRIKE ALTERATIONS TO
<u>DEPOSITION TESTIMONY OF GERALD FINEBERG</u>**

Defendants and Plaintiffs-in-Counterclaim CSFB 1999-C1 Royall Street, LLC ("CSFB") and J.P. Morgan Chase Bank, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1 (the "Trustee") (together with CSFB, the "Lender") submit this memorandum in support of their motion to strike material deposition testimony alterations made on the errata sheet to the deposition testimony of defendant-in-counterclaim Gerald Fineberg.

1

The Lender's motion to strike should be granted for two independent reasons. First, the alterations purport to be "corrections" to Mr. Fineberg's deposition testimony as permitted by Fed. R. Civ. P. 30(e) ("Rule 30(e)"), but fail to comply with the requirements of that rule. Second, the alterations, which directly contradict Mr. Fineberg's deposition testimony, were submitted in a bad faith attempt to manufacture an otherwise nonexistent issue of fact in hopes of defeating the Lender's motion for summary judgment.

## **FACTUAL BACKGROUND**

The Lender's counterclaim asserts, inter alia, that plaintiff and defendant-in-counterclaim Blue Hills Office Park LLC ("Blue Hills") improperly transferred a $2 million settlement payment (the "Payment") to Blue Hills' owner, the Royall Associates Realty Trust (the "Royall Trust"). This transfer triggered the recourse provisions of a mortgage agreement between Blue Hills and the Lender (the "Mortgage") as well as the recourse provisions of a guaranty (the "Guaranty") executed by the principals of the Royall Trust, defendants-in-counterclaim Gerald Fineberg and William Langelier. Under the Mortgage and Guaranty, Blue Hills' transfer of the Payment to the Royall Trust (without the prior written consent of the Lender) gave rise to the liability of Blue Hills, Fineberg, and Langelier for the full amount of the debt remaining unpaid following Lender's foreclosure sale of the mortgaged property (the "Deficiency").

The Lender deposed Mr. Fineberg on April 5, 2006. At his deposition, Mr. Fineberg unambiguously testified several times that the $2 million Payment was part of 5 or 6 million dollars distributed by Blue Hills to, and held by, the Royall Trust. On May 17, 2006, the Lender moved for summary judgment as to all claims brought by and against it, including the Lender's counterclaim. One of the undisputed facts relied upon by the Lender in its summary judgment submissions (based in part on Mr. Fineberg's testimony) is that Blue Hills transferred the

2

Payment to the Royall Trust. On May 17, 2006, Blue Hills also moved for summary judgment on the Lender's counterclaim, arguing that Blue Hills had not transferred the Payment. On May 31, 2006, the Lender filed an opposition to Blue Hills' motion that marshaled the evidence of a transfer, including (at page 7) quotes from Mr. Fineberg's unambiguous deposition testimony. Less than a week later, on June 6, 2006, Mr. Fineberg served the Lender with an errata sheet (the "Errata Sheet," attached hereto as Exhibit A) purporting to make five changes (referred to herein as the "Alterations") to his deposition testimony, including the testimony quoted in the Lender's opposition. All five of the changes have to do with the transfer of the Payment to the Royall Trust, and all five directly contradict Mr. Fineberg's testimony that the Payment was transferred to the Royall Trust. The only explanation given for the Alterations is the word "clarification." Blue Hills' June 12, 2006, reply brief (at page 6) cites to the Errata Sheet as evidence that there was no transfer.

## DISCUSSION

**I.   THE ALTERATIONS SHOULD BE STRICKEN BECAUSE MR. FINEBERG OFFERS ONLY CONCLUSORY REASONS FOR THE CHANGES TO HIS DEPOSITION TESTIMONY.**

The court should strike the Alterations because Mr. Fineberg has failed to supply any non-conclusory reason for the changes to his testimony. See Tingley Systems, Inc. v. CSC Consulting, Inc., 152 F. Supp. 2d 95, 120 (D. Mass. 2001) (under Rule 30(e) the deponent must "supply a reason for the changes which is not conclusory"). The Errata Sheet states only "clarification" as the reason for each of the Alterations. "Clarification" is a conclusory and insufficient justification for the Alterations, which did not merely amend, but directly contradicted, material portions of Mr. Fineberg's deposition testimony. See id. at 119-21 (term "clarification" is not a sufficient explanation for material alterations to deposition testimony). As such, Mr. Fineberg has failed to comply with the requirements of Rule 30(e) and the Alterations

3

should be stricken for that reason alone.

