UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BLUE HILLS OFFICE PARK LLC,

   Plaintiff, Defendant-in-Counterclaim,

v.

J.P. MORGAN CHASE BANK, as Trustee for the
Registered Holders of Credit Suisse First Boston
Mortgage Securities Corp., Commercial Mortgage
Pass-Through Certificates, Series 1999-C1., and
CSFB 1999–C1 ROYALL STREET, LLC,

   Defendants, Plaintiffs-in-Counterclaim,

   v.

WILLIAM LANGELIER and GERALD
FINEBERG,

   Defendants-in-Counterclaim.

Civil Action No. 05-CV-10506 (WGY)

**MOTION OF NONPARTIES LNR PARTNERS, INC. & WELLS FARGO BANK, N.A.
TO QUASH PLAINTIFF'S KEEPER OF THE RECORDS SUBPOENAS**

  Nonparties LNR Partners, Inc. ("LNR") and Wells Fargo Bank, N.A. ("Wells Fargo")

move pursuant to Federal Rule of Civil Procedure 45 for an order quashing trial subpoenas *duces*

*tecum* issued by plaintiff Blue Hills Office Park, LLC, on a Keepers of the Records for each

company ("Keepers"). Plaintiff already has each of the 64 documents targeted by the subpoenas,

and the defendant Lender has agreed to stipulate to the identity and authenticity of the

documents. Plaintiff nevertheless presses the subpoenas because it wants Wells Fargo and LNR

to produce witnesses who will lay the necessary foundation that the documents are business

records. Because the case law makes clear that a document custodian's obligation extends only

to identification and authentication, the subpoenas should be quashed. In support of this motion,

LNR and Wells Fargo state as follows:

1.      Plaintiff served the subpoenas on Massachusetts offices of Wells Fargo and LNR on or about September 22, 2005.  Copies are attached as <u>Exhibits 1 & 2</u> hereto.  Each subpoena contains an identical list of 64 documents that the Keepers are commanded to bring to trial, all but two of which were marked as exhibits at various depositions in this matter ("Subpoeana Exhibit A").  The vast majority of the documents are emails messages or portions of email messages among LNR personnel.  The two non-exhibits are the plaintiff's Rule 30(b)(6) deposition notice of LNR and a letter from the Lender's[1] counsel to plaintiff's counsel Peter McGlynn objecting to the topics in the Rule 30(b)(6) notice.

2.      Counsel for the Lender and plaintiff have made efforts to work out a stipulation regarding numerous proposed trial exhibits, including those on Subpoena Exhibit A, but have been unable to reach agreement.  Nevertheless, the Lender has offered to stipulate that the documents on Subpoena Exhibit A are what they appear to be and that Federal Rule of Evidence 901's requirement of authenticity be deemed established as to them.  The Lender will also stipulate that documents with a Bates label beginning "WF" were and are in the possession of Wells Fargo and that documents with a Bates label beginning "LNR" were and are in the possession of LNR.

3.      Even so, plaintiff's counsel insists on pressing the subpoenas and requiring that the Keepers appear at trial.  In light of the fact plaintiff already has all of the documents it seeks and the defendants have agreed to stipulate to their authenticity, it puts an undue burden on nonparties LNR and Wells Fargo (which are headquartered in Florida and California,

---

[1] Defendants and plaintiffs-in-counterclaim J.P. Morgan Chase Bank, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1, and CSFB 1999–C1 Royall Street, LLC are referred to collectively herein as the "Lender".

respectively) to produce a keeper of the records to bring the documents to court and identify them.

4.    The Lender understands that plaintiff hopes to use the Keepers to establish some or all of the foundational requirements for admitting the documents on Subpoena Exhibit A as business records under the hearsay exception of Federal Rule of Evidence 803(6).  However, LNR and Wells Fargo comply with the subpoenas by producing the documents (which plaintiff already has) and a witness who can authenticate and identify them (issues to which defendants have offered to stipulate).  "The custodian is to be held responsible for both production with the ability to authenticate and/or non-production with the ability to testify to non-possession." See, e.g., In re Grand Jury Proceedings, 708 F. Supp. 492, 494 (E.D.N.Y. 1988) (Copy attached as Exhibit 3); see also In re Grand Jury Proceedings, 838 F.2d 624, 626 (1st Cir. 1988) ("That authentication of corporate documents can be compelled is also a necessary corollary of the rule that production can be compelled.")  As stated by Judge Learned Hand in a leading case on the obligations of a keeper of records responding to a subpoena, "the greater includes the less, and …, since the production can be forced, it may be made effective by compelling the producer to declare that the documents are genuine."  United States v. Austin-Bagley Corp., 31 F.2d 229, 234 (2d Cir. 1929).[2]

5.    Wells Fargo and LNR have no obligation pursuant to the keeper subpoenas to produce a witness who can lay the foundation for the many different elements required to

---

[2] The question of a custodian's obligations in response to a subpoena are regularly litigated in criminal cases (indeed, the legal research conducted by the undersigned has not found any cases in the civil context).  There is, however, no reason to think that the obligation in a civil case would be any greater than in a criminal case.  Cf. 9 Moore's Federal Practice § 45.04[4] (3d ed.) ("[T]he subpoena powers of a federal court in criminal cases are substantially broader than those in a civil case.")

