UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLUE HILLS OFFICE PARK LLC,<br>    Plaintiff/Defendant-in-Counterclaim<br><br>v.<br><br>J.P. MORGAN CHASE BANK, as Trustee for<br>the Registered Holders of Credit Suisse First<br>Boston Mortgage Securities Corp., Commercial<br> Mortgage Pass-Through Certificates,<br>Series 1999-C1<br>    Defendant<br><br>and CSFB 1999 – C1 ROYALL STREET, LLC<br>    Defendant/Plaintiff-in-Counterclaim<br><br>and<br><br>WILLIAM LANGELIER and<br>GERALD FINEBERG<br>    Defendants-in-Counterclaim | Civil Action No. 05-CV-10506 (WGY) |

**MOTION OF BLUE HILLS OFFICE PARK LLC,
WILLIAM LANGELIER AND GERALD FINEBERG FOR
JUDGMENT ON PARTIAL FINDINGS PURSUANT TO FED. R. CIV. P. 52(c)**

Pursuant to Fed. R. Civ. P. 52(c), Blue Hills Office Park LLC, Gerald Fineberg and William Langelier (collectively, "Blue Hills") hereby moves for judgment on partial findings as to all causes of action asserted against J.P. Morgan Chase Bank, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1, and CSFB 1999-C1 Royall Street, LLC (collectively, "the Lender"). The presentation of Blue Hills' case-in-chief reveals that not only has Blue Hills made a *prima facie* showing for its causes of action but that Lender will be unable to demonstrate the existence of any cognizable defense thereto.

In support of this Motion, Blue Hills avers and asserts as follows:

1. A judgment on partial findings in a non-jury trial is the functional equivalent of a judgment as a matter of law in a jury trial. Fed. R. Civ. P. 52, advisory committee note of 1991 (judgment on partial findings "parallels the revised Rule 50(a), but is applicable to non-jury trials"). In deciding whether to render judgment on partial findings the court must make its own evaluation of and weigh all evidence, including making determinations regarding credibility and resolve the case on the basis of the preponderance of the evidence. *See, e.g., International Union of Operating Eng'rs Local Union 103 v. Indiana Constr. Corp.*, 13 F.3d 253, 257 (7th Cir. 1994) (court should weigh evidence and resolve any conflicts); *Grant v. Bullock County of Educ.*, 895 F. Supp. 1506, 1509 (M.D. Ala. 1995) (court may resolve conflicts in evidence as well as make credibility assessments).

2. Blue Hills asserts causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of M.G.L. c. 93A. The claims are predicated, in the main, on Lender's failure to adhere to both its own and industry standards regarding the servicing of the Loan and Lender's disingenuous acts designed to wrongfully obtain not only the real property and a building thereon located at 150 Royall Street, Canton, Massachusetts and known as the Blue Hills Office Park (the "Property") but also approximately $4.1 million in Blue Hills' reserve accounts.

3. The implied covenant of good faith and fair dealing in every contract in Massachusetts, requires the parties to "deal honestly and in good faith in both the performance and enforcement of the terms of their contract . . . ." *Hawthorne's, Inc. v. Warrenton Realty, Inc.*, 414 Mass. 200 (1993); *Judge Rotenberg Educational Center, Inc. v. Commissioner of the Department of Mental Retardation*, 424 Mass. 430 (1997). This implied covenant serves to

guaranty that the parties "remain faithful to the intended and agreed expectations of the parties in their performance." *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004). The implied covenant of good faith and fair dealing includes a covenant that a party "shall [not] do anything which will have the effect of or injuring the rights of the other party to receive the fruits of that contract." *Drucker v. Roland Wm. Jutras Associates, Inc.*, 37 Mass. 383, 385 (1976) citing *Uproar Co. v. National Broadcasting Co.*, 81 F.2d 373, 377 (1st Cir. 1936). Moreover, a duty, although not expressed, may be implied which obligates a party to take positive steps to cooperate in achieving another party's contractual rights and objectives. *Robert Brennan, et al. v. Carvel Corporation*, 1989 U.S. Dist. LEXIS 16104 (D. Mass. July 25, 1989), citing *L.L. Hall Constr. Co. v. United States*, 379 F.2d 559 (Ct. Cl. 1966). The implied covenant was breached by Lender's deceptive and deceitful actions that resulted in the wrongful foreclosure of the Property and confiscation of Blue Hills' reserve accounts. Lender abnegated its duty to, *inter alia*, discuss events with Blue Hills. This failure was compounded by Lender's unprofessional and scheming conduct designed to lull Blue Hills into believing that – as had been done previously – Lender was willing to seek consensual and mutually beneficial solutions to any problems concerning the Property. Blue Hills incorporates by reference as if fully set forth herein the Memorandum of Blue Hills Office Park LLC, Gerald Fineberg and William Langelier on Implied Covenant of Good Faith and Fair Dealing, filed contemporaneously herewith.

