UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BLUE HILLS OFFICE PARK LLC, )<br>    Plaintiff/Defendant-in-Counterclaim )<br> )<br>v. )<br> )<br>J.P. MORGAN CHASE BANK, as Trustee for )<br>the Registered Holders of Credit Suisse First )<br>Boston Mortgage Securities Corp., Commercial )<br>Mortgage Pass-Through Certificates, )<br>Series 1999-C1 )<br>    Defendant )<br> )<br>and CSFB 1999 – C1 ROYALL STREET, LLC )<br>    Defendant/Plaintiff-in-Counterclaim )<br> )<br>and )<br> )<br>WILLIAM LANGELIER and )<br>GERALD FINEBERG )<br>    Defendants-in-Counterclaim )<br> )  | Civil Action No. 05-CV-10506 (WGY) |

**OPPOSITION OF BLUE HILLS OFFICE PARK LLC,
WILLIAM LANGELIER AND GERALD FINEBERG TO
MOTION OF DEFENDANTS AND PLAINTIFFS-IN-COUNTERCLAIM
FOR JUDGMENT ON PARTIAL FINDINGS PURSUANT TO FED. R. CIV. P. 52(c)**

Blue Hills Office Park LLC, Gerald Fineberg and William Langelier (collectively, "Blue Hills") hereby oppose the entry of judgment on partial findings in favor of J.P. Morgan Chase Bank, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1, and CSFB 1999-C1 Royall Street, LLC (collectively, "the Lender"). In particular, the Motion of Defendants and Plaintiffs-in-Counterclaim for Judgment on Partial Findings Pursuant to Fed. R. Civ. P. 52(c) ("Lender's Motion for Judgment") is misguided in its interpretation of the law and wrongfully

assumes certain facts and conclusions that are either contrary to the evidence adduced at trial or which simply lack support in the record.

In further opposition, Blue Hills avers and asserts as follows:

1. A motion at the close of a plaintiff's case is properly treated as one for judgment on partial findings pursuant to Fed. R. Civ. P. 52(c). *Johnson v. Luttrell*, 1999 WL 645288, at *1 (6th Cir. 1999). In essence, Fed. R. Civ. P. 52(c) "enables a court, acting as a trier of fact, to dispose of an action when it is clear that plaintiffs have failed to prove their case." *Fechter v. Connecticut General Life Ins. Co.*, 800 F.Supp. 182, 196 (E.D. Pa. 1992); *Grant v. Bullock, County Board of Education*, 895 F.Supp. 1506, 1508-509 (M.D. Ala. 1995) (stating that court is the finder of fact and may enter judgment for a defendant if the plaintiff fails to establish a crucial element of its case).

2. As discussed in greater detail in the Motion of Blue Hills Office Park LLC, William Langelier and Gerald Fineberg for Judgment on Partial Findings ("Motion for Judgment"), Blue Hills has not only presented a *prima facie* case for its case-in-chief but has done so in a manner evidencing that each of its elements is supported by more than sufficient evidence to justify findings solidly in its favor. The Motion for Judgment is hereby incorporated herein by reference as if fully set forth herein.

3. Lender's Motion for Judgment is predicated on the mistaken assumption that, *inter alia*, there was an "unauthorized transfer of the Payment in 2003 . . . ." Lender's Motion for Judgment, p. 2. The aspersions, innuendo, and inflated prominence given to the treatment of the Settlement Proceeds from the Norfolk Action cannot rationally be seen as anything but a red herring. The testimony of Andrew Cohn, Esquire and the testimony of Kenneth M. Goldberg, Esquire indicate not only the propriety of the manner in which the Settlement Proceeds were held

but fully supports the conclusions that such funds are, *inter alia*, not part of Lender's collateral, have not been distributed, transferred, assigned or conveyed.

4. Likewise, Lender's assertion that there was a disregard of Blue Hills' status as a single purpose entity falls flat. As an initial matter, any putative breach of a representation or warranty in the Loan Documents is not consonant with a "disregard" of the single purpose entity. Blue Hills has introduced sufficient testimony and documentary evidence to demonstrate that nothing was done to trigger the personal liabilities of Fineberg or Langelier. In fact, there is significant evidence that, *inter alia*, the single purpose entity was created at the Lender's behest, that the settlement proceeds of the Norfolk Action did not constitute collateral and that no harm accrued to Lender as a result of the receipt and handling of the Settlement Proceeds. The putative breach of any representations and warranties in the Loan Agreement is not consonant with a disregard or dissolution of the status of Blue Hills as a single purpose entity.

