UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BLUE HILLS OFFICE PARK LLC,<br>    Plaintiff/Defendant-in-Counterclaim<br><br>v.<br><br>J.P. MORGAN CHASE BANK, as Trustee for<br>the Registered Holders of Credit Suisse First<br>Boston Mortgage Securities Corp., Commercial<br> Mortgage Pass-Through Certificates,<br>Series 1999-C1<br>    Defendant<br><br>and CSFB 1999 – C1 ROYALL STREET, LLC<br>    Defendant/Plaintiff-in-Counterclaim<br><br>and<br><br>WILLIAM LANGELIER and<br>GERALD FINEBERG<br>    Defendants-in-Counterclaim | Civil Action No. 05-CV-10506 (WGY) |

**MOTION OF BLUE HILLS OFFICE PARK LLC,
WILLIAM LANGELIER AND GERALD FINEBERG FOR
<u>JUDGMENT ON PARTIAL FINDINGS PURSUANT TO FED. R. CIV. P. 52(c)</u>**[1]
**(At the Close of All Evidence)**

Pursuant to Fed. R. Civ. P. 52(c), Blue Hills Office Park LLC, Gerald Fineberg and William Langelier (collectively, "Blue Hills") hereby moves for judgment on partial findings as to all causes of action asserted by J.P. Morgan Chase Bank, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1, and CSFB 1999-C1 Royall Street, LLC (collectively, "the Lender") against Blue Hills. The presentation of all evidence reveals that Lender has not even made a

---

[1] For the reasons stated herein, Blue Hills Office Park, Gerald Fineberg and William Langelier submit this Motion, also, as an opposition to any motion pursuant to Fed. R. Civ. P. 52(c) filed against them.

*prima facie* showing for its causes of action and that, accordingly, there is no personal liability of Gerald Fineberg ("Fineberg") or William Langelier ("Langelier") nor does Lender have any valid claims against Blue Hills.

In support of this Motion, Blue Hills avers and asserts as follows:

1. A judgment on partial findings in a non-jury trial is the functional equivalent of a judgment as a matter of law in a jury trial. Fed. R. Civ. P. 52, advisory committee note of 1991 (judgment on partial findings "parallels the revised Rule 50(a), but is applicable to non-jury trials"). In deciding whether to render judgment on partial findings the court must make its own evaluation of and weigh all evidence, including making determinations regarding credibility and resolve the case on the basis of the preponderance of the evidence. *See, e.g., International Union of Operating Eng'rs Local Union 103 v. Indiana Constr. Corp.*, 13 F.3d 253, 257 (7th Cir. 1994) (court should weigh evidence and resolve any conflicts); *Grant v. Bullock County of Educ.*, 895 F. Supp. 1506, 1509 (M.D. Ala. 1995) (court may resolve conflicts in evidence as well as make credibility assessments).

2. Lender asserts causes of action against Blue Hills for breach of contract (relating to both the Mortgage and the Cash Management Agreement), breach of the implied covenant of good faith and fair dealing, intentional misrepresentation and violations of M.G.L. c. 93A. Lender also ignores the plain language of the Guaranty to assert causes of action against Fineberg and Langelier personally. Causes of action for intentional misrepresentation and violations of M.G.L. c. 93A are also asserted against Fineberg and Langelier. The claims are predicated, in the main, on a *non-recourse* guaranty executed relative to Blue Hills' refinancing of the real property and a building thereon located at 150 Royall Street, Canton, Massachusetts

and known as the Blue Hills Office Park (the "Property") but also approximately $4.1 million in Blue Hills' reserve accounts.

