UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLUE HILLS OFFICE PARK LLC,<br><br>    Plaintiff, Defendant-in-Counterclaim.<br><br>    v.<br><br>J.P. MORGAN CHASE BANK, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1, and CSFB 1999–C1 ROYALL STREET, LLC;<br><br>    Defendants, Plaintiffs-in-Counterclaim,<br><br>    v.<br><br>WILLIAM LANGELIER and GERALD FINEBERG,<br><br>    Defendants-in-Counterclaim. | Civil Action No.  05-CV-10506 (WGY) |

**PETITION FOR ATTORNEYS' FEES AND EXPENSES OF DEFENDANTS AND PLAINTIFFS-IN-COUNTERCLAIM J.P. MORGAN CHASE BANK, AS TRUSTEE AND CSFB 1999-C1 ROYALL STREET, LLC**

In accordance with the Court's award and order in its bench ruling on October 13, 2006, the Defendants and Plaintiffs-in-Counterclaim CSFB 1991-C1 Royall Street, LLC ("CSFB") and J.P. Morgan Chase Bank, Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1 (the "Trustee" and together with CSFB, the "Lender"), submit this fee petition to document the amount of their actual attorneys' fees and litigation expenses to be paid jointly and severally by

BOST1\445451.1

Blue Hills Office Park LLC ("Blue Hills), William Langelier and Gerald Fineberg (Langelier and Fineberg together, the "Guarantors").

Pursuant to the contracts at issue in what the Court aptly described as a "quintessential complex commercial litigation" (Tr. Vol. 8 at 67:21-22), the Lender is entitled to its fees and expenses for both defending the claims brought by Blue Hills and pursuing claims against Blue Hills and the Guarantors. The Lender's actual fees and expenses total $2,056,566.01. This amount represents approximately 7.2% of the $28.7 million at stake in this dispute.

In support of this petition, the Lender relies on the affidavits of Bruce E. Falby and Ray Dearchs submitted herewith.

I.   **THE COURT HAS AWARDED LENDER ITS ACTUAL FEES AND EXPENSES.**

The Lender understands from the Court's comments during closing arguments and its ruling from the bench on the last day of trial that the Court has reviewed the attorneys' fees provisions of the Mortgage and Guaranty, determined that Blue Hills and the Guarantors are liable to the Lender for its fees and expenses in this litigation, and awarded the Lender its actual fees and expenses, subject to establishing their amount through this fee petition. In particular, in a brief colloquy about attorneys' fees during the Lender's closing argument, the Court stated, "But attorneys' fees, let's speak about that. And I see the mortgage gives you that. For breach of the contract the mortgage gives you that." (Tr. Vol. 9 at 23:4-6). In its ruling from the bench after arguments, the Court ordered that "the lender now recovers the full amount of its deficiency and contractually recovers its actual attorneys' fees." (Tr. Vol. 9 at 52:6-8) (emphasis added).

As established by the invoices attached to the affidavit of Bruce E. Falby, the Lender has incurred actual legal fees and expenses in this litigation of $2,056,566.01. This amount includes fees of $1,764,226.50 and disbursements of $109,070.75, totaling $1,873,297.25, billed by DLA Piper US LLP ("DLA Piper") to the Lender, through its servicer LNR Partners, Inc. Falby Aff.

¶ 19 & Tabs D, E & F.  This amount also includes $183,258.76 for the time and expenses of four expert witnesses retained by DLA Piper on the Lender's behalf.  The four experts prepared a total of six reports and the Blue Hills Parties deposed three of them.  None of these experts were needed at trial because the Court granted the Lender's Rule 52(c) motion on Blue Hills' claims at the close of Blue Hills' evidence.  Falby Aff. ¶¶ 19, 68-69 & Tab G.

Thus, the Lender is entitled to an award of attorneys' fees and expenses of $2,056,566.01.

## II. THE MORTGAGE, NOTE AND GUARANTY ENTITLE THE LENDER TO RECOVER ITS FEES AND EXPENSES JOINTLY AND SEVERALLY FROM BLUE HILLS AND THE GUARANTORS.

The provisions of the Mortgage, Note, and Guaranty entitle the Lender to an award of actual fees and expenses in this action.  In a diversity action, state law governs the awarding of attorneys' fees.  Northern Heel Corp. v. Compo Indus., Inc., 851 F.2d 456, 475-76 (1st Cir. 1988) (affirming award of $72,240 for recovery of $416,000 and stating that contractual contingency fee of 25% would have been reasonable if sought).  In Massachusetts, counsel fees can be assessed pursuant to specific affirmative authority, including the provisions of a contract between the parties to a dispute.  Id.  Numerous provisions of the Mortgage (Trial Exhibit 5), Note (Trial Exhibit 4), and Guaranty (Trial Exhibit 7) require Blue Hills and the Guarantors to pay all of the Lender's fees and expenses, as set forth more fully below.

