UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLUE HILLS OFFICE PARK LLC,<br>     Plaintiff/Defendant-in-Counterclaim<br><br>v.<br><br>J.P. MORGAN CHASE BANK, as Trustee for<br>the Registered Holders of Credit Suisse First<br>Boston Mortgage Securities Corp., Commercial<br> Mortgage Pass-Through Certificates,<br>Series 1999-C1<br>     Defendant<br><br>and CSFB 1999 – C1 ROYALL STREET, LLC<br>     Defendant/Plaintiff-in-Counterclaim<br><br>and<br><br>WILLIAM LANGELIER and<br>GERALD FINEBERG<br>     Defendants-in-Counterclaim | Civil Action No. 05-CV-10506 (WGY) |

**MEMORANDUM OF BLUE HILLS OFFICE PARK LLC, WILLIAM LANGELIER
AND GERALD FINEBERG ON THE AWARD OF PREJUDGMENT INTEREST**

## I. Introduction

Blue Hills Office Park LLC, William Langelier and Gerald Fineberg (collectively, "Blue

Hills") hereby submit this memorandum in support of it contention that an award of prejudgment

interest is unmerited.  In the main, an award of prejudgment interest to Lender would not only

constitute an impermissible windfall, but would be at cross-purposes with the rationale of

prejudgment interest; to wit, making an aggrieved party whole by compensating it for the lost

time value of its money.  The prejudgment interest sought by J.P. Morgan Chase Bank, as

Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp.,

Commercial Mortgage Pass-Through Certificates, Series 1999-C1 ("J.P. Morgan"), and CSFB

1999-C1 Royall Street, LLC ("CSFB") (collectively, the "Lender") would constitute an

unwarranted and unearned bonus, serving to unjustly enrich the Lender rather than truly

compensating it for any actual losses suffered.  This is particularly true since the Lender is

receiving not only the $2,000,000 in settlement proceeds as a credit against the deficiency, the

full amount of the deficiency owed on the Mortgage, and attorneys' fees but, as discussed, *infra*,

CSFB has already received additional net proceeds of $3,823,070 when it sold 150 Royall Street,

Canton, Massachusetts (the "Property") approximately five months after the November 19, 2004

foreclosure sale for $23,000,000.  Additionally, to the extent that any prejudgment interest is

awarded, it should be at a reasonable interest rate considerably lower than the so called default

rate of 13.49% sought by the Lender and should not begin to accrue until April 20, 2005, the date

when Lender first made an official demand on Blue Hills for the payment of the entire

deficiency.

## II. <u>Argument</u>

I.      The Court Should Exercise Its Discretion To Eliminate Or To Minimize Prejudgment
       <u>Interest.</u>

        A.      Prejudgment Interest Is Appropriate Only To Compensate For Actual Losses Of
               The Time Value Of Money.

        A trial judge has broad discretion, subject to principles of fairness, in granting

prejudgment interest.  *Tiverton Power Associates Limited Partnership v. The Shaw Group, Inc.*,

376 F.Supp.2d 21 (D. Mass.2005) (Young, C.J.) citing *Cottrill v. Sparrow, Johnson & Ursillo,

Inc.*, 100 F.3d 220, 225 (1st Cir.1996); *see also  Foley v. City of Lowell*, 948 F.2d 10, 17-18 (1st

Cir. 1991).  Whether prejudgment interest is necessary to make a plaintiff whole is within the

discretion of the trial judge.  *See Conway v. Electro Switch Corp.,* 825 F.2d 593, 602 (1st

Cir.1987).  "The matter of awarding prejudgment interest is, however, one of balancing the equities." *USM Corp. v. Marson Fastener Corp.*, 392 Mass. 334, 350 (1984).  The burden of proving the necessity of interest to adequately compensate falls squarely upon the party petitioning the court for prejudgment interest.  *Striar v. American Medical Intern., Inc.,* 45 Mass. App. Ct. 87 (1998).

