UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLUE HILLS OFFICE PARK LLC,<br>　　　Plaintiff,<br>　　　Defendant-in-<br>　　　Counterclaim,<br><br>　　v.<br><br>J.P. MORGAN CHASE BANK,<br>as Trustee for the Registered Holders of Credit<br>Suisse First Boston Mortgage Securities Corp.,<br>Commercial Mortgage Pass-Through Certificates,<br>Series 1999-C1, and CSFB 1999–C1 ROYALL<br>STREET, LLC,<br>　　　Defendants,<br>　　　Plaintiffs-in-<br>　　　Counterclaim,<br><br>　　v.<br><br>WILLIAM LANGELIER and<br>GERALD FINEBERG,<br>　　　Defendants-in-<br>　　　Counterclaim. | CIVIL ACTION<br>NO. 05-10506-WGY |

**DEFENDANTS' AND PLAINTIFFS-IN-COUNTERCLAIM'S
REPLY BRIEF IN SUPPORT OF PETITION FOR ATTORNEYS' FEES AND
EXPENSES**

In their opposition to the Lender's Fee Petition[1], the Blue Hills Parties[2] do not dispute that they are jointly and severally liable for the Lender's attorneys' fees and expenses incurred both in defending against Blue Hills' claims and prosecuting the counterclaim. Nor do they dispute

---

[1] Defendants and Plaintiffs-in-Counterclaim J.P. Morgan Chase Bank, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1 (the "Trustee") and CSFB 1999-C1 Royall Street, LLC ("CSFB") are referred to collectively herein as the "Lender."

[2] Blue Hills Office Park LLC ("Blue Hills"), William Langelier, and Gerald Fineberg are referred to collectively herein as the "Blue Hills Parties."

the reasonableness of DLA Piper's rates. Instead, they criticize the amount of the fees and DLA Piper's billing methods. However, the cases on which they rely are inapplicable to contractual fee shifting provisions such as those at issue here and their criticisms have no merit. Under Massachusetts law, the Lender is entitled to an award of the full amount of its fees and expenses.

I.  **THE CASES CITED BY THE BLUE HILLS PARTIES ARE INAPPOSITE IN A CONTRACTUAL ATTORNEYS FEE CASE SUCH AS THIS ONE**

"[W]here contracting parties have agreed that a breaching party will be liable for attorneys' fees, the purpose of the award [of such fees] is to give the parties the benefit of that bargain, and the court's responsibility is to enforce that bargain." U.S. v. Western States Mech. Contractors, Inc., 834 F.2d 1533, 1548 (10th Cir. 1987) (cited in AccuSoft Corp. v. Palo, 237 F.3d 31, 61 (1st Cir. 2001)). While the Blue Hills Parties give a nod to the correct controlling law -- Massachusetts law applying the factors set forth in Cummings v. National Shawmut Bank of Boston, 284 Mass. 563 (1934) -- they otherwise fail to recognize that, because their obligation to pay the Lender's attorneys fees and expenses is born from their voluntary contractual agreements, the fee-award cases from other contexts on which they rely are inapposite. Indeed, after citing Cummings on page 4, the Blue Hills Parties do not cite another contract case applying Massachusetts law for the duration of their brief. See Opposition of Blue Hills Office Park LLC, Gerald Fineberg and William Langelier to Petition for Attorneys' Fees and Expenses of Defendants and Plaintiffs-in-Counterclaim J.P. Morgan Chase Bank, as Trustee, and CSFB 1999-C1 Royall Street, LLC [docket no. 172] ("BHP Opposition").[3]

---

[3] Almost all of the cases cited are applying federal law related to lodestar calculations; the two exceptions comprise a federal bankruptcy case (In re Bank of New England, 134 B.R. 450 (Bank. D. Mass. 1991)) and a Massachusetts involuntary fee-shifting case (Ellis v. Varney, 19 Mass. L. Rptr. 260 (2005)).

As a result, they fail to address the appropriate principles of Massachusetts law. The Supreme Judicial Court has instructed that where, as under the Guaranty, ¶ 1.8, the party to be charged did not expressly limit its agreement to pay fees and expenses to those that are "reasonable," actual fees should be awarded. "The agreement was to pay attorney's fees [the victor] incurred in pursuing his rights. The agreement was not to pay [his] reasonable attorney's fees as determined by a judge." Carter v. Warren Five Cents Sav. Bank, 409 Mass. 73, 74-75, 80 (1991). "In these circumstances, [the Guarantors] assumed the burden of paying whatever the [Lender's] lawyers charged the [Lender] if the [Lender] prevailed." MIF Realty, L.P. v. Fineberg, 989 F. Supp. 400, 402 (D. Mass. 1998).

