UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLUE HILLS OFFICE PARK LLC,<br>    Plaintiff,<br>    Defendant-in-<br>    Counterclaim,<br><br>    v.<br><br>J.P. MORGAN CHASE BANK,<br>as Trustee for the Registered Holders of Credit<br>Suisse First Boston Mortgage Securities Corp.,<br>Commercial Mortgage Pass-Through Certificates,<br>Series 1999-C1, and CSFB 1999–C1 ROYALL<br>STREET, LLC,<br>    Defendants,<br>    Plaintiffs-in-<br>    Counterclaim,<br><br>    v.<br><br>WILLIAM LANGELIER and<br>GERALD FINEBERG,<br>    Defendants-in-<br>    Counterclaim. | CIVIL ACTION<br>NO. 05-10506-WGY |

**MEMORANDUM OF DEFENDANTS AND PLAINTIFFS-IN-COUNTERCLAIM
REGARDING PRE-JUDGMENT INTEREST AND
IN SUPPORT OF AMENDED MOTION FOR ENTRY OF JUDGMENT**

The Blue Hills Parties[1] argue that enforcing their contractual obligation to pay interest

would be a "windfall" to the Lender.[2]  This argument is both inaccurate and irrelevant.  The

---

[1] Blue Hills Office Park LLC ("Blue Hills"), William Langelier, and Gerald Fineberg are referred to collectively herein as the "Blue Hills Parties."  Langelier and Fineberg are together referred to as the "Guarantors."

[2] Defendants and Plaintiffs-in-Counterclaim J.P. Morgan Chase Bank, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1 (the "Trustee") and CSFB 1999-C1 Royall Street, LLC ("CSFB") are referred to collectively herein as the "Lender."

Note, Mortgage and Guaranty govern the issue of interest and are to be enforced in accordance with their terms.  The Court properly awarded the Lender the interest due under the Note, Mortgage, and Guaranty in its summary findings and rulings of October 13, 2006.  There is no cognizable legal basis for reversing that decision and excusing the sophisticated Blue Hills Parties, who contracted at arms length, from their contractual obligations.  The Lender therefore requests that judgment enter in the <u>revised</u> form attached to the Lender's <u>Amended</u> Motion for Entry of Judgment as Exhibit A.[3]

I.  **THE BLUE HILLS PARTIES ARE REQUIRED TO PAY THE INTEREST DUE UNDER THE TERMS OF THE NOTE, MORTGAGE, AND GUARANTY $4,502,144.81**.

    A.  <u>The Court has properly ruled that interest runs pursuant to the loan documents from the time of the contract breach.</u>

In its summary findings and rulings of October 13, 2006, the Court ruled that Blue Hills breached Paragraph 10(a) of the Mortgage (Trial Exhibit 5) when it transferred Mortgaged Property without the Lender's consent.  The Court further ruled that the date of the breach was August 8, 2003, and that "[i]nterest runs pursuant to the contract as against Blue Hills from the time of the contract breach." Trial Transcript, Vol. 9 at 54.[4]  This ruling is in accordance with the terms of the Note (Trial Exhibit 4) and Mortgage, which provide that the unconsented-to transfer of Mortgaged Property was an "Event of Default," Mortgage ¶ 23(d), and that upon an Event of Default the interest rate on the loan changes from the "Initial Term Interest Rate" of

---

[3] The amount of prejudgment interest in the revised form of judgment is $4,502,144.81, plus per diem interest until judgment enters.  The Lender's original form of judgment requested prejudgment interest of $3,233,075.04 plus per diem interest.  This original request was made in error as explained below in section I(E).

[4] The Court also found that there were other breaches of the loan documents triggering the Blue Hills Parties' liability for the full amount of the Debt.  For purposes of this memorandum, however, it is sufficient to note the Court's finding that there was an Event of Default on August 8, 2003 and that that Event of Default triggered Blue Hills' and the Guarantors' liability for the full amount of the Debt.

