UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BLUE HILLS OFFICE PARK LLC,
            Plaintiff,
            Defendant-in-
            Counterclaim,

        v.

J.P. MORGAN CHASE BANK,
as Trustee for the Registered Holders of Credit
Suisse First Boston Mortgage Securities Corp.,
Commercial Mortgage Pass-Through Certificates,
Series 1999-C1, and CSFB 1999–C1 ROYALL
STREET, LLC,
            Defendants,
            Plaintiffs-in-
            Counterclaim,

        v.

WILLIAM LANGELIER and
GERALD FINEBERG,
            Defendants-in-
            Counterclaim.

CIVIL ACTION
NO. 05-10506-WGY

## LENDER'S OPPOSITION TO JOINT MOTION OF BLUE HILLS OFFICE PARK LLC AND GERALD FINEBERG FOR APPROVAL OF ALTERNATE SECURITY IN LIEU OF A SUPERSEDEAS BOND

The Lender[1] opposes the Joint Motion (the "Motion") by which Gerald Fineberg

("Fineberg") and Blue Hills Office Park, LLC ("Blue Hills") unjustifiably seek to avoid the

supersedeas bond requirements of Federal Rule of Civil Procedure 62(d) and Local Rule 62.2.

Fineberg and Blue Hills seek a waiver of the bond requirement to save them the cost of

---

[1] Defendants and Plaintiffs-in-Counterclaim J.P. Morgan Chase Bank, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1 (the "Trustee") and CSFB 1999-C1 Royall Street, LLC ("CSFB") are referred to collectively herein as the "Lender."

renewing, in a year's time, the bond that Fineberg has already submitted to the Court and to allow him to obtain investment earnings on the amount of his bond greater than the interest being earned while the funds are on deposit with the surety company.  Their proposed alternate security – agreeing to an order that Fineberg maintain in a brokerage account "marketable securities holdings" worth the required amount of the bond – will not adequately protect the Lender's interest pending appeal.  Their proposal exposes the Lender to the risks of Fineberg's investments and would require verification, monitoring, and replenishment (likely involving the Court) until the end of the appeal.

The Lender has a right to the security required by the rules.  There is no justification for prejudicing the Lender by allowing inadequate substitute security merely to save Fineberg the future costs of maintaining the bond that he has submitted and which the rules require of every appellant.  The motion for alternate security should be denied.

## I.     Procedural Status

The Court entered judgment in this matter against Fineberg, Blue Hills, and William Langelier on December 21, 2006.  During the ten-day automatic stay of execution provided by Rule 62(a) (which expired after Monday, January 8, 2007), Fineberg and Blue Hills filed the Motion.  On Tuesday, January 9, 2007, with the Motion pending and the automatic stay having run its course the day before, Fineberg submitted a supersedeas bond in the amount of $16,997,792.77 to the Court's Clerk.  (Copy attached as Exhibit A.)  The Lender understands from counsel for Fineberg and Blue Hills that Fineberg paid a bond premium of $170,000.00 and deposited with the surety cash in the full amount of the bond, which amount will earn interest at 3 percent while the appeal is pending.  The Lender notes that the premium is less than one-half the amount Fineberg and Blue Hills claimed in the Motion that they would have to pay.  See Motion at 3 ("Based upon information that Fineberg and Blue Hills have very recently received,

- 2 -

Fineberg will be required to spend upward of $425,000 to procure a *supersedeas* bond that

complies with the requirements of Local Rules 62.2 and 67.1.").

Counsel for Fineberg and Blue Hills has confirmed to the undersigned that they are not

withdrawing the Motion despite Fineberg's submission of the bond. Rather, they seek to replace

the bond with the proposed alternate security in order to save Fineberg the $170,000 renewal

premium he will have to pay in a year's time if the appeal is still pending and to allow him to

control the investment of the funds securing the bond and to attempt to earn more than 3 percent

on them.