## II. THE ALTERATIONS SHOULD BE STRICKEN BECAUSE THEY ARE A BAD FAITH ATTEMPT TO MANUFACTURE AN ISSUE OF FACT.

The court should also strike the Alterations because they constitute a bad faith attempt to manufacture an issue of fact in the hopes of precluding the Lender's motion for summary judgment. Parties are not permitted to create an issue of fact in response to a summary judgment motion with an affidavit contradicting their prior deposition testimony, and should not be permitted to avoid this rule by using an errata sheet rather than an affidavit. Colantuoni v. Calcagni & Sons, 44 F.3d 1 (1st Cir. 1994); see also Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969) ("a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony").[1]

The questions presented to Mr. Fineberg at his deposition were unambiguous and his answers were clear. At no time did Mr. Fineberg state that he did not understand the questions, nor did Mr. Fineberg's attorney, who was present throughout the deposition, object to any of the questions (objections to the form of the question were not reserved until trial). Colantuoni, 44 F.3d at 4 (the presence of deponent's attorney at the deposition and the opportunity to clarify incorrect impressions are significant in considering a motion to strike changes to the testimony after-the-fact). As such, Mr. Fineberg may not simply change his answers to create an issue of

---

[1] This is known in several circuits as the 'sham affidavit rule'. See Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1297 (7th Cir. 1993); Davidson & Jones Dev. V. Elmore Dev., 921 F.2d 1343, 1352 (6th Cir. 1991); Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361 (8th Cir. 1983); Martin v. Merrell Dow Pharmaceuticals, Inc., 851 F.2d 703 (3rd Cir. 1988); Hayes v. New York City Dept. Corrections, 84 F.3d 614 (2nd Cir. 1996); Cf. Combs v. Rockwell Int'l Corp., 927 F.2d 486 (9th Cir. 1991).

fact where none exists. Colantuoni, 44 F.3d at 4, 5 ("when an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed").

Notably, all of the Alterations deal with one particular and significant issue in the case: the disposition of the Payment received by Blue Hills in 2004. At his deposition, Mr. Fineberg testified no less than five times that the Payment was transferred to and held by the Royall Trust. The Alterations attempt to replace this testimony with the wholly contradictory assertion that the Payment was never transferred to or held by the Royall Trust, as shown in the following table (page references are to Mr. Fineberg's deposition transcript):

| Page No. | Question | Original Answer | New Answer |
|---|---|---|---|
| 177 | Q. You have to wait for me to finish the question. You never told Lennar that you had 6 million in reserve accounts held by Royall Associates Realty Trust ready to devote to the building, did you? | A. I would have had I had a meeting. | A. I would have had I had a meeting. However, the money in the reserve accounts was always held by my attorneys for Blue Hills Office Park LLC. |
| 180-81 | Q. Your plan for how to save the building was to use the money both in the reserves held by the bank, which was about $4 million, plus the approximately $6 million that was held by Royall Associates Trust of which Lennar had no knowledge, to find a new tenant, and tide the property over until that tenant could start paying rent? | A. That's correct. | A. That's correct, but the approximately $6 million was held by Blue Hills Office Park LLC. |
| 194 | Q. Did the plan that you had in mind for the building require – let me back up. Your plan for the building involved using money in the reserves and also using the 5 plus million dollars you had in an account being held by the attorneys for Royall Associates, right? | A. Yes. | Yes, except that the money held by my attorneys was held for Blue Hills Office Park LLC. |

5

| Page No. | Question | Original Answer | New Answer |
|---|---|---|---|
| 243 | Q. We've talked today about monies that built up in reserve accounts, as you called them, for Royall Associates Realty Trust, right? | A. Yes. | A. Yes, although the money in the reserve account was held for Blue Hills Office Park LLC. |
| 243 | Q. And that was money distributed from Blue Hills Office Park LLC to the trust, correct? | A. Yes, yes. | A. Only some of the money in the reserve accounts was distributed. The $2 million dollars received from DST has never been distributed and is still being held by my attorneys and Bill Langelier's attorney for Blue Hills Office Park LLC. |

Though the First Circuit has yet to address this issue, other courts have found that errata sheet alterations should be treated the same as changes made to deposition testimony via affidavits. See, e.g., Burns v. Bd. of County Comm'rs, 330 F.3d 1275, 1281-2 (10th Cir. 2003). In Burns, for example, the Tenth Circuit rejected the plaintiff's attempt to avoid the consequences of the "sham affidavit" rule by making his deposition alterations on an errata sheet rather than through an affidavit:

> Burns argues that Franks and other cases dealing with 'sham affidavits' are not relevant to the instant case, because he modified his statements not in a subsequent affidavit, but in an errata sheet submitted pursuant to Federal Rule of Civil Procedure 30(e). We reject this distinction. [...]
>
> The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination. [...]
>
> We see no reason to treat Rule 30(e) corrections differently than affidavits...