BOST1\441873.1

establish a document is a business record.[3]  Rather, if plaintiff needed to establish foundational

elements beyond authenticity and identity, it should have secured the presence of necessary

witnesses at trial or, where witnesses are unavailable, obtained necessary deposition testimony

during discovery.

WHEREFORE, Wells Fargo and LNR request that the keeper of the records subpoenas

attached hereto as Exhibits 1 & 2 be quashed.

Respectfully submitted,

Wells Fargo Bank, N.A. and
LNR Partners, Inc.

By their attorneys,

 /s/ Bruce S. Barnett_____
Bruce S. Barnett (BBO #647666)
DLA PIPER US LLP
33 Arch Street, 26th Floor
Boston, MA  02110-1447
(617) 406-6000 (*telephone*)
(617) 406-6100 (*fax*)

Dated:  September 28, 2006

## LOCAL RULE 7.1(A)(2) CERTIFICATION

The undersigned counsel for Wells Fargo and LNR certifies that he has conferred with

Meredith Swisher, counsel for the plaintiff and defendants-in-counterclaim in a good faith

attempt to resolve or narrow the issues presented by this motion.

 /s/ Bruce S. Barnett_____
Bruce S. Barnett

---

[3]  Indeed, given the variety of documents on Subpoena Exhibit A, it would be impossible for any one person to so testify without interviewing the author of each as to when the documents were created, whether he or she had personal knowledge of what was written, whether it was the usual practice of the business to create the document, etc.  Such efforts are beyond the obligations of a keeper of the records responding to a subpoena.

- 4 -

# LENDER'S MOTION TO QUASH SUBPOENAS

# EXHIBIT 1

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF          **Massachusetts**

BLUE HILLS OFFICE PARK LLC

v.

**SUBPOENA IN A CIVIL CASE**

J.P. MORGAN CHASE BANK and CSFB 1999 - C1
ROYALL STREET LLC
v.  WILLIAM LANGELIER and GERALD FINEBERG

Case Number:[1]     05-CV-10506 (WGY)

TO:   **Keeper of Records**
      **Wells Fargo Bank, N.A.**
      **222 Rosewood Drive, Floor 4**
      **Danvers, MA 01923**

☒  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
   testify in the above case.

| PLACE OF TESTIMONY  United States District Court One Courthouse Way, Boston, MA 02210 | COURTROOM 18 |
|---|---|
| **\*\*Before appearing, please call Attorney Peter McGlynn or Attorney Meredith Swisher to confirm any changes in scheduling** | on call for trial beginning DATE AND TIME  September 25 2006 9:00 a.m. and from day to day thereafter |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
   in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
   place, date, and time specified below (list documents or objects):

        United States District Court, One Courthouse Way, Boston, MA 02210
   September 25 2006 at 9:00 a.m.
                    **SEE ATTACHED SCHEDULE A FOR LIST OF DOCUMENTS**

| PLACE | DATE AND TIME |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Meredith Swisher*  Meredith A. Swisher, Attorney for **Plaintiff** | September 21, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Bernkppf Goodman LLP, 125 Summer Street, Boston, MA 02110
(617) 790-3000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

### Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## EXHIBIT A

## I. <u>DEFINITIONS</u>

1.    The term "Blue Hills" shall mean Plaintiff Blue Hills Office Park LLC, including any of its agents, servants, attorneys, and all other persons acting on its behalf.

2.    The term "J.P. Morgan" shall mean Defendant J.P. Morgan Chase Bank, As Trustee For The Registered Holders Of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1 including any of its agents, servants, attorneys, and all other persons acting on its behalf.

3.    The term "CSFB" shall mean Defendant CSFB 1999-C1 Royall Street, LLC including any of its agents, servants, attorneys, and all other persons acting on its behalf.

4.    The term "LNR" shall mean Lennar Partners, Inc. or LNR Partners, Inc., including any of their agents, servants, attorneys, and all other persons acting on their behalf.

5.    The term "Wells Fargo" shall mean Wells Fargo National Association, including any of its agents, servants, attorneys, and all other persons acting on its behalf.

6.    The term "Fineberg" shall mean Gerald Fineberg, including any agents, servants, attorneys, and all other persons acting on his behalf.

7.    The term "Langelier" shall mean William Langelier, including any agents, servants, attorneys, and all other persons acting on his behalf.

8.    The term "Property" shall mean the property located at 150 Royall Street, Canton, Massachusetts and known as the Blue Hills Office Park.

9.    The term "Loan" shall mean the $33,149,000.00 million loan to Blue Hills from Credit Suisse First Boston Mortgage Capital, LLC.

10.    The term "Loan Documents" shall mean the Term Sheet, Mortgage Agreement, Note, Cash Management Agreement, Guaranty and other documents as defined in paragraph 1(r) of the Mortgage Note dated as of September 14, 1999 between Blue Hills and Credit Suisse First Boston Mortgage Capital, LLC.