    4.    There can be little doubt that Lender's actions constitute a breach of M.G.L. c. 93A, which prohibits unfair and deceptive business practices. M.G.L. c. 93 §2. Pursuant to that statute, recovery may be had by a business that suffers "any loss . . . as the result of the use or employment by another person . . . of an unfair or deceptive act . . . ." M.G.L. c. 93A, §11.

"Conduct 'in disregard of known contractual arrangements' that is intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes." *Anthony's Pier Four, Inc. v. HBC Associates*, 411 Mass. 451 (1991) quoting *Wang Laboratories, Inc. v. Business Incentives, Inc.*, 398 Mass. 854 (1986). As discussed *supra*, Lender's actions were not only unfair and deceptive but were calculated to provide significant unwarranted financial rewards for Lender. The numerous e-mails between and among LNR and Wells Fargo employees show that the actions against Blue Hills were both deliberate and were calculated to harm Blue Hills. See, e.g. Trial Exhibits 196-200.

5. Lender's contractual breaches include, *inter alia*, a failure to deny Blue Hills access to approximately $4.1 million of its *own* money. Lender also breached its contractual obligations of candor and cooperation, particularly as regards the payment of real estate taxes. The many modifications effected by the parties' course of conduct were ignored and flouted once Lender realized how it could profit by foreclosing on the Property.

6. The testimony of Blue Hills' witnesses and the documents introduced into evidence demonstrate the strength of Blue Hills' claims for breach of contract, breach of the implied covenant of good faith and fair dealing and violation of M.G.L. c. 93A. Testimony adduced at trial demonstrates that the Lender, through its agents Wells Fargo and LNR, has significantly damaged Blue Hills by its unfair and untoward actions. There is credible and convincing evidence that Lender has improperly impeded Blue Hills' right to access approximately $4.1 million of its own money deposited into reserve accounts. Further, testimony and documentary evidence proves that Wells Fargo remained silent when it had an obligation to speak. *See, McGurn v. Bell Microproducts, Inc.*, 284 F.3d 86, 90 (1st Cir. 2002).

7. Although Lender has not yet put its case-in-chief against Blue Hills into evidence, there can be little doubt – even at the end of Blue Hills' case – that Lender cannot prove any personal liability of William Langelier and Gerald Fineberg. Simply, not only does the record fail to reflect the existence of any defaults sufficient to trigger liability pursuant to Section 10 of the Mortgage Agreement but the evidence adduced at trial demonstrates that the Settlement Proceeds from the Norfolk Action were properly handled and were neither assigned, transferred or conveyed in derogation of the pertinent loan documents nor any legal obligations of Blue Hills, Fineberg or Langelier. Further, because of the course of dealing between Blue Hills and Lender – as well as the implied covenant of good faith and fair dealing – there has not been any default by Blue Hills. Thus, not only was the foreclosure wrongful but there has not been any trigger to personal liability.

8. Moreover, evidence adduced at trial demonstrates that Lender and its agents failed to adhere to prudent banking practices. In fact, Lender not only ran roughshod over industry practices but breached the terms of its own Pooling and Servicing Agreement ("PSA"). Not only does the evidence adduced at trial demonstrate that the Servicing Standard contained in Section 3.01 of the PSA has been breached but Blue Hills introduced expert testimony to that effect. Blue Hills' banking expert, Richard Clarke ("Clarke") testified, *inter alia*, that borrowers involved in securitized loan transactions have the right to expect that their loans will be administered according to the pertinent Servicing Standard.

WHEREFORE, Blue Hills respectfully requests that this Court enter an order:

1. Granting judgment on partial findings in Blue Hills' favor;

2. Awarding Blue Hills its actual and appropriate damages, plus interest, costs and attorneys' fees; and

3.  Providing such other and further relief as is just and proper.

                              BLUE HILLS OFFICE PARK LLC, WILLIAM
                              LANGELIER AND GERALD FINEBERG,
                              By their attorneys,

/s/ Meredith A. Swisher
Peter B. McGlynn, Esquire, BBO No. 333660
Meredith A. Swisher, Esquire, BBO No. 646866
Bernkopf Goodman LLP
125 Summer Street, Suite 1300
Boston, Massachusetts  02110
Telephone:     (617) 790-3000
Facsimile:     (617) 790-3300
pmcglynn@bg-llp.com
mswisher@bg-llp.com

Dated:  October 11, 2006
#346291 v1/14500/9985