5. In accordance with the Settlement Agreement dated August 5, 2003, the $2,000,000 in Settlement Proceeds were wired to the IOLTA account of Bernkopf, Goodman & Baseman, LLP ("Bernkopf") and then to a clients' funds account maintained by Bernkopf. See Joint Statement of Stipulated Facts, No. 44. Pursuant to an agreement dated December 31, 2004, one-half of the Settlement Proceeds from the Norfolk Action – $1 million – were wired from the Blue Hills' client's funds account to the client's funds account of Wilmer Cutler Pickering Hale and Dorr LLP ("Wilmer Cutler"), William Langelier's attorney. One-half (one million dollars) of the Settlement Proceeds were wired to a client's funds account at Wilmer Cutler in February 2006. Trial Exhibits 26 and 145; Trial Transcript Volume 3, Andrew Cohn Testimony ("Cohn Testimony"), page 139, lines 17-25; Cohn Testimony, Vol. 4, page 21, lines 4-18. The Settlement Proceeds have remained in Blue Hills' possession since they were received on or

about August 8, 2003.  The receipt of the Settlement Proceeds was duly recorded in Blue Hills' financial books and records and such funds have not been distributed to any of the Trust's beneficiaries.  Cohn Testimony, Vol. 3, page 20, lines 9-21.  The Settlement Proceeds were never commingled with any other funds.  They were wired into Bernkopf's clients' fund account bearing the name "Fineberg Royall Associates," a separate account held on behalf of Blue Hills.  Trial Exhibits 26, 145.

6.    In an effort to trigger full recourse liability, Lender baldly asserts that Blue Hills has violated section 1.2 of the Guaranty.  This section provides, *inter alia*, that the guarantors may be responsible for the full amount of the debt if the "[b]orrower fails to maintain its status as a single purpose entity, as required by, and in *accordance with the Mortgage. . . .*" (emphasis supplied).  This phrase, "in accordance with the Mortgage" unambiguously directs the reader to this clause's counterpart found in Section 54 of the Mortgage Agreement, which requires that "[m]ortgagor *intentionally* fails to maintain its status as a single purpose entity in accordance with the provisions of the mortgage." (emphasis supplied).  Lender's attempt to buttress its argument by referencing Section 12(l) of the Mortgage Agreement is unavailing.  Lender has not – and cannot – prove that any commingling has occurred.  The funds from the settlement entered into distinct and separate accounts that did not include funds from the guarantors or any other related entity.  It is clear that Lender is attempting to exalt semantics over economic realities by emphasizing the name of the accounts in which the settlement was held.  Even if, *arguendo*, any commingling occurred, Lender has not identified any harm that has befallen it because of any such putative mistake.

7.    The major case that Lender cites in support of its position is readily distinguishable.  In *LaSalle Bank v. Mobile Hotel Props.,* 367 F.Supp.2d 1022, 1029 (E.D. La.

2004), the loan documents had a carve-out provision where full recourse liability would be triggered if the "mortgagor…fails to maintain its status as a single purpose entity." However, in *LaSalle*, the borrower *intentionally amended its articles of organization* thereby changing its purpose from "sole purpose…" to "any lawful activity" two weeks after its first of many failures to make a monthly payment. *Id.* at 1025. No facts in the case at bar even come close to the circumstances of *LaSalle*. Further, in *LaSalle*, the recourse clause did not include the condition "intentionally": "Mortgagor…fails to maintain its status as a single purpose entity…" *Id.* at 1029. The *LaSalle* court, applying Alabama law, noted that the *intent* of the borrower was irrelevant after the borrower argued that the their amended language, as amended, was merely "boilerplate" and "innocuous". *Id. at* 1030.

8. According to the clear language of the Mortgage Agreement, Lender must show that Blue Hills *intentionally* changed its status from a single purpose entity. This it cannot do. Moreover, unlike in *LaSalle*, Lender has failed to introduce any evidence that either putative commingling or any putative breach of representations and warranties regarding the single purpose entity status have harmed Lender in any manner or to any extent. The purpose of these recourse carve-outs is to protect the Lender's interest in the collateral. Lender does not and cannot show how the treatment of the settlement proceeds is inconsistent with this purpose nor has it been demonstrated that Lender's collateral was ever threatened, let alone harmed. Lender has not identified *any* precedent for a breach of any of the representations and warranties regarding a single purpose entity to "explode" the legal status of the entity. Any improper activity is, at worst, *damnum absque injuria.*