3. At the core of Lender's allegations is that Blue Hills' receipt of the $2,000,000 in settlement funds (the "Settlement Proceeds") relative to the settlement of its appeal of a decision of the Town of Canton's Zoning Board of Appeal in Norfolk Superior Court, Civil Action No. 2003-01051 (the "Norfolk Action") constituted an "assignment transfer or conveyance of an interest in the Mortgaged Property, requiring Lender's prior written consent pursuant to Section 10 of the Mortgage." Counterclaims, ¶31. Lender's causes of action must fail because Lender has failed to prove that Blue Hills has assigned, transferred or conveyed any Mortgaged Property. In accordance with the Settlement Agreement dated August 5, 2003, the $2,000,000 in Settlement Proceeds were wired to the IOLTA account of Bernkopf, Goodman & Baseman, LLP ("Bernkopf") and then to a clients' funds account maintained by Bernkopf. See Joint Statement of Stipulated Facts, No. 44. Pursuant to an agreement dated December 31, 2004, one-half of the Settlement Proceeds from the Norfolk Action – $1 million – were wired from the Blue Hills' client's funds account to the client's funds account of Wilmer Cutler Pickering Hale and Dorr LLP ("Wilmer Cutler"), William Langelier's attorney. One-half (one million dollars) of the Settlement Proceeds were wired to a client's funds account at Wilmer Cutler in February 2006. Trial Exhibits 26 and 145; Trial Transcript Volume 3, Andrew Cohn Testimony ("Cohn Testimony"), page 139, lines 17-25; Cohn Testimony, Vol. 4, page 21, lines 4-18. The Settlement Proceeds have remained in Blue Hills' possession since they were received on or about August 8, 2003. The receipt of the Settlement Proceeds was duly recorded in Blue Hills' financial books and records and such funds have not been distributed to any of the Trust's beneficiaries. Cohn Testimony, Vol. 3, page 20, lines 9-21. The Settlement Proceeds were

never commingled with any other funds.  They were wired into Bernkopf's clients' fund account bearing the name "Fineberg Royall Associates," a separate account held on behalf of Blue Hills.  Trial Exhibits 26, 145.

4. Lender has asserted that Blue Hills has violated section 1.2 of the Guaranty.  This section provides, *inter alia*, that the guarantors may be responsible for the full amount of the debt if the "[b]orrower fails to maintain its status as a single purpose entity, as required by, and in *accordance with the Mortgage*. . . ." (emphasis supplied).  Lender has also failed to prove that the single purpose entity status of Blue Hills has been disregarded, changed or terminated.  As an initial matter, any putative breach of a representation or warranty in the pertinent loan documents is not consonant with a "disregard" of the single purpose entity.  Blue Hills has introduced sufficient testimony and documentary evidence to demonstrate that nothing was done to trigger the personal liabilities of Fineberg or Langelier.  In fact, there is significant evidence that, *inter alia*, the single purpose entity was created at the Lender's behest, that the Settlement Proceeds did not constitute collateral and that no harm accrued to Lender as a result of the receipt and handling of the Settlement Proceeds.

5. The phrase, "in accordance with the Mortgage" unambiguously directs the reader to this clause's counterpart found in Section 54 of the Mortgage Agreement, which requires that "[m]ortgagor *intentionally* fails to maintain its status as a single purpose entity in accordance with the provisions of the mortgage." (emphasis supplied).  As discussed, *infra*, the presence of the modifier "intentionally" readily distinguishes the instant case from any case finding that motive is irrelevant.  Lender's attempt to buttress its argument by referencing Section 12(l) of the Mortgage Agreement is unavailing.  Lender has not proved that any commingling has occurred.  The funds from the settlement entered into distinct and separate accounts that did not include

funds from the guarantors or any other related entity.  It is clear that Lender is attempting to exalt semantics over economic realities by emphasizing the name of the accounts in which the settlement was held.  Even if, *arguendo*, any commingling occurred, Lender has not identified any harm that has befallen it because of any such putative mistake.  As discussed, *infra*, a mere breach of a representation or warranty is not consonant with "disregard" of the single purpose entity.