### A. The Lender is Entitled to Recover its Fees and Expenses from Blue Hills.

The Lender's fees and expenses in this action are the direct result of Blue Hills' numerous defaults under the Mortgage and the Lender's corresponding efforts to protect and enforce its rights under the Mortgage, Note, and Guaranty.  The Lender is entitled to recover these fees and expenses from Blue Hills under several provisions of the Loan Documents:

Note § 4 provides in part (emphasis added):

> In the event that it should become necessary to employ counsel to collect or enforce the Debt or to protect or foreclose the security therefor upon the happening of any Event of Default, **Maker also shall pay on demand all costs of collection incurred by Payee, including attorneys' fees and costs reasonably incurred** for the services of counsel whether or not suit be brought.

Mortgage ¶ 25 provides in part (emphasis added):

> Mortgagee is authorized to … appear in, defend, or bring any action or proceeding to protect its interest in the Mortgaged Property or to foreclose this Mortgage or collect the Debt, and **the cost and expense thereof (including reasonable attorneys' fees and disbursements to the extent permitted by law), with interest at the Default Rate (as defined in the Note) for the period after notice from Mortgagee that such cost or expense was incurred to the date of payment to Mortgagee, shall constitute a portion of the Debt, shall be secured by this Mortgage and the other Loan Documents and shall be due and payable to Mortgagee upon demand.**

Mortgage ¶ 26 provides in part (emphasis added):

> (a) Upon the occurrence of any Event of Default, Mortgagee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Mortgagor and in and to the Mortgaged Property by Mortgagee itself or otherwise, including, without limitation, the following actions…:
>
> …
>
> (ii) institute a proceeding or proceedings, judicial or nonjudicial, by advertisement or otherwise, for the complete foreclosure of this Mortgage …,
>
> …
>
> (vi) recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage,
>
> ….
>
> (h) Mortgagee may resort to any remedies and the security given by the Note, this Mortgage or the Loan Documents in whole or in part, and in such portions and in such order as determined by Mortgagee's sole discretion. … **All costs and expenses of Mortgagee in exercising the rights and remedies under this <u>Paragraph 26</u> (including reasonable**

> **attorneys' fees and disbursements to the extent permitted by law), shall be paid by Mortgagor immediately upon notice from Mortgagee, with interest at the Default Rate for the period after notice from Mortgagee and such costs and expenses shall constitute a portion of the Debt and shall be secured by this Mortgage.**

Mortgage ¶ 38 provides in part (emphasis added):

> In addition to any other indemnifications provided herein or in the other Loan Documents, Mortgagor shall protect, defend, indemnify and save harmless Mortgagee from and against all liabilities, obligations, claims, demands, damages, penalties, causes of action, losses, fines, **costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements), imposed upon or incurred by or asserted against Mortgagee** by reason of (a) ownership of this Mortgage, the Mortgaged Property or any interest therein or receipt of any Rents, …[or] (d) any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage; …. **Any amounts payable to Mortgagee by reason of the application of this paragraph shall be secured by this Mortgage and shall become immediately due and payable and shall bear interest at the Default Rate from the date loss or damage is sustained by Mortgagee until paid**. The obligations and liabilities of Mortgagor under this <u>Paragraph 38</u> shall survive and [sic] termination, satisfaction, or assignment of this Mortgage and the exercise by Mortgagee of any of its rights or remedies hereunder, including, but not limited to, the acquisition of the Mortgaged Property by foreclosure or a conveyance in lieu of foreclosure, ….

These provisions apply to the fees and expenses the Lender incurred in pursuing its Counterclaim. Mortgage Paragraphs 25 and 26 make these fees and expenses part of the Debt, which the Loan Documents define as principal, interest, and all other sums due under the Loan Documents. Mortgage, p.1; Note § 1(j); Guaranty § 5.11.

These provisions also apply to the fees and expenses the Lender incurred in defending against Blue Hills' claims, for at least three independent reasons. First, in defending the wrongful foreclosure claims, the Lender was acting to protect its interest in the Mortgaged Property (<u>i.e.</u>, its security for the loan), <u>see</u> Note § 4, Mortgage ¶ 25, and to enforce its rights against Blue Hills and in and to the Mortgaged Property, <u>see</u> Mortgage ¶ 26. Each of those provisions obligates Blue Hills to pay the Lender's attorneys' fees and expenses in connection