The primary purpose of awarding prejudgment interest in contract cases is to compensate a party for the loss of the use of, or unlawful detention of, money from the time it was owed. *J.C. Higgins Co., Inc. v. Bond Bros*., *Inc.*, 58 Mass. App. Ct. 537 (2003).  Thus, as prejudgment interest is designed to make the aggrieved party *whole* for its putative loss of the *use of money* it should result in neither a windfall nor should it constitute *de facto* punitive damages.  *Sterilite Corp. v. Continental Cas. Co.*, 397 Mass. 837 (1986); *Craft v. Kane*, 65 Mass. App. Ct. 322 (2005); *Perkins School for the Blind v. Rate Setting Commission*, 383 Mass. 825, 835 (1981). Accordingly, prejudgment interest is only appropriate when the circumstances dictate that an award of interest is necessary to make the aggrieved party whole.  *See Criado v. IBM Corporation*, 145 F.3d 437, 446 (1st Cir. 1998) (affirming decision to deny prejudgment interest based on claimant's large award, which was sufficient to make the claimant whole and deter defendant from future wrongdoing); *Hogan v. Bangor and Aroostook Railroad Company,* 61 F.3d 1034, 1038 (1st Cir. 1995) (no award of interest where award of damages was more than sufficient to make plaintiff whole).

For the Lender to receive prejudgment interest, it must establish that, because of a breach, it was entitled to access particular funds on a particular date.  Merely establishing the date of a breach is not sufficient for calculating prejudgment interest.  For example, in *Sterilite Corp.*, 397 Mass. at 841-842, the Court limited prejudgment interest to the insured plaintiff to the period

- 3 -

*after* it *incurred* an *actual loss*. It was found that the defendant insurance company had breached its contract with the plaintiff when it refused to defend the plaintiff in January 1975. *Id.* at 841. Despite such finding, prejudgment interest was calculated according to the dates that the plaintiff – knowing the defendant was in breach – *actually incurred* legal costs. *Id.* The rationale is that the plaintiff did not experience any actual damages until the date he actually lost access to his money by paying the attorneys. *Id.* If the defendant breached in January 1975 but the plaintiff did not pay a lawyer until November 1975, the plaintiff would get a windfall by earning interest on funds he had access to between January until November.[1] Similarly, in *Craft v. Kane*, 65 Mass. App. Ct. 322 (2005), an attorney sued his client under a *quantum meruit* theory after the attorney had been discharged. The Court denied prejudgment interest because the original fee agreement provided for a contingent fee and accordingly, the actual amount owed was *in dispute* until the date of the judgment. *Id.* at 328.

    In the instant case, full recourse liability was not established until after trial was completed. Moreover, Lender suffered no actual loss until relatively close to the November 19, 2004 foreclosure sale. Blue Hills remained current in its debt service and other payments through July 2004. The receipt by Blue Hills of settlement proceeds in August 2003 – whether rightfully or wrongly – did not cause any loss to Lender. It is not credible for Lender to claim to have lost the use of money it didn't know existed. This is particularly true in light of the fact that the Lender received timely debt service payments for approximately one year after Blue Hills' receipt of the settlement proceeds.

---

[1] Prejudgment interest would only be calculated as to the amount actually paid for the legal expenses. For example, if the first payment of the lawyers was in September 1975, prejudgment interest will only run on that amount paid in September 1975. If more money was paid in December 1975, interest would continue to run on the September payment and begin running on the December payment when it was paid.

B.      Any Award Of Prejudgment Interest Should Be Shaped So As Not To Constitute A Windfall To The Lender.

As it would result in a windfall for the Lender, no prejudgment interest should be awarded.  Looking at the economic realities of the situation, the Lender has been awarded the balance of the loan, reasonable attorneys' fees, and has received proceeds from a foreclosure and subsequent sale of the Property to OneBeacon Insurance Group at a price of $4.5 million higher than the foreclosure credit bid amount.  *See Criado v. IBM Corporation*, 145 F.3d at 446; *Dopp v. Pritzker*, 38 F.3d 1239 (1st Cir.1994) (Court abused its discretion in awarding plaintiff prejudgment interest because District Court failed to place defendant's conduct within *context of case as a whole* under Puerto Rico law in considering defendant's obstinancy).  Certainly, payment of the damages to be recovered by Lender in the above-captioned action places the Lender in a far, far better position than it would be in if Blue Hills had not received any settlement proceeds and had merely defaulted in August 2004.