The Blue Hills Parties would rather pick apart DLA Piper's invoices, inviting the Court to assess and pass on them on an entry-by-entry basis. But no such review is required. This is not a lodestar case, and the Blue Hills Parties' assertion that application of the lodestar approach is "logical, expected and fair," BHP Opposition at 3, is contrary to Massachusetts law. See Mulhern, 398 Mass. at 27 n. 13 (in contractual case, noting that "the defendant's reliance on many [lodestar] cases concerning claims for attorney's fees under 42 U.S.C. § 1988 is misplaced."); WHTR Real Estate L.P. v. Venture Distributing, Inc., 63 Mass. App. Ct. 229, 236-37 (2005) (holding that lodestar is not required, reiterating that application of the Cummings factors is the approach "typically" used by Massachusetts courts in contract cases, and holding that explicit findings as to a fair market hourly rate and the exact number of hours reasonably spent are not required).

The fee shifting here is by contractual agreement of indemnification, not pursuant to an involuntary statutory provision "designed to ensure effective access to the judicial process for persons with civil rights grievances." Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992).

Therefore, the lodestar framework set forth in Hensley v. Eckerhart, 461 U.S. 424 (1983) and elucidated by subsequent First Circuit decisions -- pursuant to which the Court must make careful and often painstaking judgments about the amount of time spent on various tasks -- does not apply.  Here, the Court is "not required to review and allow or disallow each individual item in the bill, but [can] consider the bill as a whole."  Berman v. Linnane, 434 Mass. 301, 303 (2001).  In contrast, under the lodestar approach the Court must "determine the number of hours actually spent and then subtract from that figure hours which were duplicative, unproductive, excessive or otherwise unnecessary."  Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984).  Accordingly, the numerous cases plaintiffs cite applying federal lodestar law are inapposite.  See United States v. Metro. Dist. Comm'n, 847 F.2d 12 (1st Cir. 1988); Guckenberger v. Boston Univ., 8 F. Supp. 2d 91 (D. Mass. 1998); Jacobs v. Mancuso, 825 F.2d 559 (1st Cir. 1987); McMillan v. Mass. Soc. for the Prevention of Cruelty to Animals, 140 F.3d 288 (1st Cir. 1998); Weinberger v. Great N. Nekoosa Corp., 801 F. Supp. 804 (D. Me. 1992); Wilcox v. Stratton Lumber Inc., 921 F. Supp. 837 (D. Me. 1996); Dixon v. Int'l Bhd. of Police Officers, 434 F. Supp. 2d 73 (D. Mass. 2006); Lipsett v. Blanco, 975 F.2d 934 (1st Cir. 1992); Grendel's Den, Inc. v. Larkin, 749 F.2d 945 (1st Cir. 1984); Parker v. Town of Swansea, 310 F. Supp. 2d 376 (D. Mass. 2004); Mogilevsky v. Bally Total Fitness Corp., 311 F. Supp. 2d 212 (D. Mass. 2004); Mass. Dept. of Pub. Health v. School Comm., 841 F. Supp. 449 (D. Mass. 1993).[4]

Nor is this a case governed by those Massachusetts precedents applying "strictly conservative principles" in determining fee awards, such as Ellis v. Varney, 19 Mass. L. Rptr.

---

[4] The Blue Hills Parties also cite some of these cases for wholly inapplicable purposes.  For example, because the Lender's counsel are from Boston, the Blue Hills Parties' citation of Parker v. Town of Swansea, 310 F. Supp. 376, 391 (D. Mass. 2004), for the proposition that a defendant should not have to pay for a plaintiff's choice to retain out-of-state counsel is mystifying.  BHP Opposition at 18.  Similarly, there is no suggestion in the billing records that Lender's counsel billed for time commuting from home to work, so citation of authority on that point is irrelevant.  BHP Opposition at 18.