8.49% to the "Default Rate" of 13.49%. Note ¶ 5; Note ¶ 6 ("Interest at the Default Rate. . . [shall be] computed from the occurrence of the Event of Default until the actual receipt and collection of the Debt.").[5]

The Court went on to hold that the unconsented-to transfer of Mortgaged Property triggered the Blue Hills Parties' liability for the full amount of the Debt. Thus, both Blue Hills (under Paragraph 54 of the Mortgage) and the Guarantors (under Paragraph 1.2(D) of the Guaranty) are liable for the full amount of the Debt. The Debt is defined by the Note as "collectively the whole of the outstanding principal sum of this note, <u>together with all interest accrued and unpaid thereon</u> and all other sums due under the Loan Documents." Note ¶ 1(j) (emphasis added); <u>see also</u> Mortgage at p.1, second paragraph (defining the "Debt" to include all indebtedness and interest due under the Note and other Loan Documents).[6] The Guaranty incorporates the definition of the "Debt" found in the Mortgage. Guaranty ¶ 5.11.

The "interest accrued and unpaid" under the Note includes (1) the difference between the interest on the Loan collected by the Lender between August 8, 2003 and August 11, 2004 (at the Initial Term Interest Rate of 8.49%) and the default interest to which it was entitled given the Event of Default on August 8, 2003 (interest at the Default Rate of 13.49%)[7]; and (2) interest at

---

[5] Upon an Event of Default, the Lender is entitled to receive and Blue Hills is required to pay interest at the Default Rate. Note ¶ 5. The "Default Rate" is defined as "a rate per annum which is equal to the lesser of (a) the maximum rate permitted by applicable law, or (b) five percent (5%) above the Applicable Interest Rate." Note ¶ 1(k). The "Applicable Interest Rate," from September 14, 1999 through October 11, 2009, is the "Initial Term Interest Rate," which is 8.49%. Note ¶ 1(c), (p). Blue Hills has not argued that 13.49% exceeds the maximum rate permitted by applicable law, nor does it. The Default Rate is therefore 13.49%.

[6] The Note, moreover, explicitly states that "[i]nterest at the Default Rate shall be added to the Debt." Note ¶ 6.

[7] Because the Lender was unaware of the August 8, 2003 Event of Default until after the foreclosure sale held on November 19, 2004, the Lender collected interest from Blue Hills at the Initial Term Interest Rate

*(footnote continued to next page)*

the Default Rate on the outstanding principal sum of $10,770, 847[8] from November 20, 2004 through the entry of Judgment in this matter.[9] This "interest accrued and unpaid," together with the outstanding principal sum of $10,770,847, constitutes the Debt for which the Blue Hills Parties are liable.

> B. The unpaid interest due under the Note from August 8, 2003, the date of the contract breach, through August 11, 2004 is $1,612,314.60.

The Default Rate is applied to "the entire unpaid principal sum and any other amounts due at the Default Rate," Note ¶ 5, which for the period August 8, 2003 through August 11, 2004 was no less than $31,979,793.66. See Trial Exhibit 212 (payoff statement dated November 11, 2004 showing principal balance in that amount). Thus, between August 8, 2003 and August 11, 2004, the Lender was entitled to Default Rate interest in the amount of at least $4,350,024.78.[10] Because the Lender was unaware of the August 8, 2003 default (which the Blue Hills Parties did not disclose), the Lender collected interest on the Loan at the lower Initial Term Interest Rate of

---

*(footnote continued from previous page)*
of 8.49% from August 8, 2003 through August 11, 2004, rather than at the Default Rate to which it was entitled under the Note and Mortgage.

[8] See Trial Exhibit 212; Trial Chalk C. All of the $10,770,847 remaining after the November 19, 2004 foreclosure constitutes principal as the $18.5 million foreclosure credit bid was applied to pay off all of the interest and fees before being applied to the principal. This manner of applying a general payment is in accordance with the Mortgage and with the case law. Mortgage ¶ 26(b) (proceeds of foreclosure sale shall be applied to the payment of Debt in such priority and proportion as Lender in its sole discretion deems proper); City Coal Co. of Springfield, Inc. v. Noonan, 424 Mass. 693, 696 (1997) ("It is well established that, when a debtor pays money to a creditor, absent any express agreement to the contrary, the payment is first applied to the outstanding interest obligation and then to principal.")