At this point, there is no stay of execution or enforcement of the judgment in effect as to

any defendant. As noted, the ten-day automatic stay of Rule 62(a) has expired. The pending

Rule 59 motions to alter or amend the judgment do not effect an automatic stay, see Rule 62(b),

and Fineberg's bond provides no stay as to him until it is approved by the Court, see Rule 62(d)

(stay arising from supersedeas bond "is effective when the supersedeas bond is approved by the

court."). Fineberg has not moved for approval of the bond. Even if Fineberg's bond is

approved, no stay would enter as to any other defendant, as the rules require a bond from each

appellant. See Rule 62(d), Local Rule 67.1.

## II.     The Bond Requirement

Rule 62(d) provides that "[w]hen an appeal is taken the appellant by giving a supersedeas

bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The

bond may be given at or after the time of filing the notice of appeal or of procuring the order

allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is

approved by the court." Local Rule 62.2 sets forth the amount: "A supersedeas bond staying

execution of a money judgment shall be in the amount of the judgment plus ten (10%) percent of

the amount to cover interest and any award of damages for delay plus Five Hundred and no/100

($500.00) Dollars to cover costs, unless the court directs otherwise." In this case, after application of the $2 million paid from the Bernkopf Goodman LLP and Wilmer Hale escrow accounts, the amount of the bond would be $17,001,408.07 (the "Bond Amount").[2]

"The bond requirement is intended to protect the interest of the creditor's right under judgment during the pendency of the appeal." Acevedo-Garcia v. Vera-Monroig, 296 F.3d 13, 17 (1st Cir. 2002). The bond, deposited into and approved by the Court, provides a guaranteed source of payment of a money judgment once it is upheld on appeal. As a result, the judgment creditor need not worry about identifying and attaching the judgment debtor's assets while the appeal is pending. The Court need not issue injunctions barring the judgment debtor from transferring assets, or entertain motions for adjustment of any such injunction when the debtor would like to rearrange his portfolio.

The Court's power to waive the supersedeas bond requirement should be exercised only in "extraordinary circumstances," and only when the appellant (1) demonstrates that posting a full bond is impossible or impracticable; and (2) proposes a plan that will provide adequate security for the appellee. The Bank of Nova Scotia v. Pemberton, 964 F. Supp. 189, 192 (D.V.I. 1997); U.S. v. Kurtz, 528 F. Supp. 1113, 1115 (E.D. Pa. 1981); see also Cipes v. Mikasa, Inc., 404 F. Supp. 2d.367, 369 (D. Mass. 2005) ("Given that the bond requirement is explicitly described in both the federal and local rules, an appellant should, as a general matter, be obliged to satisfy it."). Blue Hills and Fineberg meet neither condition. Fineberg's submission of a bond

---

[2] The Bond Amount is equal to the amount of the outstanding judgment ($15,455,370.97) plus ten (10%) of that amount ($1,545,537.10), plus $500. The outstanding judgment amount includes (a) $10,770,847; (b) $4,552,365.47 (accrued contract interest through November 28, 2006); (c) $75,592.49 (accrued contract interest November 29, 2006 through December 21, 2006); and (d) attorneys' fees and costs of $2,056,566.01, minus the $2 million already paid. The amount of the bond posted by Fineberg is $3615 less than the Bond Amount, apparently due to a miscalculation by Fineberg of the number of days for which prejudgment interest is due. The $3615 amount is equivalent to one day's prejudgment interest ($3286) plus 10%. If the Court is otherwise satisfied that Fineberg's bond is adequate, the Lender does not oppose approval of the bond on this ground.

on Tuesday this week proves doing so is neither impossible nor impracticable for him, and the proposed alternate security he would like to substitute for the bond is inadequate.