Id., 330 F.3d at 1282 (quoting Garcia v. Pueblo Country Club, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002)).

In this case, as in Burns, the deponent was cross-examined at his deposition; the changes to the deposition testimony are not based on any newly-discovered evidence; and the deponent's answers to counsel's questions do not reflect any obvious confusion that the corrections would need to clarify. See Burns, 330 F.3d at 1282. The Alterations should thus be stricken, just as if they had been presented via an affidavit. Id.; see also Thorn v. Sundstrand Aerospace Corp., 207 F.3d 383 (7th Cir. 2000) (sham affidavit rule applies to Rule 30(e) corrections to errata sheets); cf. Combs v. Rockwell Int'l Corp., 927 F.2d 486, 488-89 (9th Cir. 1991) (Rule 30(e) does not permit changes "made solely in an attempt to evade an unfavorable summary judgment"). As one court has stated:

> Affording parties the opportunity to exploit Rule 30(e) by making wholesale changes to their previous sworn deposition testimony would render the Rule 56 summary judgment procedures a nullity. In other words, if every plaintiff could completely negate damaging testimony after having thirty days to review and discuss that testimony with his or her attorney, no summary judgment motion could ever be granted. Instead, parties would simply change critical answers, or add new facts never mentioned at the deposition, and thereby avoid summary judgment.
>
> When Congress wrote Rule 30(e), it certainly did not intend to render Rule 56 meaningless. While Rule 30(e) does allow deponents to make changes in 'form or substance,' the court does not believe that Congress ever intended changes in 'substance' to defeat otherwise meritorious summary judgment motions. To read Rule 30(e) in this manner would allow Rule 30(e) to swallow Rule 56 and Congress never intended that result.

Eckert v. Kemper Financial Services, Inc., 1998 WL 699656 (N.D. Ill. 1998).

## CONCLUSION

For all of the foregoing reasons, the Lender's motion to strike the alterations to the deposition testimony of Gerald Fineberg should be granted in its entirety.

Respectfully submitted,

June 23, 2006

CSFB 1999-C1 ROYALL STREET, LLC, and J.P. MORGAN CHASE BANK, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1,

By their attorneys,

/s/ Traci S. Feit
E. Randolph Tucker, BBO #503845
Bruce E. Falby, BBO #544143
Bruce S. Barnett, BBO #647666
Traci S. Feit, BBO #660688
DLA PIPER RUDNICK GRAY CARY US LLP
33 Arch Street, 26th Floor
Boston, MA  02110-1447
(617) 406-6000

## LOCAL RULE 7.1(A)(2) CERTIFICATION

The undersigned counsel for CSFB and the Trustee certifies that she has conferred with Meredith Swisher, counsel for defendants-in-counterclaim Blue Hills Office Park LLC, William Langelier, and Gerald Fineberg, in a good faith attempt to resolve or narrow the issues presented by this motion.

/s/ Traci S. Feit
Traci S. Feit

# EXHIBIT A

WITNESS: Gerald S. Fineberg
CASE: Blue Hills Office Park LLC v. J.P. Morgan Chase Bank, et al., etc.

## SIGNATURE PAGE/ERRATA SHEET

| PAGE | LINE | CHANGE OR CORRECTION AND REASON |
|---|---|---|
| 177 | 10 | should read, "I would have had I had a meeting. However, the money in the reserve accounts was always held by my attorneys for Blue Hills Office Park LLC." Reason: clarification |
| 181 | 4 | should read "That's correct, but the approximately $6 million was held by Blue Hills Office Park LLC." Reason: clarification |
| 194 | 4 | should read "Yes, except that the money in the account held by my attorneys was held for Blue Hills Office Park LLC." Reason: clarification |
| 243 | 9 | should read "Yes, although the money in the reserve account was held for Blue Hills Office Park LLC." Reason: clarification |
| 243 | 12 | should read "Only some of the money in the reserve accounts was distributed. The $2 million dollars received from DST has never been distributed and is still being held by my attorneys and Bill Langelier's attorney for Blue Hills Office Park LLC." Reason: clarification |

I have read the transcript of my deposition taken 4/5/06. Except for any corrections or changes noted above I hereby subscribe to the transcript as an accurate record of the statements made by me.
Signed under the pains and penalties of perjury.

_[signature]_ DATE 6-6-06
Deponent, Gerald S. Fineberg