## II. **DOCUMENTS**

Please produce the following documents related to the Loan, Loan Documents, Property or otherwise related to the claims and defenses in the litigation known as *Blue Hills Office Park LLC v. J.P. Morgan Chase Bank, et al.*, United States District Court, District of Massachusetts, Civil Action No. 05-CV-10506(WGY) ("Litigation"):

1.    Pooling and Servicing Agreement dated October 11, 1999. (Deposition Ex. 51)[1]

2.    Tax Form 1099A for 2004 (marked as Deposition Ex. 413)

3.    Lennar Partners, Inc. Advisor Consent For Asset Sale at Discount (Deposition Ex. 101)

4.    Letter from Plunkett to Rosen regarding proposal for services (Deposition Ex. 118)

5.    April 26, 2005 Proforma Closing Statement (Deposition Ex. 122)

6.    Letter dated May 3, 2005 from Rosen to Nealon (Deposition Ex. 123)

7.    Management Committee Approval Annex A (Deposition Ex. 124)

8.    Payment Application dated May 2, 2005 (Deposition Ex. 148)

9.    30(b)(6) Notice of Taking Deposition of LNR

10.    Letter from DLA Piper to Peter B. McGlynn dated February 27, 2006 objecting to topics on 30(b)(6) Notice of Taking Deposition of J.P. Morgan and CSFB.

---

[1] During the Litigation, some of these documents were marked as deposition exhibits. The references to deposition exhibits are included.

11.    The following e-mails or other written communications between or among various representatives of LNR and/or Wells Fargo:

- Email dated April 28, 2004 from Wodicka to Wolpert/Golinsky (Deposition Ex. 63)
- Email dated August 12, 2004 from Boord to Reed (Deposition Ex. 65)
- Email dated September 11, 2003 from Berger to Polcari (Deposition Ex. 68)
- Email dated September 15, 2003 From Cooper to Perillo (Deposition Ex. 69)
- Email dated September 16, 2003 from Polcari to Golinsky  (Deposition Ex. 70)
- Email dated September 17, 2003 from Taylor to Golinsky (Deposition Ex. 71)
- Email dated September 13, 2004 From Polcari to Golinsky (Deposition Ex. 73)
- Email dated September 8, 2004 From Golinsky to Polcari (Deposition Ex. 74)
- Email dated September 8, 2004 From Benedit to Polcari (Deposition Ex. 75)
- Email dated September 24, 2004 From Polcari to Rutman (Deposition Ex. 76)
- Email dated September 9, 2004 From Wolpert to Schrager (Deposition Ex. 112)
- Email dated August 19, 2004 From Schrager to Hall (Deposition Ex. 78)
- Email dated April 22, 2004 From Wodicka to Wolpert (Deposition Ex. 79)
- Email dated April 22, 2004 From Wodicka to Wolpert (Deposition Ex. 80)
- Email dated April 27, 2004 From Wodicka to Golinsky (Deposition Ex. 81)
- Email dated August 19, 2004 from Wodicka to Pesin (Deposition Ex. 85)
- Email dated April 27, 2004 from Golinsky to Wolpert (Deposition Ex. 86)
- Email dated April 28, 2004 from Wodicka to Golinsky (Deposition Ex. 87)
- Email dated August 19, 2004 To Wolpert from Pesin (Deposition Ex. 88)
- Email dated September 13, 2004 To Polcari from Wolpert (Deposition Ex. 89)
- Email dated August 18, 2004 To REFSG New Loan Transfers from Taylor (Deposition Ex. 90)
- Email dated August 19, 2004 To REFSG New Loan Transfers from Taylor (Deposition Ex. 91)
- Email dated August 23, 2004 To Wolpert from Schrager  (Deposition Ex. 92)
- Email dated September 13, 2004 To Benedit from Wolpert (Deposition Ex. 93)
- Email dated September 13, 2004 To Wolpert from Benedit(Deposition Ex. 94)
- Email dated September 13, 2004 To Benedit from Wolpert (Deposition Ex. 95)
- Email dated October 8, 2004 To Polcari from Warshaw (Deposition Ex. 96)
- Email dated October 13, 2004 To Polcari from Pesin (Deposition Ex. 97)
- Email dated October 28, 2004 To Golinsky from Polcari (Deposition Ex. 99)
- Email dated October 28, 2004 To Torres from Polcari (Deposition Ex. 100)
- Email dated October 26, 2004 To Golinsky from Polcari (Deposition Ex. 102)
- Email dated November 2, 2004 To Polcari from Benedit (Deposition Ex. 103)
- Email dated November 8, 2004 To Polcari from Rosen (Deposition Ex. 105)