9. Blue Hills' claim that Lender and its agents breached various implied contractual agreements is both legally cognizable and more than adequately supported by evidence adduced

at trial.  The implied covenant of good faith and fair dealing in every contract in Massachusetts, requires the parties to "deal honestly and in good faith in both the performance and enforcement of the terms of their contract . . . ."  *Hawthorne's, Inc. v. Warrenton Realty, Inc.*, 414 Mass. 200 (1993); *Judge Rotenberg Educational Center, Inc. v. Commissioner of the Department of Mental Retardation*, 424 Mass. 430 (1997).  This implied covenant serves to guaranty that the parties "remain faithful to the intended and agreed expectations of the parties in their performance." *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004).  A party "shall [not] do anything which will have the effect of or injuring the rights of the other party to receive the fruits of that contract."  *Drucker v. Roland Wm. Jutras Associates, Inc.*, 37 Mass. 383, 385 (1976) citing *Uproar Co. v. National Broadcasting Co.*, 81 F.2d 373, 377 (1st Cir. 1936).  Moreover, a duty, although not expressed, may be implied which obligates a party to take positive steps to cooperate in achieving another party's contractual rights and objectives.  *Robert Brennan, et al. v. Carvel Corporation*, 1989 U.S. Dist. LEXIS 16104 (D. Mass. July 25, 1989), citing *L.L. Hall Constr. Co. v. United States*, 379 F.2d 559 (Ct. Cl. 1966).

    10.    Testimony adduced at trial demonstrates that the implied duties discussed in paragraph 9, *infra*, were materially and repeatedly breached by Lender and its agents.  Testimony has been introduced as to, *inter alia*, Lender's denial of access to Blue Hills of its *own* money, Wells Fargo's failure to adhere to notice requirements, Lender's intent (and action) to bring about a foreclosure and Lender's failure to adhere to Servicing Standards.  Likewise, e-mails between and among LNR and Wells Fargo employees (agents, all, of Lender) amply evidence bad faith.  Moreover, as many activities in the Mortgage Agreement require prior consent of the Lender, the penumbra of such requirements and the implied duty of good faith do not allow Lender to ignore all requests by, figuratively, holding its hands over its ears.  Additionally,

Lender's plaint that the implied covenant of good faith may not be used to contradict contractual terms must be evaluated in light of the fact that the relevant contractual terms were changed by, *inter alia*, the parties' course of dealing.  Even assuming such changes, however, Blue Hills is *not* contradicting terms of the Mortgage Agreement; rather, Blue Hills seeks to hold Lender responsible for deliberately frustrating Blue Hills' attempts to comply with contractual terms.  This is particularly true since it is *undisputed* that the parties' handling of tax issues was *not* in strict compliance with the terms of the Mortgage Agreement.

11. Further, Lender's failure to provide Blue Hills with a timely notice of default and a thirty-day cure period prior to foreclosure is not only a breach of the loan documents but also supports Blue Hills' averment that the Lender acted in bad faith.  Such conduct deprived Blue Hills of the "fruits of the contract;" namely, the right to a cure period.  With respect to the alleged defaults from failure to pay taxes, principal and interest, the Mortgage Agreement explicitly requires notice and a thirty-day cure period in the event of a default from failure to pay taxes.  Mortgage Agreement §23(l).  Section 23 includes both failure to pay taxes and failure to make a monthly payment on the debt as "events of default."  Mortgage Agreement §23(a), (b).  In the same section, subsection (l) provides a default thirty-day cure provision applicable to events of default and breaches of any "term, covenant, or provision of the Note":

> "if Mortgagor shall continue to be in default under any term, covenant, or provision of the Note or any of the Loan Documents, beyond applicable cure periods contained in those documents, if any, or, if none, for thirty (30) day after Mortgagor first receives notice of such default"

This broad language mandates a thirty-day cure period for events of defaults and breaches of covenants in the loan documents.  Thus, the instant case is distinguishable from *LaSalle Bank*,

where the notice and cure requirement only "applie[d] to an enumerated list of 'events of default,' not to a breach of the terms and conditions of the mortgage." *LaSalle Bank* at 1030.

12. Lender's bad faith is manifest by, *inter alia*, various e-mails that reveal its nefarious purposes and demonstrate that its actions were neither benign nor coincidental. Trial Exhibits 197, 198 and 199.

13. Blue Hills incorporates herein by reference as if fully set forth herein the Memorandum of Blue Hills Office Park LLC, Gerald Fineberg and William Langelier on Implied Covenant of Good Faith and Fair Dealing.

WHEREFORE, Blue Hills respectfully requests that this Court enter an order:

1. Denying the entry of judgment on partial findings in favor of Lender; and

2. Providing such other and further relief as is just and proper.

BLUE HILLS OFFICE PARK LLC, WILLIAM LANGELIER AND GERALD FINEBERG,
By their attorneys,

/s/ Meredith A. Swisher
Peter B. McGlynn, Esquire, BBO No. 333660
Meredith A. Swisher, Esquire, BBO No. 646866
Bernkopf Goodman LLP
125 Summer Street, Suite 1300
Boston, Massachusetts  02110
Telephone:    (617) 790-3000
Facsimile:    (617) 790-3300
pmcglynn@bg-llp.com
mswisher@bg-llp.com

Dated: October 11, 2006
#346304 v1/14500/9985