6. The major case that Lender cites in support of its position that the single purpose entity was disregarded is readily distinguishable.  In *LaSalle Bank v. Mobile Hotel Props.,* 367 F.Supp. 2d 1022, 1029 (E.D. La. 2004),  the loan documents had a carve-out provision where full recourse liability would be triggered if the "mortgagor…fails to maintain its status as a single purpose entity."  However, in *LaSalle*, the borrower *intentionally amended its articles of organization* thereby changing its purpose from "sole purpose…" to "any lawful activity" two weeks after its first of many failures to make a monthly payment. *Id.* at 1025.  No facts in the case even come close to the circumstances of *LaSalle*.  Further, in *LaSalle*, the recourse clause did not include the condition "intentionally" present in Section 54 of the Mortgage Agreement. *Id.* at 1029.  The *LaSalle* court, applying Alabama law, noted that the *intent* of the borrower was irrelevant after the borrower argued that the their amended language, as amended, was merely "boilerplate" and "innocuous". *Id. at* 1030.  In the instant case, proof of "intent" to fail to maintain status is required.  Lender has failed to prove the existence of any such intent.

7. Lender has failed to introduce any evidence that either putative commingling or any putative breach of representations and warranties regarding the single purpose entity status have harmed Lender in any manner or to any extent.  The purpose of these recourse carve-outs is to protect the Lender's interest in the collateral.  Lender did not prove that the treatment of the

settlement proceeds was inconsistent with this purpose nor did it demonstrate that Lender's collateral was ever threatened, let alone harmed. Lender has not identified *any* precedent for a breach of any of the representations and warranties regarding a single purpose entity to "explode" the legal status of the entity. Any improper activity is, at worst, *damnum absque injuria.*

8. Lender has failed to prove any personal liability of William Langelier and Gerald Fineberg. Simply, not only does the record fail to reflect the existence of any defaults sufficient to trigger liability pursuant to Section 10 of the Mortgage Agreement but the evidence adduced at trial demonstrates that the Settlement Proceeds from the Norfolk Action were properly handled and were neither assigned, transferred or conveyed in derogation of the pertinent loan documents nor any legal obligations of Blue Hills, Fineberg or Langelier. Further, because of the course of dealing between Blue Hills and Lender – as well as the implied covenant of good faith and fair dealing – there has not been any default by Blue Hills. Thus, not only was the foreclosure wrongful but – absent proof of the existence of a default – there has not been any trigger to personal liability.

9. As Lender has proved neither the existence of an actionable misrepresentation nor justifiable reliance, judgment in favor of Blue Hills should enter as to the cause of action for intentional misrepresentation. Simply, Lender has failed to prove that Blue Hills had any duty to even speak. *See, Kannavos v. Annino*, 356 Mass. 42, 46-49 (1969) (proof of a "bare nondisclosure," or the mere failure to speak when there is no particular duty to speak are insufficient to establish a misrepresentation). Additionally, judgment should enter in favor of Blue Hills as to the cause of action for implied covenant of good faith and fair dealing because implied contractual duties cannot be created beyond the parameters of the pertinent

documentation.  *Accusoft Corp. v. Palo*, 237 F.3d 31, 45 (1st Cir. 2001).  Similarly, Lender has failed to prove sufficient "rascality" to demonstrate the existence of a claim pursuant to M.G.L. c. 93A.  *See, Levings v. Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504 (1979).

WHEREFORE, Blue Hills Office Park, LLC, William Langelier and Gerald Fineberg respectfully request that this Court enter an order:

1. Granting judgment on partial findings in Blue Hills' favor; and
2. Providing such other and further relief as is just and proper.

BLUE HILLS OFFICE PARK LLC, WILLIAM LANGELIER AND GERALD FINEBERG,
By their attorneys,

/s/Meredith A. Swisher
Peter B. McGlynn, Esquire, BBO No. 333660
Meredith A. Swisher, Esquire, BBO No. 646866
Bernkopf Goodman LLP
125 Summer Street, Suite 1300
Boston, Massachusetts  02110
Telephone:     (617) 790-3000
Facsimile:     (617) 790-3300
pmcglynn@bg-llp.com
mswisher@bg-llp.com

Dated:  October 12, 2006
#347364 v1/14500/9985