with such actions and, again, makes these costs part of the Debt.[1]  See FDIC v. Villemaire, 849 F. Supp. 116, 123 (D. Mass. 1994) (awarding mortgage lender attorneys' fees and disbursements in action where it established deficiency liability of guarantors and defeated defenses and counterclaims asserted by guarantors for breach of contract, breach of implied covenant of good faith and fair dealing, and Chapter 93A); IAG Federal Credit Union v. Burne, 12 Mass. L. Rep. 432, 2000 Mass. Super. Lexis 476 at *2, 5, 15-16 (2000) (noting that Lender entitled to attorneys' fees incurred in defending declaratory judgment action to set aside foreclosure where note provided for fees for collection of the note and foreclosure of the mortgage); see also Hall v. Tennessee Workers Credit Union, 2002 Tenn. App. LEXIS 843, *29-30 (Ct. App. Tenn. Dec. 5, 2002) (holding Lender entitled to attorneys' fees and costs for defending post-foreclosure wrongful foreclosure action pursuant to mortgage provision requiring borrower to pay "all expenses and costs, including reasonable attorney's fees, incident to collection, or enforcement or protection of any rights pertaining to or growing out of the instruments securing this note"); Reid v. Union Planters Mortgage, 2004 Cal. App. Unpub. LEXIS 6738, *27-32 (Ct. App. Cal. July 20, 2004) (holding the same where mortgage's attorneys' fees provision applied to "any action or proceeding purporting to affect the security hereof or the rights or powers of [the mortgagee]"); Hunt v. NationsCredit Financial Svcs. Corp., 902 So. 2d 75, 78, 82-83 (Ct. Civ. App. Ala. 2004) (holding the same in borrower's suit to invalidate foreclosure and enjoin subsequent conveyance of property where note's attorneys' fees provision covered "all costs of

---

[1] While Note § 4 does not itself expressly make the fees and expenses part of the Debt (as do Mortgage ¶¶ 25 & 26), "Debt" is defined in the Note to mean "collectively, the whole of the outstanding principal sum of this Note, together with all interest accrued and unpaid thereon and all other sums due under the Loan Documents." Note § 1(j). See also Mayer v. Spanel International Ltd., 51 F.3d 670, 677 (7th Cir. 1995) (holding that attorneys' fees provided by contract are part of the debt and stating that "if a debtor agrees by contract to pay legal expenses, this is no different in principle from agreeing to a higher rate of interest, or a balloon payment, or any other contractual element of compensation to the lender").

collection or securing or attempting to collect or secure this note, including a reasonable attorney's fee").[2]

Independently, the fees and expenses incurred in defeating Blue Hills' claim were necessary to the Lender's pursuit of its deficiency action against Blue Hills for violation of the nonrecourse carve-outs of the Loan Documents. In answering the Lender's counterclaim, Blue Hills alleged the Lender's claims were barred by its breaches of the loan documents, Blue Hills Answer, Fifth Affirmative Defense (Docket Nos. 29, 40), and by the doctrine of unclean hands, id., Second Affirmative Defense.[3] Thus, to establish its deficiency claim, the Lender had to defeat the claims by Blue Hills. Note § 4 and Mortgage ¶¶ 25 & 26 provide that the Lender is entitled to attorneys' fees and expenses in connection with enforcing or collecting the Debt, and thus Blue Hills is liable for the Lender's attorneys' fees and expenses in defending Blue Hills' claims. See Resolution Trust Corp. v. Feldman, 3 F.3d 5, 10-11 (1st Cir. 1993) (discussed in detail below); see also Leventhal v. Krinsky, 325 Mass. 336, 342 (1950) (Lender entitled to attorneys' fees and expenses incurred in all proceedings "the aims and object of [which] were directed to collecting the amount due [to the lender] on the note," not solely those arising out of a

---

[2] By providing fees and expenses for Lender's protection of its security and defense of its realization on that security, the provisions of the Note and Mortgage put Blue Hills and the Lender (and the Guarantors, as will be seen below) in the same place they would have been if Blue Hills had brought suit prior to November 19, 2004, to enjoin the foreclosure. In that event, the fees and expenses incurred by the Lender in enforcing the Mortgage and foreclosing on the Mortgaged Property would have been recoverable and would have become part of the Debt. The result is not different because Blue Hills instead waited until after the foreclosure to bring a suit for damages. See Bangs v. Fallon, 179 Mass. 77, 85 (1901) (attorneys' fees for defeating action for injunction against foreclosure sale are part of the expense of the foreclosure proceedings); see also Haczela v. Krupa, 219 Mass. 261, 263 (1914) (mortgage covenant allowing mortgagee "all costs, charges and expenses incurred or sustained by him…in relation to the said property" included mortgagee's attorneys' fees for defeating borrower's action to enjoin foreclosure sale; "[i]n order that [the mortgagee] be made whole, he must recover them.") (first alteration in original).