Lender, in fact, managed to realize significant post-foreclosure gains on the Property.  On or about October 21, 2004, LNR, as agent for Lender, sent Blue Hills a notice of a foreclosure sale originally scheduled for November 12, 2004.  Shortly thereafter, on or about November 10, 2004, all of J.P. Morgan's interest in the Loan to Blue Hills was assigned to CSFB, a Delaware limited liability company formed in September 2004.  CSFB was a special purpose entity formed by the Lender and created for the specific purpose of holding title to the Property for the foreclosure process.  The foreclosure sale, held on November 19, 2004, resulted in a "credit bid" by CSFB for $18.5 million

On or about April 29, 2005, approximately five months after the foreclosure sale, CSFB sold the Property to OneBeacon Insurance Group for $23,000,000.  *See,* CSFB's Closing Statement, Trial Exhibit 218, attached hereto and incorporated herein as Exhibit "A."  Thus, after

- 5 -

deducting $676,930.00 in "Seller's expenses," as indicated in CSFB's Closing Statement, the Lender made a profit of approximately $3,823,070 subsequent to the foreclosure sale. The amount of prejudgment interest through November 10, 2006 sought by Lender is $3,823,070. As Lender is getting its *full* loan deficiency paid, plus attorneys' fees, plus the $3,800,000 realized in the sale of the Property to OneBeacon Insurance Group, prejudgment interest is unnecessary, unwarranted and redundant.

It is noteworthy that the loan documents do *not* explicitly provide for prejudgment interest. This further suggests that the court has significant discretion in granting, denying, or reducing prejudgment interest. As such, the court should weigh the equities of the parties and the necessity of prejudgment interest in making the Lender whole. *Sterilite Corp. v. Continental Cas. Co.*, 397 Mass. at 841-42; *USM Corp. v. Marson*, 392 Mass. at 350.

II.    Any Prejudgment Interest Should Not Accrue Prior To April 20, 2005.

If prejudgment interest is awarded, it should begin to accrue on the date of the demand letter sent to Blue Hills by the Lender on or about April 20, 2005. *See*, Joint Pre-Trial Memorandum filed July 18, 2006, Section II(A) Agreed Upon Facts, ¶40. A true and complete copy of the demand letter is attached hereto and incorporated herein as Exhibit "B." The date of demand is consistent with the purpose of awarding prejudgment interest for three principal reasons: (1) this is the date that Blue Hills was put on notice that the Lender would be seeking full recourse liability; (2) the amount owed was in dispute; and (3) accrual from the date of demand would be equitable under the circumstances. *See, e.g., Lexington v. Bedford*, 378 Mass. 562, 576 (1979); *Craft v. Kane*, 65 Mass. App. Ct. at 328.

Prejudgment interest will be awarded when there is an unlawful detention of money that results in the claimant's loss of use of the money. *Sterilite Corp. v. Continental Cas. Co.*, 397

- 6 -

Mass. at 841-42.  Accordingly, when setting an accrual date, courts will consider both: (1) when the defendant was put on notice of its obligation and (2) whether the amount due was in dispute. *See Lexington v. Bedford*, 378 Mass. at 576 (interest began to accrue on the date of demand letters because the letters "informed [the defendant] of the basis and extent of its obligation, as well as the fact that performance was then due"); *Craft v. Kane*, 65 Mass. App. Ct. at 328 (denying prejudgment interest in a *quantum meruit* claim because the defendant's obligation was in dispute until day of judgment); *Petit v. BASF Corporation*, 14 Mass. L.Rptr. 356, 2002 WL 414184 (Mass. Super.) (prejudgment interest did not accrue until the day that the Court determined the scope of defendant's indemnity obligations).