260 (2005), relied on by the Blue Hills Parties. Massachusetts courts apply strictly conservative principles where the paying party has in no way consented to responsibility for fees, such as in matrimonial disputes, administration of estates, statutory awards, and "common fund" cases where counsel is paid out of the pool of money in dispute (such as the stockholder derivative action in Ellis). See, e.g., Mulhern v. Roach, 398 Mass. 18, 31 n. 15 (1986); Robbins v. Robbins, 19 Mass. App. Ct. 538, 544 (1985); Ellis, 19 Mass. L. Rptr. at *2. These principles are not applicable to fee and expense payments pursuant to voluntary contractual provisions. N. Heel Corp. v. Compo Indus., Inc., 851 F.2d 456, 476 (1988) (where fee-shifting "stems from a contract voluntarily entered into by the party to be charged", "we doubt that the … rule is apposite"); Fineberg, 989 F. Supp. at 402-03.

Finally, this is not a bankruptcy case, where fee petitions are subject to particular constraints imposed by law developed under the fee provision of the Bankruptcy Code, 11 U.S.C. § 330. Thus, the rules stated in bankruptcy cases do not govern this case and the Blue Hills Parties' reliance on such cases is misplaced. See, e.g., BHP Opposition at 18 (citing In re Bank of New England, 134 B.R. 450 (Bank. D. Mass. 1991)).

## II. RESPONSE TO PARTICULAR POINTS

### A. Block Billing

The Blue Hills Parties' chief complaint about the Fee Petition is that DLA Piper attorneys generally made one entry each day describing the tasks they performed and showing their cumulative time for the day. These accumulations of daily activity are the result of adding together smaller segments of work during the day, between which fell periods for events not billable to this matter. This is a conventional way that DLA Piper and other firms, including

Goodwin Proctor LLP, bill their clients.  Falby Reply Aff. ¶¶ 2-5;[5] Sherman Aff. ¶¶ 2-3.[6]  Most clients do not require task-based billing.  Falby Reply Aff. ¶¶ 2-5.  None of the contractual fee cases cited by either the Lender or the Blue Hills Parties mention block billing as a concern.  Indeed, in several of the contractual fee cases there were no billing records at all.  See, e.g., Mulhern, 398 Mass. at 22 (awarding one-third of damages despite absence of any contemporaneous time records); First Nat'l Bank of Boston v. Brink, 372 Mass. 257, 258, 261-62 (1977) (awarding $760,000 where the billable time (attorneys usual hourly rate times the estimated number of hours worked) was approximately $102,000).

The Blue Hills Parties have no basis for their speculation that the time billed by DLA Piper attorneys was exaggerated or otherwise not spent on this litigation.  BHP Opposition at 6.  Moreover, there is no need in this case to allocate time entries by task or claim because the Blue Hills Parties are liable for fees and expenses on all claims at issue in the litigation.

### B. Allegedly Duplicative Efforts

The Blue Hills Parties do not dispute the history of the litigation set forth in the Initial Falby Affidavit,[7] including the large number of entities with which DLA Piper had to coordinate to represent the Lender, the tens of thousands of pages produced by various parties and non-parties to the litigation, and the large number of fact (14) and expert (7) witnesses.  Their documented intransigence to the Lender's discovery efforts contributed significantly to the amount of time spent by Lender's counsel in the pre-trial phase.  Fee Petition at 15-18; Initial

---

[5] Reply Affidavit of Bruce E. Falby, Esq., in Support of Petition for Attorneys' Fees and Expenses, filed today.

[6] Affidavit of Robert P. Sherman, Esq., in Support of Petition for Attorneys' Fees and Expenses, filed today.

[7] Affidavit of Bruce E. Falby, Esq., in Support of Petition for Attorneys' Fees and Expenses [docket no. 167].

Falby Aff. at ¶¶ 26-36, 42-53, 60-61, 66, 68-69.[8]  So, too, did the Blue Hills Parties' attempt to salvage Blue Hills' wrongful foreclosure claim by constructing a non-existent course of conduct from fragments of documents spread throughout the five-year history of the loan.  This required Lender's counsel to spend many hours disproving the suggestion.  As the Court noted, counsel for the Blue Hills Parties fought "an extremely diligent rearguard action."  Trial Transcript Vol. 9 at 52.

Nonetheless, the Blue Hills Parties employ sweeping generalities to allege that Lender's counsel overbilled and conducted duplicative work.  However, careful preparation is a characteristic of good lawyering, not a fault.  In addition, "[t]ime spent by two attorneys on the same general task is not … *per se* duplicative.  Careful preparation often requires collaboration and rehearsal, and the court should not reward defendants for their vehement 'Stalingrad defense,' …. *Id.* at 939.  Indeed, because a litigant's staffing needs and preparation time will often 'vary in direct proportion to the ferocity of [its] adversaries' handling of the case, this factor weighs heavily in the balance.' *Id.*"  Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 860 (1st Cir. 1998) (quoting Lipsett v. Blanco, 975 F.2d 934 (1st Cir. 1992)).