[9] Between August 11, 2004 and November 19, 2004, the date of the foreclosure, the Lender charged interest to Blue Hills at the Default Rate and then applied the proceeds of the foreclosure sale to that amount in computing the outstanding principal sum. Therefore, the Lender is not seeking any additional interest from Blue Hills for the time period August 11, 2004 through November 19, 2004.

[10] This amount is calculated by adding one year of interest at the Default Rate (August 8, 2003 – August 8, 2004; $31,979,793.66 x .1349 = $4,314,074.16) and 3 days of interest at the per diem Default Rate (August 9, 2004 – August 11, 2004; $31,979,793.66 x .00037472222 x 3 = $35,950.62), for a total of $4,350,024.78.

8.49% for this time period, totaling $2,737,710.18.[11] The difference between the interest amount paid by Blue Hills and the interest amount owed by Blue Hills under the Loan Documents for the period prior to the foreclosure is thus $1,612,314.60.

    C.    <u>The unpaid interest due under the Note from November 20, 2004 through November 10, 2006 is $2,889,830.21</u>

Following the foreclosure sale on November 19, 2004, the "outstanding principal sum" under the Note totaled $10,770,847, <u>see</u> note 8, <u>infra</u>. This amount has continued to earn interest at the Default Rate since then, totaling $2,889,830.21 as of November 10, 2006.[12] Adding this number to the accrued and unpaid interest due for the time period August 8, 2003 through November 19, 2004, the total interest due to the Lender under the Note as of November 10, 2006 is equal to $4,502,144.81. From November 11, 2006 until the date of entry of judgment, interest will continue to accrue at the per diem Default Rate, which totals $4,036.08 per day.[13]

    D.    <u>The Court has ruled that the Guarantors are liable for the full amount of the deficiency, which includes the interest due under the Note.</u>

The Court has ruled that the Guarantors are "individually under the guaranty liable for the full amount of the deficiency jointly and severally once the $2 million, which is Blue Hills Office Park money, is subtracted and applied to that deficiency." Trial Transcript, Vol. 9 at 51. The deficiency is the difference between the Debt and the amount received by the Lender at the

---

[11] This amount is calculated by adding one year of interest at the Initial Term Rate (August 9, 2003 – August 8, 2004; $31,979,793.66 x .0849 = $2,715,084.48) and 3 days of interest at the per diem Initial Term Rate (August 9, 2004 – August 11, 2004; $31,979,793.66 x .00023583333 x 3 = $22,625.70), for a total of $2,737,710.18.

[12] This amount is calculated by adding one year of interest at the Default Rate (November 20, 2004 – November 19, 2005; $10,770,847 x .1349 = $1,452,987.26) and 356 days of interest at the per diem Default Rate (November 20, 2005 – November 10, 2006; $10,770,847 x .00037472222 x 356 = $1,436,842.95) for a total of $2,889,830.21.

[13] This amount is calculated by multiplying the per diem rate (.1349 / 360 = .00037472222) by the amount of the outstanding principal sum ($10,770,847) for a total of $4,036.08 per day. The Note establishes that interest is calculated on the basis of a 360-day year. Note at p.1.

time of the foreclosure sale.  As noted, the Debt includes both the outstanding principal sum <u>and</u> unpaid and accrued interest, including interest at the Default Rate.  Note ¶¶ 5, 6; Mortgage at p. 1, second paragraph.  For that reason, the Guarantors are individually liable for the contract interest owed under the Note and Mortgage.