The cases from other jurisdictions cited by Blue Hills and Fineberg do not hold otherwise. Those authorities fall into three groups: (1) cases where posting a bond would be impracticable or would put the defendant's other creditors in undue jeopardy; (2) cases where the documented net worth or annual revenue of the appellant was so great in comparison to the judgment amount that the cost of the bond would be a waste of money; and (3) cases where the court in fact required a bond. This case comes within neither of the first two categories, and the authorities in the third support the Lender's opposition to the Motion.

Fineberg has demonstrated his ability to post a bond, and he and Blue Hills have not shown (or even claimed) that doing so results in undue jeopardy to their other creditors. As such, cases in the first category, like Trans World Airlines, Inc. v. Hughes, 515 F.2d 173 (2d Cir. 1975) and Olympia Equip. Leasing Co. v. ALFCO Telecomm. Co., 786 F.2d 794 (7th Cir. 1986), are inapplicable. See Trans World Airlines, 515 F.2d at 175 (obtaining a supersedeas bond impracticable because of the "unprecedented size of the judgment" -- $145,448,141.07 ); Olympia, 786 F.2d at 796-799 (obtaining supersedeas bond would unduly jeopardize other creditors).

The cases of the second type are inapposite because Fineberg and Blue Hills have made no showing as to their net worth or annual income. In Arban v. West Publishing Corp., 345 F.3d 390 (6th Cir. 2003), for example, the Sixth Circuit upheld the district court's decision to grant a stay without a bond because of "the vast disparity between the amount of the judgment in this case and the annual revenue of the group of which West is a part," which was approximately $2.5 billion per year. Id. at 409. Because of that disparity, the Arban court concluded that the

- 5 -

defendant's ability to pay the judgment was so plain that the cost of the bond would be a waste

of money.  Id.  That is not the case here.  The only asset identified in the Motion is a TD

Banknorth account (the "Account") claimed to hold securities worth only a million dollars more

than the Bond Amount, and even with respect to that Account only limited, unverified

information is provided in the Motion.  Moreover, it appears that since the Motion was filed,

Fineberg has removed $16,997,792.77 from the Account and deposited it with United States

Surety Company.[3]

Similarly, in Federal Prescription Service, Inc. v. American Pharm. Assoc., 636 F.2d 755

(D.C. Cir. 1980), the documented net worth of the judgment debtor was $4.8 million, some 47

times the amount of the damage award of $102,000.  Id. at 761.  For that reason, the court upheld

the trial court's decision to depart from the general rule that "a full supersedeas bond should be

the requirement in normal circumstances, such as where there is some reasonable likelihood of

the judgment debtor's inability or unwillingness to satisfy the judgment in full upon ultimate

disposition of the case and where posting adequate security is practicable."  Id. at 760.

Finally, in one of the cases from the third category, the Seventh Circuit upheld the district

court's decision requiring the appellant to post a bond pursuant to Fed. R. Civ. P. 62(d).

Recognizing that the district court has "the discretion to waive this requirement," the appeals

court held that "waiver is appropriate only if the appellant has a clearly demonstrated ability to

satisfy the judgment in the event the appeal is unsuccessful and there is no other concern that the

appellee's rights will be compromised by a failure adequately to secure the judgment."  In the

---

[3]  In explaining why Fineberg and Blue Hills are pressing the Motion after submitting the bond, their counsel explained that Fineberg would rather have the money earn 5% at TD Banknorth than 3% in a collateral account with the surety, implying that the funds on deposit with the surety were taken from the Account.  See also Declaration of Adam Pessin Re: U.S. Surety Company Bond 1000755455 ¶ 4 (stating that "U.S. Surety Company accepted cash collateral from Gerald Fineberg for the full amount of the bond") (the Pessin Declaration is pages 4-7 of Exhibit A).

<u>Matter of Carlson</u>, 224 F.3d 716, 719 (7th Cir. 2000) (emphasis added).  Neither Blue Hills nor Fineberg has shown that they have a "clearly demonstrated ability to satisfy the judgment," as explained more fully in Section III below.