3

- Email dated November 8, 2004 To Rosen from Polcari (Deposition Ex. 106)
- Email dated November 8, 2004 To Golinsky from Polcari (Deposition Ex. 107)
- Email dated November 9, 2004 To Polcari from Golinsky (Deposition Ex. 108)
- Email dated September 20, 2004 To Polcari from Rosen (Deposition Ex. 111)
- Email dated September 9, 2004 To Schrager/Hall from Wolpert August 18, 2004 (Deposition Ex. 112)
- Email dated October 8, 2004 To Rosen from Stevens (Deposition Ex. 113)
- Email dated October 8, 2004 To Rosen from Stevens (Deposition Ex. 114)
- Email dated October 11, 2004 To Rosen from Stevens (Deposition Ex. 115)
- Email dated November 4, 2004 To Rosen from Frisoli (Deposition Ex. 116)
- Email dated November 1, 2004 To Polcari from Hall (Deposition Ex. 117)
- Email dated April 6, 2005 to Rosen from Frisoli (Deposition Ex. 119)
- Email dated April 15, 2005 to Perry from Nealon (Deposition Ex. 120)
- Email dated April 1, 2005 To Rosen from Frisoli (Deposition Ex. 121)
- Email dated January 19, 2005 To Rosen from Sotolong (Deposition Ex. 125)
- Email dated April 27, 2004 From Curtis Mallegni to Vi Nhan (Deposition Ex. 135)
- Email dated May 7, 2004 From Vi Nhan to Larry Cowling (Deposition Ex. 137)
- Email dated September 17, 2003 From Larry Golinsky to Vickie Taylor and Emily Cooper (Deposition Ex. 141)
- Email dated November 12, 2003 From Vickie Taylor to Jayson Seidman (Deposition Ex. 142)
- Email dated April 29, 2005 E-mail with attachments from CMS Cash Control (Deposition Ex. 147)
- Email dated April 29, 2005 From Guadalupe Martinez re: wire received (Deposition Ex. 151)
- Email dated January 18, 2005 From Ana Larracas to Sharon Daley (Deposition Ex. 152)

#346190 v1/14500/9985

# LENDER'S MOTION TO QUASH SUBPOENAS

# EXHIBIT 2

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF **Massachusetts**

BLUE HILLS OFFICE PARK LLC

V.

J.P. MORGAN CHASE BANK and CSFB 1999 - C1
ROYALL STREET LLC
v. WILLIAM LANGELIER and GERALD FINEBERG

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]    05-CV-10506 (WGY)

TO:    **Keeper of Records**
       **LNR Partners**
       **300 Crown Colony Drive, 5th Floor**
       **Quincy, MA**

☒ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY United States District Court | COURTROOM **18** |
|---|---|
| One Courthouse Way, Boston, MA 02210 | on call for trial beginning |
| **\*\*Before appearing, please call Attorney Peter McGlynn or Attorney Meredith Swisher to confirm any changes in scheduling** | DATE AND TIME September **25** 2006 9:00 a.m. and from day to day thereafter |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

United States District Court, One Courthouse Way, Boston, MA 02210
September 25, 2006 at 9:00 a.m.
                    **SEE ATTACHED SCHEDULE A FOR LIST OF DOCUMENTS**

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Meredith Swisher*   Meredith A. Swisher, Attorney for Plaintiff | September 21, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Bernkppf Goodman LLP, 125 Summer Street, Boston, MA 02110
(617) 790-3000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)  A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)  (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production.  Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)  (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)  fails to allow reasonable time for compliance,

(ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)  subjects a person to undue burden.

(B) If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1)  A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## EXHIBIT A

### I. DEFINITIONS

1.　　The term "Blue Hills" shall mean Plaintiff Blue Hills Office Park LLC, including any of its agents, servants, attorneys, and all other persons acting on its behalf.

2.　　The term "J.P. Morgan" shall mean Defendant J.P. Morgan Chase Bank, As Trustee For The Registered Holders Of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1 including any of its agents, servants, attorneys, and all other persons acting on its behalf.

3.　　The term "CSFB" shall mean Defendant CSFB 1999-C1 Royall Street, LLC including any of its agents, servants, attorneys, and all other persons acting on its behalf.

4.　　The term "LNR" shall mean Lennar Partners, Inc. or LNR Partners, Inc., including any of their agents, servants, attorneys, and all other persons acting on their behalf.

5.　　The term "Wells Fargo" shall mean Wells Fargo National Association, including any of its agents, servants, attorneys, and all other persons acting on its behalf.

6.　　The term "Fineberg" shall mean Gerald Fineberg, including any agents, servants, attorneys, and all other persons acting on his behalf.

7.　　The term "Langelier" shall mean William Langelier, including any agents, servants, attorneys, and all other persons acting on his behalf.

8.　　The term "Property" shall mean the property located at 150 Royall Street, Canton, Massachusetts and known as the Blue Hills Office Park.

9.　　The term "Loan" shall mean the $33,149,000.00 million loan to Blue Hills from Credit Suisse First Boston Mortgage Capital, LLC.

10.    The term "Loan Documents" shall mean the Term Sheet, Mortgage Agreement, Note, Cash Management Agreement, Guaranty and other documents as defined in paragraph 1(r) of the Mortgage Note dated as of September 14, 1999 between Blue Hills and Credit Suisse First Boston Mortgage Capital, LLC.