[3] In its answer to Lender's interrogatory concerning the basis for Blue Hills' unclean hands defense, Blue Hills recited the same allegations that formed the basis of Blue Hills' complaint against the Lender. See Blue Hills Office Park LLC's Answers to Defendants' First Set of Interrogatories, Answer No. 12 (copy attached to Falby Aff. at Tab H).

direct action on the note, where note required maker to pay all fees and expenses incurred in "the enforcement and collection" of the note.)

A third independent basis for Blue Hills' liability for the counsel fees and expenses of defending the wrongful foreclosure claim is the indemnification provision in Mortgage Paragraph 38, which protects the Lender from attorneys' fees and expenses incurred by reason of its ownership of the Mortgage and the Mortgaged Property or as a result of any failure on the part of Blue Hills to perform or comply with any of the terms of the Mortgage. Blue Hills sued the Lender because the Lender owned the Mortgage and had foreclosed on Blue Hills Office Park (and thus had become the owner of Mortgaged Property) as a result of Blue Hills' failure to comply with the terms of the Mortgage related to payment of real estate taxes, principal and interest, and reserves. In Paragraph 38, Blue Hills agreed to indemnify the Lender against the cost of defending such claims and, again, they become part of the Debt.[4] See Hill v. Samuel Cabot, Inc., 51 Mass. App. Ct. 1102, 2001 WL 184565, *1-2 (2001) (indemnitee entitled to attorneys' fees and expenses incurred defending indemnitor's action where action was within scope of indemnification provision); Agulnick v. American Hosp. Supply Corp., 507 F. Supp. 135, 137-38 (D. Mass. 1981) (noting that fee-shifting indemnity clauses are to be interpreted broadly and finding expenses of cross- and counter-claims were within scope of provision awarding fees for defense of actions stemming from breach of contract).[5]

---

[4] Similar to the Note, the Mortgage defines the "Debt" to be principal, interest, "and all other sums due hereunder under the Note and the other Loan Documents." Mortgage p. 1.

[5] Lender's argument for recovery of its defense costs under the indemnification provision of Paragraph 38 is not necessary to its recovery of those fees and expenses from either Blue Hills or the Guarantors, as it is independent of the other (also independent) arguments presented in the text, here and below. The Lender recognizes that the Court has recently held that the indemnification provision in a non-mortgage, commercial indemnification agreement did not encompass litigation brought by the indemnitee against the indemnitor to enforce its right to defense and indemnity in an action brought against it by a third-party. See Great Northern Ins. Co. v. Paino Assoc., 2006 U.S. Dist. LEXIS 76626, * 7-11 (D. Mass. C.A. 02-12126 (WGY) Oct. 23, 2006). The Lender submits that this case, in which the indemnitor brought the action in question, is more akin to Hill and Aqulnick, cited in the text.

### B.  The Lender is Entitled to Recover its Fees and Expenses from the Guarantors.

Along with Blue Hills, the Guarantors are jointly and severally liable for all of the Lender's fees and expenses in this action, both those incurred in pursuing the Lender's Counterclaim and those incurred in defending Blue Hills' claims.  This is because (1) as the Court has ruled, the Guarantors are liable for the full amount of the deficiency on the Debt under Guaranty § 1.2, and the "Debt" includes the Lender's defense-related fees and expenses and the fees and expenses related to the Counterclaim; and (2) Guaranty § 1.8 makes the Guarantors directly liable for all fees and expenses incurred by the Lender in the enforcement of the Guaranty or in the preservation of the Lender's rights under the Guaranty.

#### (1)  The Guarantors Are Liable for All of the Lender's Fees and Expenses Under Guaranty § 1.2.

The Guarantors are each liable for the fees and expenses incurred in the prosecution of the Counterclaim and in defense of Blue Hills' claims because, as the Court has ruled, they are each liable for the full amount of the deficiency on the Debt.  Guaranty § 1.2 ("Guarantor shall be liable for the full amount of the Debt in the event that … (B) Borrower fails to maintain its status as a single purpose entity … [or] (D) Borrower fails to obtain Lender's prior written consent to any assignment, transfer or conveyance of the Mortgaged Property or any interest therein ….").[6]  As set forth above at section II(A), all of Lender's fees and expenses are part of the Debt.

These fees and expenses increase the amount of the Debt and thus increase the amount of the deficiency (the difference between the foreclosure proceeds and the Debt) for which the

---

[6]  The Guaranty adopts the Mortgage's definition of "Debt," see Guaranty § 5.11, which includes attorneys fees and costs, see n. 1, above.