Both of these factors – notice of obligation and amount in dispute – weigh in favor of Blue Hills.  First, Blue Hills operated under the uncontroverted belief from the time of the settlement agreement until the demand letter that even if, *arguendo*, the settlement constituted "mortgaged property," the settlement did not trigger full recourse provisions of the Guaranty. Thus, the demand letter of April 20, 2005 marked the first opportunity Blue Hills had to settle the dispute or to pay the balance of the loan to fulfill its obligations.  Further, the amount of Blue Hills' obligation to the Lender was in dispute and full recourse liability was not determined until the conclusion of the trial on October 13, 2006.

Finally, equitable principles favor accruing interest no earlier than the date of the April 20, 2005 demand letter.  The sending of the demand letter was an act wholly within the Lender's control and was the first time that Blue Hills was informed that Lender sought to hold it liable for the full amount of the deficiency.  As the Lender chose when to send its demand letter, it should not be compensated for self-inflicted losses attributable to any dilatory behavior on its part.  In fact, Lender knew of Blue Hill's appeal of the zoning decision from, at least, shortly after the

- 7 -

time of foreclosure.  Billing records submitted by Lender's counsel in support of Lender's

petition for attorneys' fees have an entry on December 15, 2004 in which the attorney claims to

"[r]eview[ed] documents re claim for stolen collateral."  Copies of billing records from Lender's

counsel for the period of December 14, 2004 through December 23, 2004 are attached hereto and

incorporated herein as Exhibit "C."

      C.      The Court Has Discretion To Determine The Prejudgment Interest Rate.

The Court has broad discretion to determine the prejudgment interest rate to be employed

here.  *See, Radford Trust v. First Unum Life Ins. Co. of America*, 321 F.Supp. 2d 226, 257-58 (D.

Mass. 2004).  The interest rate under the Note is 8.49%.  However, to calculate prejudment

interest, the Lender proposes to charge the higher default interest rate of 13.49%, referenced in

the Note, § 4, and Mortgage, §§ 25, 26, and 38.  However, the nonrecourse provisions of the

Mortgage, § 54, and of the Guaranty, § 1.2 – under which the Lender seeks to recover the full

deficiency – *do not reference the recovery of interest at all*.  In the event that interest is

recoverable under those sections, there is nothing indicating that the default rate – *a full 5% more*

*than the contract rate* – is the appropriate rate for recovery of prejudgment interest.  As

discussed, *supra*, such a rate would enable the Lender to receive an undeserved windfall.

Moreover, the Lender seeks to recover a high rate of interest for a time period in which interest

rates were at extremely low level.  According to the data made available by the Federal Reserve

Board, the Bank Prime Loan interest rate on August 8, 2003 was 4.00% and the rate on April 20,

2005 – the date of the demand letter – was 5.75%.[2]  Rather than being compensatory, a 13.49%

rate would provide Lender with an investment return far surpassing any then available in the

---

[2] Federal Reserve Statistical Releases, *Historical Data*,
http://www.federalreserve.gov/Releases/HI5/data/Daily/H15_PRIME_NA.txt (Last Visited November 9, 2006).

marketplace at anything less than a tremendous risk. Moreover, a 13.49% rate greatly exceeds (in fact, is more than double) the rate for postjudgment interest under 28 U.S.C. §1961, which is – as of November 3, 2006 – a mere 5%.

### III.  Conclusion

For the foregoing reasons, the Court should determine that any prejudgment interest not accrue prior to April 20, 2005 and should exercise its discretion to reduce – if not omit entirely – any such amount in light of, *inter alia*, the $3,820,000 profit made by the conveyance of the foreclosed Property to OneBeacon Insurance Company and Lender's recovery of the full mortgage deficiency amount plus attorneys' fees and costs.