Moreover, the broad claims of overbilling made in the text of the Blue Hills Parties' Opposition are not supported by the entries on their Exhibits to which they point.  For example, while they assert that each entry on their Exhibit I is "obviously clerical" and thus not appropriate for paralegals, BHP Opposition at 17, the actual activities -- such as preparing exhibits for depositions and trial, organizing discovery documents for use by attorneys, and

---

[8] The Blue Hills Parties blithely assert that various motions of the Lender -- e.g., to strike the jury demand and to compel production of documents -- were "unnecessary."  BHP Opposition at 10-11.  To the contrary, Blue Hills refused to drop its jury demand until presented with the motion to strike and failed to produce any documents relating to the disposition of the Payment until the Lender filed its motion to compel.  Initial Falby Aff. ¶ 32, 35, 45-53, 60-61.

overseeing the creation of an electronic database of those documents (the use of which saved countless hours of attorney time) -- are exactly the sorts of things for which paralegals are best suited.[9] Without attempting to address all of the inaccuracies and overstatements in the Blue Hills Parties' opposition to the Fee Petition, the Lender makes the following points:

1. The Blue Hills Parties misleadingly suggest that the Lender's counsel spent 70 hours on the Notice of Removal in this case. Beyond the fact that this case presented a complicated removal analysis due to the nature of the business entities involved, the Blue Hills Parties ignore that many of the entries they suggest are dedicated solely to removal issues also included research, analysis, and strategic consideration of the claims in Blue Hills' complaint and defenses thereto and development of the Lender's ultimately victorious counterclaim.

2. The Blue Hills Parties' criticism of the amount of time spent preparing for depositions ignores the long expanse of time, large number of issues, and voluminous documents involved in this case. The criticism also ignores the results. Lender's counsel's thorough deposition preparation resulted in transcripts that were the foundation of the Lender's case at trial, which counsel put in largely through the testimony of the Blue Hills Parties' witnesses.

---

[9] Due to presumably inadvertent errors in their production, the Blue Hills Parties' exhibits do show duplication when they double count entries from the DLA Piper invoices and end up with inflated totals. For example, on Exhibit I alone, there are 5 double-counted entries that inflate the Blue Hills Parties' total by 38.3 hours. See Entries for Gould on 5/16 & 5/17/06, McNabb on 9/13/06, and Yavin on 2/1 and 2/2/06.

On a separate technical point, the Blue Hills Parties claim confusion where there is none, regarding the amount Lender seeks for services in December 2004. BHP Opposition at 7 & n. 4. While the Lender was billed for time charges of $11,160.37 incurred in December 2004, as shown in the total of the invoice for that month (found in Initial Falby Aff. Tab D), the Lender has redacted from that invoice -- and does not seek here -- amounts unrelated to this litigation (which related to the foreclosure in November 2004). The amount sought here is the sum of the unredacted time on the invoice, which, as shown on Initial Falby Aff. Tab E, is $5,500.50.

3. The Blue Hills Parties' characterization of the number of the Lender's lawyers or paralegals attending events as unreasonable is belied by the fact that their counsel generally had the same number of people in attendance at trial[10] and that they had a greater number of lawyers present at each mediation session than did the Lender. Falby Reply Aff. ¶ 6. Indeed, their counsel outnumbered Lender's counsel by at least 3-1 in each of the last two mediation sessions. Id.

4. With a broad brush, the Blue Hills Parties characterize the Lender's comprehensive motions for summary judgment and to exclude the testimony of their economist, Kenneth Gartrell, as unnecessary and assert, based on nothing, that the "fate of the . . . motions was preordained." BHP Opposition at 12-13. Notably, the Blue Hills Parties filed their own motion for summary judgment on the counterclaim, which was denied from the bench at oral argument. The best judgment of the Lender's Counsel at the time was that there was no genuine dispute on any materials fact and that it was entitled to judgment as a matter of law, which would save the Lender the expense of trial. The motion to exclude Gartrell, which the Court denied without prejudice, was appropriate because, without his unprecedented (and inadmissible) methodology for valuing Blue Hills Office Park, Blue Hills could not prove any damages. The Blue Hills Parties' leap from denial of the motions to their being unnecessary and wasteful is