The Court also ruled that "[i]nterest runs against the guarantors pursuant to the terms of the guaranty from the time of the guaranty breach."  Trial Transcript, Vol. 9 at 54-55.  The Guaranty was breached on April 20, 2005, when the Guarantors refused the Lender's written demand that they pay the full amount of the Loan deficiency.  Joint Statement of Stipulated Facts ¶ 65; Guaranty (Trial Exhibit 7) ¶ 1.5 (Guarantors shall pay amount due immediately upon demand by Lender).  As of April 20, 2005, the amount of the Debt included the Default Rate interest accrued and unpaid through that date.  Default Rate interest has continued to run on the outstanding $10,770,847 principal sum since April 20, 2005.

- E. <u>The total interest due under the Loan Documents through November 10, 2006 is $4,502,144.81 plus per diem interest through entry of judgment; the Lender erroneously requested only $3,233,075.04 plus per diem interest in its original proposed form of judgment.</u>

The proposed form of judgment filed by the Lender on November 10, 2006 requested only $3,233,075.04 in pre-judgment contract interest, whereas the above calculations demonstrate that the contract interest due to the Lender is in fact $4,502,144.81.  The Lender realized this error in the course of preparing a response to the Blue Hills Parties' memorandum concerning pre-judgment interest.  The Lender therefore requests that the Court enter judgment in the <u>revised</u> form attached to Lender's <u>Amended</u> Motion for Entry of Judgment, filed herewith, rather than in the form originally requested.

Notably, the amount of interest initially requested by the Lender was <u>lower</u> than the amount specified by the terms of the Note, Mortgage and Guaranty.  The Lender never sought an

"unearned bonus" or a "windfall," as the Blue Hills Parties suggest. Rather, the Lender has attempted to accurately calculate and request only the amount owed the Lender under the express terms of the Note, Mortgage and Guaranty.

II.  **THE BLUE HILLS PARTIES' ARGUMENTS ARE INAPPLICABLE TO THIS CASE BECAUSE THEY FAIL TO DISTINGUISH BETWEEN THE CONTRACT INTEREST SOUGHT BY THE LENDER AND STATUTORY PREJUDGMENT INTEREST.**

Massachusetts law differentiates between two types of interest: interest reserved by the terms of a contract (referred to herein as "Contract Interest") and interest awarded by law. Boston Children's Heart Foundation, Inc. v. Bernardo Nadal-Ginard, 73 F.3d 429, 442 (1st Cir. 1996) (citing Perkins School for the Blind v. Rate Setting Comm'n, 383 Mass. 825 (1980)); see also James B. Dolan, Awards of Litigation Interest by Massachusetts Courts, 35 Suffolk U. L. Rev. 453, 453 (2001) ("contemporary American law recognizes two distinct bases for an award of interest: First, a promise to pay it; and second, a right which arises under the law of damages."). The latter type (referred to herein as "Statutory Interest") is "traditionally seen in the context of prejudgment or postjudgment interest, the rate of which is traditionally fixed by statute and which is calculated based on the amount of damages that a party has sustained." Boston Children's Heart Foundation, 73 F.3d at 442.

The Lender is seeking Contract Interest in this case – not Statutory Interest. The "Memorandum of Blue Hills Office Park, LLC, William Langelier, and Gerald Fineberg on the Award of Prejudgment Interest" (the "BHOP Brief"), however, addresses the issue of Statutory Interest awarded under state law, including Mass. Gen. Laws c.231, § 6C, rather than the Contract Interest sought by the Lender. The BHOP Brief also cites cases addressing discretionary awards of Statutory Interest under various federal causes of action. Because of this fundamental disconnect between the Contract Interest sought by the Lender and the arguments

- 7 -

made by the Blue Hills Parties concerning state and federal Statutory Interest, the Blue Hills Parties' arguments are wholly inapposite here.

 A. <u>The Court's award of Contract Interest to the Lender is not a "windfall" to the Lender; rather, it properly provides the Lender with the benefit of its bargain.</u>

The Blue Hills Parties argue that the Contract Interest awarded by the Court constitutes an "impermissible windfall," and an "unearned bonus, serving to unjustly enrich the Lender." BHOP Brief at 2. The Lender, however, is seeking to recover only the interest for which it bargained and to which it is contractually entitled. Where, as here, "the parties have agreed on the payment of interest, it is payable not as damages but <u>pursuant to a contract duty that is enforceable as is any other such duty</u>, subject to legal restrictions on the rate of interest." Restatement (2d) Contracts § 354, comment (a) (emphasis added).