**III.     The Proposed Alternate Security Is An Unacceptable Substitute for a Supersedeas Bond.**

According to the Motion, Fineberg has a brokerage account with TD Banknorth's Wealth Management Group (the "Account") in which he currently holds shares of Federated Institutional Prime Obligations Fund worth approximately $18 million.[4]  Notably, the Motion is unsupported by any affidavit and carefully alleges the continued existence of these shares only "upon information and belief."  Motion ¶ 2.  Those unverified statements are presumably now superseded by Fineberg's apparent removal of almost all of the funds in the Account, see note 3 above, although Fineberg and Blue Hills have not amended their motion to reflect any changes in the status of the Account.  The Motion also does not state whether there are any encumbrances, liens, or third party claims on the Account.  While the Motion claims that Fineberg has other, unspecified assets from which he could supplement the Account if its value fell, it presents no proof whatever of such assets or their amount.

The Motion proposes that, rather than maintain the bond Fineberg has submitted, he be permitted to continue to manage his wealth in the Account, making whatever investments he chooses in "marketable securities."  Blue Hills and Fineberg seek alternate security so that Fineberg can avoid any future bond renewal premiums and can attempt to obtain investment returns greater than the interest accruing on the funds he deposited with the surety to secure his

---

[4] According to information from Federated's website, Federated Institutional Prime Obligations Fund is a money market mutual fund that "invest[s] primarily in a portfolio of short-term, high-quality, fixed-income securities.  All securities are domestic sourced income only."  Under the Motion's proposal, Fineberg would be able to sell this fund and move the money to any marketable security.

BOST1\456871.2

bond. Under the Motion's proposal, Fineberg would have utter discretion over the investments, and the Lender's interest would be protected only by an order that Fineberg replenish the Account (from unverified, unknown other sources) should its value fall below the Bond Amount.

Compared to the certainty and ease of collecting the guaranteed fund represented by the already posted supersedeas bond, Fineberg's proposal is deficient in many respects. Assuming the Account still contains $18 million (or would if Fineberg is ordered to return to it the funds apparently removed and now on deposit with the surety), and further assuming that the Account actually belongs to Fineberg and is unencumbered, the proposal leaves control of the funds entirely in Fineberg's hands. He would be able to invest the funds in the account in any "marketable" securities no matter how risky. Fineberg does not say how he will monitor the value of the securities in the Account or how quickly he will replenish the account if his investments fare poorly and the Account value falls below the Bond Amount. Nor does he demonstrate that he even has liquid funds available to replenish the Account or make any promises about maintaining such funds. Fineberg and Blue Hills do not propose to make TD Banknorth a party to this case or a subject of the injunction and they do not demonstrate that the requested order would protect the Lender against other creditors who might seek to attach the Account while their appeal is pending. The requested order does not require Fineberg to pay the Account funds to the Lender if the judgment is upheld on appeal. Finally, in view of their past dealings with Blue Hills and Fineberg which led to this lawsuit, the Lender has no confidence that Fineberg would comply with any Court order.

The supersedeas bond required by the Rules provides the appellee guaranteed protection, eliminates all of these questions about fund verification, monitoring and replenishment, and ensures that the Court will not be involved in such issues or called on to resolve disputes about

compliance with whatever injunction might be put in place.  The Lender is entitled to the

protections of a supersedeas bond, and should not be prejudiced by an inadequate substitute

merely to save Fineberg the potential cost of renewing the bond that the rules require <u>and that he</u>

<u>has already posted</u> or to give him the chance to maximize investment earnings with the cash

deposited with the surety.  "[A] supersedeas bond is a privilege extended the judgment debtor as

a price of interdicting the validity of an order to pay money."  <u>Brinkman v. Dep't of Corrections</u>

<u>of the State of Kansas</u>, 815 F. Supp. 407, 410 (D. Ka. 1993).