## II. **DOCUMENTS**

Please produce the following documents related to the Loan, Loan Documents, Property or otherwise related to the claims and defenses in the litigation known as *Blue Hills Office Park LLC v. J.P. Morgan Chase Bank, et al.*, United States District Court, District of Massachusetts, Civil Action No. 05-CV-10506(WGY) ("Litigation"):

1.    Pooling and Servicing Agreement dated October 11, 1999. (Deposition Ex. 51)[1]

2.    Tax Form 1099A for 2004 (marked as Deposition Ex. 413)

3.    Lennar Partners, Inc. Advisor Consent For Asset Sale at Discount (Deposition Ex. 101)

4.    Letter from Plunkett to Rosen regarding proposal for services (Deposition Ex. 118)

5.    April 26, 2005 Proforma Closing Statement (Deposition Ex. 122)

6.    Letter dated May 3, 2005 from Rosen to Nealon (Deposition Ex. 123)

7.    Management Committee Approval Annex A (Deposition Ex. 124)

8.    Payment Application dated May 2, 2005 (Deposition Ex. 148)

9.    30(b)(6) Notice of Taking Deposition of LNR

10.    Letter from DLA Piper to Peter B. McGlynn dated February 27, 2006 objecting to topics on 30(b)(6) Notice of Taking Deposition of J.P. Morgan and CSFB.

---

[1] During the Litigation, some of these documents were marked as deposition exhibits. The references to deposition exhibits are included.

11.  The following e-mails or other written communications between or among various representatives of LNR and/or Wells Fargo:

- Email dated April 28, 2004 from Wodicka to Wolpert/Golinsky (Deposition Ex. 63)
- Email dated August 12, 2004 from Boord to Reed (Deposition Ex. 65)
- Email dated September 11, 2003 from Berger to Polcari (Deposition Ex. 68)
- Email dated September 15, 2003 From Cooper to Perillo (Deposition Ex. 69)
- Email dated September 16, 2003 from Polcari to Golinsky  (Deposition Ex. 70)
- Email dated September 17, 2003 from Taylor to Golinsky (Deposition Ex. 71)
- Email dated September 13, 2004 From Polcari to Golinsky (Deposition Ex. 73)
- Email dated September 8, 2004 From Golinsky to Polcari (Deposition Ex. 74)
- Email dated September 8, 2004 From Benedit to Polcari (Deposition Ex. 75)
- Email dated September 24, 2004 From Polcari to Rutman (Deposition Ex. 76)
- Email dated September 9, 2004 From Wolpert to Schrager (Deposition Ex. 112)
- Email dated August 19, 2004 From Schrager to Hall (Deposition Ex. 78)
- Email dated April 22, 2004 From Wodicka to Wolpert (Deposition Ex. 79)
- Email dated April 22, 2004 From Wodicka to Wolpert (Deposition Ex. 80)
- Email dated April 27, 2004 From Wodicka to Golinsky (Deposition Ex. 81)
- Email dated August 19, 2004 from Wodicka to Pesin (Deposition Ex. 85)
- Email dated April 27, 2004 from Golinsky to Wolpert (Deposition Ex. 86)
- Email dated April 28, 2004 from Wodicka to Golinsky (Deposition Ex. 87)
- Email dated August 19, 2004 To Wolpert from Pesin (Deposition Ex. 88)
- Email dated September 13, 2004 To Polcari from Wolpert (Deposition Ex. 89)
- Email dated August 18, 2004 To REFSG New Loan Transfers from Taylor (Deposition Ex. 90)
- Email dated August 19, 2004 To REFSG New Loan Transfers from Taylor (Deposition Ex. 91)
- Email dated August 23, 2004 To Wolpert from Schrager  (Deposition Ex. 92)
- Email dated September 13, 2004 To Benedit from Wolpert (Deposition Ex. 93)
- Email dated September 13, 2004 To Wolpert from Benedit(Deposition Ex. 94)
- Email dated September 13, 2004 To Benedit from Wolpert (Deposition Ex. 95)
- Email dated October 8, 2004 To Polcari from Warshaw (Deposition Ex. 96)
- Email dated October 13, 2004 To Polcari from Pesin (Deposition Ex. 97)
- Email dated October 28, 2004 To Golinsky from Polcari (Deposition Ex. 99)
- Email dated October 28, 2004 To Torres from Polcari (Deposition Ex. 100)
- Email dated October 26, 2004 To Golinsky from Polcari (Deposition Ex. 102)
- Email dated November 2, 2004 To Polcari from Benedit (Deposition Ex. 103)
- Email dated November 8, 2004 To Polcari from Rosen (Deposition Ex. 105)

- Email dated November 8, 2004 To Rosen from Polcari (Deposition Ex. 106)
- Email dated November 8, 2004 To Golinsky from Polcari (Deposition Ex. 107)
- Email dated November 9, 2004 To Polcari from Golinsky (Deposition Ex. 108)
- Email dated September 20, 2004 To Polcari from Rosen (Deposition Ex. 111)
- Email dated September 9, 2004 To Schrager/Hall from Wolpert August 18, 2004 (Deposition Ex. 112)
- Email dated October 8, 2004 To Rosen from Stevens (Deposition Ex. 113)
- Email dated October 8, 2004 To Rosen from Stevens (Deposition Ex. 114)
- Email dated October 11, 2004 To Rosen from Stevens (Deposition Ex. 115)
- Email dated November 4, 2004 To Rosen from Frisoli (Deposition Ex. 116)
- Email dated November 1, 2004 To Polcari from Hall (Deposition Ex. 117)
- Email dated April 6, 2005 to Rosen from Frisoli (Deposition Ex. 119)
- Email dated April 15, 2005 to Perry from Nealon (Deposition Ex. 120)
- Email dated April 1, 2005 To Rosen from Frisoli (Deposition Ex. 121)
- Email dated January 19, 2005 To Rosen from Sotolong (Deposition Ex. 125)
- Email dated April 27, 2004 From Curtis Mallegni to Vi Nhan (Deposition Ex. 135)
- Email dated May 7, 2004 From Vi Nhan to Larry Cowling (Deposition Ex. 137)
- Email dated September 17, 2003 From Larry Golinsky to Vickie Taylor and Emily Cooper (Deposition Ex. 141)
- Email dated November 12, 2003 From Vickie Taylor to Jayson Seidman (Deposition Ex. 142)
- Email dated April 29, 2005 E-mail with attachments from CMS Cash Control (Deposition Ex. 147)
- Email dated April 29, 2005 From Guadalupe Martinez re: wire received (Deposition Ex. 151)
- Email dated January 18, 2005 From Ana Larracas to Sharon Daley (Deposition Ex. 152)