Guarantors are liable. "Under Massachusetts law, even if the language of a guaranty does not call for payment of reasonable attorney's fees, when a defendant guaranties payment of a debtor's liabilities, and the debtor's notes provide for payment of reasonable attorney's fees, the guarantor must pay the fees." FDIC v. Smith, 848 F. Supp. 1053, 1056 (D. Mass. 1994) (citing New England Merchants National Bank v. Hoss, 356 Mass. 331, 335-36 (1969)).

   (2) The Guarantors Are Liable for All of Lender's Fees and Expenses Under Guaranty § 1.8.

Section 1.8 of the Guaranty (independently and in addition to Section 1.2) entitles the Lender to recover all of its fees and expenses from the Guarantors. Section 1.8 states:

> In the event that Guarantor should breach or fail to timely perform any provisions of this Guaranty, Guarantor shall, immediately upon demand by Lender, pay Lender **all costs and expenses (including court costs and attorneys' fees) incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder.** The covenant contained in this section shall survive the payment and performance of the Guaranteed Obligations.

Id. (emphasis added). Thus, under Guaranty § 1.8, the Guarantors are liable for both the fees and expenses incurred to enforce the Guaranty (i.e., those relating to the Counterclaim) and those fees and expenses incurred to preserve the Lender's rights under the Guaranty (i.e., those relating to Lender's defense against Blue Hills' claims).

The Lender's defense against Blue Hills' claims was necessary to preserve the Lender's rights under the Guaranty because Blue Hills sought to establish that (a) the Lender had breached the Loan Documents, and (b) by reason of that breach, Lender's Counterclaim was barred. As their Fifth Affirmative Defense to the Counterclaim, each of Blue Hills, Fineberg, and Langelier stated that the Lender's "claims are barred by its own breaches of, *inter alia*, the Mortgage Agreement, Note and Cash Management Agreement;" their Second Affirmative Defense stated that the Lender's "claims are barred by doctrine of unclean hands." See Answers of Blue Hills,

Fineberg and Langelier (Docket Nos. 29, 30, 40, 41).[7] It was therefore essential for the Lender to defend against Blue Hills' claims in order to preserve the Lender's claims under the Guaranty. As a result, the Lender's fees and expenses incurred in the defense against Blue Hills' claims were incurred "in the enforcement" of the Guaranty and in "the preservation of Lender's rights" under the Guaranty. Guaranty § 1.8.

In Resolution Trust Corp. v. Feldman, for example, the First Circuit upheld this Court's decision requiring the guarantors to pay the lender's attorneys' fees incurred in defending the borrower's claim against a subsidiary of the lender. Id., 3 F.3d 5 (1st Cir. 1993). The guarantors argued that the lender's defense of the borrower's claim was not "in connection with the enforcement of" the lender's rights under the Guaranty (the Guaranty required the guarantors to pay all expenses and fees incurred in connection with the enforcement of the Guaranty), and thus that the guarantors were not liable for the lender's defense-related fees and expenses. Id., 3 F.3d at 10. In rejecting this argument, the First Circuit held:

> In the answer to [lender's] complaint [the borrower] asserted that the conduct of [lender's] subsidiary or affiliate…was a defense to [lender's] suit against the guarantors on the […] note; and in the third-party complaint against [the lender's affiliate], [the borrower] said that the conduct of various entities including [the lender's affiliate] made the note null and void. While this claim or defense as to [the lender's affiliate] evaporated under scrutiny, the allegations made it essential for the [lender] to defend [the lender's affiliate] as part of [the lender's] own collection suit against the guarantors.

Id. In this case, the basis for the Guarantors' liability for the Lender's defense-related fees and expenses is even stronger: here, unlike in Feldman, the Guaranty explicitly requires the

---

[7] In their answers to Lender's interrogatory concerning the basis for Blue Hills' unclean hands defense, Fineberg and Langelier (like Blue Hills) recited the same allegations that formed the basis of Blue Hills' complaint against the Lender. See William Langelier's and Gerald Fineberg's Answers to Defendants' First Set of Interrogatories, Answer No. 12 (copies attached to Falby Aff. at Tabs I, J).

Guarantors to pay fees and expenses incurred in the "preservation of Lender's rights" under the Guaranty, in addition to fees and expenses incurred in the enforcement of the Guaranty.

In sum, Blue Hills and the Guarantors are jointly and severally liable for all of the Lender's attorneys' fees and expenses incurred in this action.