                                        BLUE HILLS OFFICE PARK LLC, WILLIAM
                                        LANGELIER AND GERALD FINEBERG,
                                        By their attorneys,

                                        /s/Meredith A. Swisher
                                        Peter B. McGlynn, Esquire, BBO No. 333660
                                        Meredith A. Swisher, Esquire, BBO No. 646866
                                        Bernkopf Goodman LLP
                                        125 Summer Street, Suite 1300
                                        Boston, Massachusetts 02110
                                        Telephone:    (617) 790-3000
                                        Facsimile:    (617) 790-3300
                                        pmcglynn@bg-llp.com
Dated: November 10, 2006                mswisher@bg-llp.com
410314 v1/14500/9985

- 9 -

# EXHIBIT A

## CLOSING STATEMENT

**SELLER:**     CSFB 1999-C1 ROYALL STREET, LLC, a Delaware limited liability
company

**BUYER:**      ONEBEACON INSURANCE COMPANY, a Pennsylvania corporation

**DATE:**       APRIL 29, 2005

**PROPERTY:**   BLUE HILLS LAKE OFFICE PARK
150 ROYALL STREET
CANTON, MASSACHUSETTS

|  | BUYER CREDITS | SELLER CREDITS |
|---|---|---|
| Purchase Price | | $ 23,000,000.00 |
| Deposit [NOTE 1] | $ 5,000,000.00 | |
| Proration of Paid Town of Canton Real Estate Taxes for 4th Installment for Tax Year 7/1/04 – 6/30/05 of $623,542.92 ÷ 365 = $1,708.3368 per diem from 4/29/05 – 6/30/05 (63 days) | | 107,625.22 |
| Survey Reimbursement | | 1,300.00 |
| Subtotal: | $ 5,000,000.00 | $ 23,108,925.22 |
| Cash to Close (without Buyer's Expenses): | $ 18,108,925.22 | |
| Total: | $ 23,108,925.22 | $ 23,108,925.22 |

MIAMI 878008.1 7249622799
4/26/05 4:59 PM

LNR01728

Buyer's Expenses:

| | | |
|---|---|---|
| Sale Recording Costs for Deed and MLC | $ | 190.00 |
| Owner's Title Insurance Premium | | 18,400.00 |
| Miscellaneous Title Charges | | 750.00 |
| | | |
| Total | $ | 19,340.00 |

Seller's Expenses:

| | | |
|---|---|---|
| Release and Certificate Recording Costs [NOTE 2] | $ | 50.00 |
| Transfer Stamps | | 104,880.00 |
| Brokerage Commission (Richards Barry Joyce & Partners) | | 460,000.00 |
| Attorneys' and Settlement Fees | | 10,000.00 |
| Attorneys' Costs | | 500.00 |
| Post Closing SPE Expenses | | 1,500.00 |
| Management Company Expenses | | 100,000.00 |
| | | |
| Total: | $ | 676,930.00 |

## BUYER'S SUMMARY

| | | |
|---|---|---|
| Cash to Close | $ | 18,108,925.22 |
| Plus Buyer's Expenses | | 19,340.00 |
| | | |
| TOTAL CASH DUE FROM BUYER | $ | 18,128,265.22 |

## SELLER'S SUMMARY

| | | |
|---|---|---|
| Cash to Close | $ | 18,108,925.22 |
| Plus Deposit | | 5,000,000.00 |
| Minus Seller's Expenses | | (676,930.00) |
| | | |
| TOTAL CASH DUE TO SELLER | $ | 22,431,995.22 |

## CASH RECEIVED:

| | | |
|---|---|---|
| Total from Buyer | $ | 18,128,265.22 |
| Plus Deposit | | 5,000,000.00 |
| | | |
| TOTAL CASH RECEIVED: | $ | 23,128,265.22 |

LNR01729

<u>TOTAL CASH DISBURSED</u>:

| | | |
|---|---|---|
| To Chicago Title Insurance Company (for further disbursement for recording costs, title costs, title insurance premiums) | $ | 124,270.00 |
| To Richards Barry Joyce & Partners (brokerage commission) | $ | 460,000.00 |
| To Lennar Partners, Inc. (attorneys' fees & costs + post closing SPE expenses) via the following wiring instructions: | $ | 12,000.00 |

| | |
|---|---|
| Bank Name: | Bank of America, N.A. |
| City, State: | Dallas, Texas |
| ABA# : | 111000012 |
| Beneficiary Name: | CSFB 1999-C1, Special Servicing Account |
| Account #: | 3752284236 |
| REF: | Legal Fees + SPE – Blue Hills Office Park, Loan #760990083 |