---

[10] The Blue Hills Parties' repeated statement that Counsel had 1-2 paralegals in attendance for each day of trial is incorrect. Two paralegals were present early on the first day trial to assist in setting up the voluminous exhibits and trial materials, but there were not two at any other time. Generally, paralegal Susan McNabb came to court before and after each trial day to assist with documents and exhibits (so that lawyers would not have to perform tasks more appropriately handled by paraprofessionals), but did not stay for the testimony. And it was time well spent. The Court observed and commented on the exceptional attention to document control maintained by Counsel throughout trial. ." Trial Transcript Vol. 8 at 67-68.

unwarranted. Similarly, there is no basis for the conclusion that, because more than one lawyer worked on the summary judgment papers, the lawyers duplicated one another's efforts. As the filings reflect, the papers synthesized a vast factual record and addressed multiple legal issues on each of many different claims. All told, Counsel submitted 90 pages of tightly argued briefing, 110 pages of factual statements and responses, ten affidavits with a total of 36 exhibits, and 95 deposition exhibits. This was a large undertaking that required the efforts of more than one attorney.

5. The Blue Hills Parties incorrectly condemn conferences among the Lender's lawyers. "It is not unreasonable for attorneys to consult one another about strategy or law, or meet in person to develop guidelines about work to be performed." Mass. Dept. of Pub. Health v. School Committee, 841 F. Supp. 449, 459 (D. Mass. 1993). "In general, conferences between an associate and a supervising partner are necessary to effective and diligent representation, and in the end reduce the amount of unnecessary time spent on a case." Id. Conferences between lawyers are routinely billed to clients, who pay for them. Falby Aff. ¶ 7; Sherman Aff. ¶ 3. The cases cited by the Blue Hills Parties on this point are inapposite. For example, the conference among co-counsel subject to 80% reduction in the lodestar case of Weinberger v. Great Northern Nekoosa Corp. was among the sixteen different law firms that comprised plaintiff's counsel. See 801 F. Supp. 804, 806, 819 (D. Me. 1992).

6. Costs and expenses of the type set forth in the Fee Petition are routinely billed by DLA Piper to its clients and paid for by them. Falby Reply Aff. ¶ 8. "[T]he

Supreme Court has endorsed the view that disbursements made by an attorney and ordinarily billed directly to the client (that is, separately from the hourly or fixed fee) can properly be encompassed within the phrase 'attorney's fee' and it is not uncommon for courts to allow such costs as travel, long distance calls, and parking on top of the hourly fee." Invessys, Inc. v. McGraw-Hill Companies, Ltd., 369 F. 3d 16, 22-23 (1st Cir. 2004). The Blue Hills Parties' attack on Lexis and Westlaw charges as inappropriate overhead is not supported by any authority and particularly misplaced. Computer assisted research should be treated like other expenses and recovered if, as here, it is paid to a third-party provider and is customarily billed to clients. Id. (noting that computer assisted research can save attorneys time and thus reduce the hours billed); Falby Aff. ¶ 8.

### III. ORAL ARGUMENT

The Lender believes the Court can determine the amount of attorneys fees and expenses to be awarded based on the papers submitted and thus does not join in the Blue Hills Parties' request for oral argument. The Lender also notes that the case cited by the Blue Hills Parties in support of their claimed entitlement to oral argument actually addresses an evidentiary hearing, which the Blue Hills Parties do not request. See J.P. Construction Co. v. Stateside Builders, Inc., 45 Mass. App. Ct. 920, 920-21 (1998).

## CONCLUSION

For the reasons stated above and in the Fee Petition, the Lender asks that the Court grant its petition for an award of $2,056,566.01 in attorneys' fees and litigation expenses jointly and severally against Blue Hills and the Guarantors pursuant to the provisions of the Mortgage, Note, and Guaranty.

Respectfully submitted,

CSFB 1999-C1 ROYALL STREET, LLC,
and J.P. MORGAN CHASE BANK, as
Trustee for the Registered Holders of Credit
Suisse First Boston Mortgage Securities
Corp., Commercial Mortgage Pass-Through
Certificates, Series 1999-C1,

By their attorneys,

/s/ Bruce E. Falby
E. Randolph Tucker, BBO #503845
Bruce E. Falby, BBO #544143
Bruce S. Barnett, BBO #647666
Traci S. Feit, BBO #660688
DLA PIPER US LLP
33 Arch Street, 26th Floor
Boston, MA  02110-1447
(617) 406-6000

Dated:  November 17, 2006