The cases relied upon by the Blue Hills Parties do not support the proposition that the Blue Hills Parties should be excused from their contractual duty to pay interest. In <u>Tiverton Power Assocs. Ltd. P'ship v. The Shaw Group, Inc.</u>, 376 F. Supp. 2d 21, 28 (D. Mass. 2005), for example (cited in the BHOP Brief at page 2), this Court awarded statutory prejudgment interest – under Delaware law – at the rate set forth in the applicable statute. The contract between the parties in <u>Tiverton</u> did not provide the plaintiff with a contractual entitlement to interest; rather, the plaintiff's right to prejudgment interest derived from the Delaware prejudgment interest statute. <u>Id.</u>

In fact, <u>none</u> of the cases cited by the Blue Hills Parties involved a loan agreement pursuant to which, as here, the borrower agreed to pay the very interest it later sought to avoid.[14]

---

[14] <u>Conway v. Electro Switch Corp.</u>, 825 F.2d 593 (1st Cir. 1987), involved a claim under Mass. Gen. Laws c. 151B for civil rights violations; the First Circuit upheld the district court's decision awarding the plaintiff prejudgment interest under federal law on the lost back pay and benefits recovered by the

*(footnote continued to next page)*

In such cases, Massachusetts courts enforce the terms of the parties' agreement. See, e.g., Rockland-Atlas Nat'l Bank of Boston v. Murphy, 329 Mass. 755, 759 (1953) ("we are not concerned with the rate of interest to be charged as the parties have agreed in that event upon . . . the rate of interest to be computed [on the unpaid balance]."); see also CME Assocs., Inc. v. Ford, 1995 U.S. Dist. LEXIS 20909, *15-17 (D. Mass. 1995) (enforcing default interest rate where Note provided for it).

Massachusetts law is clear that contractual interest provisions are enforceable in the same manner as any other contractual provision, and that where contractual interest provisions are

---

*(footnote continued from previous page)*
plaintiff. Cottrill v. Sparrow, Johnson & Ursillo, Inc., 100 F.3d 220 (1st Cir. 1996), is an ERISA case in which prejudgment interest is "available, but not obligatory" under federal ERISA law. Craft v. Kane, 65 Mass. App. Ct. 322 (2005), awarded statutory prejudgment interest on the plaintiff's quantum meruit damages under Mass. Gen. Laws c.231, § 6C. Criado v. IBM Corp., 145 F.3d 437 (1st Cir. 1998), involved a claim under the Americans with Disabilites Act (the "ADA") with respect to which the court upheld the trial court's discretionary denial of prejudgment interest. Dopp v. Pritzker, 38 F.3d 1239 (1st Cir. 1994), involved an oral contract which did not provide for interest; the court nullified the trial court's award of prejudgment interest under Puerto Rican law, which was based on a finding of "obstinacy" on the defendant's part. Foley v. City of Lowell, 948 F.2d 10 (1st Cir. 1991), involved damages for civil rights violations, and the prejudgment interest issue was decided under Mass. Gen. Laws c.231, § 6(b). Hogan v. Bangor and Aroostook Railroad Co., 61 F.3d 1034 (1st Cir. 1995), is another ADA case in which prejudgment interest is discretionary. In J.C. Higgins Co., Inc. v. Bond Bros., Inc., 58 Mass. App. Ct. 537 (2003), the court upheld an award of prejudgment interest under Mass. Gen. Laws c.231, § 6(c) on disputed amounts recovered under a sub-contracting agreement; there was no contractual provision relating to interest. Perkins School for the Blind v. Rate Setting Comm'n, 383 Mass. 825 (1981), was a dispute between a school and a state agency; the SJC expressly distinguished the case from those involving contractual interest provisions: "In the instant case the contract…neither provides for the payment of interest nor contemplates contractual obligations involving the use of money…". Id. at 772. Petit v. BASF Corp., 14 Mass. L. Rep. 356 (Mass. Super. March 15, 2002), was an indemnification case that did not involve any contractual interest provision. Radford Trust v. First Unum Life Ins. Co. of America, 321 F. Supp. 2d 226 (D. Mass. 2004), was an ERISA case in which prejudgment interest was discretionary. Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837 (Mass. 1986), involved a liability insurance contract that did not provide for the payment of interest; prejudgment interest was awarded under Mass. Gen. Laws c.231, § 6(c). Striar v. American Med. Int'l, 45 Mass. App. Ct. 87 (1998), involved a purchase contract with no provision for payment of interest. Town of Lexington v. Town of Bedford, 378 Mass. 562 (1979), involved a claim under the Veterans' Retirement Act; the SJC upheld the trial court's award of prejudgment interest under Mass. Gen. Laws c.231, § 6(c). Finally, USM Corp. v. Marson Fastener Corp., 392 Mass. 334 (1984), involved a tort claim in which the damages did not accrue until after the commencement of the action; there was no contract involved.