        If Fineberg wants to avoid the cost of renewing the bond, he should deposit the entire

Bond Amount into Court under Rule 67 and Local Rules 67.2, 67.3, and 67.4, pursuant to an

order directing that the funds be applied to the judgment and disbursed to the Lender

immediately upon the judgment being affirmed on appeal.  Only such a deposit and order would

provide the Lender with protection equivalent to a supersedeas bond.  Any incremental

investment return that Fineberg forgoes by maintaining the funds on deposit with the surety or

depositing the Bond Amount into Court is simply the price the rules prescribe for the privilege of

not satisfying the judgment pending appeal.

<u>**CONCLUSION**</u>

        For the reasons stated above, the Lender requests that the Court deny the Motion for

Alternate Security.

Respectfully submitted,

CSFB 1999-C1 ROYALL STREET, LLC,
and J.P. MORGAN CHASE BANK, as
Trustee for the Registered Holders of Credit
Suisse First Boston Mortgage Securities
Corp., Commercial Mortgage Pass-Through
Certificates, Series 1999-C1,

By their attorneys,

/s/ Bruce E. Falby
E. Randolph Tucker, BBO #503845
Bruce E. Falby, BBO #544143
Bruce S. Barnett, BBO #647666
Traci S. Feit, BBO #660688
DLA PIPER US LLP
33 Arch Street, 26th Floor
Boston, MA  02110-1447
(617) 406-6000

Dated:  January 12, 2007

- 10 -

ISSUED THROUGH

FILED
IN CLERKS OFFICE

# A. A. DORITY COMPANY

UNITED STATES DISTRICT COURT
District of Massachusetts

2007 JAN 11  A 4: 25

U.S. DISTRICT COURT
DISTRICT OF MASS.

BLUE HILLS OFFICE PARK LLC,

      Plaintiff,
      Defendant-in-Counterclaim

      v.

CIVIL ACTION No. 05-10506-WGY

J.P. MORGAN CHASE BANK, as
Trustee for the Registered Holders
of Credit Suissee First Boston Mortgage
Securities Corp., Commercial Mortgage
Pass-Through Cerificates, Series 1999-C1,

      Defendant

and CSFB 1999 – C1 Royall Street, LLC,
      Defendant
      Plaintirff-in-Counterclaim

and

William Langelier and Gerald Fineberg,

      Defendants-in-Counterclaim

KNOW ALL MEN BY THESE PRESENTS, that we,

Gerald Fineberg, as Principal, and the United States Surety Company, a corporation duly organized and existing under the laws of the State of Maryland, as Surety, are hereby jointly and severally bound unto, J.P. Morgan Chase Bank, as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 1999-C1 and CSFB 1999 – C1 Royall Street, LLC, as Obligees, in the penal sum of Sixteen Million Nine Hundred Ninety Seven Thousand Seven Hundred Ninety Two and 77/100 ($16,997,792.77) Dollars, to be paid to the said Obligees, certain attorney, successors, executors, administrators, successors and assigns to which payment to be well and truly to be made, we bind ourselves our heirs, executors, administrators, successors and assigns, jointly and severally, by these presents.

WHEREAS, a judgment was entered in favor of the above named Obligees, and the said Principal has filed notice of appeal from said judgment to the United States Court of Appeals for the First Circuit.

NOW, THEREFORE, the condition of this obligation is such that if the said Principal, as Appellant, shall prosecute appeal with effect and shall satisfy the said judgment in full together with costs, interest and damages for delay if said appeal is dismissed or if the judgment is affirmed, and shall satisfy in full such modification of the judgment and costs, interest and damages as may be adjudged and awarded by said court, then this obligation to be void; otherwise to remain in full force and effect. This bond is subject to all applicable federal statutes and rules, including, but not limited to, Local Rule 67.1 of the United States District Court for the District of Massachusetts. This bond is secured by the guaranty of a corporation holding a certificate of authority from the Secretary of the Treasury pursuant to 6 U.S.C. Sec. 8.