#346216 v1/14500/9985

4

# LENDER'S MOTION TO QUASH SUBPOENAS

# EXHIBIT 3

Westlaw.

708 F.Supp. 492                                                                    Page 1

708 F.Supp. 492
**(Cite as: 708 F.Supp. 492)**

C

United States District Court,E.D. New York.
In re GRAND JURY PROCEEDINGS.
**Misc. No. 88-522.**

Dec. 8, 1988.

Government moved to hold corporation in civil contempt for failing to comply with subpoenas duces tecum and an order of the court. The District Court, Mishler, J., held that corporation would be held in contempt for failing to produce a competent custodian records in compliance with the subpoenas and prior order.

So ordered.

West Headnotes

**[1] Witnesses 410 ⟜16**

410 Witnesses
   410I In General
      410k16 k. Subpoena Duces Tecum. Most Cited Cases

**Witnesses 410 ⟜298**

410 Witnesses
   410III Examination
      410III(D) Privilege of Witness
         410k298 k. Privilege as to Production of Documents. Most Cited Cases
Custodian of corporate records must produce books or records responsive to a subpoena duces tecum and can be required to identify or authenticate the documents.

**[2] Witnesses 410 ⟜16**

410 Witnesses
   410I In General
      410k16 k. Subpoena Duces Tecum. Most

Cited Cases

**Witnesses 410 ⟜298**

410 Witnesses
   410III Examination
      410III(D) Privilege of Witness
         410k298 k. Privilege as to Production of Documents. Most Cited Cases
Duty of custodian of corporate records extends beyond mere production or nonproduction of documents; an agent who fails to produce documents to comply with a valid subpoena must, if called before a court, give sworn testimony that he does not possess them.

**[3] Witnesses 410 ⟜16**

410 Witnesses
   410I In General
      410k16 k. Subpoena Duces Tecum. Most Cited Cases
A corporation has not fulfilled its obligation to produce records responsive to a subpoena if it produces an agent that it has sent on an unguided search for the records.

**[4] Witnesses 410 ⟜16**

410 Witnesses
   410I In General
      410k16 k. Subpoena Duces Tecum. Most Cited Cases
Corporation failed to comply with subpoenas duces tecum requiring that it produce originals of all responsive documents and produce a custodian of the records who had knowledge of the search done for the documents; it was not clear from custodian's testimony whether documents where copies of originals, and custodian admitted to limited knowledge of the types of documents generated and almost no knowledge about contents of some of the documents she produced or the nature of the search conducted for them.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

708 F.Supp. 492                                                                                                    Page 2

708 F.Supp. 492
**(Cite as: 708 F.Supp. 492)**

Sharon I. Kurn, Dept. of Justice, Office of Consumer Litigation, Washington, D.C..

Carl R. Soller, Soller, Singer & Horn, Jamaica, N.Y..

**\*492** MISHLER, District Judge.

The government moves this court to hold the John Doe Corporation (the corporation) in civil contempt for failing to comply with subpoenas *duces tecum* dated November 18, 1986, and June 15, 1988, and with a July 15, 1988 order of this court ("the order" ).

The subpoenas *duces tecum* required that the corporation produce the *originals* of all responsive documents and produce a custodian of the records who had knowledge of the search done for those documents. The order reflects the same request and asks the custodian to produce records reflecting off-the-book payments to employees and payroll records of any and all supervisors who signed " glazing sheets." (Transcript of Motion dated July 15, 1988, pp. 22-24; 33-37).

Ms. L, in a declaration signed January 14, 1988, asserts that she is Assistant to the President of the corporation who works limited hours with the books and as a travel arranger. In this capacity she declares that searches were done in compliance with the subpoenas and all documents responsive to them have been either "provided ... or obtained during the course of a search warrant." L testified as Custodian of the Records before the grand jury on January 21, 1988, March 17, 1988 and again on July 27, 1988.

L, according to the government, has produced copies instead of originals and has been unable to testify as to who searched for the responsive documents, if a search in fact had been carried out, or whether any documents had been knowingly withheld.

Documents have been produced pursuant to each subpoena. In addition the government seized documents pursuant to a search warrant executed on December 3 and 4, 1987.