### C. The Fees and Expenses Incurred by the Lender are Reasonable.

#### 1. Reasonableness Factors.

In determining an award of attorneys' fees pursuant to a contractual provision, Massachusetts courts look to the following factors: "'the ability and reputation of the attorney, the demand for his services by others, the amount and importance of the matter involved, the time spent, the prices usually charged for similar services by other attorneys in the same neighborhood, the amount of money or the value of the property affected by controversy [sic], and the results secured.'" AccuSoft Corp. v. Palo, 237 F.3d 31, 61 (1st Cir. 2001) (quoting Cummings v. Nat'l Shawmut Bank, 284 Mass. 563, 188 N.E. 489, 492 (1934)) (emphasis in original). In addition to objective criteria, "[t]he amount which the attorney usually charges for his services, i.e., the amount the attorney subjectively believes his services are worth, may be considered." MIF Realty, L.P. v. Gerald S. Fineberg, 989 F. Supp. 400, 402 (D. Mass. 1998). No one factor is determinative. Margolies v. Hopkins, 401 Mass. 88, 93 (1987) (abrogated on other grounds).

In this case, in light of the pre-trial advocacy (including extensive summary judgment motion practice) and a nine-day trial of the matter, the Court is well positioned to assess the ability of the Lender's counsel. At the close of all the evidence, the Court stated that "[i]t has been a very well presented case" and that the clients on both sides "have been well served by the trial advocacy in this case." The reputation of counsel for the Lender, in particular lead attorneys E. Randolph Tucker and Bruce E. Falby, is demonstrated by, among other things, their inclusion

in the publication *The Best Lawyers in America*. Falby Aff. ¶¶ 5, 6. The rates charged by DLA Piper for the services of the attorneys involved in case (which are the rates usually charged to clients of the firm in Boston) are comparable to those charged by other firms in Boston for comparable work by attorneys of similar experience, reputation and skill. Part III.C.2, below, and Falby Aff. ¶¶ 15-18. The total amount of litigation fees and expenses incurred of $2,056,566.01 is appropriate in light of both the $28.7 million at stake in the litigation, see Part III.C.3 below, and the complete success of Lender in recovering the full deficiency of the Debt from the Borrower and the Guarantors and in obtaining judgment on Blue Hills' wrongful foreclosure claim pursuant to Rule 52(c) at the close of Blue Hills' evidence.

Ultimately, the award of fees is committed to the discretion of the Court. AccuSoft Corp., 237 F.3d at 62. However, discretion to award less than the amount actually charged by the attorneys to the prevailing party[8] is limited where, as under the Guaranty, the agreement to pay fees and expenses does not limit the obligation to "reasonable" amounts. In such cases, Massachusetts law provides that the prevailing party is entitled to its actual fees and expenses. Carter v. Warren Five Cents Sav. Bank, 409 Mass. 73, 74-75, 80 (1991) ("The agreement was to pay attorney's fees Carter incurred in pursuing his rights. The agreement was not to pay Carter's reasonable attorney's fees as determined by a judge."). "In these circumstances, [the Guarantors] assumed the burden of paying whatever the [Lender's] lawyers charged the [Lender] if the [Lender] prevailed." Fineberg, 989 F. Supp. at 402.

The scope of fees that can be awarded is not entirely without limit -- the Court can reduce the amount of actual fees and expenses if it makes explicit findings and rulings that the charges "were above the highest level of a reasonable fee for those services." Carter, 409 Mass. at 74-75,

---

[8] All of the fees and expenses sought by Lender here have been incurred by the Lender and billed to it by DLA Piper. Falby Aff. ¶ 19.

80. However, for the reasons discussed in subsections 2 & 3 below, the fees and expenses incurred by Lender were reasonable and, therefore, were not above the highest level of reasonableness.

### 2. DLA Piper's Hourly Rates Were Reasonable.

DLA Piper's charges to the Lender were at the standard hourly rates established and charged to clients by the firm for the services of the lawyers participating in this case. The rates are those collected from clients in the Boston marketplace. Falby Aff. ¶ 15. They are reasonable and comparable to those of attorneys at DLA Piper's peer firms, for at least the following three reasons.

As stated by Chief Financial Officer Raymond Dearchs, DLA Piper, to remain competitive, is careful to set its rates at levels comparable to or lower than those of attorneys with comparable skill, experience and reputation at other firms. Through contacts with other firms in Boston and based on information from a variety of sources, he is familiar with the rates of attorneys at most other Boston law firms similar to DLA Piper. Compared to the rates of other firms in the area, the rates of the DLA Piper lawyers involved this litigation are reasonable in light of their respective skill, experience, and reputation. Dearchs Aff. ¶¶ 3-4, 6.

Among the information available to DLA Piper is a survey by an outside consultant of the rates of large national firms with offices in Boston. DLA Piper's hourly rates are within the range of the rates reported by the survey. Falby Aff. ¶ 16.

Second, in the course of preparing this Petition and his accompanying affidavit, DLA Piper attorney Bruce Falby spoke with business litigators at three other large firms in Boston -- Ropes & Gray LLP, Choate, Hall & Stewart LLP, and Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C. -- who confirmed that his billing rate is comparable to those of business litigators at those firms with similar levels of experience. Falby Aff. ¶ 17.