| | | |
|---|---|---|
| To Finard & Company, LLC (management company expenses) via the following wiring instructions: | $ | 100,000.00 |

| | |
|---|---|
| Bank Name: | Bank of America |
| City, State: | Dallas, Texas |
| ABA# : | 111000012 |
| Beneficiary Name: | REO Account – Blue Hills Office Park, Finard & Company, LLC, as Authorized Agent |
| Account #: | 3752210954 |
| REF: | Operating Expenses – Blue Hills Office Park |

| | | |
|---|---|---|
| To Seller (Total Cash due to Seller) via the following wiring instructions: | $ | 22,431,995.22 |

| | |
|---|---|
| Bank Name: | Wells Fargo Bank |
| City, State: | Santa Rosa, California |
| ABA# : | 121000248 |
| Beneficiary Name: | Wells Fargo Commercial Mtg. Serv. |
| Account #: | 4535078117 |
| REF: | CSFB 1999-C1 payoff proceeds, Blue Hills Office Park, Loan #760990083 |

| | | |
|---|---|---|
| TOTAL CASH DISBURSED: | $ | 23,128,265.22 |

CLOSING NOTES:

1.  The Deposit shall become a part of Seller's proceeds to be disbursed by the Title Company in accordance with this Closing Statement. Any interest on the Deposit shall be disbursed by the Title Company to Buyer by separate check upon Closing.

2.  Seller's recording fees are estimated. The Title Company will pay any additional recording fees necessary to record at Closing. Seller agrees to pay to the Title Company any such additional monies necessary with respect to the releases and Seller's certificates immediately upon demand by the Title Company

3.  The undersigned acknowledge that in preparing this Closing Statement, Bilzin Sumberg Baena Price & Axelrod LLP has necessarily relied upon information provided by others and therefore cannot warrant the accuracy of that information.

4.  The undersigned acknowledges the receipt of a copy of this Closing Statement and authorizes and ratifies the deductions and disbursements of the amounts shown above.

5.  The undersigned hereby acknowledges that, to the best of their knowledge, the credits, expenses and disbursements herein set forth are accurate and correct. In the event there are any errors or omissions contained herein, Seller and Buyer agree to promptly make the necessary adjustments and to promptly pay any monies due and owing pursuant to such adjustments upon written demand therefore.

6.  Facsimile counterparts of this Closing Statement shall be deemed originals for all purposes.

**CSFB 1999-C1 ROYALL STREET, LLC,**
a Delaware limited liability company

By:     Lennar Massachusetts Partners, Inc.,
        a Massachusetts corporation

        By: _____ (SEAL)
        Name: Steven D. Ferreira
        Title: Vice President


**ONEBEACON INSURANCE COMPANY,**
a Pennsylvania corporation


By: _____(SEAL)
Name: _____
Title: _____

MIAMI 878008.1 7249622799
4/26/05 4:59 PM -4-

LNR01731

CLOSING NOTES:

1.  The Deposit shall become a part of Seller's proceeds to be disbursed by the Title Company in accordance with this Closing Statement. Any interest on the Deposit shall be disbursed by the Title Company to Buyer by separate check upon Closing.

2.  Seller's recording fees are estimated. The Title Company will pay any additional recording fees necessary to record at Closing. Seller agrees to pay to the Title Company any such additional monies necessary with respect to the releases and Seller's certificates immediately upon demand by the Title Company

3.  The undersigned acknowledge that in preparing this Closing Statement, Bilzin Sumberg Baena Price & Axelrod LLP has necessarily relied upon information provided by others and therefore cannot warrant the accuracy of that information.

4.  The undersigned acknowledges the receipt of a copy of this Closing Statement and authorizes and ratifies the deductions and disbursements of the amounts shown above.