involved, Statutory Interest provisions are inapplicable. In <u>Manganaro Drywall, Inc. v. Penn-Simon Constr. Co.</u>, 357 Mass. 653 (1970), for example, the plaintiff (following the defendant's admitted breach of contract) sought to recover retroactive interest pursuant to the terms of the contract between the parties. <u>Id</u>. at 655-57. Under the contract, the plaintiff had agreed to waive interest on the $78,117 owed by the defendant as long as the defendant made timely installment payments towards the $78,117 balance. In the event the defendant failed to make a payment, the plaintiff would be entitled to interest on the full amount owed, which would accrue from a date four months prior to the execution of the contract. The defendant failed to make all of the required installment payments, but argued that the retroactive interest provision was "unconscionable and void as contrary to public policy" and should not be enforced. <u>Id</u>.

The Supreme Judicial Court upheld the trial court's decision rejecting the defendant's argument and awarding retroactive interest to the plaintiff, stating:

> There is nothing to indicate that the disputed provision concerning interest was not negotiated on an arms-length basis between two substantial business firms. If the defendant had paid the installments of principal as agreed, the plaintiff would not then be allowed to recover for interest by claiming that the agreement by which it waived it was unconscionable. The defendant would then have insisted on the benefit of its bargain, and it would have been entitled thereto. The plaintiff is doing the same here. <u>It is insisting on the benefit of its bargain with the defendant, and it is entitled to it</u>.

<u>Id</u>. at 657 (emphasis added). Moreover, in response to the defendant's argument that the retroactive interest provision was unconscionable because it exceeded the rate set forth at Mass. Gen. Laws c.107, § 3,[15] the SJC held that "[s]ince there is an express written agreement of the parties, it controls the matter, and the statutory rate of interest is inapplicable." <u>Id</u>. at 658; see

---

[15] Mass. Gen. Laws c. 107, § 3 provides, in relevant part, that if there is no agreement or provision of law for a different rate, interest shall be at the rate of six dollars on each hundred for a year.

also <u>Roberts v. Grise</u>, 387 Mass. 1004, 1004-05 (1982) (holding that neither G.L. c.107 § 3 nor G.L. c.231, § 6C were applicable where the contract provided for a specified rate of interest).

Notably, the Blue Hills Parties recognize that the Lender, by virtue of the Court's rulings, has been awarded "its *full* loan deficiency," <u>see</u> BHOP Brief at 6 (emphasis in original), but seemingly fail to recognize that the Contract Interest sought by the Lender is <u>part of the loan deficiency</u> for which the Court has held that the Blue Hills Parties are liable.  <u>See</u> <u>Perkins School for Blind v. Rate Setting Commission</u>, 383 Mass. 825, 836 (Mass. 1981) ("In an action to recover principal and interest under the contract, the amount of interest due is folded into the judgment.").  The Lender seeks only the benefit of its bargain: recovery of the full amount of the loan deficiency – including the Contract Interest owed under the Note, Mortgage, and Guaranty.