DATED this 10th day of January, 2007

*[signature]* , atty fa Gerald Fineberg
Gerald Fineberg

Bond No. 1000755455

United States Surety Company

By *[signature]*
Philip B. Crawford    Attorney-in-Fact
A.A. Dority Company, Inc.
262 Washington Street, Boston, Ma. 02108

# UNITED STATES SURETY COMPANY

FILED
IN CLERKS OFFICE

KNOWN ALL MEN BY THESE PRESENTS: That United States Surety Company (the "Company"), a corporation organized and existing under the laws of the
State of Maryland, does hereby constitute and appoint: **Philip B. Crawford of Boston, Massachusetts**

its true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign its name as surety to, and to execute, seal and
acknowledge any and all bonds, undertakings, contracts and other written instruments in the nature thereof of the Company in its business of providing suretyship;
guaranteeing the performance of contracts; and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by
law, subject to the following limitations:

**No single bond shall obligate the Company in excess of the sum of Twenty Million Dollars ($20,000,000.00).**

This Power of Attorney is granted under and by authority of the following Resolutions adopted by the Board of Directors of United States Surety Company on the
29th day of July, 1996.

IN WITNESS WHEREOF, United States Surety Company has caused these presents to be signed by its proper officers, and its corporate seal to be hereunto affixed
this 5th day of January, 2007.

_____
Adam S. Pessin, Senior Vice President

_____
Jeannie J. Kim, Assistant Secretary

STATE OF CALIFORNIA       SS:
LOS ANGELES COUNTY

On this 5th day of January, A. D. 2007, before me personally came Adam S. Pessin, Senior Vice President of the United States Surety Company, and Jeannie J. Kim,
Assistant Secretary of said Company, with both of whom I am personally acquainted, who being by me severally duly sworn, said, that they, the said Adam S.
Pessin and Jeannie J. Kim were respectively the Senior Vice President and Assistant Secretary of the United States Surety Company, the corporation described in
and which executed the foregoing Power of Attorney.



(Signed) _____
NOTARY PUBLIC
My Commission expires the 20 day in April, 2008.

JACKI LAYFIELD
Comm. # 1434956
NOTARY PUBLIC-CALIFORNIA
Los Angeles County
My Comm. Expires APR 20, 2008

RESOLVED, that in connection with the surety insurance business of the Company, all bonds, undertakings, contracts and other instruments relating to said
business may be signed, executed, and acknowledged by persons or entities appointed as Attorney(s)-in-Fact pursuant to any Power of Attorney issued in
accordance with these resolutions ("Powers of Attorney"). All Powers of Attorney for and on behalf of the Company shall be executed in the name and on behalf of
the Company, either by the Chair, the President, a Vice President or Executive Vice President jointly with the Secretary or an Assistant Secretary, under their
respective designations. The signature of such officers may be engraved, printed or lithographed. The signatures of such officers and the seal of the Company may
be also be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Attorney(s)-in-Fact, for purposes only of executing and
attesting bonds and undertakings and other writings obligatory in the nature thereof. Subject to any limitations set forth therein and unless such Power of Attorney
is subsequently revoked, any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company,
and any such Power of Attorney so executed and certified by such facsimile signature and facsimile seal shall be valid and binding upon the Company with respect
to any bond or undertaking to which it is validly attached.

RESOLVED, that Attorney(s)-in-Fact shall have the power and authority, subject to the terms and limitations of the Power of Attorney issued to them and unless
subsequently revoked, to execute and deliver on behalf of the Company and to attach the seal of the Company to any and all bonds and undertakings, and other
writings obligatory in the nature thereof, and any such instrument executed by such Attorney(s)-in-Fact shall be as binding upon the Company as if signed by the
Company's Chair, the President, a Vice President, or Executive Vice President and sealed and attested to by the Corporate Secretary or an Assistant Secretary.