The government questions the completeness of the documents produced and claims that the corporation

by designating an incompetent custodian of the records failed to comply with the subpoena. L, who assumed**\*493** the duties of custodian in January, 1988, testified that she had little knowledge about the search done for documents responsive to the subpoena.

*The Duties of a Corporation's Custodian of Records*

In the leading case of *United States v. Austin-Bagley Corp.,* 31 F.2d 229 (2d Cir.), *cert. denied,* 279 U.S. 863, 49 S.Ct. 479, 73 L.Ed. 1002 (1929), Judge Learned Hand held that a corporate officer could be compelled to identify and authenticate corporate records produced pursuant to a valid subpoena duces tecum, reasoning:

[W]e think that the greater includes the less, and that, since the production can be forced, it may be made effective by compelling the produced to declare that the documents are genuine.... [T]estimony auxiliary to the production is as unprivileged as are the documents themselves. By accepting the office of custodian the holder not only exposes himself to producing the documents, but to making their use possible without requiring other proof than his own.

*United States v. Austin-Bagley Corp.,* 31 F.2d at 234 .

When a subpoena is addressed to a corporation, the corporation must find some means by which to comply because there is no Fifth Amendment defense available to it. *Braswell v. United States,* 487 U.S. 99, 108 S.Ct. 2284, 2294, 101 L.Ed.2d 98 (1988) (citing *In re Sealed Case,* 266 U.S. App.D.C. 30, 44, n. 9, 832 F.2d 1268, 1282, n. 9 (1987)).

Obviously, an individual must act on the corporation's behalf to produce the documents responsive to the subpoena. A corporation may appoint a custodian of records to act in this representative capacity. *Braswell,* 108 S.Ct. at 2294 [citations omitted].

Most of the case law developed in this area deals with the unavailability of a Fifth Amendment

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

708 F.Supp. 492
**(Cite as: 708 F.Supp. 492)**

defense for the custodian of corporate records.[FN1] We can determine the duties of the custodian from these cases.

> FN1. This issue has been recently addressed by the Supreme Court in *Braswell.*

In *United States v. Barth,* 745 F.2d 184 (2d Cir.1984), *cert. denied,* 470 U.S. 1004, 105 S.Ct. 1356, 84 L.Ed.2d 378 (1985), while courts were still struggling with the possibility of the corporate record-keeper invoking his own Fifth Amendment privilege, the Second Circuit made it clear that it was the basic obligation of the corporation to comply with the summons by producing *someone* -any knowledgeable employee, or even a new agent-to testify about the records. *Id.* at 1240.

The issue to be decided here, however, is what the custodian must do for the corporation to have properly complied with the requirements of the subpoena.

[1] Clearly, the custodian must produce books or records responsive to the subpoena and can be required to identify or authenticate these documents. *Curcio v. United States,* 354 U.S. 118, 125, 77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225 (1957) (dicta). The act of production itself is a representation that the documents produced are the ones demanded by the subpoena. *Id.*

[2] The duty of the custodian of records, however, extends beyond mere production or non-production of documents. An agent who fails to produce documents to comply with a valid subpoena must, if called before a court, give sworn testimony that he does not possess them. This is part of his duty to comply with a lawful demand for them. *United States v. O'Henry's Film Works, Inc.,* 598 F.2d 313 (2d Cir.1979).

[3] The corporation has not fulfilled its obligation if it produces an agent that it has sent on an unguided search for records. In *Braswell,* the subpoena was issued to the petitioner in his capacity as corporate president. It ordered him to produce the

corporation's books and records. The petitioner was the president of the two corporations in question and sole shareholder of one of them. The Court rejected petitioner's claim that he could invoke his Fifth Amendment privilege because his act of production would have independent testimonial significance which would incriminate **494** him individually. In reaching this conclusion the Court addressed and rejected two solutions suggested by the petitioner that would have enabled the documents to be produced without this asserted infringement of his rights.[FN2] One proposed solution was to allow the corporation to choose an agent to produce the records who could do so without fear of self-incrimination. At the same time, petitioner insisted that he could not be required to help the appointed custodian in his search for the subpoenaed documents. The Court reasoned that this proposed "solution" was a chimera. "[W]here the corporate custodian is likely the only person with knowledge about the demanded documents-the appointment of a surrogate will simply not ensure that the documents sought will ever reach the grand jury room; the appointed custodian will essentially be sent on an unguided search." 108 S.Ct. at 2294.

> FN2. The petitioner also suggested that the subpoena could have been served on him along with a grant of immunity as to the act of production. The Court rejected this solution as one having potentially serious consequences involving the heavy burden the government might later have to bear to prevent the preclusion of crucial evidence that was legitimately obtained. *Braswell,* 108 S.Ct. at 2295.

In the case before us, the government allowed the corporation to choose its own agent, directing the subpoena to the Custodian of Records. Section II, clauses 1 and 2 of the subpoena issued on November 18, 1986 provides:
1. The subpoenaed party is to designate an officer or employee having personal and thorough knowledge of the records and who shall have been responsible for the search for documents responsive to this subpoena. That person shall appear before

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

708 F.Supp. 492                                                    Page 4

708 F.Supp. 492
**(Cite as: 708 F.Supp. 492)**

the grand jury on the subpoena return date, produce the documents called for, and be examined concerning the completeness of the response.

2. The subpoenaed party is required to produce to the grand jury all documents responsive in whole or in any part to any paragraph or subparagraph of this subpoena attachment.

Section II, Clauses 3, 5, 6 and 7 of the subpoena issued on June 15, 1988 provides:

3. The subpoenaed party is to designate an officer or employee as the person responsible to produce documents to the grand jury on the subpoena return date (the "Custodian"). Such Custodian shall have direct, personal, and thorough knowledge of the company's records and shall have knowledge of, and responsibility for the search conducted by your company for documents responsive to this subpoena. The Custodian will be examined concerning the completeness of the response on the return date.

5. On the subpoena return date, the Custodian is to appear before the Grand Jury, produce the documents called for, and be examined concerning the Company's production.

6. No document called for by this subpoena shall be destroyed, modified, removed, or otherwise made inaccessible to the Grand Jury.

7. If the Company has knowledge of any document that would be responsive to this subpoena attachment but has been lost, destroyed, or discarded in the last seven years, it shall identify to the extent possible each such document and provide an explanation of the loss, destruction, or discarding (including identification of each person authorizing or having knowledge of the loss, destruction or discarding).

The subpoenas required the corporation to designate an agent with knowledge of the company's records, who could be held responsible for the search conducted and could be examined before the grand jury with regard to the completeness of the response. Case law supports this, rejecting the view that an appointed agent sent on an "unguided search" satisfies the subpoena. The custodian is to be held responsible for both

production with the ability to authenticate and/or non-production with the ability to testify to non-possession. It is necessary for the corporation to appoint a custodian who satisfies these requirements.

### *495 Has L Satisfied the Requirements of a Custodian of Records

On February 23, 1987, the company provided documents meant to be responsive to the November, 1986 subpoena. However, it was not until January 1988 that the company provided the name of a custodian of records. On January 14, 1988 L signed a declaration attesting to the fact that searches were conducted to comply with the demands of the subpoena and that "[a]ll documents called for by the subpoenas and located during these good faith searches have either been provided to you in the past or obtained during the course of a search warrant or are enclosed herein."

### Compliance with the November, 1986 Subpoena

L testified before a grand jury sitting in the Eastern District of New York on January 21, 1988 and again on March 17, 1988. L's testimony shows she knew little about the search done pursuant to the November, 1986 subpoena, including what documents had been provided, whether all of the responsive documents were turned over to the grand jury (as compared to being seized during the subsequent search), and whether any documents had been knowingly withheld. However, L's declaration, signed in January, 1988 only claims that the documents called for were, by the time of her appearance, in government hands. She claimed to have been only a minor participant in the search made for documents pursuant to the November, 1986 subpoena.

This, however, may be considered just a technical contempt if it is shown that both the subpoenas and the judicial order have since been properly complied with.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

708 F.Supp. 492

Page 5

708 F.Supp. 492
**(Cite as: 708 F.Supp. 492)**

*Compliance with the June 15, 1988 Subpoena and the Judicial Order*

[4] The subpoena issued on June 15, 1988 was reviewed by this court on July 15, 1988 at which time the court ordered the company to produce any records of off-the-book payments to employees and the payroll records of supervisors who signed the glazing sheets. The court instructed the custodian of records to produce the records responsive to the order on July 20, 1988.

On July 20th, Z appeared before the grand jury as custodian of records. His testimony revealed that he had not read the subpoena and that he knew nothing of the search for responsive documents. In response, this court signed a subpoena *duces tecum* issued to L. It was identical to the subpoena which had been issued to the firm on June 15, 1988.

On July 27, 1988, L again testified before the grand jury for whom she produced an additional number of corporate documents. It is not clear from her testimony whether these documents are copies of originals, the corporation's preserved versions which are copies of originals, or copies of the latter. More importantly, although L is willing to authenticate the documents produced to date, she is still not able to satisfy the requirements of a corporate Custodian of Records. She admits to limited knowledge of the types of documents generated by the firm and almost no knowledge about the contents of some of the documents she produced or the nature of the search conducted for them. Her assertion that she has produced all the documents responsive to the subpoena to the best of her knowledge and that she has conducted a good faith search can be given little weight. Her testimony under oath, that the corporation does not possess any responsive documents that she has not produced "to the best of her knowledge" when her knowledge is so limited is unsatisfactory.

CONCLUSION

The court finds that the corporation is in contempt for failing to produce a competent custodian of records in compliance with two subpoenas and a

judicial order. The only person who appears to have the requisite knowledge for compliance is Mr. E, President of the corporation.

The court directs E and L to appear on December 21, 1988 at 9:00 a.m. and give testimony before this court as to:

(1) the manner in which originals and copies of documents had been made;

(2) the preservation or disposition of originals of documents;

**\*496** (3) whether originals of documents (including glazing sheets) contained any information of any kind (even a symbol or mark) not on the copy;

(4) any and all other matters to which the aforementioned subpoenas referred.

The court defers the imposition of fines and penalties against the corporation for past contempts and to compel compliance with the subpoenas until completion of the hearing.

SO ORDERED.

E.D.N.Y.,1988.
In re Grand Jury Proceedings
708 F.Supp. 492

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.