Third, a December 2005 fee petition filed by Goodwin Procter LLP in Suffolk Superior Court in a commercial litigation reports billing rates higher than those that DLA Piper presently charges and includes a declaration and letter from a legal consultant confirming that Goodwin Procter's rates are comparable to those charged by other large national firms in Boston. Falby Aff. ¶ 18 & Tab B. Judge Gants found that those rates were reasonable and awarded fees at those rates. Brooks Automation v. BlueShift Technologies, Inc., Suffolk Superior Court No. 05-03973-BLS2, Memorandum and Order dated March 30, 2006 (awarding $937,052.75 in fees and costs incurred by defendant during two month litigation in which defendant defeated plaintiff's claims and recovered $290,300 on Chapter 93A counterclaim) (copy attached to Falby Affidavit as Tab C).

### 3. DLA Piper's Fees and Expenses were Reasonable and Necessarily Incurred.

The expenses incurred by the Lender prosecuting its claim for the deficiency and defending Blue Hills' claim for wrongful foreclosure are reasonable and were necessarily incurred. As the Court stated, this is a "quintessential complex commercial litigation." (Tr. Vol. 8 at 67:21-22). As set forth in considerable detail in the accompanying affidavit of Bruce Falby, the pre-trial activities were extensive and far-ranging. It began with Counsel's investigation of the Lender's claim for the deficiency and preparation of a complaint. Once Blue Hills brought its own suit, Counsel engaged in a complex removal analysis and then, over time, was able to convince Blue Hills to drop two of the parties it had named in the Complaint, ultimately achieving a proper alignment of parties as discovery got under way.

Counsel's factual investigation of Blue Hills' claim was necessarily extensive, as Blue Hills' Amended Complaint referred vaguely to servicing events and conversations throughout

the life of the loan.  As the Court learned through the evidence presented at trial, the loan was serviced on behalf of the Lender by both the master and special servicers, and there were numerous people involved in servicing events at each company.  The investigation included interviews with numerous individuals and review of servicing processes and documents.  Falby Aff. ¶ 27.

The fact discovery, too, was extensive.  At the request of the Blue Hills Parties, the scheduling order for the case called for two stages of discovery, with mediation to follow the initial phase.  Each stage involved document requests, interrogatories, and requests for admission to each of the numerous parties in the case.  Blue Hills and the Guarantors made broad requests that culminated in Counsel producing approximately 13,000 pages of documents from four different entities on behalf of Lender, all of which had to be gathered and reviewed for privilege before production.  In response to the Lender's documents requests, Blue Hills produced approximately 6,000 pages of documents, which had to be analyzed upon receipt.  Also, each side promulgated and responded to multiple sets of interrogatories and requests for admission.  Fourteen fact witnesses were deposed during the discovery period for a total of 13 full days (with one witness deposed for two days and four for half-days each).  Seven of the witnesses were noticed by the Blue Hills Parties and seven by the Lender.  In addition, during trial, Counsel deposed previously undisclosed witness Andrew Cohn for a full day.  Falby Aff. ¶¶ 38-43, 45, 55-58, 66, 87.

Third-party document discovery was also taken from several entities, including a subpoena by Blue Hills on the law firm of Schulte, Roth (counsel to the Lender at the time the loan was made) and subpoenas by the Lender on  DST/Equiserve and National Development, the buyer and seller, respectively, of the Blueview property adjacent to Blue Hills Office Park and the parties, along with Blue Hills, to the settlement agreement that resulted in the $2 million

payment. Each of these efforts required significant attention from Counsel beyond merely analyzing and understanding the documents produced. Counsel, as current counsel to Lender, needed to review the 3,025 pages produced by Schulte Roth for privilege before they were produced. DST/Equiserve and National Development required that a confidentiality order be put in place before producing documents, and Counsel negotiated and implemented such an order with counsel for the Blue Hills Parties. Falby Aff. ¶¶ 42, 48-49.

The expense of discovery was also increased, significantly, by the Blue Hills Parties' unwillingness to provide adequate disclosure of core responsive materials in the case, including documents and information related to the settlement of the zoning appeal and the settlement payment. Counsel made repeated demands for complete discovery responses, and drafted and conferenced three motions to compel, two of which were ultimately filed. Falby Aff. ¶¶ 45-53, 60-61, 65.

Expert disclosures and discovery were extensive, as well. Blue Hills disclosed three experts who produced five reports and the Lender disclosed four experts who produced six reports. Six of the experts were deposed for a total of five and a half days. Falby Aff. ¶¶ 68-69.

Concurrent with the conclusion of expert discovery, the parties began extensive summary judgment motion practice. CSFB and the Trustee filed separate motions for summary judgment, each with an accompanying 20-page brief, supported by a joint, 45-page statement of undisputed facts, seven affidavits with a total of 22 exhibits, and a compendium of 87 deposition exhibits. Falby Aff. ¶¶ 70-72.

Blue Hills cross-moved for summary judgment on the Lender's claim for the deficiency. In opposition, Counsel prepared a 20-page brief, a 49-page response to the Blue Hills Parties statement of facts, an affidavit of counsel with two exhibits and filed six more deposition exhibits. Falby Aff. ¶¶ 74-75.

After Blue Hills opposed both CSFB's and the Trustee's motions for summary judgment, they each filed a reply brief of approximately 15 pages and they jointly replied to the Blue Hills Parties' second statement of undisputed facts and jointly submitted two additional affidavits with a total of 14 exhibits and two additional deposition exhibits. Falby Aff. ¶ 76.

All told, Counsel submitted 90 pages of briefing, 110 pages of factual statements and responses, ten affidavits with a total 36 exhibits, and 95 deposition exhibits. Falby Aff. ¶¶ 72, 75, 76.

The Court denied the Blue Hills Parties' motion for summary judgment from the bench at oral argument and ultimately denied the Lender's motions in August 2006. As the Court knows, trial followed shortly thereafter. In addition to the trial advocacy the Court witnessed first hand, Counsel also prepared a rebuttal case for Blue Hills' wrongful foreclosure claim, including at least three fact witnesses in addition to those presented to the Court and three of Lender's experts. Falby Aff. ¶¶ 78, 80-81.

In addition to the foregoing, Counsel prepared for and attended three separate mediation sessions with Judge Rudy Kass in good faith efforts to resolve the dispute. The first session was held in January 2006 between the phases of discovery, the second between the final pretrial conference and the start of trial, and the third during the first break in the trial schedule. Falby Aff. ¶¶ 54, 80, 87.

The extent of Counsel's efforts, from investigation and discovery through summary judgment and trial, were warranted in light of the stakes of the litigation and the Lender's unqualified success in defeating Blue Hills' wrongful foreclosure claim on a motion for directed verdict and winning its claim for the full deficiency from Blue Hills and the Guarantors. As established by the testimony of Joseph Polcari, the amount of the deficiency as of the date of the foreclosure was $10,770,847. See also Trial Exhibit 212 (Statement of Mortgage Debt) and Trial

Chalk C. Lender's recovery is that amount, plus pre-judgment interest at the contract's default rate (13.49%)[9] on the transferred $2 million settlement payment since August 8, 2003, the date of the breach (approximately $870,000), and on the remaining $8,770,847 since November 19, 2004, the date of the foreclosure (approximately $2,278,000), for a recovery of approximately $13.9 million.[10] For its part, Blue Hills sought $14.8 million in alleged damages from the Lender that it claimed resulted from the Lender's foreclosure, including $5.8 million in lost equity in the property, $4.1 million in lost reserves, and $4.9 million in lost tax benefits. (Blue Hills Office Park LLC, Gerald Fineberg and William Langelier's Trial Memorandum, Docket No. 136, at 42.) Thus, given the combined $28.7 million swing at issue in this complex and hard-fought litigation, the Lender's fees and expenses amounted to approximately 7.2% of the amount at stake.

[Remainder of page intentionally blank]

---

[9] Under the terms of Note, upon the occurrence of an Event of Default, interest accrues "on the entire unpaid principal sum and any other amounts due at the Default Rate." Note § 5. The Default Rate is defined as the Applicable Interest Rate (8.49%) plus 5%, or 13.49%. Note §§ 1(c), (k), (p).

[10] For the reasons stated in Part II, above, the fees and expenses sought pursuant to this Petition are also part of the deficiency.

## CONCLUSION

For the reasons stated above, the Lender asks that the Court award it $2,056,566.01 in attorneys' fees and litigation expenses jointly and severally against Blue Hills and the Guarantors pursuant to the provisions of the Mortgage, Note, and Guaranty.

                        Respectfully submitted,

                        CSFB 1999 – C1 ROYALL STREET, LLC
and J.P. MORGAN CHASE BANK,
Trustee for the Registered Holders of
Credit Suisse First Boston Mortgage
Securities Corp., Commercial Mortgage
Pass-Through Certificates, Series 1999-C1
By their attorneys,

                        /s/ Bruce E. Falby
Bruce E. Falby, Esq. BBO# 544143
Bruce S. Barnett, Esq. BBO# 647666
Traci S. Feit, Esq. BBO# 630668
DLA Piper Rudnick Gray Cary US LLP
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000

October 27, 2006