5.  The undersigned hereby acknowledges that, to the best of their knowledge, the credits, expenses and disbursements herein set forth are accurate and correct. In the event there are any errors or omissions contained herein, Seller and Buyer agree to promptly make the necessary adjustments and to promptly pay any monies due and owing pursuant to such adjustments upon written demand therefore.

6.  Facsimile counterparts of this Closing Statement shall be deemed originals for all purposes.

**CSFB 1999-C1 ROYALL STREET, LLC,**
a Delaware limited liability company

By:     Lennar Massachusetts Partners, Inc.,
        a Massachusetts corporation


        By:_____(SEAL)
        Name: Steven D. Ferreira
        Title:  Vice President


**ONEBEACON INSURANCE COMPANY,**
a Pennsylvania corporation


By: _____(SEAL)
Name: _____
Title: _____


MIAMI 878008.1 7249622799
4/26/05 4:59 PM  -4-


**LNR01732**

**RICHARDS BARRY JOYCE & PARTNERS, LLC**

April 27, 2005

Ms. Marjie C. Nealon, P.A.
Bilzin Sumberg Baena Price & Axelrod LLP
2500 Wachovia Financial Center
Miami, FL  33131

**RE: Sale Commission (INV#167000)**

| | |
|---|---|
| **Seller:** | CCFB199-C1 Royall Street, LLC |
| **Buyer:** | OneBeacon Insurance Group LLC |
| **Building:** | 150 Royall Street, Canton, MA |
| **Sales Price:** | $23,000,000 |
| **Closing Date:** | April 29,2005 |
| **RBJ Commission:** | $460,000 |

Wiring Instructions:

ABA# 211070175
**Account Name:** Richards Barry Joyce and Partners
**Account Number:** 1303172795
Citizens Bank
52 State Street
Boston, MA 02109

**Invoice will be paid in full once payment has been received by our office**

Tax ID #: 04-3566274

53 State Street   Boston, Massachusetts 02109
Tel 617.439.6000   Fax 617.439.9707
www.rbjrealestate.com

LNR01733

EXHIBIT B

# CSFB 1999-C1 ROYALL STREET, LLC
1601 Washington Avenue, Suite 700
Miami Beach, Florida 33139

April 20, 2005

RETURN RECEIPT REQUESTED
REGISTERED FIRST CLASS MAIL

COPY BY FEDERAL EXPRESS

Gerald S. Fineberg
c/o Fineberg Management, Inc.
One Washington Street, Suite 400
Wellesley, Massachusetts 02481

William J. Langelier
c/o The Langelier Company
2045 Jackson Street
Suite 501
San Francisco, California 94109

      Re:    Demand for Payment Under Guaranty, dated September 14, 1999
              Borrower: Blue Hills Office Park, LLC
              Property: 150 Royall St., Canton, MA

Gentlemen:

     1999-C1 Royall Street, LLC, as assignee of a Note in the original principal amount of $33,149,000, together with the Mortgage, Guaranty and other loan documents, dated September 14, 1999 ("Loan Documents") given by Blue Hills Office Park, LLC ("Blue Hills") to Credit Suisse First Boston Mortgage Capital, LLC (hereafter, "Lender"), makes demand for payment pursuant to your personal Guaranty.

     In June 2003, Blue Hills brought a lawsuit challenging a special permit issued by the Canton Zoning Board of Appeals. The permit was issued for construction of a parking garage by Blueview Corporate Center LLC, then-owner of the property located at 250 Royall Street. Without obtaining the prior written consent of the Lender, Blue Hills settled the lawsuit, dismissed all claims and accepted a substantial payment in connection therewith. The payment was not deposited to the Clearing Bank or otherwise conveyed to Lender. Both the settled claims and the settlement payment were subject to the Lender's security interest under the Loan Documents.

Gerald S. Fineberg
William J. Langelier
April 20, 2005
Page 2

You are liable under the Guaranty for payment of the full amount of the Debt on account of, inter alia, the failure of Blue Hills to obtain the prior written consent of the Lender before transferring an interest in the Mortgaged Property, in violation of Section 10 of the Mortgage. In addition, as provided in the Guaranty, you are liable for all loss, damages and expenses, including attorney's fees, arising from intentional misrepresentations by you or Blue Hills in connection with the matters described in the preceding paragraph.

As of November 19, 2004, after credit for the successful foreclosure bid and loan reserves, the Debt was $10,770,847, exclusive of any prepayment premium. Payment of $10,770,847 is hereby demanded. Section 1.5 of the Guaranty requires that you make payment immediately. Once payment of this amount is received, we will make an exact calculation of interest, expenses, and other amounts due and notify you promptly.

Payment should be sent to:

CSFB 1999-C1 Royall Street, LLC
1601 Washington Avenue, Suite 700
Miami Beach, Florida 33139

Thank you for your prompt attention to this matter.

Sincerely,

CSFB 1999-C1 ROYALL STREET, LLC

By its attorney,

E. Randolph Tucker
DLA PIPER RUDNICK GRAY CARY US LLP
One International Place, 21st Floor
100 Oliver Street
Boston, MA 02110-2613
(617) 406-6000 (telephone)
(617) 406-6100 (fax)

cc:   David Doyle, Esq. (by hand)
      Andrew H. Cohn, Esq. (by hand)
      Peter B. McGlynn, Esq. (by hand)

EXHIBIT C



**DLA PIPER**

*Fed ID#52-0616490*

DLA Piper US LLP
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601-1293
T   312.368.4000
F   312.236.7516
W   www.dlapiper.com

Lennar Partners, Inc.
Invoice #  1603911

Page     2

# REDACTED

| Date | Person | Description | Hours |
|------|--------|-------------|-------|
| 12/14/04 | E. Tucker | Review mortgage; telephone conference with J. Polcari (2); attention to claim for proceeds of litigation. | 2.20 |
| 12/15/04 | T. Feit | Conference with R. Tucker regarding review of mortgage documents. | .10 |
| 12/15/04 | E. Tucker | Review documents re claim for stolen collateral; assignment conference with T. Feit. | 1.50 |
| 12/16/04 | J. Snyder | Online research, including Lexis, SCRIB, Internet, to retrieve information on Norfolk Superior Court proceeding for R. Tucker. | .70 |
| 12/16/04 | L. Stewart | Research UCC-1 filing - Blue Hills Office Park, LLC, forward results to R. Tucker and B. Barnett. | .50 |
| 12/17/04 | L. Stewart | Conference with J. Snyder and R. Tucker regarding ownership entity of property abutting Blue Hills Office Park - litigation, Special Permit; research | 1.00 |



**DLA PIPER US LLP**
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601-1293
**T** 312.368.4000
**F** 312.236.7516
**W** www.dlapiper.com

Fed ID#52-0616490

Lennar Partners, Inc.
Invoice #  1603911

Page    3

| | | | |
|---|---|---|---|
| 12/20/04 J. Snyder | Online research, including SCRIB, Lexis and Internet, to locate information on one entity for R. Tucker. | .30 | |
| 12/20/04 L. Stewart | Research Norfolk Registry of Deeds, | 3.00 | |

**REDACTED**

; obtain name of ownership entity, property address of abutter, forward research results to J. Snyder; obtain copy of Special Permit for parking garage.

| | | |
|---|---|---|
| 12/21/04 E. Tucker | Review documents; memo re stolen collateral issue; assignment conference with T. Feit. | 2.30 |
| 12/21/04 L. Stewart | | .70 |

**REDACTED**

prepare memo containing research results and Special Permit, forward same to R. Tucker.

| | | |
|---|---|---|
| 12/22/04 E. Tucker | Revise memo; assignment conference with T. Feit. | .80 |
| 12/22/04 L. Stewart | Review e-mail from R. Tucker regarding Zoning Appeal; forward copy of Zoning Decision to J. Snyder. | .30 |
| 12/23/04 J. Snyder | SCRIB research to obtain information on a Norfolk Superior court filing for R. Tucker. | .20 |
| 12/23/04 T. Feit | Review documents related to mortgage and assignment of rents and leases; analyze rights of mortgagee pertaining to loss of value of collateral. | 3.60 |