> B.   <u>The award of interest is governed by the terms of the Note, Mortgage, and Guaranty, not by "equitable principles."</u>

The Blue Hills Parties argue that the Court should "exercise its discretion," "balance[e] the equities," and conclude that no prejudgment interest is warranted in this case.  BHOP Brief at 2-6.  Again, the Blue Hills Parties' argument reflects a failure to distinguish between Statutory Interest and the Contract Interest sought by the Lender in this case.  The issues raised by the Blue Hills Parties concerning the appropriate prejudgment interest rate, date of accrual, and date of notice to the Blue Hills Parties are not governed by "equitable principles," as the Blue Hills Parties suggest – they are governed by the terms of the Note, Mortgage, and Guaranty.

> 1.   *<u>The interest rate to be applied by the Court is governed by the Note and Mortgage.</u>*

The Blue Hills Parties ask the Court to "exercise its discretion" to decide upon the proper interest rate to be applied, rather than applying the Default Rate set forth in the Note.  BHOP Brief at 8-9.  The Court, however, has no greater discretion to modify the interest provisions of the Note and Mortgage than it does to modify any other provision of the Note or Mortgage.  <u>See</u>

Smiley v. Manufactured Housing Assocs. III Ltd. P'ship, 679 So. 2d 1229 (Fla. App. 1996) (reversing trial court's denial of the plaintiffs' claim for default rate of interest provided by contract, stating "the trial court was without authority to modify the terms of the note and mortgage by failing to give effect to the default rate provision."); see also Boullioun v. Scammahorn, 2002 Wash. App. LEXIS 1913 (Wash. App. 2002) (trial court has discretion to deny prejudgment interest where no agreement to pay interest exists, but has no discretion to deny default interest called for by a contract).

Contrary to the Blue Hills Parties' contention, the nonrecourse provisions of the Mortgage, ¶ 54, and of the Guaranty, ¶ 1.2, do address the recovery of interest – and those provisions are unambiguous. Each provision states that "the Debt shall become fully recourse" to Blue Hills (in the case of the Mortgage) and to the Guarantors (in the case of the Guaranty) upon the occurrence of any of the listed conditions. Both provisions incorporate the definition of "Debt" included in the Mortgage. The "Debt" is a defined term meaning "the indebtedness and interest due under the Note and all other sums due hereunder under the Note and the other Loan Documents." Mortgage at page 1; see also Note ¶ 1(j) (defining the "Debt" to include "all interest accrued and unpaid"). In determining the "interest accrued" on the principal, the Note provides that the Default Rate is to be applied following an Event of Default. Note ¶ 5. These clear and unambiguous contractual provisions must be enforced on their terms. See, e.g., Samos Imex Corp. v. Nextel Commc'ns, Inc., 20 F. Supp. 2d 248, 251 (D. Mass. 1998) (Young, J.) ("Parties, particularly sophisticated parties contracting at arms' length, should not be allowed to escape a provision for which they knowingly and voluntarily bargained."); Clean Harbors, Inc. v. John Hancock Life Ins. Co., 64 Mass. App. Ct. 347, 355-56 (2005) (enforcing prepayment premium provision according to its terms).

> 2. *The date from which interest at the Default Rate begins to accrue is governed by the Note and Mortgage.*

Likewise, the date from which interest at the Default Rate begins to accrue is governed by the terms of the Note and Mortgage. Note ¶ 5. The Blue Hills Parties' position that interest should run only from the date of the demand upon the Guarantors, or from the date of the foreclosure sale, is therefore untenable. The Court may not simply ignore or modify the provisions of the loan documents based upon a "balancing [of] the equities." BHOP Brief at 3. Moreover, the "equities" do not favor the Blue Hills Parties given their multiple breaches of the loan documents. See Union Mut. Life Ins. Co. v. Chrysler Corp., 793 F.2d 1, 17-18 (D. Mass. 1986) ("he who seeks equity, must do equity.").

> 3. *The proceeds from the Lender's sale of 150 Royall Street following the foreclosure sale are irrelevant.*

The Blue Hills Parties make much of the Lender's sale of 150 Royall Street following the foreclosure sale, arguing that the proceeds of that sale should be taken into account in determining the interest to which the Lender is entitled. This argument is a transparent attempt to end-run the well-established law that post-foreclosure gains are irrelevant to the determination of the amount of the loan deficiency. See, e.g., Tarvezian, Jr. v. Debral Realty, 6 Mass. L. Rep. 54 (Mass. Super. Sept. 27, 1996) ("[w]hether property is resold for a loss or a profit after foreclosure is, however, irrelevant in the calculation of a deficiency.") As the Tarvezian court stated:

> It would be illogical to suggest that existing Massachusetts law relieves a debtor of a deficiency, for an indefinite period of time, upon the possibility that the highest bidder at the foreclosure sale may eventually sell the property for a higher price than he had paid at that sale. Furthermore, it would be equally untenable to suggest that had [the lender] resold the properties for a lesser amount than that received at the foreclosure sale, it could in turn seek that amount from [the borrower].

Id.

## III. THE AWARD OF CONTRACT INTEREST TO THE LENDER IS ENTIRELY CONSISTENT WITH THE LAW OF PREJUDGMENT INTEREST AWARDED AS DAMAGES.

For all of the reasons set forth above, the Lender is entitled to Contract Interest as provided by the Note, and the prejudgment interest statute is inapplicable. Even if it were applicable, moreover, an award of interest to the Lender in the amount sought is entirely consistent with the statute and with the common law of prejudgment interest awarded as damages. As the Blue Hills Parties stated, the primary purpose of Statutory Interest in contract cases is "to compensate a party for the loss of the use of, or unlawful detention of, money from the time it was owed." BHOP Brief at 3. As of Blue Hills' Event of Default on August 8, 2003, the Default Rate of interest applied, Note ¶ 5, and the full amount of the Debt became "immediately due and payable at the option of" the Lender. Note ¶ 4; Mortgage ¶ 23. Blue Hills prevented the Lender from exercising its right to accelerate and collect on the Debt at that time by failing to disclose or seek consent to the transfer of Mortgaged Property. The Lender was thereby deprived of the use of the principal Loan balance in full from August 8, 2003 until November 19, 2004. Since then it has been deprived of the use of the principal balance, $10,770,847, remaining after the foreclosure. The Lender is entitled to interest at the applicable contract rate (13.49%) on this unlawfully detained money.

Under Mass. Gen. Laws c.231, § 6C, prejudgment interest is to be added to the amount of damages, "at the contract rate," from the date of the breach or demand. That is precisely what the Lender requests here – interest at the contract rate (which as of August 8, 2003 was 13.49%) accruing from the date of the breach (August 8, 2003), with appropriate reductions for interest already paid. Contrary to the Blue Hills Parties' contention, an award of such interest is

- 14 -

BOST1\450828.4

necessary to make the Lender whole for the loss of the money to which it was entitled as of August 8, 2003.

## CONCLUSION

For all of the reasons stated above, the Lender requests entry of judgment in the <u>revised</u> form attached as <u>Exhibit A</u> to Lender's <u>Amended</u> Motion for Entry to Judgment, filed herewith.

Respectfully submitted,

CSFB 1999-C1 ROYALL STREET, LLC, and J.P. MORGAN CHASE BANK, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1,

By their attorneys,

/s/ Bruce E. Falby
E. Randolph Tucker, BBO #503845
Bruce E. Falby, BBO #544143
Bruce S. Barnett, BBO #647666
Traci S. Feit, BBO #660688
DLA PIPER US LLP
33 Arch Street, 26th Floor
Boston, MA  02110-1447
Dated:  November 17, 2006                (617) 406-6000