I, Jeannie J. Kim, Assistant Secretary of United States Surety Company, do hereby certify that the foregoing is a true excerpt from the Resolution of the said
Company as adopted by its Board of Directors on the 29th day of July, 1996, and that this Resolution is in full force and effect.

I, the undersigned Assistant Secretary of United States Surety Company, do hereby certify that the foregoing Power of Attorney is in full force and effect and has not
been revoked.

In testimony whereof, I have hereunto set my hand and the seal of United States Surety Company on this 5th day of January, 2007.

_____
Jeannie J. Kim, Assistant Secretary

Bond No. **1000755455**

Agency No. #13127

FILED
IN CLERKS OFFICE

2007 JAN 11  A 4: 26

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLUE HILLS OFFICE PARK LLC, | ) Case No.: No.: 05-10505-WGY |
| | ) |
|     Plaintiffs, | ) Civil Action |
|     Defendants-in-Counterclaim, | ) |
| | ) DECLARATION OF ADAM PESSIN RE: U.S. |
|         vs. | ) SURETY COMPANY BOND 1000755455 |
| J.P. MORGAN CHASE BANK, as Trustee | ) |
| for the Registered Holders of Credit | ) |
| Suissee First Boston Mortgage | ) |
| Securities Corp., Commerical Mortgage | ) |
| Pass-Through Certificates, Series | ) |
| 1999-C1, | ) |
| | ) |
|     Defendant, | ) |
| | ) |
| and CSFB 1999 - C1 Royall, Street, | ) |
| LLC, | ) |
|     Defendant, | ) |
|     Plaintiff-in-Counterclaim, | ) |
| | ) |
| and | ) |
| | ) |
| WILLIAM LANGELIER and GERALD | ) |
| FINEBERG, | ) |
| | ) |
|     Defendants-in-Counterclaim. | ) |

I, Adam Pessin, declare as follows:

    1.    I am a Senior Vice President of U.S. Surety Company, a company authorized to do business with the United States as a surety on bonds and undertakings pursuant to 31 C.F.R. 223.1.

    2.    If called as a witness, I would and could testify to the following facts.

1

3.  U.S. Surety Company has issued bond 1000755455 on behalf of Gerald Fineberg in the amount of $16,997,792.77.

4.  To limit U.S. Surety Company's risk prescribed in 31 C.F.R. 223.10, U.S. Surety Company accepted cash collateral from Gerald Fineberg for the full amount of the bond. This money has not been pledged or assigned as a security for any other purpose other than for the bond U.S. Surety Company posted on behalf of Gerald Fineberg.

5.  Pursuant to 31 C.F.R. 223.11(c)(1), U.S. Surety Company complies with the limitation of risk prescribed in section 223.10 by accepting this cash deposit in trust for its protection.

I declare under penalty of perjury that the foregoing is true and correct and that I signed this declaration on January 10, 2007.

_____

Adam Pessin, Senior Vice President

## ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of Los Angeles

On _January 10, 2007_ before me, Jacki Layfield, notary public, personally appeared **Adam Pessin**, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

JACKI LAYFIELD
Comm. # 1484956
NOTARY PUBLIC-CALIFORNIA
Los Angeles County
My Comm. Expires APR 20, 2008

### OPTIONAL

*Though law does not require the following information, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

CAPACITY CLAIMED BY SIGNER (PRINCIPAL)

☐ INDIVIDUAL
☑ CORPORATE OFFICER
_Senior Vice President_

☐ PARTNER (S)
☐ ATTORNEY-IN-FACT
☐ TRUSTEE (S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER: _____

SIGNER IS REPRESENTING:
NAME OF PERSON (S) OR ENTITY (IES)

_U.S. Surety Company_

DESCRIPTION OF ATTACHED DOCUMENT

_Declaration of Adam Pessin_
TITLE OR TYPE OF DOCUMENT

_2_
NUMBER OF PAGES

_January 10, 2007_
DATE OF DOCUMENT

OTHER
RIGHT THUMBRPING OF SIGNER: